**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Fred B. Ringel
Clement Yee
*Attorneys for the Debtors and Debtors in
Possession*

<u>Presentment Date and Time:</u>
September 14, 2021 at 12:00 p.m.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

*In re:*

**85 FLATBUSH RHO MEZZ LLC, *et al.*,**[1]

Debtors.
-------------------------------------------------------X

Chapter 11

Case No.:  20-23280 (RDD)

(Jointly Administered)

## APPLICATION FOR ORDER AUTHORIZING
## <u>THE RETENTION OF REAL ESTATE ADVISOR</u>

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors-in-possession (collectively,

"Debtors"), by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck

P.C., under sections 327(a) and 330 of title 11 of the United States Code

("Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy

Procedure ("Bankruptcy Rules"), seeks this Court's authorization to employ Jones

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are  85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027);
and 85 Flatbush RHO Residential LLC (2261).

{01116605.DOC;1 }

Lang LaSalle Americas, Inc. ("JLL"), as the Debtors' real estate advisor in its Chapter 11 case. In support, the Debtors respectfully represent:

1.     This motion seeks the approval of the Debtors' retention of JLL as their real estate advisor to arrange a joint venture, financing or recapitalization, sell, or otherwise dispose of the Debtors' real property located at 85 Flatbush Avenue, Brooklyn, New York ("Property").

## JURISDICTION AND VENUE

2.     Jurisdiction over this application is vested in the United States District Court for the Southern District of New York under section 1334 of title 28 of the United States Code ("Judicial Code").

3.     This is a core proceeding arising under title 11 of the United States Code. *See* 28 U. S. C. § 157(b)(1). The statutory predicates for this relief are §§ 327(a), 330, and 1107 of the Bankruptcy Code.

4.     Venue is proper in this district under section 1409 of the Judicial Code.

## BACKGROUND

5.     On December 18, 2020 ("Petition Date"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Together with their petitions for relief, the Debtors have filed their schedules of assets and liabilities and lists of creditors and executory contracts required under section 521 of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules.

## RELIEF REQUESTED

6.     To maximize the value of the Property, the Debtors seek authorization

to retain JLL as their real estate advisor to arrange for a joint venture, financing or

recapitalization, sell or otherwise dispose of the Property under the attached

Retention Agreement ("Agreement").  The Agreement is attached to the proposed

order as **Exhibit 1**.

7.     The Debtors selected JLL because of JLL's extensive and diverse

experience, knowledge, and reputation in the real estate industry, including the

specifically, the hotel and hospitality space.  JLL is a licensed real estate broker

with substantial experience in the marketing of commercial real property, whether

JLL finds a joint venture partner/new equity or refinancing sources or a sale of such

property.  In consultation with the Debtors, JLL has set up a six-week time frame

within which JLL intends on running a concurrent joint venture/refinancing search

alongside a sale process.  The Debtors and JLL believe such a process will maximize

the value of the Debtors' estates.

## Sections 327(a) and 328 of the Bankruptcy Code

8.     The Bankruptcy Code provides that a debtor, with the Court's

approval, may employ one or more attorneys … or other professional persons that

do not hold or represent an interest adverse to the estate, and that are disinterested

persons, to represent or assist the trustee in carrying out its duties under the

Bankruptcy Code.  11 U.S.C. §327(a).  The Debtors believes that JLL satisfies the requirements of section 327(a) of the Bankruptcy Code.

9.      As set forth in the declaration of Jeffrey Davis, and to the best of Debtors knowledge, information and belief, JLL represents no interest adverse to the Debtors, their estates or creditors and is a disinterested person under §101(14) of the Code.

10.      Section 328(a) of the Bankruptcy Code also provides that a professional person retained under section 327 of the Bankruptcy Code may be employed on "any reasonable terms and conditions of employment, including on a … fixed or percentage fee basis, or on a contingent fee basis."  If the Debtors sign an agreement to recapitalize the Property or enter into a joint venture agreement relating to the Property, the Debtors will pay JLL a fee equal to 2.5% of the total new equity raise.  If the Debtors refinance their existing secured debt,  the Debtors will receive a fee equal to 0.75% of the total new financing proceeds.  Finally, if the Debtors must sell the Property, JLL will receive a fee qual to 1.0% of the total sale proceeds.  If there is a loan workout scenario between the Debtors and the Debtors' current secured lender or if the current secured lender purchases the Property, then JLL will receive a minimum fee of $250,000.

11.      The Agreement is for a term of 180 days from the commencement of the date of entry of an order approving JLL's retention or the closing on a

transaction as contemplated by the Agreement.  The Debtors and JLL believe that this time-frame is sufficient.

12.    In addition, the Debtors will reimburse JLL for its expenses within the scope of its engagement, including, travel, printing, and production charges..

13.    Because of the transactional nature of JLL's work, the Debtors request that JLL not need to keep time records for services performed for its fee for acting as a real estate broker to the Debtors under the Agreement.

## NOTICE

14.    The Debtors have provided notice of this application to: (i) the U.S. Trustee; (ii) the Debtor's twenty largest unsecured creditors; (iii) counsel to the Debtors' secured creditors; and (iv) all other parties that have requested service in these cases under Bankruptcy Rule 2002.

15.    No prior application for this relief has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (i) approving the Agreement between the Debtors and JLL, substantially in the form annexed to the proposed order as Exhibit 1; (ii) authorizing the Debtors to retain JLL as the Debtors' real estate advisor for the Property under the Agreement, (iii) authorizing payment to JLL at closing under the Agreement and (iv) such other and further relief as it deems just and proper.

**DATED:**     New York, New York
                September 7, 2021

> ROBINSON BROG LEINWAND GREENE
>   GENOVESE & GLUCK PC
> **Attorneys for the Debtors**
> 875 Third Avenue
> New York) New York 10022
> Tel. No.: (212) 603-6300
>
>
> By: /s/ Fred B. Ringel_____
>        **Fred B. Ringel**

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

*In re*:

**85 FLATBUSH RHO MEZZ LLC,** *et al.*,[1]

                                                            Debtors.
---------------------------------------------------------X

Chapter 11

Case No.:  20-23280 (RDD)

(Jointly Administered)

## ORDER AUTHORIZING RETENTION OF
## REAL ESTATE ADVISOR AND RELATED RELIEF

**UPON** the application ("Application") of the above-captioned debtors and

debtors in possession (together, "Debtors") by their attorneys, **Robinson Brog**

**Leinwand Greene Genovese & Gluck P.C.**, dated September 7, 2021 and the

Declaration of Jeffrey Davis, dated September 7, 2021, seeking authorization for the

Debtors' retention of Jones Lang LaSalle Americas, Inc. ("JLL") as their exclusive

real estate advisor for the marketing of the real property located at 85 Flatbush

Avenue, Brooklyn, New York ("Property"); and it appearing that due and sufficient

cause appearing therefor, it is hereby

**ORDERED**, that the Debtors are authorized, under sections 327(a), and 328

of the Bankruptcy Code ("Bankruptcy Code"), enter into the Retention Agreement

("Agreement"), between the Debtors and JLL, substantially in the form attached to

this order as **Exhibit 1**, to employ JLL, effective as of September 4, 2021, as its

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are  85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027);
and 85 Flatbush RHO Residential LLC (2261).

{01116607.DOC;1 }

exclusive real estate advisor under the terms set forth in the Agreement and incorporated herein by this reference; and it is further

**ORDERED**, that to the extent there is a conflict between this Order and the Application or the Agreement, if any, the terms of this Order shall govern; and it is further

**ORDERED**, that (i) JLL shall not have to keep time records for services performed in connection with its engagement, (ii) none of the fees payable to JLL shall constitute a "bonus" under applicable law, (iii) any unpaid JLL's fees and expenses shall be treated as administrative expense claims in the Debtors' bankruptcy cases and (iv) neither the Debtors nor JLL shall be required to seek authorization from any other jurisdiction with respect to the relief granted by the Order approving this Agreement; and it is further

**ORDERED**, that JLL hereby is authorized under sections 328(a) and 330 of the Bankruptcy Code, to collect compensation in the form of a 2.5% commission of any total new equity raise, if the Debtors sign an agreement to recapitalize the Property or enter into a joint venture agreement relating to the Property and it is further

**ORDERED**, that JLL hereby is authorized under sections 328(a) and 330 of the Bankruptcy Code, to collect compensation in the form of a 0.75% commission of the total new financing proceeds, if the Debtors refinance their existing secured debt; and it is further

**ORDERED**, that JLL hereby is authorized under sections 328(a) and 330 of the Bankruptcy Code, to collect compensation in the form of a 1.0. % commission to from the total sale proceeds if the Debtors sell the Property, however, if there is a loan workout scenario between the Debtors and the Debtors' current secured lender or if the current secured lender purchases the Property, then JLL will receive a minimum fee of $250,000; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Order.

**DATED:** White Plains, New York
September_____, 2021

_____
**HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE**

# EXHIBIT 1



Jones Lang LaSalle Americas, Inc.
Hotels & Hospitality Group/Americas
200 East Randolph Drive Chicago Illinois 60601
tel +1 312 782 5800

85 Flatbush RHO Mezz LLC
85 Flatbush RHO Hotel LLC
85 Flatbush RHO Residential LLC
c/o GC Realty Advisors, LLC
3284 N. 29th Court
Hollywood, FL 33020
Attn: David Goldwasser

**Re:    85 Flatbush Ave, Brooklyn, NY**

Dear David:

Jones Lang LaSalle Americas, Inc., a Maryland corporation ("JLL"), is pleased to confirm the agreement under which JLL has been exclusively engaged by 85 Flatbush RHO  Mezz LLC, 85 Flatbush RHO Hotel LLC and 85 Flatbush RHO Residential LLC, each a "Debtor" and collectively, the "Debtors", also sometimes referred to herein as the  "Owner," to provide the services described below in connection with the **174-room Tillary Hotel and 64-unit adjoined apartments** located at 85 Flatbush Ave, Brooklyn, NY 11217 (the "Property").

I.    <u>SCOPE OF SERVICES</u>

Subject to approval of the United States Bankruptcy Court for the Southern District of New York in the chapter 11 case entitled <u>In re 85 Flatbush RHO Mezz LLC, et al.</u>" (Case No: 20-23280 RDD), promptly after execution of this agreement (the "Agreement") the Debtors will seek approval of the Agreement by the Bankruptcy Court for JLL to render services to the Owner on the terms and subject to the conditions described in this letter agreement ("Agreement").   Owner hereby engages JLL as its exclusive and sole agent to simultaneously 1) market the Owner's interest in the Property for sale and 2) restructure the property with infusion of JV equity capital or refinancing proceeds.  The following representatives of JLL's Hotels & Hospitality Group, together with such other representatives as may be required by local law, shall provide services to Owner hereunder: [*Jeffrey Davis, KC Patel, Steven Rutman, Peter Laskey, Kevin Davis, Brett Rosenberg*] (collectively, the "Listing Team").  JLL acknowledges that Owner's objective is to obtain the best terms suitable for Owner in connection with the Transaction and, in order to achieve that objective, JLL shall perform the following services and responsibilities (the "Services"):

1.    Timing.

The below timeline address JLL understanding and commitment towards the marketing of the Property:
- Launch marketing of the Property the week of September 20th;
- Simultaneously market to buyers / equity investors / lenders alike for a period of six weeks, with the understanding that each respective process may require an additional week, give or take;
- 30-day close from receipt of all court approvals and required tax exemption requirements.

2.    Determination of Marketing Strategy

JLL will evaluate and recommend to Owner the appropriate structure, including pricing, and marketing strategy for the Transaction.  The primary considerations in determining this structure and strategy will be meeting Owner's objective of completing the Transaction on the most favorable terms obtainable in a timely manner based on a review of the Property and an analysis of comparable transactions.

3.    Preparation of Marketing Presentation

**85 Flatbush RHO Mezz LLC et al.**
**85 Flatbush Ave, Brooklyn**
Page 2 of 8

JLL will prepare a comprehensive marketing presentation ("Offering Memorandum") which shall be subject to the approval of Owner.  This Offering Memorandum will provide detailed information necessary for the analysis and evaluation of the Transaction.  In addition to descriptive material, the Offering Memorandum will contain financial projections and may contain an explanation of the terms and conditions under which a Transaction will be pursued. Owner has determined that the Offering Memorandum shall not list a purchase price for the Property and that the Property shall be subject to bid or offer.  The purchase price shall be determined by Owner after receipt of acceptable offers or bids, in Owner's sole discretion.

4.      Creation and Implementation of Marketing Plan

During this phase of the engagement, representatives of JLL will identify qualified parties who are potentially interested in the Transaction.  Such parties will be selected for their perceived interest in the Transaction and financial capability to perform under the terms of the Offering Memorandum. Each such party will be required to sign a confidentiality agreement in a form approved by Owner and then presented with a copy of the Offering Memorandum.  Follow-up discussions and on-site property tours will be conducted by JLL, as needed.

5.      Preparation of Due Diligence Information

JLL will coordinate the preparation of appropriate back-up material, which will be provided to qualified parties in addition to the Offering Memorandum in their detailed investigation of the Property.  This information may include, but not be limited to, such items as document summaries, historic and forecasted financial statements, STR reports or competitive market performance summaries, physical property descriptions and site plans, and lease copies to the extent deemed reasonably appropriate by JLL and owner.

6.      Contract Negotiations

The status of the marketing efforts, discussions, and terms and conditions of any and all offers will be systematically communicated to and discussed solely with Owner.  Owner shall refer all inquiries regarding the Transaction to JLL, and JLL will assist Owner in conducting all negotiations; provided, however, in no event shall JLL have the authority to make any commitments or representations, enter into any agreements or sign any documents on behalf of Owner.  All final terms and conditions of the Transaction will be subject to approval by Owner in its sole discretion, and Owner shall have the sole and absolute discretion to accept or reject any offer or to withdraw the Property from the market.

7.      Transaction Closing

The final phase of JLL's involvement will be to assist Owner in the coordination of activities required to consummate the Transaction.  This will include assistance in the resolution of due diligence and business issues and assistance in the satisfaction of closing requirements.

Owner acknowledges, however, that JLL is not an expert in and is not responsible for any legal, regulatory, tax, accounting, engineering, environmental or other technical matters, all of which shall be solely Owner's responsibility; provided, however, JLL shall, based on its professional expertise, assist Owner in connection with such matters, including giving Owner recommendations as to experts to use for such matters and coordinating the

{01116613.DOCX;1 }

**85 Flatbush RHO Mezz LLC et al.**
**85 Flatbush Ave, Brooklyn**
Page 3 of 8

work of such experts with the other parties working on the Transaction, but in no event shall JLL have responsibility or liability for the work of such experts.

II.    COOPERATION OF OWNER

Promptly after execution of this Agreement, Owner shall provide JLL with the names of all parties, if any, with whom Owner has discussed the Transaction prior to the date hereof. Owner shall likewise inform JLL of the dates and nature of all communications by Owner with any prospective parties concerning the Transaction after the date hereof and shall refer all inquiries from such parties to JLL. Owner shall also make available to JLL such documents, materials and information regarding the Property which, in the reasonable professional judgment of JLL, are necessary or appropriate for the proper marketing of the Transaction. In addition, Owner agrees to review and verify the accuracy of the revenue and operating expenses for the Property and all financial and other factual data and other information included in the Offering Memorandum or any other materials submitted to or prepared by JLL regarding the Property; and JLL shall have no liability with respect to the use of any data or information provided by other parties.

III.    COMPENSATION

As compensation for the services to be performed by JLL under this Agreement, JLL shall be entitled to be paid a transaction fee (the "Transaction Fee") equal to an amount determined in accordance with the following schedule:

TRANSACTION FEE

1. JLL will, in tandem, market the asset for sale, of which there will be a fee equal to 1.0% of total transaction sales proceeds;
2. Simultaneous to an outright sale, JLL will market the asset for JV equity and will receive a fee equal to 2.5% of total new equity raise;
3. In the event JLL is able to source a refinancing option, JLL will receive a fee equal to 0.75% of total new financing proceeds;
4. If there is a loan workout scenario between lender and borrower, JLL will receive a minimum fee of $250,000.

In addition, if Owner enters into a contract or definitive agreement for a Transaction within six (6) months following the termination of JLL's engagement under this Agreement with one or more of the prospective parties contacted by JLL while performing the Services or one or more of their affiliates and such Transaction subsequently closes, Owner shall be obligated to pay JLL the Transaction Fee determined in accordance with the terms of this Agreement upon the closing of the Transaction.

For purposes of this Agreement, the term "Transaction" shall include a direct or indirect transaction with respect to the Property or of the interests in any entity holding title to the Property, whether accomplished through a sale; any direct or indirect transaction; or any combination thereof. In no event, however, shall, a Transaction be deemed to have occurred if the Transaction does not close for any reason and, in such case, JLL shall not be entitled to any Transaction Fee.

IV.    EXPENSES

{01116613.DOCX;1 }

**85 Flatbush RHO Mezz LLC et al.**
**85 Flatbush Ave, Brooklyn**
Page 4 of 8

Owner shall reimburse JLL for all direct out-of-pocket costs and expenses incurred by JLL within the scope of its engagement pursuant to this Agreement, including without limitation travel, lodging and meal expenses, and printing and production charges, provided that the aggregate amount of such out-of-pocket costs and expenses shall not exceed the sum of $20,000 during the term of this Agreement (such amount hereinafter referred to as the "Expense Cap"), without Owner's prior written approval. Up to ten percent (10%) of the total of such reimbursable expenses will be charged for administrative expenses incurred by JLL (and shall be subject to the Expense Cap), including but not limited to express mail and courier services, telephone and related expenses, reproduction charges (exclusive of the cost of third party Offering Memorandum costs) and other similar expenses. In addition, JLL shall be reimbursed by Owner for any payments made by JLL to third party consultants and professionals provided such third-party consultants and professionals have been approved by Owner. Owner shall also make available to JLL's employees overnight accommodations on a complimentary basis at the Property to the extent available, when such employees are visiting the Property for the purpose of marketing and selling the Property as contemplated herein. All reimbursable amounts shall be payable upon receipt by Owner of any invoice from JLL therefor.

V.    <u>TERMINATION</u>

The term of JLL's engagement by Owner shall begin as of the date hereof and shall end on the earlier of:

    (a) One Hundred Eighty (180) days from the commencement of our marketing process, with the exception of any time for court approval and/or tax exemption retainment; or,

    (b)  the date of the closing of a Transaction.

Upon termination of this Agreement, neither party will have any liability or continuing obligation to the other, except that: (i) any provision of this Agreement concerning rights or obligations of the parties with respect to representations, reimbursement, indemnification, the return or delivery of documents and other property, and confidentiality shall survive such termination; (ii) Owner shall remain liable for JLL's reasonable costs and expenses incurred up to the time of such termination pursuant to the terms of Article IV; and (iii) JLL's right to payment of a Transaction Fee, if any, under this Agreement shall survive such termination.

VI.    <u>INDEMNIFICATION</u>

Owner shall indemnify, defend (with counsel reasonably acceptable to JLL) and hold harmless JLL, each person or entity deemed to control or to be controlled by JLL, and their respective partners, shareholders, directors, officers and employees, against and from any and all losses, liabilities, and damages (including without limitation reasonable attorneys' fees) arising in connection with any third party action, claim, proceeding, or investigation relating to this engagement except such as may be imposed or incurred by reason of the negligence, willful misconduct, or fraud of JLL (or any of its employees or agents) in the performance of the Services and provided that JLL has acted within the scope of its authority under this Agreement.

JLL shall indemnify, defend (with counsel reasonably acceptable to Owner) and hold harmless Owner, each person or entity deemed to control or to be controlled by Owner, and their respective partners, shareholders, directors, officers and employees, against and from any and all losses, liabilities, and damages (including without limitation reasonable attorneys' fees) arising in connection with any third party action, claim, proceeding, or investigation relating to this engagement which may be imposed or incurred by reason of the negligence, willful misconduct, or fraud of JLL (or any of its employees or agents).
The foregoing indemnification obligations shall survive the expiration or early termination of this Agreement.

**85 Flatbush RHO Mezz LLC et al.**
**85 Flatbush Ave, Brooklyn**
Page 5 of 8

VII.    <u>GENERAL PROVISIONS</u>

1.      <u>Notices</u>.    Any notice or other communication required or desired to be given to any party under this Agreement shall be in writing and shall be either:  (a) delivered personally by hand; (b) sent by certified United States mail, return receipt requested; (c) sent by a nationally recognized overnight courier service; or (d) sent by facsimile provided a copy of any facsimile notice is also sent by one of the other foregoing means.  All notices to either party shall be delivered to the following address provided either party may change such address by delivering notice to the other party in accordance with the provisions of this paragraph:

<u>Notice to Owner:</u>
85 Flatbush RHO Mezz LLC
85 Flatbush RHO Hotel LLC
85 Flatbush RHO Residential LLC
c/o GC Realty Advisors, LLC
3284 N. 29th Court
Hollywood, FL 33020
Attn: David Goldwasser

<u>with a copy to:</u>
Fred B. Ringel
Robinson Brog Leinwand
Greene Genovese & Gluck P.C.
875 Third Ave, 9th Floor
New York, NY 10022

<u>Notice to JLL</u>:
Jones Lang LaSalle Americas, Inc.
200 East Randolph Dr.
Chicago, Illinois 60601
Attention: Kristin Schneider
Facsimile No.: (312) 416-9520

<u>with a copy to:</u>
Jones Lang LaSalle Americas, Inc.
200 East Randolph Dr.
Chicago, Illinois 60601
Attention:  General Counsel
Facsimile No.: (312) 228-2277

All notices shall be deemed given upon receipt or upon the date such receipt is refused by the party receiving such notice.

2.      <u>Confidentiality</u>.    JLL agrees, for itself and all persons retained or employed by JLL in performing its services, to hold in confidence and not to use or disclose to others any confidential or proprietary information of Owner heretofore or hereafter disclosed to JLL, which may become known to JLL in the

**85 Flatbush RHO Mezz LLC et al.**
**85 Flatbush Ave, Brooklyn**
Page 6 of 8

performance of, or as a result of, the Services, except where Owner specifically authorizes JLL to disclose any of the foregoing to others or such disclosure reasonably results from the performance of JLL's duties hereunder; provided, however, that for purposes of this Agreement information shall not be deemed to be confidential if it is otherwise within the public domain or if JLL has obtained such information from a source other than Owner or its employees or agents. The foregoing confidentiality provision shall survive the expiration or earlier termination of this Agreement for a period of two (2) years.

3.    <u>Announcements</u>.    JLL will not issue any press releases or announcements regarding the Transaction without the prior approval of Owner as to the contents thereof.

4.    <u>Interest; Litigation Costs</u>. If any payment due hereunder is not paid when due, such payment shall bear interest at the rate of one percent (1%) per month from the date due to the date paid.

5.    <u>Brokers</u>.    JLL shall not be required to deal with any other brokers or finders unless they are representing another party to the Transaction and have agreed to be paid by such other party, and neither Owner nor JLL shall have any obligations for such brokers or finders.  Except as set forth in the immediately preceding sentence, each party represents and warrants to the other party that it has not and will not deal with any other brokers or finders who are or will be entitled to any compensation with respect to the Transaction; and each party agrees to indemnify the other party for its breach of such representation and warranty.

6.    <u>Authority; Construction</u>.  Owner represents and warrants that it is the owner of the Property, that it is duly authorized to enter into this Agreement and perform its obligations hereunder and that it is authorized to enter into the Transaction in accordance with the terms hereof.  JLL represents and warrants that it is duly authorized to enter into this Agreement and perform its obligations hereunder.  The Agreement is intended to create an independent contractor relationship between JLL and Owner, and nothing herein shall be construed as creating an employer/employee or partnership relationship between the parties.

7.    <u>Assignment; Successors</u>.   Neither party shall assign their rights or obligations under this Agreement, in whole or in part, or any payments due or to become due under this Agreement without prior written consent of the other party (and any such attempted assignment or delegation shall be void); provided, however, either party may assign this Agreement to an affiliate or to an entity which succeeds to all or substantially all of the business of the assignor but no such assignment or delegation shall relieve the assignor of its obligations hereunder.  Except as described in the preceding sentence, this Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the respective successors and assigns of the parties to this Agreement.

8.    <u>Financings</u>.  Owner understands that JLL may be requested by potential purchasers to solicit offers from lenders for financing a Transaction with respect to the Property and that JLL may, in addition to its representation of Owner hereunder, represent one or more prospective purchasers in obtaining such financing.  Owner consents to such services by JLL as long as JLL discloses any such potential relationship to Owner; provided, however, Owner shall not be obligated to pay any fees or commissions to JLL in connection with such financing, all of which shall be the sole responsibility of the purchaser.

9.    <u>Limited Liability</u>.  Neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost profits, even if such party

**85 Flatbush RHO Mezz LLC et al.**
**85 Flatbush Ave, Brooklyn**
Page 7 of 8

has knowledge of the possibility of such damages.  In no event shall JLL's liability to Owner exceed the fees paid to JLL pursuant to this Agreement.

10.  <u>Counterparts; Electronic Copies</u>.  This Agreement may be executed in any number of separate counterparts and by facsimile signatures, each of which shall together be deemed an original, but the several counterparts shall together constitute one and the same instrument.  In addition, the parties agree that (i) an electronic signature shall be considered an original signature, and (ii) a copy of the Agreement shall be considered an original instrument, and each, together or separately, shall become binding and enforceable as if original and the parties may rely on the same to prove the authenticity of the Agreement.

11.  <u>Governing Law</u>.  This Agreement shall be governed by the laws of the state where the Property is located, without regard to the conflicts of law principles of such state.

12.  <u>Waiver of Trial by Jury</u>.  EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

13.  <u>Non-Discrimination</u>.  Owner and JLL agree that the Property will be offered in compliance with all applicable anti-discrimination laws.

14.  <u>OFAC</u>.  Owner represents and warrants that neither it nor any of its employees is a person or entity with whom U.S. entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order or other governmental action.

15.  <u>Complete Agreement</u>.  This Agreement, together with the Rider[s], Schedule[s]and Exhibits[s] attached, if any, contains the entire agreement between the parties and supersedes any prior discussions, negotiations, representations, or agreements, written or oral, between the parties hereto or any of their respective affiliates respecting the subject matter hereof.  No alterations, additions, or other changes to this Agreement shall be made or binding unless made in writing and signed by both parties to this Agreement.

[Signature page follows]

{01116613.DOCX;1 }

**85 Flatbush RHO Mezz LLC et al.**
**85 Flatbush Ave, Brooklyn**
Page 8 of 8

If the foregoing accurately reflects our agreement, please execute this Agreement below and return it to the undersigned.

**JONES LANG LASALLE AMERICAS, INC.**

By:   Jeffrey Davis

Title:   Senior Managing Director

AGREED and ACCEPTED
this _4_ day of _September_____ , _2021_

**85 Flatbush RHO Mezz LLC**
**85 Flatbush RHO Hotel LLC**
**85 Flatbush RHO Residential LLC**
By: GC Realty Advisors LLC, Manager

        David Goldwasser, President
By:_____

09-2021



Jones Lang LaSalle Americas, Inc.
Hotels & Hospitality Group/Americas
200 East Randolph Drive Chicago Illinois 60601
tel +1 312 782 5800

85 Flatbush RHO Mezz LLC
85 Flatbush RHO Hotel LLC
85 Flatbush RHO Residential LLC
c/o GC Realty Advisors, LLC
115 Broadway, Suite 302
New York, NY, 10006
Attn: David Goldwasser

**Re:    Addendum to Engagement Letter for 85 Flatbush Ave, Brooklyn, NY**

Dear David:

This addendum shall form a part of and be read together with the engagement letter (the "Agreement") by which 85 Flatbush RHO  Mezz LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC (collectively, the "Debtors) engaged Jones Lang LaSalle Americas, Inc.,("JLL")  to provide services as the Debtors real estate advisor. Capitalized terms not defined herein shall have the meaning outlined in the Agreement.

In addition to the terms and conditions set forth in the Agreement, the following shall apply to the retention of JLL:

If Guy Sella purchases any or all of the Debtors' Property, then JLL shall be entitled to a  reduced transaction fee equal to 0.75% of total transaction sales proceeds.

In all other respects, the Agreement remains in full force and effect. Please execute this addendum below and return it to the undersigned if the preceding accurately reflects our agreement.

**JONES LANG LASALLE AMERICAS, INC.**

By: _____
        Jeffrey Davis

Title:  Senior Managing Director

AGREED and ACCEPTED

this _____ day of September 2021

**85 Flatbush RHO Mezz LLC**
**85 Flatbush RHO Hotel LLC**
**85 Flatbush RHO Residential LLC**
By: GC Realty Advisors LLC, Manager


By:_____
        David Goldwasser, President

 **JLL**®

Jones Lang LaSalle Americas, Inc.
Hotels & Hospitality Group/Americas
200 East Randolph Drive Chicago Illinois 60601 tel
+1 312 782 5800

85 Flatbush RHO Mezz LLC
85 Flatbush RHO Hotel LLC
85 Flatbush RHO Residential LLC
c/o GC Realty Advisors, LLC
115 Broadway, Suite 302
New York, NY, 10006
Attn: David Goldwasser

**Re:       Addendum to Engagement Letter for 85 Flatbush Ave, Brooklyn, NY**

Dear David:

This addendum shall form a part of and be read together with the engagement letter (the "Agreement") by which 85 Flatbush RHO Mezz LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC (collectively, the "Debtors) engaged Jones Lang LaSalle Americas, Inc.,("JLL")  to provide services as the Debtors real estate advisor. Capitalized terms not defined herein shall have the meaning outlined in the Agreement.

In addition to the terms and conditions set forth in the Agreement, the following shall apply to the retention of JLL:

If Guy Sella purchases any or all of the Debtors' Property, then JLL shall be entitled to a reduced transaction fee equal to 0.75% of total transaction sales proceeds.


In all other respects, the Agreement remains in full force and effect. Please execute this addendum below and return it to the undersigned if the preceding accurately reflects our agreement.

**JONES LANG LASALLE AMERICAS, INC.**


By: _____
        Jeffrey Davis
Title:  Senior Managing Director

AGREED and ACCEPTED

this _____ day of September 2021

**85 Flatbush RHO Mezz LLC**
**85 Flatbush RHO Hotel LLC**
**85 Flatbush RHO Residential LLC**
By: GC Realty Advisors LLC, Manager


By:_____
        David Goldwasser, President