**85 FLATBUSH AVENUE 1 LLC**
c/o Madison Realty Capital
520 Madison Ave., Suite 3501
New York, New York 10022

July 16, 2020

**VIA EMAIL AND OVERNIGHT FEDERAL EXPRESS**

85 Flatbush Mezz LLC
c/o The Bluestone Group
225 Broadway, 32nd Floor
New York, New York 10007
Attention: Eli Tabak and Marc Mendelsohn
Email: ETabak@Bluestonegrp.com and MMendelsohn@Bluestonegrp.com

David I. Keusch, Esq.
Keusch Law PLLC
80 Fifth Avenue, Suite 1201
New York, NY 10011
Email: davidk@davidklaw.com

    Re:    Intercreditor Agreement dated as of September 19, 2019 (the "**Intercreditor Agreement**") by and between 85 FLATBUSH AVENUE 1 LLC, a Delaware limited liability company ("**Senior Lender**"), and 85 FLATBUSH MEZZ LLC, a New York limited liability company ("**Mezzanine Lender**").

Dear Mr. Tabak and Mr. Mendelsohn:

    Reference is hereby made to the above-captioned Intercreditor Agreement. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Intercreditor Agreement.

    This letter hereby constitutes a Senior Loan Default Notice delivered by Senior Lender in accordance with Section 10(a) of the Intercreditor Agreement.

    Pursuant to Section 10(a) of the Intercreditor Agreement, Senior Lender is required to notify Mezzanine Lender in writing of any default or Event of Default under any Senior Loan Document which would permit Senior Lender to commence an Enforcement Action under the Senior Loan Documents. Written notice is hereby given that Borrower (1) has failed to pay the scheduled Monthly Payments (as such term is defined in the Senior Note) of interest due on the Payment Dates (as defined in the Senior Note) occurring on March 1, 2020, April 1, 2020, May 1, 2020, June 1, 2020 and July 1, 2020 (collectively, the "**Existing Senior Loan Monthly Payment Events of Default**"), and (2) has failed to pay real estate taxes due and payable with respect to the Premises as of January 2020 and July 2020 (collectively, the "**Existing Senior Loan Tax Payment Events of Default**"; and together with the Existing Senior Loan Monthly Payment Events of Default, collectively, the "**Existing Senior Loan Events of Default**"), in each case in accordance with the terms and conditions of the Senior Loan

Documents, and therefore an Event of Default exists under the Senior Loan with respect to each of the foregoing payment failures by Borrower.

Pursuant to Section 10(a) of the Intercreditor Agreement, Mezzanine Lender shall have ten (10) Business Days after the later of (i) the giving by Senior Lender of this Senior Loan Default Notice and (ii) the expiration of Borrower's cure period, if any (the "**Monetary Cure Period**"), to cure the Existing Senior Loan Events of Default at the Senior Loan Preferred Rate (including the payment to Senior Lender of any out-of-pocket costs and expenses, losses, liabilities, obligations, actual damages, penalties and disbursements imposed on, actually incurred by Senior Lender due to or arising from such Monetary Cure Period). For the avoidance of doubt, in order to effectively cure the Existing Senior Loan Monthly Payment Events of Default at the Senior Loan Preferred Rate, Mezzanine Lender shall be required to remit to Senior Lender an aggregate amount of $368,272.22, comprised of (a) $70,727.78 with respect to the March 1, 2020 Monthly Payment, (b) $75,605.56 with respect to the April 1, 2020 Monthly Payment, (c) $73,166.67 with respect to the May 1, 2020 Monthly Payment, (d) $75,605.56 with respect to the June 1, 2020 Monthly Payment and (e) $73,166.67 with respect to the July 1, 2020 Monthly Payment.

If it is your intention to cure the Existing Senior Loan Events of Default, please provide assurances of same within five (5) Business Days following the receipt of this Senior Loan Default Notice. Pursuant to the terms and conditions of the Intercreditor Agreement, failure by Mezzanine Lender to cure the Existing Senior Loan Events of Default within ten (10) Business Days following the date of this Senior Loan Default Notice shall (1) evidence Mezzanine Lender's intention to waive the cure rights provided for in Section 10(a) of the Intercreditor Agreement and allow Senior Lender to pursue its rights and remedies thereunder, including commencing and consummating an Enforcement Action under the Senior Loan Documents and (2) convert each of the Existing Senior Loan Events of Default into Continuing Senior Events of Default for all intents and purposes under the Intercreditor Agreement.

Furthermore, please be advised that in the event Mezzanine Lender elects to cure the Existing Senior Loan Events of Default in accordance with the Intercreditor Agreement and this Senior Loan Default Notice, Mezzanine Lender shall have no further right or ability under the Intercreditor Agreement to cure any future monetary defaults of Borrower with respect to monthly scheduled debt service payments due under the Senior Loan, as Section 10(a) of the Intercreditor Agreement precludes Mezzanine Lender from curing Borrower's failure to make monthly scheduled debt service payments under the Senior Loan more than four (4) times in the aggregate unless Mezzanine Lender is proceeding with an Equity Collateral Enforcement Action.

This notice is without prejudice to Senior Lender's rights and remedies, at law, in equity, under the Senior Loan Documents and the Intercreditor Agreement. Please do not hesitate to contact us with any questions you may have.

Sincerely,

**85 FLATBUSH AVENUE 1 LLC,**

By: _____
Name: Shoshana Carmel
Title: Authorized Signatory

cc:

Kriss & Feuerstein LLP
360 Lexington Avenue, 12th Floor
New York, New York 10017
Attention: Jerold Feuerstein, Esq.