UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

*In re*:

**85 FLATBUSH RHO MEZZ LLC,** *et al.*,[1]

       Debtors.

--------------------------------------------------------X

Chapter 11

Case No.:  20-23280 (RDD)

(Jointly Administered)

### DISCLOSURE STATEMENT FOR AMENDED
### PLAN OF REORGANIZATION OF 85 FLATBUSH RHO MEZZ LLC,
### 85 FLATBUSH RHO HOTEL LLC, AND 85 FLATBUSH RHO RESIDENTIAL LLC

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION OF 85 FLATBUSH RHO MEZZ LLC, 85 FLATBUSH RHO HOTEL LLC, AND 85 FLATBUSH RHO RESIDENTIAL LLC.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT.**

      **ROBINSON BROG LEINWAND
      GREENE GENOVESE & GLUCK P.C.
      Attorneys for the Debtors**
      875 Third Avenue
      New York, New York 10022
      Tel. No.:  212-603-6300
      Fred B. Ringel, Esq.
      Lori Schwartz, Esq.
      Clement Yee, Esq.

New York, New York
March 30, 2022

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are 85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

{01126555.DOCX;5 }

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (THE "**DISCLOSURE STATEMENT**") IS INCLUDED HEREIN FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF 85 FLATBUSH RHO MEZZ LLC, 85 FLATBUSH RHO HOTEL LLC, AND 85 FLATBUSH RHO RESIDENTIAL LLC DATED MARCH __, 2022 (AS MAY BE AMENDED, MODIFIED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN"), AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.[2] NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.

**ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. IN PARTICULAR, ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN SECTION V (CERTAIN RISK FACTORS AFFECTING THE DEBTORS) OF THIS DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY CONFLICTS BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN GOVERN.**

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING WITH RESPECT TO PROJECTED CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE

---

[2] Unless otherwise expressly set forth herein, capitalized terms used but not otherwise herein defined have the same meanings ascribed to such terms in the Plan.

{01126555.DOCX;5 }

STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT ALSO WILL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS AND DEBTORS IN POSSESSION IN THE DEBTORS' CHAPTER 11 CASES. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON SUCH HOLDER'S CLAIM OR INTEREST.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

{01126555.DOCX;5 }

# I.

## INTRODUCTION

On December 18, 2020 ("Commencement Date"), 85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel"), and 85 Flatbush RHO Residential LLC ("Residential" and with Mezz and Hotel, the "Debtors") each commenced with the United States Bankruptcy Court for the Southern District of New York a voluntary case pursuant to chapter 11 of title 11 of the United States Code. The Debtors' Chapter 11 Cases are being jointly administered under the caption In re 85 Flatbush RHO Mezz LLC, Case No. 20-23280 (RDD).

On _____, 2022, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical holder of an Allowed Claim to make an informed judgment whether to accept or reject the Plan. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

The purpose of this Disclosure Statement is to provide holders of Claims entitled to vote to accept or reject the Plan with adequate information about (i) the Debtors' business and certain historical events, (ii) the Chapter 11 Cases, (iii) the Plan, (iv) the rights of holders of Claims and Interests under the Plan, and (v) other information necessary to enable each Holder of a Claim entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan. Holders of Interests are not entitled to vote on the Plan (see discussion at Section IV of the Disclosure statement).

Pursuant to section 1125 of the Bankruptcy Code, the Debtors submit this Disclosure Statement to all holders of Claims against the Debtors entitled to vote on the Plan to provide information in connection with the solicitation of votes to accept or reject the Plan. The Disclosure Statement is also available to all holders of Claims against and Interests in the Debtors for informational purposes, including detailing the impact the Plan will have on such holders' Claims and Interests. The Disclosure Statement is organized as follows:

- Section I includes certain general information.

- Section II provides an overview of the Debtors' business.

- Section III sets forth key events leading to the Chapter 11 Cases and the

{01126555.DOCX;5 }

Chapter 11 Cases.

- Section IV contains a summary of the Plan.

- Section V describes certain factors affecting the Debtors.

- Section VI discusses certain U.S. federal income tax consequences of the Plan.

- Section VII addresses confirmation of the Plan.

- Section VIII concludes this Disclosure Statement and recommends that eligible creditors vote to accept the Plan.

## A.    <u>VOTING PROCEDURES</u>

As set forth in more detail in Section IV.B of this Disclosure Statement, certain holders of Claims are entitled to vote to accept or reject the Plan. For each holder of a Claim entitled to vote, the Debtors have enclosed, along with a copy of the Disclosure Statement, among other things, a ballot and voting instructions regarding how to properly complete the ballot and submit a vote with respect to the Plan. Holders of more than one Claim will receive an individual ballot for each Claim. The individual ballots must be used to vote each individual Claim. For detailed voting instructions, please refer to the specific voting instructions and the ballot enclosed with this Disclosure Statement.

All completed ballots must be actually received by the ballot collector at the following address no later than 4:00 p.m. (Eastern Time) on _____, 2022 (the "Voting Deadline").

Via Regular Mail, Overnight Courier, or Hand Delivery:

85 Flatbush RHO Mezz LLC Balloting
c/o Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, NY 10022
ATTN: Nathanael F. Meyers

If you are holder of a Claim that is entitled to vote on the Plan and you did not receive a ballot, received a damaged ballot or lost your ballot, or if you have any questions concerning the Disclosure Statement, the Plan, or the procedures for voting with respect to the Plan, please contact Nathanael F. Meyers at (212)-603-6363 or email (nfm@robinsonbrog.com).

{01126555.DOCX;5 }

> **THE  BALLOT COLLECTOR WILL NOT COUNT ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE.**

## B.    DISCLOSURE STATEMENT EXHIBITS

The following are exhibits to this Disclosure Statement.  Exhibits A through C and any required supplemental exhibits will be included in the Plan Supplement and will be filed by the Plan Supplement Filing Deadline:

- EXHIBIT A – Pro Forma/Projections

- EXHIBIT B – Exit Financing Term Sheet

- EXHIBIT C – DHS Lease

## C.    THE DEBTORS' PROFESSIONALS

The Debtors have retained the following professionals pursuant to separate orders of the Bankruptcy Court: (i) Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("RBL"), as Reorganization Counsel to the Debtors and (ii) Jones Lang LaSalle as real estate advisor to the Debtors.

## D.    IMPORTANT DATES

Please take note of the following important dates and deadlines with respect to the Debtors' Plan:

| | |
|---|---|
| Deadline to file and serve any objection or response to the Plan (the "Plan Objection Deadline") | _____, 2022 at __:___ _.m (prevailing Eastern Time) |
| Deadline for completed ballots to be received by  the Ballot Collector (the "Voting Deadline") | _____, 2022 at __:___ _.m (prevailing Eastern Time) |
| Scheduled date and time for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing") | _____, 2022 at __:___ _.m (prevailing Eastern Time) |

{01126555.DOCX;5 }

6

E.    BRIEF OVERVIEW OF THE PLAN [3]

The Plan provides for payments to be made to creditors on account of their Allowed Claims from the Plan Fund, which consists of the Debtors' available Cash, proceeds from the Exit Financing, and the Equity Contribution or from the Reorganized Debtor's post-confirmation operations. In total, the Debtors expect the Plan Fund to be approximately $88,612,00.00. The Plan Fund will be sufficient to satisfy the Allowed TH Holdco Secured Claim and all other Allowed Claims of Mezz, Hotel and Residential in full, with the exception of the 85 Flatbush RHO Mezz Claim. The Reorganized Debtors' post-confirmation operations will be sufficient to satisfy the remainder due to 85 Flatbush RHO Mezz and to make distributions to holders of Allowed General Unsecured Claims and Insider General Unsecured Claims. As more fully set forth herein, the 85 Flatbush RHO Mezz Claim is impaired. 85 Flatbush Mezz will receive $1,000,000 from the Equity Contribution on the Effective Date to pay down its note and will thereafter be paid over seven (7) years at the rate of 5% per annum on the unpaid principal balance of its original $6,000,000 loan to Mezz. Holders of Allowed General Unsecured Claims will be paid one (1) year from the Effective Date and holders of Allowed Insider General Unsecured Claims will be paid two (2) years from the Effective Date.

F.    SUMMARY OF DISTRIBUTIONS AND VOTING ELIGIBILITY

The following summary table briefly outlines the classification and treatment of Claims against and Interests in the Debtors under the Plan, and the voting eligibility of the holders of such Claims and Interests. As set forth in the Plan, the classification of Claims and Interests set forth herein will apply. The following summary table is qualified in its entirety by reference to the full text of the Plan.

| Class | Designation | Treatment | Approx. Amount[4] | Approx. Recovery[5] | Entitled to Vote |
|-------|-------------|-----------|-------------------|---------------------|------------------|

---

[3] This summary is qualified in its entirety by reference to the Plan. Statements as to the rationale underlying the treatment of Claims and Equity Interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims, defenses, or causes of action in the event that the Plan is not confirmed. You should read the Plan in its entirety before voting to accept or reject the Plan.

[4] The amounts set forth herein are estimates based upon the Debtors' books and records as of the Commencement Date and the claims filed against the Debtors' Estates. Actual allowed amounts will depend on, among other things, final reconciliation and resolution of all Claims, and the negotiation of cure amounts, if any. Consequently, the actual allowed amounts may vary from the approximate amounts set forth herein. Secured Claim amounts set forth in this chart may **NOT** include post-petition interest and other amounts allowable under section 506 of the Bankruptcy Code.

{01126555.DOCX;5 }

| Class | Designation | Treatment | Approx. Amount[4] | Approx. Recovery[5] | Entitled to Vote |
|---|---|---|---|---|---|
| 1 | 85 Flatbush RHO Hotel Other Priority Claims | Unimpaired | $635,682.55 | 100% | No |
| 2 | 85 Flatbush RHO Residential Other Priority Claims | Unimpaired | $0 | 100% | No |
| 3 | Th Holdco Secured Claim | Unimpaired | $85,158,816 | 100% | No |
| 4 | 85 Flatbush RHO Hotel Other Secured Claims | Unimpaired | $1,548,320.12 | 100% | No |
| 5 | 85 Flatbush RHO Residential Other Secured Claims | Unimpaired | $40,111.67 | 100% | No |
| 6 | 85 Flatbush RHO Hotel General Unsecured Claims | Unimpaired | $1,174,927.93 | 100% | No |
| 7 | 85 Flatbush RHO Hotel Existing Equity Interests | Impaired | n/a | n/a | Yes |
| 8 | 85 Flatbush RHO Residential General Unsecured Claims | Unimpaired | $204,815 | 100% | No |
| 9 | 85 Flatbush RHO Residential Existing Equity Interests | Impaired | n/a | n/a | Yes |
| 10 | 85 Flatbush Mezz Other Priority Claims | Unimpaired | $0 | 100% | No |
| 11 | 85 Flatbush Mezz Claim | Impaired | $7,787,500 | 100% | Yes |

---

[5] The approximate percentage recovery for each Class set forth in this Disclosure Statement is based upon certain assumptions that are subject to change.

{01126555.DOCX;5 }

| Class | Designation | Treatment | Approx. Amount[4] | Approx. Recovery[5] | Entitled to Vote |
|---|---|---|---|---|---|
| | | | | | |
| 12 | 85 Flatbush Mezz Other Secured Claims | Unimpaired | $0 | 100% | No |
| 13 | 85 Flatbush Mezz General Unsecured Claims | Unimpaired | $171.59 | 100% | No |
| 14 | Insider General Unsecured Claims | Impaired | $1,708,629 | Unknown | Yes |
| 15 | 85 Flatbush Mezz Existing Equity Interests | Impaired | n/a | n/a | Yes |

Section IV. B, C, and D of this Disclosure Statement provides a more detailed description of the treatment of Claims and Interests under the Plan.

Pursuant to the provisions of the Bankruptcy Code, only those holders of Claims or Interests in Classes that are impaired under a plan of reorganization and that are not deemed to have rejected the plan are entitled to vote to accept or reject such proposed plan. Classes of Claims or Interests in which the holders of Claims are unimpaired under a proposed plan are deemed to have accepted such proposed plan and are not entitled to vote to accept or reject the Plan. Classes of Claims or Interests in which the holders of Claims receive no distribution under a proposed plan are deemed to have rejected such proposed plan and are not entitled to vote to accept or reject the Plan.

## G.    CONFIRMATION UNDER SECTION 1129(B)

If a Class of Claims entitled to vote on the Plan rejects the Plan, the Debtors reserve the right to amend the Plan or request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code or both. In addition, with respect to the Classes that are deemed to have rejected the Plan, the Debtors intend to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.

Section 1129(b) permits the confirmation of a chapter 11 plan notwithstanding the rejection of such plan by one or more impaired classes of claims or interests. Under section 1129(b), a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and reasonable" with respect to

{01126555.DOCX;5 }

each rejecting class. A more detailed description of the requirements for confirmation of a nonconsensual plan is set forth in Section VII of this Disclosure Statement.

## H.    CONFIRMATION HEARING

Pursuant to section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on _____, 2022 at __:00 a.m. (Eastern Time) before the Honorable Robert D. Drain at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601. Objections and responses to confirmation of the Plan, if any, must be served and filed as to be received on or before the Plan Objection Deadline _____, 2022 at __:__ p.m. (Eastern Time), in the manner described in the order approving this Disclosure Statement (the "**Disclosure Statement Order**") and Section VII.B of this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

## II.

## OVERVIEW OF THE DEBTORS' OPERATIONS

## A.    THE DEBTORS' BUSINESS

Mezz is the 100% owner of Hotel and Residential.  Hotel and Residential collectively own the real property and improvements thereon located at 85 Flatbush Extension, Brooklyn, New York.  The property is a 132,641 square foot, twelve-story, mixed use property consisting of a 174-room boutique hotel on the first 6 floors known as the Tillary Hotel Brooklyn and a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage.  The Residential Property has 9 studio units, 26 one-bedroom units and 29 two-bedroom units.  Of the 64 units, currently two (2) are occupied.  At the time the Debtors' acquired the Property, their original intention was to convert the residential component into condominiums.

The COVID-19 pandemic and the attendant quarantine and travel restrictions along with the NYC shutdown of indoor dining beginning in March 2020 had an immediate and since lasting effect on the hospitality industry as a whole and caused the Hotel to have to shut down operations for the month of April 2020. The Hotel reopened to provide shelter services from May 15, 2020 through June 30, 2020.  The Hotel reopened to the public on July 15, 2020 and remains open, but

{01126555.DOCX;5 }

with a reduced occupancy rate, resulting in limited revenue.  As a result, Mezz, Hotel and Residential have been unable to pay their current debt service obligations to their secured lenders.  Since approximately October 2021, the Hotel Property has been leased on a month-to-month basis to the New York City Department of Homeless Services to provide shelter services.

The Debtors commenced the Chapter 11 Cases on December 18, 2020.

## B.    PREPETITION CAPITAL STRUCTURE

On September 19, 2019, Hotel and Residential each executed and delivered a Consolidated, Amended and Restated Note ("Note") payable to 85 Flatbush Avenue 1 LLC ("Pre-petition Lender") in the original principal amount of $70,000,000, (the "Building Loan") which Note was secured by a Consolidated, Amended and Restated Mortgage and Security Agreement ("Mortgage") and an Assignment of Leases and Rents ("Assignment of Rents") executed and delivered on the same date, which constituted a lien on the Property which is identified as Kings County Block 120, Lot 1201, 1202 and 1203.  The New York City Department of Finance also identifies the entire of the Hotel Property, Residential Property and garage as lot 7503.

On January 28, 2022, TH Holdco acquired the Building Loan, Mortgage, and Assignment of Rents, among other documents, from the Pre-petition Lender.

In addition to the Note and Mortgage, Mezz entered into a Mezzanine Loan Agreement, dated as of September 19, 2019, made by and between Mezz and 85 Flatbush Mezz, for a loan in the principal amount of $6,000,000 (the "Mezz Loan"), which Mezz Loan is evidenced by that certain Mezzanine Promissory Note, dated as of September 19, 2019, (the "Mezz Note"), and secured by that certain (i) Ownership Interests Pledge and Security Agreement for Hotel, dated as of September 19, 2019, and (ii) Ownership Interests Pledge and Security Agreement for Residential, dated as of September 19, 2019, both executed by Mezz in favor of Mezzanine Lender.

## III.

## THE CHAPTER 11 CASES

During the course of the Chapter 11 Cases, the Debtors filed the following motions or pleadings:

i.    Motion for Joint Administration (ECF Doc. No. 2);
ii.   Motion for Approval of Adequate Assurance of Payment to Utility Services and Continuation of Service (ECF Doc. No. 4);

{01126555.DOCX;5 }

 iii. Motion to Approve Use of Cash Collateral (ECF Doc. No. 5);

 iv. Motion to authorize Payment of Wages and Compensation (ECF Doc. No. 6);

 v. Motions to Extend Exclusive Period to File and Solicit a Plan (ECF Doc. Nos. 65 and 103)

 vi. Application for Order Directing the Filing of Proofs of Claims against the Debtors and Approving Form and Manner of Notice (ECF Doc. No. 55);

 vii. Motion to Approve Lease Termination (ECF Doc. No. 104); and

 viii. Application for Order Authorizing Retention of Real Estate Advisors (ECF Doc. No. 114)

  By filing these Chapter 11 Cases and the above identified pleadings, the Debtors were able to stabilize their operations during these Chapter 11 Cases and continue to operate while maintaining their workforce.

  The Debtors previously filed a plan that was to be implemented by a sale of the Hotel Property and Residential Property.  On October 12, 2021, the Bankruptcy Court entered an order authorizing the Debtors' retention of Jones Lang LaSalle ("JLL") as the Debtors' exclusive real estate advisors, effective as of September 4, 2021, to market the Hotel Property and Residential Property.  JLL launched their marketing efforts on October 12, 2021, creating and establishing a data room for interested parties which was accessible immediately upon their executing a confidentiality agreement.  A total of 69 confidentiality agreements were executed and JLL conducted 14 tours of the Hotel Property and Residential Property.  The marketing period continued through November 17, 2021.  A total of six (6) written offers were received, that were later narrowed down to three (3) potential purchasers for the Hotel Property and Residential Property, submitting proposals for the Hotel Property and Residential Property for in excess of $80,000,000.  Thereafter, the Debtors' negotiation of a letter of intent and thereafter final form of purchase agreement with the interested purchasers was interrupted by TH's acquisition of the mortgage loan and related loan documents.

  While pursuing sale opportunities, and as the COVID-19 pandemic continued to limit travel and dining drastically and negatively impacting the entire hospitality industry, the Debtors also looked into alternate means of maximizing the value of the Hotel Property and Residential Property for the benefit of the Debtors' Estates.  One such option was to lease out the entirety of the Hotel Property and unoccupied portion of the Residential Property.  The Debtors' entered into negotiations with the New York City Department of Homeless Services ("DHS") to lease the Hotel Property and Residential Property as a homeless shelter.  Since October, 2021, DHS has leased the Hotel Property from the Debtors on a month to month basis.  Debtors are now working with DHS to secure a long-term lease for the entirety of the Hotel Property and Residential Property which will result in a sufficient stream of

{01126555.DOCX;5 }

monthly rental income to maintain the Hotel and Residential Property going forward, including monthly debt service to the Exit Financing Lender, the Mezz Lender and payment to holders of Allowed General Unsecured Claims and Allowed Insider General Unsecured Claims. The proposed lease with DHS ("DHS Lease") would lease 100% of the Hotel Property and Residential Property, consisting of a total of 238 Units, to the New York City Department of Homeless Service to operate a homeless shelter. With the DHS Lease in place, the Debtors estimate the Hotel Property and Residential Property will have a valuation of $120,000,000 which value will provide Debtors with the ability to procure Exit Financing in an amount sufficient to, at a minimum, satisfy the Allowed TH Holdco Secured Claim in the amount of approximately $83,517,778[6]. The Plan payments to other creditors holding Allowed Claims will be made from the Debtors' available Cash, estimated to be $1,000,000, the Equity Contribution of not less than $9,611,096 and post-confirmation operations from the rent generated by the DHS Lease.

At this time, the Debtors believe that their proposed Plan, which provides for payment in full to holders of Allowed Claims (except for the impaired Class 11: 85 Flatbush Mezz Claim and Class 14: Insider General Unsecured Claims) from the plan Fund and the Reorganized Debtors' post-confirmation operations from the rent generated by the DHS Lease, is in the best interests of the Debtors, their Estates, and their creditors and provides for a far better recovery than as proposed in the TH Holdco proposed plan.

TH Holdco, as successor to the Pre-petition Lender has filed its own plan of liquidation and disclosure statement. TH Holdco's plan is premised on a sale of the Hotel Property and Residential Property where it appears that TH Holdco intends to credit bid all or a portion of the amount of its Secured Claim[7]. In this scenario, the likely result will be that TH Holdco will acquire the Hotel Property and Residential Property pursuant to its credit bid in which case TH Holdco will only contribute a fund of $200,000 to be distributed to all classes of creditors junior to its Secured Claim. As the aggregate amount of unsecured creditors, not including insiders, is approximately $1,758,901.76, the recovery to general unsecured creditors under the TH Holdco plan may be only 12% of their claim. The Debtors' Plan, however, will pay all non-insider unsecured creditors the full amount of their Allowed Claims, plus interest, one (1) year from the Effective Date; provides for a $1,000,000 paydown of the 85 Flatbush Mezz Claim on the Effective Date, with the

---

[6] Debtors believe the Allowed TH Holdco Secured Claim does not include any amounts for default interest.

[7] Debtors do not believe that TH Holdco is entitled to credit bid at all, and that its claim is not entitled to include any amounts for default interest.

{01126555.DOCX;5 }

remaining 85 Flatbush Mezz Claim of $5,000,000 to be paid over seven (7) years, and provides for a distribution to Insider General Unsecured Claims to be paid two (2) years from the Effective Date.

The Debtors intend on filing an application for a Bankruptcy Rule 2004 Examination of TH Holdco and other parties, in order to investigate the circumstances surrounding TH Holdco's acquisition of the TH Holdco Secured Claim from the Pre-petition Lender.  The Debtors believe that TH Holdco may have improperly acquired the TH Holdco Secured Claim and thus should not be allowed to credit bid the TH Holdco Secured Claim at any proposed sale of the Hotel Property and Residential Property and that TH Holdco is not entitled to any default interest in connection with its secured claim.  The Debtors intend to object to the TH Holdco claim to, amongst other relief, disallow any default interest.  Debtors reserve all rights to object to the TH Holdco claim on any other basis it determines to be appropriate.

## IV.

## THE PLAN

### A.  INTRODUCTION

This section of the Disclosure Statement summarizes the Plan, a copy of which is being provided along with this Disclosure Statement. This summary is qualified in its entirety by reference to the provisions of the Plan, which provisions shall control in the event of any discrepancy with the descriptions contained in the Disclosure Statement.

In general, a chapter 11 plan divides claims and equity interests into separate classes, specifies the property that each class is to receive under the Plan, and contains other provisions necessary to implement the Plan.

Under the Bankruptcy Code, "claims" and "equity interests," rather than "creditors" and "equity holders," are classified because creditors and equity holders may hold claims and equity interests in more than one class.

Statements as to the rationale underlying the treatment of claims and equity interests under the Plan are not intended to, and will not, waive, compromise or limit any rights, claims or causes of action in the event the Plan is not confirmed.

**THE DEBTORS URGE YOU TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

{01126555.DOCX;5 }

### B.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

One of the key concepts under the Bankruptcy Code is that only claims that are "allowed" may receive distributions under a chapter 11 plan. This term is used throughout the Plan and the descriptions below.

In general, an "allowed" claim or an "allowed" equity interest simply means that the Debtor agrees, or in the event of a dispute, that the Bankruptcy Court determines, that the claim or equity interest, and the amount thereof, is in fact a valid obligation of the Debtor. Section 502(a) of the Bankruptcy Code provides that a timely filed claim or equity interest is automatically "allowed" unless the Debtor or other party in interest objects. However, section 502(b) of the Bankruptcy Code specifies certain claims that may not be "allowed" in bankruptcy even if a proof of claim is filed. These include, but are not limited to, claims that are unenforceable under the governing agreement between a Debtor and the claimant or under applicable non-bankruptcy law, claims for unmatured interest, property tax claims in excess of the Debtor's equity in the property, claims for services that exceed their reasonable value, real property lease and employment contract rejection damages in excess of specified amounts, late-filed claims, and contingent claims for contribution and reimbursement. In addition, Bankruptcy Rule 3003(c)(2) prohibits the allowance of any claim or equity interest that either is not listed on the Debtor's schedules or is listed as disputed, contingent or unliquidated, if the holder has not filed a proof of claim or equity interest before the established deadline.

The Bankruptcy Code requires, for purposes of treatment and voting, that a chapter 11 plan divides the different claims against, and equity interests in, the Debtor into separate classes based upon their legal nature. Claims of a substantially similar legal nature are not necessarily classified together, nor are equity interests of a substantially similar legal nature necessarily classified together. Because an entity may hold multiple claims and/or equity interests which give rise to different legal rights, the "claims" and "equity interests" themselves, rather than their holders, are classified.

Under a chapter 11 plan, the separate classes of claims and equity interests must be designated either as "impaired" (affected by the Plan) or "unimpaired" (unaffected by the Plan). If a class of claims is "impaired," the Bankruptcy Code affords certain rights to the holders of such claims, such as the right to vote on the Plan, and the right to receive, under the chapter 11 plan, no less value than the holder would receive if the Debtor were liquidated in a case under chapter 7 of the Bankruptcy Code.

{01126555.DOCX;5 }

Under section 1124 of the Bankruptcy Code, a class of claims or interests is "impaired" unless the Plan (i) does not alter the legal, equitable and contractual rights of the holders, or (ii) irrespective of the holders' acceleration rights, cures all defaults (other than those arising from the Debtor's insolvency, the commencement of the case or nonperformance of a nonmonetary obligation), reinstates the maturity of the claims or interests in the class, compensates the holders for actual damages incurred as a result of their reasonable reliance upon any acceleration rights, and does not otherwise alter their legal, equitable, and contractual rights.

Pursuant to section 1126(f) of the Bankruptcy Code, holders of unimpaired claims or interests are "conclusively presumed" to have accepted the Plan. Accordingly, their votes are not solicited. Under the Plan, all classes of claims except for Class 11 (85 Flatbush Mezz Claim) and Class 14 (Insider General Unsecured Claims), are Unimpaired, and therefore, the holders of such Claims are "conclusively presumed" to have voted to accept the Plan. Claims in classes 11 and 14 are impaired and their votes will be solicited. Holders of Equity Interests are impaired as they are required to fund the Equity Contribution or will lose their interests and their votes will be solicited.

Under certain circumstances, a class of claims or equity interests may be deemed to reject a plan. For example, a class is deemed to reject a plan under section 1126(g) of the Bankruptcy Code if the holders of claims or equity interests in such class do not receive or retain property under the Plan on account of their claims or equity interests. In this Plan, no class is conclusively presumed to have rejected the Plan.

## C.  UNCLASSIFIED CLAIMS

### 1.  Administrative Claims

Administrative Claims are the actual and necessary costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code.

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors agree to different treatment, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense

{01126555.DOCX;5 }

16

Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtors no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, and the Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Debtors must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.      Fee Claims

All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. No later than ten (10) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon the Debtors a notice of the estimated amount of their unpaid Fee Claim and the Debtors shall segregate, into an Estimated Professional Fee Escrow, the amounts which are necessary to pay the amount of such Fee Claim, in full subject to Allowance by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors.  The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

3.      Priority Tax Claims

{01126555.DOCX;5 }

17

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course. One priority tax claim has been filed by New York State against Hotel, Claim No. 1-3, asserting unsecured priority liabilities for withholding and sales tax in the amount of $635,682.55, inclusive of tax and interest charges. Certain of the charges asserted in the proof of claim are based on estimates rather than actual returns filed. To the extent tax returns are required for the tax periods asserted, Debtors will arrange for returns to be prepared and filed and to reconcile with New York State regarding the actual priority amounts due, if any.

## D.  CLASSIFICATION OF CLAIMS AND INTERESTS

All of the potential classes of claims and interests for the Debtors are set forth in the Plan.

### *85 Flatbush RHO Hotel Other Priority Claims (Class 1).*

(a)  *Classification*: Class 1 consists of Allowed Priority Claims against 85 Flatbush RHO Hotel.

(b)  *Treatment*: Except to the extent that a holder of an Allowed Priority Claim against 85 Flatbush RHO Hotel  has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund allocable to the Hotel Property, in an amount equal to such Claim, payable on the later of the Effective Date, the date on which such Priority Claim becomes an Allowed Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

(c)  *Voting*: Class 1 is Unimpaired, and the holders of 85 Flatbush RHO Hotel Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of 85 Flatbush RHO Hotel Priority Claims are not entitled to vote to accept or reject the Plan.

### *85 Flatbush RHO Residential Other Priority Claims (Class 2).*

{01126555.DOCX;5 }

(a)     *Classification*: Class 2 consists of Allowed Priority Claims against 85 Flatbush RHO Residential.

(b)     *Treatment*: Except to the extent that a holder of an Allowed Priority Claim against 85 Flatbush RHO Residential has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund allocable to the Residential Property, in an amount equal to such Claim, payable on later of the Effective Date, the date on which such Priority Claim becomes an Allowed Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

(c)     *Voting*: Class 2 is Unimpaired, and the holders of 85 Flatbush RHO Residential Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of 85 Flatbush RHO Residential Priority Claims are not entitled to vote to accept or reject the Plan.

### TH Holdco Secured Claim (Class 3).

(a)     *Classification*: Class 3 consists of the TH Holdco Secured Claim. The TH Holdco Secured Claim is a Secured Claim pursuant to the TH Holdco Prepetition Loan Agreement, which is secured by the TH Holdco Mortgage and constitutes a first priority security interest on the Hotel Property and Residential Property.

(b)     *Treatment*: The holder of the Allowed TH Holdco Secured Claim shall receive on the Closing Date, Cash from the Plan Fund in the amount of the Allowed TH Holdco Secured Claim, together with all applicable interest, costs and fees.

(c)     *Voting*: Class 3 is Unimpaired, and holder of the Allowed TH Holdco Secured Claim in Class 3 is not entitled to vote to accept or reject the Plan.

### 85 Flatbush RHO Hotel Other Secured Claims (Class 4).

(a)   *Classification*: Class 4 consists of the 85 Flatbush RHO Hotel Other Secured Claims. To the extent that 85 Flatbush RHO Hotel Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 4.

(b)   *Treatment*: Except to the extent that a holder of an Allowed 85 Flatbush RHO Hotel Other Secured Claim has agreed to less favorable treatment of

{01126555.DOCX;5 }

19

such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund allocable to the Hotel Property, in an amount equal to such Claim, payable on the later of the Effective Date and the date on which such 85 Flatbush RHO Hotel Other Secured Claim becomes an Allowed 85 Flatbush RHO Hotel Other Secured Claim.

(c)   *Voting*: Class 4 is Unimpaired, and holders of 85 Flatbush RHO Hotel Other Secured Claims are not entitled to vote to accept or reject the Plan.

### *85 Flatbush RHO Residential Other Secured Claims (Class 5).*

(a)   *Classification*: Class 5 consists of the 85 Flatbush RHO Residential Other Secured Claims. To the extent that 85 Flatbush RHO Residential Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 5.

(b)   *Treatment*: Except to the extent that a holder of an Allowed 85 Flatbush RHO Residential Other Secured Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund allocable to the Residential Property, in an amount equal to such Claim, payable on the later of the Effective Date and the date on which such 85 Flatbush RHO Residential Other Secured Claim becomes an Allowed 85 Flatbush RHO Residential Other Secured Claim.

(c)   *Voting*: Class 5 is Unimpaired and the holders of 85 Flatbush RHO Residential Other Secured Claims are not entitled to vote to accept or reject the Plan.

### *85 Flatbush RHO Hotel General Unsecured Claims (Class 6).*

(a)   *Classification*: Class 6 consists of General Unsecured Claims against 85 Flatbush RHO Hotel.

(b)   *Treatment*: Except to the extent that a holder of an Allowed 85 Flatbush RHO Hotel General Unsecured Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the rental income generated by the DHS Lease allocable to the Hotel Property, in an amount equal to such Claim, plus interest at the federal judgment rate, payable on the later of: one (1) year from the Effective Date and the date on which such 85 Flatbush RHO Hotel General Unsecured Claim becomes an Allowed 85 Flatbush RHO Hotel General Unsecured Claim.

{01126555.DOCX;5 }

20

(c)  *Voting*: Class 6 is unimpaired and holders of General Unsecured Claims in Class 6 are not entitled to vote to accept or reject the Plan.

### 85 Flatbush RHO Hotel Existing Equity Interests (Class 7).

(a)  *Classification*: Class 7 consists of Existing Equity Interests in 85 Flatbush RHO Hotel.

(b)  *Treatment*:  In exchange for the Equity Contribution, Holders of Existing Equity Interests in 85 Flatbush RHO Hotel will retain their Interests.

(c)  *Voting*: Class 7 is impaired by the Plan and holders of Existing Equity Interests in Class 7 are entitled to vote to accept or reject the Plan.

### 85 Flatbush RHO Residential General Unsecured Claims (Class 8).

(a)  *Classification*: Class 8 consists of General Unsecured Claims against 85 Flatbush RHO Residential.

(b)  *Treatment*:   Except to the extent that a holder of an Allowed 85 Flatbush RHO Residential General Unsecured Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the rental income generated by the DHS Lease allocable to the Residential Property, in an amount equal to such Claim, plus interest at the federal judgment rate, payable on the later of: one (1) year from the Effective Date and the date on which such 85 Flatbush RHO Residential General Unsecured Claim becomes an Allowed 85 Flatbush RHO Residential General Unsecured Claim.

(c)  *Voting*: Class 8 is unimpaired and holders of General Unsecured Claims in Class 8 are not entitled to vote to accept or reject the Plan.

### 85 Flatbush RHO Residential Existing Equity Interests (Class 9).

(a)  *Classification*: Class 9 consists of Existing Equity Interests in 85 Flatbush RHO Residential.

(b)  *Treatment*:  In exchange for the Equity Contribution, Holders of Existing Equity Interests in 85 Flatbush RHO Residential will retain their Interests.

{01126555.DOCX;5 }

21

(c)   *Voting*: Class 9 is impaired by the Plan and holders of Existing Equity Interests in Class 9 are not entitled to vote to accept or reject the Plan.

### 85 Flatbush RHO Mezz Other Priority Claims (Class 10).

(a)   *Classification*: Class 10 consists of Allowed Other Priority Claims against 85 Flatbush RHO Mezz.

(b)   *Treatment*: Except to the extent that a holder of an Allowed Priority Claim against 85 Flatbush RHO Mezz has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Equity Contribution, in an amount equal to such Claim, payable on the later of the Effective Date, the date on which such Priority Claim becomes an Allowed Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

(c)   *Voting*: Class 10 is unimpaired, and the holders of Priority Claims against 85 Flatbush RHO Mezz are not entitled to vote to accept or reject the Plan.

### 85 Flatbush Mezz Claim (Class 11).

(a)   *Classification*: Class 11 consists of the 85 Flatbush Mezz Claim. The 85 Flatbush Mezz Claim is a secured claim pursuant to the 85 Flatbush Mezz Loan Agreement, which is secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement.

(b)   *Treatment*: The holder of the 85 Flatbush Mezz Claim shall receive $1,000,000 on the Effective Date from the Equity Contribution. The remainder of the Allowed 85 Flatbush Mezz Claim, including payments of principal, shall be paid over seven (7) years at the rate of 5% on the unpaid principal balance of $5,000,000 which shall be funded post-confirmation by the rental income generated from the DHS Lease.   The Allowed 85 Flatbush Mezz Claim shall not include any accrued interest charges.

(c)   *Voting*: Class 11 is impaired, and holder of the 85 Flatbush Mezz Secured Claim is entitled to vote to accept or reject the Plan.

### 85 Flatbush RHO Mezz Other Secured Claims (Class 12).

(a)   *Classification*: Class 12 consists of the 85 Flatbush RHO Mezz Other Secured Claims. To the extent that 85 Flatbush RHO Mezz Other Secured

{01126555.DOCX;5 }

Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 12.

(b)    *Treatment*: Except to the extent that a holder of an Allowed 85 Flatbush RHO Mezz Other Secured Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund, after payment is made in full to all classes of claim senior in priority to Class 12, in the amount equal to such Allowed Claim, payable on the later of the Effective Date and the date on which such 85 Flatbush RHO Mezz Other Secured Claim becomes an Allowed 85 Flatbush RHO Mezz Other Secured Claim.

(c)    *Voting*: Class 12 is unimpaired, and the holders of Other Secured Claims against 85 Flatbush RHO Mezz are not entitled to vote to accept or reject the Plan.

### 85 Flatbush RHO Mezz General Unsecured Claims (Class 13).

(a)    *Classification*: Class 13 consists of General Unsecured Claims against 85 Flatbush RHO Mezz.

(b)    *Treatment*: Except to the extent that a holder of an Allowed 85 Flatbush RHO Mezz General Unsecured Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the rental income generated by the DHS Lease, plus interest at the federal judgment rate, in the amount equal to such Allowed Claim, payable on the later of: one (1) year from the Effective Date and the date on which such 85 Flatbush RHO Mezz General Unsecured Claim becomes an Allowed 85 Flatbush RHO Mezz General Unsecured Claim.

(c)    *Voting*: Class 13 is unimpaired and holders of General Unsecured Claims in Class 13 are entitled to vote to accept or reject the Plan.

### Insider General Unsecured Claims (Class 14).

(a)    *Classification*: Class 14 consists of Insider General Unsecured Claims.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Insider General Unsecured Claim has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, their pro rata share of Cash from the rental income generated by the DHS Lease, up

to the amount equal to such Allowed Claim, payable two (2) years from the Effective Date.

(c) *Voting*: Class 14 is impaired and holders of Insider General Unsecured Claims in Class 14 are entitled to vote to accept or reject the Plan

### 85 Flatbush RHO Mezz Existing Equity Interests (Class 15).

(a) *Classification*: Class 15 consists of Existing Equity Interests in 85 Flatbush RHO Mezz.

(b) *Treatment*: In exchange for the Equity Contribution, Holders of Existing Equity Interests in 85 Flatbush RHO Mezz will retain their Interests.

(d) *Voting*: Class 15 is impaired by the Plan and holders of Existing Equity Interests in Class 15 are entitled to vote to accept or reject the Plan.

## E. MEANS FOR IMPLEMENTATION

1. *The Plan Fund*

The Plan Fund shall be funded by the Debtor's available Cash as of the Effective Date, the Exit Financing, and the Equity Contribution. Other plan payments shall be funded by the post-confirmation rental income generated by the DHS Lease. The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan, which include finalizing the DHS Lease, closing on the Exit Financing including the funding of the Equity Contribution, and making the required distributions pursuant to the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Reorganized Debtors and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan. The Closing Date shall occur as soon as practicable after the Confirmation Date and thereafter, the Debtor shall distribute the proceeds of the Exit Financing and the other components of the Plan Fund pursuant to the provisions of this Plan on or after the Effective Date.

2. Other Transactions

{01126555.DOCX;5 }

24

In the discretion of the Debtors, after the Effective Date, the Reorganized Debtors may engage in any other transaction in furtherance of the Plan. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members of the Debtors.

3.    Withholding and Reporting Requirements.

(a) *Withholding Rights*. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b) *Forms*. Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Reorganized Debtors (which entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the Tax Code and so notifies the Disbursing Agent. If such request is made by the Reorganized Debtors or such other Person designated by the Reorganized Debtors and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Debtors and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

7.    Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including an instrument of transfer executed in furtherance of the Exit Financing contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements

{01126555.DOCX;5 }

contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local  government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

8.      Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reorganized Debtors are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

9.      Preservation of Rights of Action.

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Reorganized Debtors may pursue such Causes of Action in their sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Exit Financing. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Reorganized Debtors, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

10.     Closing of the Chapter 11 Cases.

After the Chapter 11 Cases of the Debtors have been fully administered, the

{01126555.DOCX;5 }

Debtors shall seek authority from the Bankruptcy Court to close such Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## F.    GOVERNANCE

1.    Post-Effective Date Management

After the Effective Date, the Debtors shall be designated the Reorganized Debtors who shall continue to be managed by GC Realty Advisors, who held such position on the Commencement Date.  GC Realty Advisors shall continue to serve as the Manager of the Debtors and the Reorganized Debtors until the next annual meeting, or upon the removal or resignation of such manager.

2.    Limited Liability Company Form

On the Effective Date, the Debtors shall maintain their current entity form as Delaware limited liability entities.

3.    Certificate of Organization and By-Laws.

As of the Effective Date, only if necessary, the certificate of organization and by-laws of the Debtors shall be amended to the extent necessary to carry out the provisions of the Plan.

## G.    DISTRIBUTIONS.

1.    Distribution Record Date.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtors shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

2.    Date of Distributions

Except as otherwise provided herein, and other than the distributions to be made at the Closing Date, the Reorganized Debtors or the Disbursing Agent shall make all distributions to Holders of Allowed Claims as set forth in the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the

{01126555.DOCX;5 }

performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Debtors shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Reorganized Debtors shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

3.    Delivery of Distributions.

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Debtors have determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Debtors automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Debtors shall have no obligation to locate the current address for a returned distribution.

4.    Manner of Payment Under Plan.

At the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer.

5.    Minimum Cash Distributions.

The Debtors shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; provided, however, that if any distribution is not made pursuant to Section 7.5 of the Plan, such

{01126555.DOCX;5 }

distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Debtors shall not be required to make any final distributions of Cash less than $50 to any holder of an Allowed Claim. If either (a) all Allowed Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed Claims would be $50 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $2,500, then no further distribution shall be made by the Reorganized Debtors and any surplus Cash shall be utilized to pay any unpaid legal fees and expenses incurred by Debtors' counsel.

6.      Setoffs.

The Debtors may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim the Debtors may have against the holder of such Claim.

7.      Distributions After Effective Date.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

8.      Allocation of Distributions Between Principal and Interest.

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

9.      Payment of Disputed Claims

As Disputed Claims are resolved pursuant to Section H hereof, the Reorganized Debtors shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Debtors in the Debtors' sole discretion.

{01126555.DOCX;5 }

## H.    PROCEDURES FOR DISPUTED CLAIMS.

1.    Allowance of Claims.

After the Effective Date, the Reorganized Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is so deemed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

2.    Objections to Claims.

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Debtors. Such objections and requests for estimation shall be served and filed (a) on or before the 120th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtors.

3.    Estimation of Claims.

The Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one

{01126555.DOCX;5 }

another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.    No Distributions Pending Allowance.

If an objection to a Claim is filed as set forth in this Section H, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

5.    Resolution of Claims.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Debtors or their successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

6.    Disallowed Claims.

All Claims held by persons or entities against whom or which any of the Debtors or the Reorganized Debtors have commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Reorganized Debtors from such party have been paid.

## I.    <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>.

1.    Assumption and Assignment of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected or assumed,

{01126555.DOCX;5 }

including the DHS Lease, shall be deemed automatically assumed by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code.

2.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date, subject to the limitation described below, by the Debtors as an Administrative Claim, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (1) the amount of the Cure Obligation, (2) the ability of the Debtors' Estates to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that, the Debtors and the counter-parties to any such Executory Contract of Unexpired Lease may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors shall cause notice of proposed Cure Obligations to be sent to applicable counterparties to the Executory Contracts and Unexpired Leases. Any objection by such counterparty must be filed, served, and actually received by the Debtors not later than ten (10) days after service of notice of the Debtors' proposed assumption and associated Cure Obligation. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount will be deemed to have assented to such Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption. **Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged,**

{01126555.DOCX;5 }

32

**without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity**.

3.      Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtors no later than fourteen (14) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Reorganized Debtors or the Hotel or Residential Property for any of the foregoing without the need for any objection by the Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

4.      [INTENTIONALLY OMITTED]

5.      Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements,

{01126555.DOCX;5 }

33

restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

6.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

## J.    CONDITIONS PRECEDENT TO THE CONFIRMATION HEARING AND THE EFFECTIVE DATE.

1.    Condition to the Confirmation Hearing.

The occurrence of the Confirmation Hearing is subject to the following condition precedent:

(a)    the Debtors have filed with the Plan Supplement a commitment letter for the Exit Financing;

(b)    85 Flatbush RHO Mezz's Existing Equity Interests have evidenced proof of funding of the Equity Contribution; and

(c)    The DHS Lease shall be fully executed and, per its terms, operative immediately upon Confirmation.

{01126555.DOCX;5 }

2.      Conditions Precedent to the Effective Date.

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)      the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b)      the Closing Date has occurred;

(c)      all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtors, and the transactions and other matters contemplated thereby, shall have been effected or executed;

(d)      all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

(e)      all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

3.      Waiver of Conditions Precedent

Each of the conditions precedent to the Effective Date in Section 10.2 of the Plan other than the condition set forth in section 10.2(a) may be waived in writing by the Debtors.

4.      Effect of Failure of Conditions to Effective Date.

If the Confirmation Order is vacated due to a failure of a condition to the

{01126555.DOCX;5 }

35

Effective Date to occur, (i) no distributions under the Plan shall be made; (ii) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred; and (iii) all monies contributed to the Plan Fund by Debtors shall be returned to Debtors within three (3) business days of the Confirmation Order being vacated.

## K.    EFFECT OF CONFIRMATION.

### 1.    Vesting of Assets

Subject to the Exit Financing, on the Closing Date, the Hotel Property and Residential Property shall vest in the Reorganized Debtors free and clear of all liens, Claims and encumbrances, except for those expressly preserved or created under the Plan. As of the Closing Date, all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Any other asset of the Debtors, shall vest in the Reorganized Debtors free and clear of all Liens, Claims and encumbrances.

The 85 Flatbush Mezz Loan Agreement shall be modified in accordance with the treatment of 85 Flatbush Mezz Secured Claim herein and the 85 Flatbush Mezz Secured Claim shall continue to be secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement.

### 2.    Release of Liens

Subject to the Exit Financing, and except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Closing Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

### 3.    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to

{01126555.DOCX;5 }

36

section 510 of the Bankruptcy Code, the Debtors reserve the right for the Reorganized Debtors to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

4.      Binding Effect.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

5.      Discharge of Claims and Termination of Interests.

Except as otherwise provided in the Plan, effective as of the Closing Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtors or any of their assets, property or Estates; (b) all Claims and Interests shall be satisfied, discharged and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (c) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

6.      Term of Injunctions or Stays.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

7.      Plan Injunction.

Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtors' obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin

{01126555.DOCX;5 }

with respect to any Claim held against the Debtors as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtors, from the Hotel Property or Residential Property, or from property of the Estates that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Hotel Property or Residential Property and any property of the Estates that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtors, from the Hotel Property or Residential Property, or from property of the Estates, any claim, any obligation or debt that was held against the Debtors by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

8.    Limitation of Liability

To the extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties  nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.    Nothing in Section 11.8 of the Plan shall limit the liability of the Debtors' professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtors or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States

{01126555.DOCX;5 }

38

or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtors or any of their respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtors or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority**.**

9.    Release

Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtors, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtors, their Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtors may assert on their own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtors absent bankruptcy, any claims based on the conduct of the Debtors' business affairs prior or subsequent to the commencement of the Cases or any claims based on the negotiation, submission and confirmation of the Plan).  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 9 of the Plan.

10.    Solicitation of the Plan.

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any

{01126555.DOCX;5 }

applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

     11.    Plan Supplement

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court by no later than five (5) business days prior to the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours or request for a copy may be made to Debtors' counsel.

## L.   <u>RETENTION OF JURISDICTION</u>.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

    (a)    to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

    (b)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

    (c)    to insure that distributions to holders of Allowed Claims are accomplished as provided herein;

    (d)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

    (e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

    (f)    to adjudicate any dispute related to the Exit Financing;

    (g)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

{01126555.DOCX;5 }

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtors' tax liability under section 505(b) of the Bankruptcy Code);

(n)     to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)     to enter a final decree closing the Chapter 11 Cases;

(r)     to enforce all orders previously entered by the Bankruptcy Court;

{01126555.DOCX;5 }

41

(s)        to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(t)        to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## M.    MISCELLANEOUS PROVISIONS.

1.    Payment of Statutory Fees.

On the Effective Date and thereafter as may be required, the Debtors shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for the Chapter 11 Cases; provided, however, that after the Effective Date such fees shall only be payable with respect to the Chapter 11 Cases until such time as a final decree is entered closing the Chapter 11 Cases, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Chapter 11 Cases is entered.

2.    Substantial Consummation.

On the Closing Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

3.    Amendments.

(a)    *Plan Modifications*. The Plan may be amended, modified or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Reorganized Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    *Other Amendments.* Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

4.    Revocation or Withdrawal of the Plan.

{01126555.DOCX;5 }

42

The Debtors reserve the right to revoke or withdraw the Plan, prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

5.      Severability of Plan Provisions upon Confirmation.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be); and (3) nonseverable and mutually dependent.

6.      Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

7.      Time.

{01126555.DOCX;5 }

43

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

8.      Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

9.      Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Exculpated Parties, and each of their respective successors and assigns.

10.     Successor and Assigns.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

11.     Entire Agreement.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.     Notices.

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

{01126555.DOCX;5 }

44

(i) if to the Debtors:
85 Flatbush RHO Mezz LLC
85 Flatbush RHO Hotel LLC
85 Flatbush RHO Residential LLC
c/o GC Realty Advisors, LLC
3284 N 29th Court
Hollywood, Florida 33020
Attn:  David Goldwasser
Facsimile: 866-353-6360


- and –

Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 603-6300
Facsimile: (212) 956-2164
Attention: Fred B. Ringel., Esq.

After the Effective Date, the Debtors shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

## V.

## CERTAIN RISK FACTORS AFFECTING THE DEBTORS

## A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS

1.    Risk of Non-Confirmation of the Plan

Although the Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate re-solicitation of votes.

{01126555.DOCX;5 }

2.      Non-Consensual Confirmation

In the event any impaired class of claims or interests entitled to vote on a plan of reorganization does not accept a plan of reorganization, a bankruptcy court may nevertheless confirm such plan at the proponent's request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes.

3.      *TH Holdco Plan*

TH Holdco has also filed its own plan of liquidation that calls for the sale of the Hotel Property and Residential Property, including to TH Holdco pursuant to its credit bid.  The Debtors believe that TH Holdco's plan cannot be solicited and is unconfirmable for a number of reasons.  However, there can be no guarantees that TH Holdco does not confirm its plan and in the event TH Holdco is able to solicit and confirm its Plan, the reorganization as contemplated by the Debtors' Plan will not go forward.

**B.      <u>ADDITIONAL FACTORS TO BE CONSIDERED</u>**

1.      The Debtors Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the Commencement Date, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtors have no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

2.      No Representation Outside This Disclosure Statement Are Authorized

No representations concerning or related to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

{01126555.DOCX;5 }

3.    No Legal or Tax Advice Is Provided to You by This Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim or Interest should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters regarding his, her, or its Claim or Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

4.    No Admission Made

Nothing contained in the Plan will constitute an admission of, or be deemed evidence of, the tax or other legal effects of the Plan on the Debtors or on holders of Claims or Interests.

5.    Failure to Identify Litigation Claims or Projected Objections

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. The Debtors may seek to investigate, file, and prosecute Claims and Interests and may object to Claims or Interests after the Confirmation or Effective Date of the Plan irrespective of whether this Disclosure Statement identifies such Claims or Interests or objections to such Claims or Interests.

6.    No Waiver of Right to Object or Right to Recover Transfers and Assets

The vote by a holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action, or rights of the Debtors (or any entity, as the case may be) to object to that holder's Claim or Interest, or recover any preferential, fraudulent, or other voidable transfer of assets, regardless of whether any claims or causes of action of the Debtors or their Estates are specifically or generally identified in this Disclosure Statement.

7.    Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors

The Debtors' advisors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although the Debtors' advisors have performed certain limited due diligence in connection with

{01126555.DOCX;5 }

47

the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

# VI.

## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his, her or its own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtors have not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtors, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS.  The Debtors offer no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan.  Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors will differ and will depend on factors specific to each Creditor, including but not limited to: (i) whether the Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim; (iii) the type of consideration received by the Creditor in exchange for the Claim; (iv) whether the Creditor is a United States person or foreign person for tax purposes; (v) whether the Creditor reports income on the accrual or cash basis method; and (vi) whether the Creditor has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

{01126555.DOCX;5 }

THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.

THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## VII.

## CONFIRMATION OF THE PLAN

### A.   CONFIRMATION HEARING

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a chapter 11 plan. The Bankruptcy Court has scheduled the Confirmation Hearing to commence on _____, 2022 at ___:00 a.m. (Eastern Time). The Confirmation Hearing may be adjourned from time-to-time by the Debtors or the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

### B.   OBJECTIONS

Section 1128 of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Bankruptcy Court, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors' estates or property, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, with a copy to the chambers of The Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300

{01126555.DOCX;5 }

49

Quarropas Street, White Plains, New York, together with proof of service thereof, and served upon the parties listed below so as to be received no later than the Plan Objection Deadline of _____, 2022 at __:00 _.m. (Eastern Time):

| | |
|---|---|
| Debtors:<br>85 Flatbush RHO Mezz LLC<br>85 Flatbush RHO Hotel LLC<br>85 Flatbush RHO Residential LLC<br>c/o GC Realty Advisors<br>3284 N 29th Court<br>Hollywood, Florida 33020<br>Attention: David Goldwasser<br>Facsimile: 866-353-6360 | Counsel to the Debtors:<br>Robinson Brog Leinwand Greene<br>Genovese & Gluck P.C.<br>875 Third Avenue, 9th Floor<br>New York, New York 10022<br>Telephone: (212) 603-6300<br>Facsimile: (212) 956-2164<br>Attention: Fred B. Ringel |
| United States Trustee<br>201 Varick Street<br>Suite 1006<br>New York, NY 10014<br>Attn: Andrea Schwartz, Esq. | |

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## C.    REQUIREMENTS FOR CONFIRMATION OF THE PLAN

1.    Requirements of Section 1129(a) of the Bankruptcy Code

### a.  General Requirements

At the Confirmation Hearing, the Bankruptcy Court will determine whether the following confirmation requirements specified in section 1129 of the Bankruptcy Code have been satisfied:

(i)    The Plan complies with the applicable provisions of the Bankruptcy Code.

(ii)    The Debtors have complied with the applicable provisions of the Bankruptcy Code.

(iii)    The Plan has been proposed in good faith and not by any means proscribed by law.

{01126555.DOCX;5 }

(iv)    Any payment made or promised by the Debtors or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved or is subject to the approval of the Bankruptcy Court as reasonable.

(v)    The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an affiliate of the Debtors participating in a plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is with the interests of creditors and equity holders and with public policy.

(vi)    With respect to each Class of Claims or Interests, each holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan on account of such holder's Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. See discussion of "Best Interests Test" below.

(vii)    Except to the extent the Plan meets the requirements of section 1129(b) of the Bankruptcy Code (discussed below), each class of Claims or Interests has either accepted the Plan or is not impaired under the Plan.

(viii)    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that administrative and priority claims will be paid in full on the Effective Date.

(ix)    At least one class of impaired claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim in such class.

(x)    Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. See "Feasibility Analysis" below.

(xi)    All fees payable under section 1930 of title 28, as determined by the

{01126555.DOCX;5 }

51

Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

### b. **Best Interests Test**

As noted above, the Bankruptcy Code requires that each holder of a Claim or Interest either (i) accepts the Plan or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. This requirement is referred to as the "best interests test."

The best interests test requires the Bankruptcy Court to determine what the holders of allowed claims and allowed equity interests in each impaired class would receive from a liquidation of the Debtors' assets and properties in the context of a liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the Debtors' assets and properties (after subtracting the amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the plan.

The Debtors believes that under the Plan all holders of impaired Claims and Interests will receive property with a value not less than the value such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors' belief is based primarily on (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of impaired Claims and Interests and (ii) the Liquidation Analysis prepared by the Debtors' that is set forth herein.

The Liquidation Analysis is a comparison of (i) the estimated recoveries for creditors and equity holders of the Debtors that may result from the Plan and (ii) an estimate of the recoveries that may result from a hypothetical chapter 7 liquidation. The Liquidation Analysis is based upon a number of significant assumptions which are described therein. The Liquidation Analysis is solely for the purpose of disclosing to holders of Claims and Interests the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein. There can be no assurance as to values that would actually be realized in a chapter 7 liquidation nor can there be any assurance that the Bankruptcy Court will accept the Debtors' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

{01126555.DOCX;5 }

| | |
|---|---|
| **Available for distribution** | **$76,000,000** |

**To the payment of:**

Chapter 7 Administrative Claims:

| | |
|---|---|
| Chapter 7 trustee commissions and expenses (approximately 3% of $76,000,000) | $2,280,000 |
| Chapter 7 trustee broker commissions and expenses (approximately 3% of $75,000,000) | $2,250,000 |
| Chapter 7 trustee's professionals (attorneys, accountants, etc.) | $250,000 |
| New York City Secured Tax Claim | $1,588,432 |
| TH Holdco Secured Claim | $85,158,815.99 |

| | |
|---|---|
| **Remaining Available Cash** | **(15,557,247.99)** |
| Chapter 11 Administrative Claims | $398,654.32 |
| Priority Unsecured Claims | $635,682.55 |
| General Unsecured Claims | $1,758,901.79 |
| Insider General Unsecured Claims | $1,708,629 |
| 85 Flatbush Secured Claim | $7,787,500 |

A chapter 7 liquidation, utilizing the current value of the Hotel Property and Residential Property at $75,000,000, eliminates any recovery to holders of claims junior in priority to the TH Holdco Secured Claim. As the Debtors' proposed Plan provides for a recovery to all classes of creditors, the Plan satisfies the Best Interests Test.

### c. Feasibility Analysis

The Bankruptcy Code requires that a Debtor demonstrates that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless contemplated by the Plan. The Plan as proposed provides for a 100% distribution to Allowed Claims in classes 1 through 6, 8, 10, 12 and 13; a restructured note to the holder of the Class 11: 85 Flatbush Mezz Claim; and a future recovery to Insider General Unsecured Claims. Equity Interests will have the opportunity to retain their interests in exchange for their making the Equity Contribution. The Plan is premised upon the DHS Lease, which, in conjunction with the Debtors' available Cash, the Exit Financing, and the Equity Contribution are sufficient to satisfy the contemplated Plan payments as set forth in the attached projections. SEE PRO FORMA ATTACHED HERETO AS EXHIBIT A.

2.   Requirements of Section 1129(b) of the Bankruptcy Code

The Bankruptcy Court may confirm the Plan over the rejection or deemed rejection of the Plan by a class of Claims or Interests if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such class.

### a. No Unfair Discrimination

The "no unfair discrimination" test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under a plan. A chapter 11 plan of reorganization does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or equity interests receives more than it legally is entitled to receive for its claims or equity interests. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."

The Debtors believes that, under the Plan, all impaired classes of Claims and Interests are treated in a manner that is fair and consistent with the treatment of other classes of Claims and Interests having the same priority. Accordingly, the Debtors believe the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

### b. Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class.

{01126555.DOCX;5 }

The test sets forth different standards for what is fair and equitable, depending on the type of claims or interests in such class. In order to demonstrate that a plan is "fair and equitable," the plan proponent must demonstrate the following:

(i)     *Secured Creditors*. With respect to a class of impaired secured claims, a proposed plan must provide the following: (a) that the holders of secured claims retain their liens securing such claims, whether the property subject to such liens is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of such claims, and receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estates' interest in such property, or (b) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) or (c) of this paragraph, or (c) that the holders of secured claims receive the "indubitable equivalent" of their allowed secured claim. The secured impaired classes of claims are Classes 3, 4, 5, and 11.   The Plan provides for the treatment of impaired secured claims in accordance with subsection (b) of 1129(b)(2)(A)(i)(I) and (II).

(ii)    *Unsecured Creditors*. With respect to a class of impaired unsecured claims, a proposed plan must provide the following: either (i) each holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

Inasmuch as the Plan provides that holders of Claims junior to the Unsecured Creditor Classes will not receive any distribution from the Plan Fund until Unsecured Creditors are paid in full, the Plan satisfies the "fair and equitable" test with respect to all Impaired Unsecured Claims.

*Holders of Equity Interests*. With respect to a class of equity interests, a proposed plan must provide the following: (i) that each holder of an equity interest receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest or (ii) that the holder of any interest that is junior to the interests of the class of equity interests will not receive or

retain under the Plan on account of such junior interest, any property.

Pursuant to the Plan, holders of Equity Interests will not receive or retain any property or be entitled to any distribution from the Plan Fund, unless they participate in the Equity Contribution, all creditor classes senior in priority are paid in full and no classes of interests junior to equity interest holders will receive any distribution from the Plan Fund. Accordingly, the Plan meets the "fair and equitable" test with respect to all Interests.

### c. Application to the Plan

As to any Class that may reject the Plan, the Debtors believe the Plan will satisfy both the "no unfair discrimination" requirement and the "fair and equitable" requirements, because, as to any such dissenting Class, there is no Class of equal priority receiving more favorable treatment, and such Class will either be paid in full, or no Class that is junior to such a dissenting Class will receive or retain any property on account of the Claims or Interests in such Class.

### 3.    Alternative to Confirmation and Consummation of the Plan

The Debtors have evaluated several alternatives to the Plan. After studying these alternatives, the Debtors have concluded that the Plan is the best option for the Debtors and their estates and will maximize recoveries to parties-in-interest—assuming confirmation and consummation of the Plan. If the Plan is not confirmed and consummated, the alternatives to the Plan include a sale of the Property under section 363 of the Bankruptcy Code or a liquidation of the Debtors under chapter 7 of the Bankruptcy Code or proceeding to confirmation pursuant to the TH Holdco Plan.

### a.  Section 363 Sale

If the Plan is not confirmed, the Debtors could seek from the Bankruptcy Court, after notice and a hearing, authorization to sell the Hotel Property and Residential Property and other assets under section 363 of the Bankruptcy Code. Holders of Claims in Classes 3, 4 and 5 will be entitled to credit bid on any property to which their security interests are attached, and to offset their Claims against the purchase price of the property. In addition, the security interests in the Debtors' assets held by holders of Claims in Classes 3 (TH Holdco Secured Claim) 4 and 5 (Other Secured Claims), would attach to the proceeds of any sale of the Debtors' assets.

After these Claims are satisfied, any remaining funds could be used to pay

{01126555.DOCX;5 }

holders of Claims in classes junior in priority to Claims in Classes 3, 4 and 5, in accordance with Bankruptcy Code priorities. The Debtors would need to file a plan of liquidation or convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code in order to distribute any proceeds from a sale or proceed with the TH Holdco Plan. The Debtors do not currently believe a sale of their assets under section 363 of the Bankruptcy Code would yield a higher recovery than treatment under the Plan for holders of Claims and Interests.

### b. Liquidation Under Chapter 7

In a chapter 7 case, a trustee is appointed to liquidate a Debtor's assets and to make distributions to creditors in accordance with the priorities established in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of their collateral. If any assets remain in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to be paid. Unsecured creditors are paid from any remaining sale proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, interest holders receive the balance that remains, if any, after all creditors are paid.

All of the Debtors' creditors, with the exception of 85 Flatbush Mezz and Insider General Unsecured Creditors, are being paid in full. 85 Flatbush Mezz is receiving a $1,000,000 payment from the Equity Contribution on the Effective Date, with the remainder of its claim being paid over seven (7) years. Insider General Unsecured Creditors will be paid on account of their Allowed Claims two (2) years from the Effective Date from the post-confirmation rental income generated by the DHS Lease. The Debtors believes that the Plan provides a greater potential for recovery to Holders of Allowed General Unsecured Claims than would a chapter 7 liquidation for several reasons. The value of the Hotel Property and Residential Property without the DHS Lease is insufficient to satisfy the TH Holdco Claim in full with no opportunity for recovery to claims junior in priority. Moreover, liquidation under chapter 7 of the Bankruptcy Code would both decrease the aggregate proceeds available to holders of Claims and Interests and increase the magnitude of claims to those proceeds because of the additional fees and expenses that would be incurred in a chapter 7 liquidation, including the potential added time and expense incurred by the chapter 7 trustee and any retained professionals in familiarizing themselves with the Debtors and their estates. The Debtors believe that in a liquidation under chapter 7, before creditors receive any distribution, additional administrative expenses involved in the appointment of a chapter 7 trustee and its retained professionals would cause a substantial diminution in the

{01126555.DOCX;5 }

value of the Debtors' assets and any funds that would otherwise be available for distribution to creditors. The assets available for distribution to creditors would be reduced by such additional expenses and by the Claims, some of which would be entitled to priority, which would arise by reason of the liquidation and from the rejection of leases and other executory contracts.

Based on the Debtors' analysis, it is probable that a liquidation of the Debtors' assets under chapter 7 would result in smaller or no distributions being made to creditors as compared to those provided for under the Plan because of (i) the likelihood that the assets of the Debtors would have to be sold or otherwise disposed of in a less orderly fashion over a short period of time, (ii) the increased interest on the TH Holdco Secured Claim, and (iii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the chapter 7 liquidation process. Accordingly, the Debtors believes that the Plan is in the best interests of creditors.

### c. **Alternative Plans**

The Debtors do not believe that there are any alternative plans for the reorganization or liquidation of the Debtors' Estates, including the TH Holdco Plan, that would, or indeed could, yield a better result for its creditors than the current proposed plan. The Debtors believe that the Plan, as described herein, enables Holders of Claims and Interests to realize the greatest possible value under the circumstances and that, compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

### d. **Nonconsensual Confirmation**

In the unlikely circumstance that any impaired Class of Claims entitled to vote will not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both. With respect to impaired Classes of Claims that are deemed to reject the Plan, the Debtors would request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## VIII.
## CONCLUSION

The Debtors believe that confirmation and implementation of the Plan is in the best interests of all creditors, and urges holders of impaired Claims to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than the Voting Deadline, _____, 2022 at ___:00 p.m. (Eastern Time).

Dated: New York, New York
March 30, 2022

Respectfully submitted,

By: /s/ David Goldwasser
    David Goldwasser
    Managing Member of GC Realty
    Advisors LLC, Manager of the
    Debtors

{01126555.DOCX;5 }