**ROBINSON BROG LEINWAND GREENE**      <u>Hearing Date and Time:</u>
  **GENOVESE & GLUCK P.C.**             April 6, 2022 at 10:00 a.m.
875 Third Avenue
New York, New York 10022
Fred B. Ringel
Lori Schwartz
Clement Yee
*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

*In re*:                                                    Chapter 11

**85 FLATBUSH RHO MEZZ LLC,** *et al.*,[1]      Case No.: 20-23280 (RDD)

                                                                  (Jointly Administered)
                                         Debtors.
---------------------------------------------------------X

**DEBTORS' OBJECTION TO TH HOLDCO LLC'S MOTION TO APPROVE (I)
ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT, (II)
SOLICITATION AND NOTICE PROCEDURES, (III) FORMS OF BALLOTS, AND (IV)
CERTAIN DATES WITH RESPECT**

TO:      THE HONORABLE ROBERT D. DRAIN
          UNITED STATES BANKRUPTCY JUDGE:

         85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential" and with Mezz and Hotel, "Debtors"), by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., file this objection to TH Holdco LLC's Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are 85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

{01144130.DOC;2 }

with Respect Thereto ("TH Holdco DS Approval Motion") and respectfully represent:

## BACKGROUND AND SUMMARY OF REQUESTED RELIEF

1.  Mezz is the 100% owner of Hotel and Residential LLC. Hotel and Residential collectively own the property located at 85 Flatbush Extension, Brooklyn, New York, ("Property"). The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage (together, "Hotel Property"). The residential component of the Property has nine studios, 26 one-bedroom units, and 29 two-bedroom units (together, "Residential Property"). Of the 64 units, currently, two (2) are occupied. At the time of the acquisition of the Property, the intention was to convert the residential units into condominiums. As more fully set forth herein, the impact of the COVID-19 pandemic has dramatically altered the hospitality industry, requiring the Debtors to reassess their plans for the Property.

2.  On December 18, 2020, ("Petition Date"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Together with their petitions for relief, the Debtors have filed their schedules of assets and liabilities and lists of creditors and executory contracts required under section 521 of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules.

3.  No committee, trustee, or examiner has been appointed in the Debtors' cases.

4.  The Debtors' cases are jointly administered for procedural purposes only under an order entered on December 28, 2020.

5.  On November 24, 2021, the Debtors filed their Plan of Reorganization (ECF doc. No. 142) which plan was premised on a sale of the Property through the marketing efforts of its broker, Jones Lang Lasalle.  Debtors' intention was to seek approval of bidding procedures based upon a stalking horse bid for the Hotel Property and Residential Property which would be submitted with the Debtors' disclosure statement.  However, on January 31, 2022, Debtors' counsel was advised that TH Holdco LLC ("TH"), had acquired the mortgage loan encumbering the Hotel Property and Residential Property earlier in January 2022 from the pre-petition lender, 85 Flatbush Avenue 1 LLC, who, in September 2019, advanced a loan to Hotel and Residential in the original principal amount of $70,000,000 evidenced by a Consolidated, Amended and Restated Note and secured by a first priority mortgage on the Hotel Property and Residential Property.

6.  On October 12, 2021, this Court entered an order authorizing the Debtors' retention of JLL as the Debtors' exclusive real estate advisors, effective as of September 4, 2021.  JLL launched their marketing efforts on October 12, 2021, creating and establishing a data room for interested parties which was accessible immediately upon their executing a confidentiality agreement.  A total of 69 confidentiality agreements were executed and JLL conducted 14 tours of the Hotel Property and Residential Property.  The marketing period continued through November 17, 2021.  A total of six (6) written offers were received, that were later narrowed down to three (3) potential purchasers for the Hotel Property and Residential Property, submitting proposals for the Hotel Property and Residential Property for in excess of $80,000,000. The Debtor's negotiation of a LOI with the final of the three bidders for

$87,500,000 came to a crashing halt upon TH's acquisition of the mortgage loan and related loan documents.

7. TH thereafter filed its own plan and disclosure statement which are premised upon a sale of the Hotel Property and Residential Property, permitting TH to credit bid, and to the extent TH is the successful purchaser, a commitment by TH to fund the sum of $200,000 for pro rata distribution to the Debtors' unsecured creditors.

8. Debtors have filed an amended plan of reorganization ("Plan") (ECF Doc. No. 161) and disclosure statement for amended plan of reorganization ("Disclosure Statement") (ECF Doc. No. 162). The Plan will be funded by the Debtors' available cash, Exit Financing, which will be utilized to pay the Allowed amount of the TH Holdco Claim, and an equity contribution to be funded by current holders of equity in the Debtors in exchange for their maintaining their equity in the Debtors as well as from the Reorganized Debtor's post-confirmation operations. In total, the Debtors expect the Plan Fund to be approximately $88,612,00.00.

9. The Debtors' Plan is premised upon an anticipated lease with the New York City Department of Homeless Services ("DHS Lease"). Currently, DHS leases the Hotel Property on a month-to-month basis to provide shelter services. Debtors are now working with DHS to secure a long-term lease for the entirety of the Hotel Property and Residential Property which will result in a sufficient stream of monthly rental income to maintain the Hotel Property and Residential Property going forward and to make post-confirmation payments to creditors as provided for under the Debtors' Plan.

10. The Debtors intend on filing an application for a Bankruptcy Rule 2004 Examination of TH and other parties, in order to investigate the circumstances surrounding TH's acquisition of the TH Holdco Secured Claim from the Pre-petition Lender. The Debtors believe that TH Holdco may have improperly acquired the TH Holdco Secured Claim and thus should not be allowed to credit bid the TH Holdco Secured Claim at any proposed sale of the Hotel Property and Residential Property and that TH Holdco is not entitled to any default interest in connection with its secured claim. As will be more fully set forth in the 2004 application, Ohana Real Estate Investors ("Ohana"), an affiliate of TH, was simultaneously negotiating directly with both the Debtors and 85 Flatbush Avenue 1 LLC, the pre-petition lender. Ohana indicated their interest in the Hotel Property and Residential Property to the Debtors representatives, requested and received financial statements, rent rolls and rent roll analysis, property descriptions, and pre-Petition Date capital structure information from the Debtors, and participated in a physical walk through of the Hotel Property in October, 2021. It is the Debtors' belief that TH's acquisition of the mortgage loan and related loan documents is an improper "loan to own" strategy that circumvented the process being run by the Debtors' exclusive real estate advisors. The Debtors intend to object to the TH Holdco claim to, amongst other relief, disallow any default interest. Debtors reserve all rights to object to the TH Holdco claim on any other basis it determines to be appropriate.

11. Debtors are aware of the adversary proceeding commenced by 85 Flatbush Mezz LLC, the pre-petition mezzanine lender to Mezz, against TH Holdco LLC as assignee of 85 Flatbush Ave 1 LLC in its capacity as the Debtors' pre-petition mortgage lender to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential, Adv. Proc. 22-07022 for a declaratory judgment

and specific performance to enforce certain purchase option rights under the parties' intercreditor agreement. Debtors are in agreement with 85 Flatbush Mezz LLC that the adversary proceeding needs to be fully adjudicated before the Court can consider TH Holdco's disclosure statement and therefore that the TH Holdco DS Approval Motion should not go forward until conclusion of the adversary proceeding.

12. Debtors further submit that TH's disclosure statement should not be approved as it does not contain adequate information.

13. Finally, Debtors submit that their Plan and Disclosure Statement provides for a far better recovery to creditors and parties in interest and they should be permitted to proceed with a hearing to consider approval of their Disclosure Statement followed by confirmation of their Plan.

## THE TH HOLDCO DISCLOSURE STATEMENT SHOULD NOT BE APPROVED AS IT DOES NOT CONTAIN ADEQUATE INFORMATION

14. The TH Holdco LLC Disclosure Statement cannot be approved because it fails to provide adequate information as required by Bankruptcy Code Section 1125. Bankruptcy Code Section 1125(b) provides:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement approved, after notice and a hearing by the court as containing adequate information.

11 U.S.C., § 1125(b).

15. Adequate information, in turn, is defined as "information of a kind, and in sufficient detail,…that would enable [ ] a hypothetical investor of the relevant class to make an

informed judgment about the plan." 11 U.S.C. §1125(a)(1). *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.  Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information'").

16. Case law under section 1125 of the Bankruptcy Code has produced a list of factors, which, under the facts and circumstances of a particular case, may be necessary to meet the statutory requirements of section 1125. *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984).  The list is not exhaustive, and a case may arise in which disclosure of all of the enumerated factors is still not sufficient. *Id*.  The relevant factors are:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable;  (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

39 B.R. at 568; *See also In Re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D.Ohio 1990) (citing *In Re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-171 (Bankr. S.D.Ohio 1988)).

A disclosure statement that omits material facts cannot be approved. *In Re Unichem Corp.*, 72 B.R. 95, 97-98 (Bankr. N.D. Ill. 1987) aff'd, 80 B.R. 448 (N.D. Ill. 1987).

17. Whether a disclosure statement contains adequate information should be determined case-by-case. *See Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008). At a minimum, however, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on their claims and the possible Code alternatives so that they can intelligently accept or reject the [p]lan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). The legislative history of section 1125 of the Bankruptcy Code states that "[t]he disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders would make an informed judgment about a plan of reorganization." *In re Jeppson,* 66 B.R. 269, 291 (Bankr. D. Utah 1986). The purpose of a disclosure statement is "to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan." *Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996). As a result, a disclosure statement should be approved only when it sets forth "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Scioto Valley Mortg. Co.,* 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988).

18. Here, the Disclosure Statement does not contain adequate information because it fails to:

> (a) disclose any information with respect to the post confirmation auction and sale process for the Property;
>
> (b) disclose any information on the marketing of the

Property in advance of the post-confirmation auction and sale of the Property;

(c) provide information related to TH's purported claim for post-petition interest, attorney's fees and costs and pre-payment fees other than to note: "To be provided at Disclosure Statement Hearing";

(d) disclose if it intends to confirm the Mezz component of the Plan;

(e) disclose how TH is entitled to credit bid for the Property in the amount of "at least $85 million";

(f) disclose how TH came to acquire the senior loan from 85 Flatbush Avenue 1, LLC;

(g) disclose why any post-petition agreement entered into by the Debtors is (i) outside of the ordinary course of their approval; and (ii) why they would be void or voidable under §549 of the Bankruptcy Code;

(h) disclose why TH Holdco is entitled to pre-petition and post-petition interest, costs and fees in connection with its treatment under the Plan in the event the Hotel Property and/or Residential Property is sold to a party other than TH Holdco;

(i) disclose why the New York City secured tax claims in Classes 4 and 5 are impaired and not being paid in full;

(j) disclose any estimate of the amount of the Plan Fund which is the source of payment to all classes of creditors under the TH Holdco Plan. The Plan Fund is defined as: "the aggregate of: (1) the Sale Proceeds, which shall be allocable to the Hotel Property and/or the Residential Property as set forth in the Purchase Agreement; (2) the TH Holdco Additional Consideration; and (3) the Debtors' available Cash which shall be utilized to make payments to creditors in accordance with the terms of the Plan.";

(k) disclose why the Plan satisfies the Best Interests Test when TH acknowledges the "continuing adverse impact on the hospitality industry as a whole" which implicates the value of the Hotel Property and Residential Property, and TH's intentions with respect to the Debtors' future operations while the Debtors' Plan provides for guaranteed rental income from the DHS Lease;

(l) demonstrate feasibility of the Plan, particularly the amount TH would fund for payment of Chapter 11 Administrative Expenses, and Priority Claims and its financial wherewithal to fund any such amounts;

(m) disclose a current appraised value of the Hotel Property and Residential Property; and

(n) address the issues related to the intercreditor agreement between TH Holdco and 85 Flatbush Mezz as raised by the recently filed adversary proceeding filed by Mezz against TH Holdco;

19. Thus, the Disclosure Statement cannot be approved because of TH's failure to provide the above information falls far short of the requirements of §1125 to provide adequate information.

20. Debtors reserve all rights to further object to the TH Holdco Plan, including, but not limited to, any objections they may have to confirmation of the TH Holdco Plan.

**WHEREFORE**, the Debtors request that the TH Holdco DS Approval Motion be denied in its entirety and for such other relief as the Court deems proper.

**DATED:** New York, New York
March 30, 2022

        **ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
        **Attorneys for the Debtors**
        875 Third Avenue, 9th Floor
        New York, New York 10022
        (212) 603-6300

        By:  /s/ Lori A. Schwartz
            Fred B. Ringel
            Lori A. Schwartz