UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>85 FLATBUSH RHO MEZZ LLC, et al.,<br><br>Debtors | Case No. 20-23280 (RDD)<br>Chapter 11<br><br>(Jointly Administered) |

**DECLARATION OF FRANCO FAMULARO IN SUPPORT OF TH HOLDCO LLC'S COMBINED (A) RESPONSE TO OBJECTIONS TO MOTION TO APPROVE (I) THE ADEQUACY OF INFORMATION IN THE DISCLOSURE STATEMENT, (II) SOLICITATION AND NOTICE PROCEDURES, (III) FORMS OF BALLOTS, AND (IV) CERTAIN DATES WITH RESPECT THERETO AND (B) OBJECTION TO DEBTORS' DISCLOSURE STATEMENT FOR AMENDED PLAN OF REORGANIZATION**

I, Franco Famularo, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 and state as follows[1]:

1. I am a partner and Chief Investment Officer at Ohana Real Estate Investors ("Ohana"). I am a resident of the State of California and am over the age of 18. TH Holdco LLC is an affiliate of Ohana. I submit this declaration in support of *TH Holdco LLC's Combined (A) response to Objections to Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto and (B) Objection to Debtors' Disclosure Statement for Amended Plan of Reorganization* (the "Combined Response").

2. I know each of the following facts to be true of my own personal knowledge and, if called as a witness, I could and would competently testify with respect thereto.

3. In mid-October 2021, I had discussions with Isaac Hager, a minority owner of the

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Combined Response.

1

85 Flatbush RHO Mezz LLC (the "Mezz Debtor"), who purported to have authority to represent the Debtors. I met with Mr. Hager for an on-site tour of the Property in October of 2021. During our discussions, Mr. Hager, acting for the Debtors, demanded that as part of any bid from Ohana or its nominee, the owners of the Mezz Debtor be "made whole" by a payment of at least $20 million, including at least $15 million of cash consideration. Mr. Hager asserted that payment must be made for the benefit of equity, even though the Debtors did not expect creditors to be paid in full, and required that any deal was predicated on Mr. Hager remaining as an investor in the Property. When I asked Mr. Hager why the Debtors expected a full recovery including a substantial cash payment when the creditors were being impaired, Mr. Hager represented that a separate rabbinical court ruling regarding a settlement between Mr. Hager and the majority owner of the Property effectively took precedence over the bankruptcy court process.

4. At no point did the Mr. Hager or the Debtors' refer Ohana to JLL, suggest that Ohana negotiate through JLL, or propose that Ohana be a stalking horse bidder to acquire the Property. Ohana considered the Debtors' demands to be unrealistic and improper, and determined that further negotiations with Debtors would not be productive.

5. Ohana thereafter continued to perform due diligence on the Property based on publicly available information (including key pleadings in the Bankruptcy Case docket and claims registers) and information provided by the then current senior lender, 85 Flatbush Avenue 1 LLC (the "Pre-petition Lender").

6. On November 3, 2021, I was forwarded an unsolicited email from a real estate broker in New York City (not JLL) (the "November Email"). This email was originally sent by the broker to Chris Smith of Ohana, and the broker was soliciting interest from Ohana to provide capital to back the Debtors' business plan to seek a longer-term lease with DHS. The unsolicited

email from the broker included information that clearly came from the Debtors, including (i) a market appraisal valuing the Property at $94 million as of September 11, 2019 (from the Debtors' original acquisition financing process) and (ii) a form of a DHS Lease which appears to be terminable at any time by DHS. This broker appears to be acting for the Debtors and/or its principals outside of the JLL process and in support of an insider bid. Ohana did not engage with the broker at that time.

7. Separately, in early January 2022, I received an unsolicited call from that same real estate broker in New York City (not JLL) who claimed to represent the Debtors. Without knowing about Ohana's familiarity with the Property and ongoing due diligence or acknowledging the November Email, that broker stated that he was helping the Debtors find mezzanine debt and equity to help them maintain ownership of the Property. I again declined to engage further, but it was apparent that the Debtors were still acting outside of the JLL process in an attempt to retain ownership of the property.

8. The above led Ohana to believe that the Debtors' principals and affiliates were interested only in maximizing recovery to equity and were putting their own interests ahead of those of the creditors. This was concerning to Ohana, as was the Debtors' failure to move their sale plan along (by, for example, not filing a disclosure statement within the exclusivity period). As such, through its affiliate TH Holdco, Ohana purchased the debt directly from the Pre-petition Lender after the Debtors' exclusivity expired.

Executed on this 4th day of April, 2022.

/s/ *Franco Famularo* _____
Franco Famularo, Partner and CIO
Ohana Real Estate Investors