20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Lauren Macksoud

Pg 1 of 44

Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
E-mail: lauren.macksoud@dentons.com
        sarah.schrag@dentons.com

Robert E. Richards (admitted *pro hac vice*)
**DENTONS US LLP**
233 South Wacker Drive
Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
E-mail: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

—————————————————— X    Chapter 11

In re:    Case No.: 20-23280 (RDD)
    85 FLATBUSH RHO MEZZ LLC, et al.,[1]    Chapter 11

_____
_____ Debtors.

    (Jointly Administered)

    X AMENDED CHAPTER 11 PLAN
    OF REORGANIZATION
    OF FILED BY CREDITOR TH
    HOLDCO LLC

---

[1] The Debtors (as defined) in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: 85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

121166379\V-4

**RELATED TO** 85 FLATBUSH
RHO MEZZ, LLC, 85 FLATBUSH
RHO HOTEL LLC, AND 85
FLATBUSH RHO RESIDENTIAL
LLC

ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK P.C.
Attorneys for the Debtors
875 Third Avenue
New York, New York 10022
Tel. No.: 212-603-6300

Fred B. Ringel, Esq.
Lori Schwartz, Esq.

New York, New York
November 24, 2021

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal
tax identification number, are 85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC
(5027); and 85 Flatbush RHO Residential LLC (2261).

{01100694.DOCX;4 }

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 2 of 44

TH Holdco LLC as creditor files this amended Chapter 11 plan related to the Debtors 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC, the Debtors herein propose the following chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Section 1.A.

The Plan constitutes a separate chapter 11 plan for each Debtor.  The classifications set forth in Classes shall be deemed to apply to each Debtor identified, except that Class 3 shall apply to each of the Debtors.  TH Holdco reserves the right to proceed to seek confirmation with respect to the Plan as to each Debtor separately and to proceed to confirm the Plan with respect to some but not all of the Debtors.

**SECTION 1.** SECTION 1. DEFINITIONS AND INTERPRETATION.

  **A.** A. Definitions.

  1.1   1.1 *85 Flatbush Avenue* means 85 Flatbush Avenue 1 LLC in its capacity as the prepetition lender to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential. If 85 Flatbush Avenue credit bids to acquire the Hotel Property and Residential Property under section 363(k) of the Bankruptcy Code, then, in that context, the term "85 Flatbush Avenue" includes any nominee, designee or assignee of 85 Flatbush Avenue to whom 85 Flatbush Avenue has assigned or transferred its claim, in whole or in part, for purpose of making such credit bid..

  1.2   *85 Flatbush Mortgage* means the first priority mortgage on the Hotel Property and Residential Property granted to 85 Flatbush Avenue by 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential to secure the 85 Flatbush Avenue Prepetition Loan.

  1.3   *85 Flatbush Avenue Prepetition Loan Agreement* means that certain Consolidated, Amended and Restated Note dated September 19, 2019 pursuant to which 85 Flatbush Avenue advanced a loan to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential in the original principal amount of $70,000,000 secured by the Hotel Property and Residential Property.

  1.4

  1.2   *85 Flatbush Mezz* means 85 Flatbush Mezz LLC in its capacity as the prepetition mezzanine lender to 85 Flatbush RHO Mezz.

  1.3   1.5 *85 Flatbush Hotel Pledge Agreement* means the Ownership Interest Pledge and Security Agreement dated September 19, 2019 which pledged and granted 85 Flatbush Mezz

a security interest in 85 Flatbush RHO Mezz's membership interest in 85 Flatbush RHO Hotel as security for the 85 Flatbush Mezz Loan Agreement.

1.4    1.6  ***85 Flatbush Residential Pledge Agreement*** means the Ownership Interest Pledge and Security Agreement dated September 19, 2019 which pledged and granted 85 Flatbush Mezz a security interest in 85 Flatbush RHO Mezz's membership interest in 85 Flatbush RHO Residential as security for the 85 Flatbush Mezz Loan Agreement.

{01100694.DOCX;4 }                    2

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 3 of 44

~~1.7~~

1.5    ***85 Flatbush Mezz Loan Agreement*** means that certain Mezzanine Promissory Note dated September 19, 2019 and Mezzanine Loan Agreement pursuant to which 85 Flatbush Mezz advanced a loan to 85 Flatbush RHO Mezz in the original principal amount of $6,000,000 secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement.

1.6    ~~1.8~~ ***85 Flatbush RHO Mezz*** means 85 Flatbush RHO Mezz LLC, a Debtor in these Chapter 11 Cases.

1.7    ~~1.9~~ ***85 Flatbush RHO Hotel*** means 85 Flatbush RHO Hotel LLC, a Debtor in these Chapter 11 Cases.

1.8    ~~1.10~~ ***85 Flatbush RHO Residential*** means 85 Flatbush RHO Residential LLC, a Debtor in these Chapter 11 Cases.

1.9    ~~1.11~~ ***Administrative Expense Claim*** means any Claim for costs and expenses of Administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. ~~§§~~section 1-1401.

1.10    ~~1.12~~ ***Administrative Expense Claims Bar Date*** means the first Business Day that is 30 days following the ~~Effective~~Confirmation Date, except as otherwise specifically set forth in the Plan.

1.11    ~~1.13~~ ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is ~~120~~60 days following the Effective Date, except as otherwise specifically set forth in the Plan; provided that the Administrative Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtors after notice and a hearing.

1.12    ~~1.14~~ ***Allowed*** means with reference to any Claim (a) any Claim against any Debtor that has been listed by the Debtor in its Schedules~~, as~~ ~~such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009,~~of the date of the filing of this Plan as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Section 7.9 hereof or prior to the expiration of

such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection

{01100694.DOCX;4 }                                                    3

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Pg 4 of 44 has been determined by a Final Order to the extent such Final Order is in favor of the respective holder, or (c) any Claim expressly allowed by a Final Order.  Any filed Proof of Claim in the 85 RHO Flatbush Hotel Case or in the 85 RHO Flatbush Residential Case which is not the subject of a pending objection as of the Confirmation Date shall be deemed Allowed unless such date is extended by the Bankruptcy Court for good cause shown.

1.13    1.15  *Auction* means the auction for the sale of the Hotel Property and/or Residential Property to be held in accordance with the Sale and Bid Procedures.

1.14    1.16 *Available Cash* means all Cash of the Debtor realized from its business operations, the sale or other disposition (other than the Sale Transaction) of its assets, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise.

1.15    1.17  *Avoidance Action* means any action commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.16    1.18 *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended from time to time, as applicable to the Chapter 11 Case.

1.17    1.19 *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

1.18    1.20 *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

1.19    *1.21* **Bar Date Order** means that certain *Order Establishing Deadline for Filing Proofs of Claim Against the Debtors and Approving the Form and Manner of Notice Thereof* entered on March 15, 2021 at ECF No. 58 which established April 21, 2021 as the last day for creditors to file claims against the Debtors' Estates and established June 16, 2021 as the last date for Governmental Units to file claims against the applicable Debtor's estate.

1.20    1.22 *Business Day* means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.21    1.23 *Cash* means legal tender of the United States of America.

{01100694.DOCX;4 } 4

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 5 of 44

1.24

1.22    ***Causes of Action*** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  Cause of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.23    ~~1.25~~ ***Chapter 11 Cases*** means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on December 18, 2020 and styled *In re 85 Flatbush RHO Mezz LLC, et al.*, Case No. 20-23280 (RDD).

1.24    ~~1.26~~ ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.25    ~~1.27~~ ***Claims Objection Bar Date*** means the first Business Day that is ~~120~~60 days after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Post-Effective Date Debtors.

1.26    ~~1.28~~ ***Class*** means any group of Claims or Interests classified pursuant to Section 3.1 of the Plan.

1.27    ~~1.29~~ ***Closing Date*** means the date of the closing of the Sale Transaction. ~~1.30~~

1.28    ***Commencement Date*** means December 18, 2020.

1.29    ~~1.31~~ ***Confirmation*** means the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

1.30    ~~1.32~~ ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.31    ~~1.33~~ ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

{01100694.DOCX;4 } 5

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 6 of 44

*1.34*

1.32    ***Confirmation Order*** means an order of the Bankruptcy Court (a) confirming the Plan; (b) approving the Sale Transaction; (c) determining that Purchaser is a good faith purchaser; (d) providing that the closing of the Sale Transaction will occur in accordance with the terms and conditions of the Purchase Agreement; and (e) providing that the delivery of the deed in accordance with the terms of the Confirmation Order and Purchase Agreement approved under this Plan, if confirmed by the Court, shall ~~constitutes~~constitute the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title and may not be taxed under any law imposing a ~~stamp tax or similar tax~~Transfer Tax.

1.33    ~~1.35~~ ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.34    ~~1.36~~ ***Cure Obligation*** means all (a) amounts (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults; and (b) other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors and assigned to Purchaser pursuant to sections 365 or 1123 of the Bankruptcy Code.

1.35    ~~1.37~~ ***Debtor*** means any of the Debtors in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

1.36    ~~1.38~~ ***Debtors*** mean 85 Flatbush RHO Mezz, 85 Flatbush RHO Hotel, and 85 Flatbush RHO Residential.

1.37    ~~1.39~~ ***Disbursing Agent*** means the ~~Debtors' counsel, the~~ entity or person designated by the Plan Supplement or the Confirmation Order and charged with the responsibility of making the payments under the Plan.

1.38    ~~1.40~~ ***Disclosure Statement*** means the amended Disclosure Statement for the Plan which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

1.39    ~~1.41~~ ***Disputed Claim*** means with respect to a Claim or Interest, any such Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or 1111 of the Bankruptcy Code, or (b) for which a Proof of Claim or Interest has been filed, to the extent the Debtor or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

{01100694.DOCX;4 } 6

1.42

1.40    ***Distribution Date*** means a date or dates, as determined by the Disbursing Agent in accordance with the terms of the Plan, on which the Disbursing Agent makes a distribution to holders of Allowed Claims.

1.41    1.43 ***Distribution Record Date*** means the Effective Date of the Plan.

1.42    1.44 ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.43    1.45 ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.44    1.46 ***Estate*** means as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of each respective Debtor's Chapter 11 Case.

1.45    *1.47* ***Estimated Professional Fee Escrow*** means the escrow account established by the Debtors or TH Holdco ten (10) days prior to the Effective Date holding sufficient Cash to pay the Fee Claims in full, less any applicable retainers held by such professionals, subject to their Allowance by the Bankruptcy Court upon the later of (i) the Effective Date ofor (ii) the date upon which the order relating to any such Allowed Fee Claim is entered or (iii) upon such other terms and conditions as may be agreed to between the holder of such an Allowed Fee Claim, and TH Holdco.  The Estimated Professional Fee Escrow shall be funded first from the Debtors' cash on hand as of the Effective Date of the Plan.

1.46    1.48 ***Exculpated Parties*** means collectively: (a) the Debtors; (b) TH Holdco; (c) the Purchaser; and (ed) with respect to each of the foregoing entities in clauses (a) through (bc) , such entities' successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such.  Nothing herein shall be deemed to release or impact claims held by TH Holdco against non-debtor guarantors.

1.47    1.49 ***Executory Contract*** means a contract or lease to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.48    1.50 ***Existing Equity Interests*** means all Interests in a Debtor, including membership interests or the rights to acquire any such Interests.

1.49    1.51  *Fee Claim* means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by

professional persons retained by the ~~Debtor~~Debtors pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 ~~Case~~Cases.

    1.50    ~~1.52~~ ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or section 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

    1.51    ~~1.53~~***General Unsecured Claim*** means any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

    1.52    ~~1.54~~***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

    1.53    ~~1.55~~***Hotel*** means 85 Flatbush RHO Hotel LLC.

    1.54    ~~1.56~~***Hotel Property*** means the real property and improvements thereon located at 85 Flatbush Extension, Brooklyn, New York (Block 120; Lots 1201, 1202).

    1.55    ~~1.57~~***Impaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

    1.56    ***Intercreditor Agreement*** means that certain Intercreditor Agreement dated as of September 19, 2019 and as amended as of July 23, 2020 by and between 85 Flatbush Avenue (as now assigned to TH Holdco) as senior lender and 85 Flatbush Mezz as mezzanine lender.

    1.57    ~~1.58~~***Interests*** means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all instruments evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in the Debtor that existed immediately before the Effective Date.

    1.58    ~~1.59~~***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

{01100694.DOCX;4 }                                                8

1.60

1.59    ***Mezz*** means 85 Flatbush RHO Mezz LLC.

1.60    1.61  ***Other Priority Claim*** means any Claim against the Debtor entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.61    1.62  ***Other Secured Claim*** means a Secured Claim, other than the 85 Flatbush Avenue Secured Claim or 85 Flatbush Mezz Secured Claim.

1.62    1.63  ***Person*** means an individual, corporation, partnership, joint venture, association, Joint Stock Company, Limited Liability Company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.63    1.64  ***Plan*** means this amended chapter 11 plan of reorganization, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with Sections herein.

1.64    1.65  ***Plan Fund*** means the aggregate of: (1) the Sale Proceeds, which shall be allocable to the Hotel Property and/or the Residential Property as set forth in the Purchase Agreement; and (2) the TH Holdco Additional Consideration; and (3) the Debtors' available Cash which shall be utilized to make payments to creditors in accordance with the terms of this Plan.

1.65    1.66  ***Plan Supplement*** means the compilation of documents and information, if any, required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; provided that, through the Effective Date, the Debtor TH Holdco shall have the right to amend any schedules, exhibits, and the other documents contained in, and exhibits to, the Plan Supplement.

1.66    1.67  ***Plan Supplement Filing Deadline*** means the date that is no later than 15 days prior to the Confirmation Hearing.

1.67    1.68  ***Priority Tax Claim*** means any unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.68    1.69  ***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

1.69    1.70  ***Proof of Claim*** means a proofProof of Claim filed against a Debtor in its Chapter 11 Case.

{01100694.DOCX;4 }                                      0

1.71

1.70    *Properties* means the Hotel Property and/or the Residential Property.

1.71    *Purchase Agreement* means an Asset Purchase Agreement, in form and substance reasonably acceptable to ~~the Debtors~~TH Holdco, a form of which is ~~included in the Plan Supplement by and between the Debtors, as sellers, and the Purchaser, as buyer~~attached as Exhibit F to the Disclosure Statement, which provides for the sale of the Hotel Property and/or Residential Property, submitted at or prior to the Auction and determined by ~~the Debtors~~TH Holdco pursuant to the Sale and Bid Procedures to reflect the highest or otherwise best offer for the Hotel Property and/or Residential Property.

1.72    ~~1.72~~*Purchaser* means one or more purchasers under the Purchase Agreement. The identity of the Purchaser and the purchase price for the Hotel Property and/or Residential Property will be set forth in executed Purchase Agreement filed ~~no later than 28 days prior to the Disclosure Statement hearing~~promptly after the Confirmation Hearing.  The opening bid for the Auction is anticipated to be the TH Holdco Credit Bid with the TH Holdco Additional Consideration and TH Holdco Unsecured Claim Dedicated Fund.

1.73    ~~1.73~~*Residential* means 85 Flatbush RHO Residential LLC.

1.74    ~~1.74~~*Residential Property* means the real property and improvements thereon located at 85 Flatbush Extension, Brooklyn, New York (Block 120; Lot 1203).

1.75    ~~1.75~~*Sale and Bid Procedures* means the sale, bid and auction procedures as approved by the Bankruptcy Court establishing, among other things, procedures for the Auction and the terms and conditions related to the Sale Transaction under this Plan.  A proposed form of Sale and Bid Procedures is attached as Exhibit E to the Disclosure Statement.

1.76    ~~1.76~~*Sale Proceeds* means ~~the~~any cash proceeds from the Sale Transaction net of closing costs directly related to the Sale Transaction including but not limited to Debtors' brokerage fees, title costs and other ordinary and necessary costs of, or credits related to, the transfer of title of the Hotel Property and/or Residential Property.

1.77    ~~1.77~~*Sale Transaction* means the sale of the Hotel Property and/or Residential Property pursuant to the Plan.

1.78    ~~1.78~~*Schedule of Cure Costs* means the schedule of any Executory Contracts and Unexpired Leases to be assumed by the Debtors and assigned to the Purchaser, to be filed with the Plan Supplement and/or the fully executed Purchase Agreement.

1.79    1.79 ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

{01100694.DOCX;4 }    10

121166379\V-4

1.80

1.80    ***Secured Claim*** means a Claim to the extent (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and ~~the Debtor~~TH Holdco or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code~~,~~; or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.81    ***TH Holdco*** means TH Holdco LLC as assignee of 85 Flatbush Avenue in its capacity as the prepetition lender to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential. If TH Holdco credit bids to acquire the Hotel Property and Residential Property under section 363(k) of the Bankruptcy Code, then, in that context, the term "TH Holdco" includes any nominee, designee or assignee of TH Holdco to whom TH Holdco has assigned or transferred its claim, in whole or in part, for purpose of making such credit bid.

1.82    ***TH Holdco Additional Consideration*** shall mean cash or other consideration in the form of an additional secured loan advance or such other form as TH Holdco shall determine in its sole discretion to pay Allowed Cure Obligations, Allowed Administrative Expenses, Allowed Priority Claims and such other amounts as TH Holdco shall determine in its sole discretion.

1.83    ***TH Holdco Credit Bid*** means a credit bid for all of the assets subject to the lien held by TH Holdco in the aggregate amount of at least $90,000,000, to be allocated among such encumbered assets as announced by TH Holdco at or prior to the hearing on the Disclosure Statement or such higher and better bid as TH Holdco may thereafter submit. TH Holdco intends to submit a single credit bid for both of the Hotel Property and the Residential Property. If a cash bid is approved pursuant to the Sale and Bidding Procedures for just the Hotel Property or just the Residential Property as a separate lot, then TH Holdco shall indicate the amount of the TH Holdco Credit Bid for the applicable Property it is acquiring through the Credit Bid.

1.84    ***TH Holdco Mortgage*** means the first priority mortgage on the Hotel Property and Residential Property granted to 85 Flatbush Avenue and currently held by TH Holdco by 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential to secure the TH Holdco Prepetition Loan.

1.85    ***TH Holdco Prepetition Loan Agreement*** means that certain Consolidated, Amended and Restated Note dated September 19, 2019 pursuant to which 85 Flatbush Avenue advanced a loan to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential in the original principal amount of $70,000,000 secured by the Hotel Property and Residential Property which is currently held by TH Holdco.

1.86    ***TH Holdco Unsecured Claim Additional Funding*** means payments to Allowed General Unsecured Claims in Classes 6 and 8 (i) in quarterly distributions of 50% of the excess

cash flow from operations of the Hotel Property and the Residential Property until such Allowed General Unsecured Claims in Classes 6 and 8 are paid in full in Cash, together with interest at the federal judgment rate on such Claims, and/or (ii) a final distribution on the first 12-month anniversary of the Effective Date of all remaining unpaid amounts owed, if any, on such Allowed General Unsecured Claims in Classes 6 and 8, together with interest at the federal judgment rate on such Claims, so that all such Claims are paid in full in Cash, to be funded by TH Holdco or by funding from the owners of TH Holdco.

1.87    ***TH Holdco Unsecured Claim Dedicated Fund*** means a segregated and dedicated fund of $1,250,000 cash provided by TH Holdco from its TH Holdco Credit Bid to be allocated pro rata, based on the total amount of Allowed General Unsecured Claims in Classes 6 and 8, among holders of Allowed General Unsecured Claims against 85 RHO Flatbush Hotel or 85 RHO Flatbush Residential but not with respect to any Allowed General Unsecured Claims against 85 RHO Flatbush Mezz.  This Fund shall be available only if TH Holdco closes the Sale Transaction as the successful acquirer of either the Hotel Property and the Residential Property or both Properties, unless otherwise agreed by TH Holdco in its sole discretion.

1.88    ***Transfer Tax*** means a stamp, transfer, mortgage recording or similar tax, including, without limitation, New York City Real Property Transfer Tax and New York State Real Estate Transfer Tax.

1.89    1.81 *Unimpaired* means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of sectionsections 1123(a)(4) and 1124 of the Bankruptcy Code.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.    Controlling Document**

In the event of an inconsistency between the Plan and the Plan Supplement, except for the terms of the Purchase Agreement, the terms of the Plan shall control (unless stated otherwise in the Plan).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the

{01100694.DOCX;4 }                                            11

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Pg 12 of 44 Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

**SECTION 2.** ~~SECTION 2.~~ **ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.**
~~2.1.~~

2.1     *Administrative Expense Claims*.

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors agree to different treatment, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Closing Date ~~and~~or (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid by the Debtors (or TH Holdco on behalf of the applicable Estate) in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtors no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, and the Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.  The Debtors or TH Holdco must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

2.2     ~~2.2.~~ *Fee Claims*.

All Entities seeking an award by the Bankruptcy Court of Fee Claims shall (i) provide a detailed estimate of all fees incurred through the Confirmation Hearing and estimated to be incurred through the Effective Date and (ii) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date.  No later than ten (10) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon the Debtors ~~a~~and TH Holdco an updated notice of

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Pg 13 of 44 the estimated amount of their unpaid Fee Claim and the Debtors or TH Holdco shall segregate, into an Estimated Professional Fee Escrow, the amounts which are necessary to pay the amount of such Fee Claim, in full (or in such amount as the Bankruptcy Court sets) subject to Allowance by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors.  The Debtors with the prior written consent of TH Holdco are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3 TH Holdco does not consent to use of any of its collateral or proceeds thereof to pay fees and costs incurred in connection with litigation or actions adverse to TH Holdco, including, without limitation, in opposition to this Plan or challenging any aspect of TH Holdco's Claims in any manner.  The Estimated Professional Fee Escrow shall be funded first from the Debtors' cash on hand as of the Effective Date of the Plan.

2.3    *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Closing Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course.

**SECTION 3.** ~~SECTION 3.~~ **CLASSIFICATION OF CLAIMS AND INTERESTS.** ~~3.1.~~

3.1    *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2    ~~3.2~~ *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the classes of Claims and Interests set forth in this Section 3.  All of the potential Classes for the Debtors are set forth herein. ~~The Debtors~~ There may not ~~have~~be holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth

in Section 4.  TH Holdco reserves the right to modify this Plan as to the treatment of any Class to provide more favorable treatment of such Class without resolicitation of votes on this Plan.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | 85 Flatbush RHO Hotel Other Priority Claims | Unimpaired | No<br><br>(presumed to accept) |
| 2 | 85 Flatbush RHO Residential Other Priority Claims | Unimpaired | No<br><br>(presumed to accept) |
| 3 | ~~85 Flatbush Avenue~~TH Holdco Secured Claim | Impaired | Yes |
| 4 | 85 Flatbush RHO Hotel Other Secured Claims | ~~Impaired~~Unimpaired | ~~Yes~~No (presumed to accept) |
| 5 | 85 Flatbush RHO Residential Other Secured Claims | ~~Impaired~~Unimpaired | ~~Yes~~No (presumed to accept) |
| 6 | 85 Flatbush RHO Hotel General Unsecured Claims | Impaired | Yes |
| 7 | 85 Flatbush RHO Hotel Existing Equity Interests | Impaired | Yes |
| 8 | 85 Flatbush RHO Residential General Unsecured Claims | Impaired | Yes |
| 9 | 85 Flatbush RHO Residential Existing Equity Interests | Impaired | Yes |
| 10 | 85 Flatbush Mezz Other Priority Claims | Impaired | Yes |
| 11 | 85 Flatbush Mezz Claim | Impaired | Yes |
| 12 | 85 Flatbush Mezz Other Secured Claims | Impaired | Yes |
| 13 | 85 Flatbush Mezz General Unsecured Claims | Impaired | Yes |
| 14 | Insider General Unsecured Claims | Impaired | Yes |
| ~~14~~15 | 85 Flatbush Mezz Existing Equity Interests | Impaired | ~~Yes~~No (deemed to reject) |

3.3    ~~3.3.~~*Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or TH Holdco in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.4    3.4. *Elimination of Vacant Classes*.

{01100694.DOCX;4 }                                    14

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.5   ~~3.5.~~ *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, ~~the Debtor~~TH Holdco shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

### 3.6   ~~3.6.~~ *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

~~The Debtors~~TH Holdco shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. ~~The Debtors reserve~~ TH Holdco reserves the right to modify the Plan, in accordance with Article 13 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules. The Plan constitutes a separate Chapter 11 plan for each Debtor.

The classifications set forth in Classes shall be deemed to apply to each Debtor identified, except that Class 3 shall apply to each of the Debtors. TH Holdco reserves the right to proceed to seek confirmation with respect to the Plan as to each Debtor separately and to proceed to confirm the Plan with respect to some but not all of the Debtors.

## SECTION 4.   ~~SECTION 4.~~ TREATMENT OF CLAIMS AND INTERESTS.~~4.1.~~

### 4.1   *85 Flatbush RHO Hotel Other Priority Claims (Class 1).*

(a)   *Classification:*  Class 1 consists of Allowed Other Priority Claims against 85 Flatbush RHO Hotel.

(b)   *Treatment:*  Except to the extent that a holder of an Allowed Other Priority Claim against 85 Flatbush RHO Hotel that has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund allocable to the Hotel Property, in an amount equal to such Claim, payable on the later of the Closing Date, the date on which such Other Priority Claim becomes an Allowed Other

Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

(c)    *Voting:*  Class 1 is Unimpaired, and the holders of 85 Flatbush RHO Hotel Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of 85

{01100694.DOCX;4 }                                                        15

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 16 of 44
Flatbush RHO Hotel Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.2**    ~~4.2.~~ *85 Flatbush RHO Residential Other Priority Claims (Class 2)*.

(a)    *Classification:* Class ~~1~~2 consists of Allowed Other Priority Claims against 85 Flatbush RHO Residential.

(b)    *Treatment:* Except to the extent that a holder of an Allowed Other Priority Claim against 85 Flatbush RHO Residential that has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash from the Plan Fund allocable to the Residential Property, in an amount equal to such Claim, payable on the later of the Closing Date, the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

(c)    *Voting:* Class 2 is Unimpaired, and the holders of 85 Flatbush RHO Residential Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126~~(f)~~ of the Bankruptcy Code. Therefore, holders of 85 Flatbush RHO Residential Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.3**    ~~4.3.~~ *~~85 Flatbush Avenue~~TH Holdco Secured Claim (Class 3)*.

(a)    *Classification:* Class 3 consists of the ~~85 Flatbush Avenue~~TH Holdco Secured Claim. The ~~85 Flatbush Avenue~~TH Holdco Secured Claim is a secured claim pursuant to the ~~85 Flatbush~~TH Holdco Prepetition Loan Agreement, which is secured by the ~~85~~

~~Flatbush Avenue~~TH Holdco Mortgage and constitutes a first priority security interest on the Hotel Property and Residential Property. Nothing herein shall prejudice TH Holdco's rights under the Intercreditor Agreement and under orders of this Bankruptcy Court.

(b)    *Treatment:* The holder of the ~~85 Flatbush Avenue~~TH Holdco Secured Claim shall receive~~.~~:

(i)    if the Hotel Property and/or Residential Property is sold to a party other than ~~85 Flatbush Avenue~~TH Holdco, Cash in an amount sufficient to satisfy the sum of ~~(1)~~ the Allowed Class 3 Claim, together with all applicable pre-petition and post-petition interest, costs and fees. Pending the Closing of the Sale Transaction, the holder of the ~~class~~Class 3 ~~claims~~Claims shall retain its Lien on the Hotel and Residential Property.

(ii)    If the Hotel and/or Residential Property is sold to ~~85~~

~~Flatbush Avenue~~TH Holdco pursuant to a bid made by ~~85 Flatbush Avenue~~TH Holdco pursuant to section 363(k) of the Bankruptcy Code,

~~{01100694.DOCX;4 }~~ ~~16~~

~~then 85 Flatbush Avenue~~ then TH Holdco shall receive the Hotel and/or Residential Property and ~~no~~any further distribution ~~under this Plan~~to which is it entitled to on its unsecured deficiency claim, if TH Holdco chooses to assert such unsecured deficiency claim.  In any event, TH Holdco preserves all of its rights and claims against all guarantors and non-debtor parties.

As part of its credit bid, TH Holdco its nominee or designee, may elect to take title of any of the Properties subject to the existing TH Holdco Mortgage, which TH Holdco Mortgage may be assigned to any such nominee's or designee's lender.  In the event TH Holdco or its nominee or designee elects to take title to any of the Properties subject to the existing TH Holdco Mortgage, Debtors shall have no further financial obligation to TH Holdco or any assignee of the TH Holdco Mortgage and shall be released from any and all liability to TH Holdco or any assignee with respect to such TH Holdco Mortgage upon the Closing.  Nothing herein shall impact TH Holdco's rights as to any deficiency claim against the Debtors or claims against any guarantors or other non-debtor parties.

Pursuant to Section 1146(a) of the Bankruptcy Code, the deeds conveying any of the Properties to TH Holdco or its nominee or designee upon the Effective Date of this Plan and any deeds further conveying any of the Properties by TH Holdco or its nominee or designee within two years following TH Holdco or its nominee or designee taking title to the Properties pursuant to this Plan shall be an instrument of transfer in connection with or in furtherance of the Plan and shall not be subject to tax under any law imposing a Transfer Tax.

(c)    ~~(c)~~ *Voting:*  .  Class 3 is Impaired, and holder of the ~~85 Flatbush Avenue~~TH Holdco Secured Claim in Class 3 is entitled to vote to accept or reject the Plan.

4.4    ~~4.4    85~~ *Flatbush RHO Hotel Other Secured Claims (Class 4).*

(a)    *Classification:*  Class 4 consists of the 85 Flatbush RHO Hotel Other Secured Claims.  To the extent that 85 Flatbush RHO Hotel Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 4.

(b)    *Treatment:* ~~After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in classes 1, 2, and 3, in the event there is a surplus remaining in the Plan Fund, such surplus shall be paid to Allowed Class 4 and 5 Other Secured Creditors, in accordance with their statutory priority as follows: except~~ Except to the extent that a holder of an Allowed 85 Flatbush RHO Hotel Other Secured Claim ~~against 85 Flatbush RHO Hotel~~ has agreed to less favorable treatment of such Claim~~,~~ each such holder

of an Allowed 85 Flatbush RHO Hotel Other Secured Claim shall receive, at the
option of 85 Flatbush RHO Hotel, (i) payment in full and final satisfaction of such
Allowed Class 4 Claim, in Cash from the Plan Fund allocable to the Hotel Property, their
pro rata share of the Remaining Plan Fund allocable to the Hotel Property, up to
their in an amount of equal to such Allowed Claim, payable on the later of the Closing Effective
Date and the date on which such 85 Flatbush RHO Hotel Other Secured Claim becomes an
Allowed Claim, or as soon as reasonably practical thereafter, (ii) delivery of the
collateral securing such Allowed 85 Flatbush RHO Hotel Other Secured Claim and
payment of any interest required under section 506(b) of the Bankruptcy Code, or
(iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

(c)    *Voting:* Class 4 is Impaired Unimpaired, and the holders of 85 Flatbush
RHO Hotel Other Secured Claims are not entitled to vote to accept or reject the Plan.

4.5    4.5 *85 Flatbush RHO Residential Other Secured Claims (Class 5)*.

(a)    (a) *Classification:* Class 5 consists of the 85 Flatbush RHO Residential
Other Secured Claims.  To the extent that 85 Flatbush RHO Residential Other Secured Claims
are secured by different collateral or different interests in the same collateral, such Claims shall
be treated as separate subclasses of Class 5.

(b)    *Treatment:* ~~After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in classes 1, 2, and 3, in the event there is a surplus remaining in the Plan Fund, such surplus shall be paid to Allowed Class 4 and 5 Other Secured Creditors, in accordance with their statutory priority as follows: except~~ *: Except* to the extent that a holder of an Allowed 85 Flatbush RHO Residential Other Secured Claim ~~against 85 Flatbush RHO Residential~~ has agreed to less favorable treatment of such Claim~~,~~ each <u>such</u> holder ~~of an Allowed 85 Flatbush RHO Residential Other Secured Claim~~ shall receive ~~at the option of 85 Flatbush RHO Residential, (i) payment in full and final satisfaction of such Allowed Class 5 Claim, in~~ Cash from the Plan Fund allocable to the Residential Property, ~~their pro rata share of the remaining Plan Fund allocable to the Residential Property up to the~~<u>in an</u> amount ~~of~~<u>equal to</u> such Allowed Claim~~,~~ payable on the later of the ~~Closing~~<u>Effective</u> Date and the date on which such 85 Flatbush RHO Residential Other Secured Claim becomes an Allowed ~~Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed 85 Flatbush RHO Residential Other Secured Claim~~ ~~and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code~~.

(c)    *Voting:* Class 5 is ~~impaired~~<u>Unimpaired</u>, and the holders of 85 Flatbush RHO Residential Other Secured Claims are <u>not</u> entitled to vote to accept or reject the Plan.

### <u>4.6</u>    ~~4.5.~~ *85 Flatbush RHO Hotel General Unsecured Claims (Class 6)*.

(a)    *Classification:* Class 6 consists of General Unsecured Claims against 85 Flatbush RHO Hotel.

(b)    *Treatment:* ~~After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in classes 1, 2, 3, 4 and 5, on the Closing Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed~~ <u>Except to the extent that a holder of an Allowed 85 Flatbush RHO Hotel General Unsecured Claim (Class 6) has agreed to less favorable treatment of such Claim, each such holder shall receive Cash in an amount equal to the amount of the Allowed Claim, together with interest at the federal judgment rate, as follows: (i) an initial Cash distribution on or about the Effective Date of such Claim's pro rata share of the $1.25 million TH Holdco Unsecured Claim Dedicated Fund, (ii) quarterly distributions thereafter of such Claim's pro rata share of 50% of the excess cash flow from operations of the Hotel Property and the Residential Property until such Claim is paid in full in Cash together with interest at the federal judgment rate on such Claim and (iii) if any amounts remain unpaid on such Claim as of the 12-month anniversary of the Effective Date, a final Cash payment in an amount sufficient to pay the remaining unpaid amount of such Claim in full in Cash together with interest at the federal judgment rate on such Claim from the TH Holdco Unsecured Claim Additional Funding.</u>

~~General Unsecured Claim agrees~~ to less favorable treatment of such Allowed ~~General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim in Classes 6 and 8 shall receive, in full and final satisfaction of such Claim, their pro rata share of the remaining Cash from the Plan Fund allocable to the Hotel Property, up to the full amount of their Allowed Claim~~

TH Holdco will also voluntarily further contribute any amount it would receive on its deficiency claim to the other Class 6 and 8 General Unsecured Claimants while reserving its rights on such deficiency claim as to all guarantors and all non-debtor parties.

(c)    *Voting:*  Class 6 is impaired and holders of General Unsecured Claims in Class 6 are entitled to vote to accept or reject the Plan.

**4.7**    ~~4.6.~~ **85 Flatbush RHO Hotel Existing Equity Interests (Class 7)**.

~~{01100694.DOCX;4 }~~                                                    ~~18~~

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 19 of 44

(a)    *Classification:* Class 7 consists of Existing Equity Interests in 85 Flatbush RHO Hotel.

(b)    *Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, Equity Interests in the Debtors will be cancelled and holders of Existing Equity Interests will not receive any recovery on account of their Equity Interests, provided however, that after payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims and Allowed Claims in Classes 1, 2, 3, 4, 5, 6, and 85, and to the extent there is any remaining cash in the Plan Fund allocable to either the Hotel Property or the Residential Property for distribution to Class 7 Existing Equity Interests in 85 Flatbush RHO Hotel and Class 9 Existing Equity Interests in 85 Flatbush RHO Residential, any such funds shall be contributed by the holders of Existing Equity Interests in 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential to the Plan for distribution on account of the 85 Mezz Flatbush Mezz Claim.

(c)    *Voting:* Class 7 is impaired by the Plan and is conclusively presumed to have rejected the holders of Allowed Existing Equity Interests in 85 Flatbush RHO Hotel are entitled to vote to accept or reject the Plan pursuant to 1126(g) of the Bankruptcy Code.

4.8.

4.8    **85 Flatbush RHO Residential General Unsecured Claims (Class 8)**.

(a)    *Classification:*  Class 8 consists of General Unsecured Claims against 85 Flatbush RHO Residential.

(b)    *Treatment:* After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in classes 1, 2, 3, 4 and 5, on the Closing Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Except to the extent that a holder of an Allowed 85 Flatbush RHO Residential General Unsecured Claim (Class 8) has agreed to less favorable treatment of such Claim, each such holder shall receive Cash in an amount equal to the amount of the Allowed Claim, together with interest at the federal judgment rate, as follows: (i) an initial Cash distribution on or about the Effective Date of such Claim's pro rata share of the $1.25 million TH Holdco Unsecured Claim Dedicated Fund, (ii) quarterly distributions thereafter of such Claim's pro rata share of 50% of the excess cash flow from operations of the Hotel Property and the Residential Property until such Claim is paid in full in Cash together with interest at the federal judgment rate on such Claim and (iii) if any amounts remain unpaid on such Claim as of the 12-month anniversary of the Effective Date, a final Cash payment in an amount sufficient to pay the remaining unpaid amount of such Claim in full in Cash together with interest at the federal judgment rate on such Claim from the TH Holdco Unsecured Claim Additional Funding.

General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each

holder of an Allowed General Unsecured Claim in Classes 6 and 8 shall receive, in full and final satisfaction of such Claim, their pro rata share of the remaining Cash from the Plan Fund allocable to the Residential Property, up to the full amount of their Allowed Claim TH Holdco will also voluntarily further contribute any amount it would receive on its deficiency claim to the other Class 6 and 8 General Unsecured Claimants while reserving its rights on such deficiency claim as to all guarantors and all non-debtor parties.

(c)    *Voting:*  Class 8 is impaired and holders of General Unsecured Claims in Class 8 are entitled to vote to accept or reject the Plan.

4.9    4.9. *85 Flatbush RHO Residential Existing Equity Interests (Class 9)*.

(a)    (a) *Classification:*  Class 9 consists of Existing Equity Interests in 85 Flatbush RHO Residential.

{01100694.DOCX;4 }                                   19

(b)     *Treatment:*  On the Effective Date, or as soon thereafter as is reasonably practicable, Equity Interests in the Debtors will be cancelled and holders of Existing Equity Interests will not receive any recovery on account of their Equity Interests, provided however, that after payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims and Allowed Claims in Classes 1, 2, 3, 4, ~~5, 6,~~ and 8~~5~~, and to the extent there is any remaining cash in the Plan Fund allocable to either the Hotel Property or the Residential Property for distribution to Class 7 Existing Equity Interests in 85 Flatbush RHO Hotel and Class 9 Existing Equity Interests in 85 Flatbush RHO Residential, any such funds shall be contributed by the holders of Existing Equity Interests in 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential to the Plan for distribution on account of the 85 Mezz Flatbush Mezz Claim.

(c)     *Voting:*  Class 9 is impaired by the Plan and ~~is conclusively presumed to have rejected~~the holders of Allowed Existing Equity Interests in 85 Flatbush RHO Residential are entitled to vote to accept or reject the Plan ~~pursuant to 1126(g) of the Bankruptcy Code.~~

~~4.10~~.

4.10     ***85 Flatbush RHO Mezz Other Priority Claims (Class 10)***.

(a)     *Classification:*  Class 10 consists of Allowed Other Priority Claims against 85 Flatbush RHO Mezz.

(b)     *Treatment:*  After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims and Allowed Claims in Classes 1, 2, 3, 4, ~~5, 6,~~ and 8~~5~~, and to the extent there is any remaining cash in the Plan Fund, and except to the extent that a holder of an Allowed Other Priority Claim against 85 Flatbush RHO Mezz has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, their pro rata share of the remaining Cash from the Plan Fund, up to the full amount of their Allowed Claim, payable on the later of the Closing Date, the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter.

(c)     *Voting:*  Class 10 is impaired, and the holders of Other Priority Claims against 85 Flatbush RHO Mezz are entitled to vote to accept or reject the Plan.

4.11     ~~4.11.~~***85 Flatbush Mezz Claim (Class 11)***.

(a)     ~~(a)~~*Classification:*  Class 11 consists of the 85 Flatbush Mezz Claim.  The 85 Flatbush Mezz Claim is a secured claim pursuant to the 85 Flatbush Mezz Loan Agreement, which is secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement.

{01100694.DOCX;4 } 20

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 21 of 44

(b)

(b)     *Treatment:*  After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims and Allowed Claims in Classes 1, 2, 3, 4, 5, 6, 8 and 10, and to the extent there is any remaining cash in the Plan Fund, the holder of the 85 Flatbush Mezz Claim shall receive, in full and final satisfaction of such Claim, its pro rata share of the remaining Cash from the Plan Fund up to the full amount of its Allowed Claim.  The 85 Flatbush Mezz Claim shall be subject in all respects to the Intercreditor Agreement.

(c)     (d) *Voting:*  Class 11 is impaired, and holder of the 85 Flatbush Mezz Secured Claim is entitled to vote to accept or reject the Plan.

### 4.12   4.12 *85 Flatbush RHO Mezz Other Secured Claims (Class 12)*.

(a)     *Classification:*  Class 12 consists of the 85 Flatbush RHO Mezz Other Secured Claims.  To the extent that 85 Flatbush RHO Mezz Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 12.

(b)     *Treatment:*  After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in classesClasses 1, 2, 3, 4, 5, 6, 8, 10, and 11, and to the extent there is any remaining cash in the Plan Fund, such surplus shall be paid to Allowed Class 12 Other Secured Creditors, in accordance with their statutory priority as follows:  except to the extent that a holder of an Allowed 85 Flatbush RHO Mezz Other Secured Claim against 85 Flatbush RHO Mezz has agreed to less favorable treatment of such Claim, each holder of an Allowed 85 Flatbush RHO Mezz Other Secured Claim shall receive, at the option of 85 Flatbush RHO Mezz, (i) payment in full and final satisfaction of such Allowed Class 12 Claim, their pro rata share of the remaining Cash from the Plan Fund up to the amount of such Allowed Claim payable on the later of the Closing Date and the date on which such 85 Flatbush RHO Mezz Other Secured Claim becomes an Allowed Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed 85 Flatbush RHO Mezz Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

(c)     *Voting:*  Class 12 is impaired, and the holders of Other Secured Claims against 85 Flatbush RHO Mezz are entitled to vote to accept or reject the Plan.

### 4.13   4.13. *85 Flatbush RHO Mezz General Unsecured Claims (Class 13)*.

(a)     (a) *Classification:*  Class 13 consists of General Unsecured Claims against 85 Flatbush RHO Mezz.

(b)    *Treatment:*  After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in Classes 1, 2, 3, 4, 5, 10, 11, and 12, in to the extent there is any remaining cash in the Plan Fund, on the Closing Date and except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its pro rata share of the remaining Cash from the Plan Fund up to the full amount of their Allowed Claim.  If Class 13 Allowed Claims are *de minimis*, TH Holdco with additional funding from its direct or indirect owners may elect to pay such Claims in full on or about the Effective Date.

(c)    *Voting:*  Class 13 is impaired and holders of General Unsecured Claims in Class 13 are entitled to vote to accept or reject the Plan.

### 4.14    *Insider General Unsecured Claims (Class 14)*

(a)    *Classification:*  Class 14 consists of Insider General Unsecured Claims.

(b)    *Treatment:*  After payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims, and Allowed Claims in ~~classes~~Classes 1, 2, 3, 4, 5, ~~6, 8,~~ 10, 11, 12, and ~~12~~13, in to the extent there is any remaining cash in the Plan Fund, on the Closing Date and except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Allowed General Unsecured Claim or has been paid before the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its pro rata share of the remaining Cash from the Plan Fund up to the full amount of their Allowed Claim.

(c)    *Voting:*  Class ~~13~~14 is impaired and holders of Insider General Unsecured Claims in Class ~~13~~14 are entitled to vote to accept or reject the Plan

~~4.14~~.

### 4.15    *85 Flatbush RHO Mezz Existing Equity Interests (Class ~~14~~15)~~.~~*

(a)    *Classification:*  Class ~~14~~15 consists of Existing Equity Interests in 85 Flatbush RHO Mezz.

(b)    *Treatment:*  On the Effective Date, or as soon thereafter as is reasonably practicable, Equity Interests in the Debtors will be cancelled and holders of Existing Equity Interests will not receive any recovery on account of their Equity Interests~~, provided however, that after payment is made in full to holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Fee Claims and Allowed Claims in Classes 1, 2, 3, 4, 5, 6, 8, 10, 11, 12 and 13, and to the extent there is any remaining cash in the Plan Fund for distribution to Class 14 Existing Equity Interests in 85 Flatbush~~

~~RHO Mezz, any such funds shall be distributed to the holders of the 85 Flatbush RHO Mezz Existing Equity Interests~~.

(c)    *Voting*:  Class ~~14~~15 is impaired by the Plan, and the holders of the Allowed Existing Equity Interests in 85 Flatbush RHO Mezz are conclusively presumed to have rejected the Plan pursuant to <u>section</u> 1126(g) of the Bankruptcy Code.

**<span style="color:blue">SECTION 5.</span>**    ~~SECTION 5.~~ **MEANS FOR IMPLEMENTATION.**
~~5.1.~~

<u>5.1</u>    ***The Plan Fund***.

The Plan Fund shall be funded by the Sale Proceeds, which shall be allocable to the Hotel Property and the Residential Property as set forth in the Purchase Agreement~~,~~ and the Debtors' available Cash on hand from its operations and shall be established upon the Closing Date and the funds distributed to creditors holding Allowed Claims in accordance with the Plan.  Creditor distributions to be made separate from or later than the Closing Date shall be made by the ~~Post-Effective Date Debtors or Debtors' counsel as the~~ Disbursing Agent under the Plan.

5.2.

Any remaining retainers held by any of the Debtors' professionals shall be applied to the fees of such professional as provided in an order of the Bankruptcy Court allowing the fees of such professional.

In addition, if TH Holdco acquires the Hotel Property and/or the Residential Property pursuant to the TH Holdco Credit Bid, TH Holdco shall fund the TH Holdco Unsecured Claim Dedicated Fund for the sole pro rata benefit of holders of Allowed General Unsecured Claims in Classes 6 and 8 and the TH Holdco Unsecured Claim Additional Funding for the sole pro rata benefit of holders of Allowed General Unsecured Claims in Classes 6 and 8.

5.2    *The Sale*

The Confirmation Order shall authorize and approve the Sale Transaction to the Purchaser under sections 365, 1123(b)(4), 1129(b)(2)(A)(iii) and 1146(a) of the Bankruptcy Code.  The Auction shall be held promptly after the Confirmation Hearing pursuant to the Sale and Bid Procedures approved by the Bankruptcy Court.  A proposed form of the Sale and Bid Procedures is attached as Exhibit E to the Disclosure Statement.  A proposed form of Purchase Agreement based on a purchase agreement approved in another real estate case before this Bankruptcy Court is attached as Exhibit F to the Disclosure Statement.  These procedures may be provided by the Debtors or JLL to any interested parties or bidders identified during the Debtors' marketing process.  Further, TH Holdco will advertise the opportunity to bid in the Wall Street Journal, National Edition, in a form of ad approved by the Bankruptcy Court in the Confirmation Order.  If there is no auction pursuant to the Sale and Bid Procedures, TH Holdco is requiring that the Confirmation Order provide that the TH Holdco Credit Bid and other consideration pursuant to this Plan is deemed approved and accepted and can immediately close without further order of this Bankruptcy Court.

5.3.    Other Transactions.

In the discretion of the Debtors, after the Effective Date, the Post-Effective Date Debtors may engage in any other transaction in furtherance of the Plan. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the members of the Debtors.

5.4.

5.3    **Intentionally Omitted**.

5.4    **Withholding and Reporting Requirements**.

(a)    *Withholding Rights—:*  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)    *Forms—:*  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated ~~by~~in the ~~Post-Effective Date Debtors~~Confirmation Order (which entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the tax Code and so notifies the Disbursing Agent.  If such request is made by ~~the Post-Effective Date Debtors~~TH Holdco or such other Person designated by ~~the Post-Effective Date Debtors~~TH Holdco and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to ~~the Debtors~~TH Holdco and any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor, TH Holdco and its respective property.

5.5    ~~5.5.~~ *Exemption From Certain Transfer Taxes*.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, (including an instrument of transfer executed in furtherance of the Sale Transaction contemplated by the Plan), shall not be subject to tax under any law imposing a ~~stamp tax, real estate transfer tax, mortgage recording tax or similar tax~~Transfer Tax due on the sale of the Hotel Property and/or Residential Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

~~5.6.~~

Pursuant to Section 1146(a) of the Bankruptcy Code, the deeds conveying any of the Properties to TH Holdco or its nominee or designee upon the Effective Date of this Plan and any deeds further conveying any of the Properties by TH Holdco or its nominee or designee taking title to any of the Properties pursuant to this Plan shall be an instrument of transfer in connection with or in furtherance of the Plan and shall not be subject to tax under any law imposing a Transfer Tax.

5.6    ***Effectuating Documents; Further Transactions***.

On and after the Effective Date, TH Holdco on behalf of the ~~Post-Effective Date~~ Debtors ~~are~~and the Estates is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors and the Estates, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

~~5.7. Preservation of Rights of Action.~~

**5.7** *Avoidance Actions and Other* ~~than~~*Causes of Action.*

All Avoidance Actions and other Causes of Action against an Entity that ~~are~~shall be waived, relinquished, exculpated, released, compromised, or settled ~~in~~under the Plan or by a Bankruptcy Court order, ~~the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Post-Effective Date Debtors may pursue such Causes of Action in their sole discretion. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Post-Effective Date Debtors will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Sale Transaction. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Post-Effective Date Debtors, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the~~

Bankruptcy Court. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by unless otherwise expressly preserved in the Confirmation of the Plan itself.

5.8 Order.

5.8   ***Closing of the Chapter 11 Cases***.

After any of the Chapter 11 Cases of the Debtors have been fully administered, the Debtors or TH Holdco shall promptly seek authority from the Bankruptcy Court to close such applicable Chapter 11 Cases Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**SECTION 6.**   ~~SECTION 6.~~ **GOVERNANCE.**

6.1   ~~6.1.~~ ***Wind Down*** ~~and Post-Effective Date Management~~.

After the Effective Date, the Debtors shall be designated the Post-Effective Date Debtors who shall continue to be managed by GC Realty Advisors, who held such position on the Commencement Date. GC Realty Advisors shall continue to serve as the Manager of the Debtors and the Post-Effective Date Debtors until the next annual meeting, upon the removal or resignation of such manager or until such time as the Debtors are dissolved.

6.2.   ***Limited Liability Company Form***

On the Effective Date, the Debtors shall maintain their current entity form as Delaware limited liability entities.

6.3.   ***Limited Liability Company Existence.***

After the Effective Date, the Post-Effective Date Debtors may decide to (a) maintain the Debtors as limited liability companies in good standing until such time as all aspects of the Plan pertaining to the Debtors have been completed, or (b) at such time as the Post-Effective Date Debtors consider appropriate and consistent with the implementation of the Plan pertaining to the Debtors, dissolve the Debtors and complete the winding up of such Debtors without the necessity for any other or further actions to be taken by or on behalf of the Debtors or their members or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities.

6.4. *Certificate of Organization and By-Laws*.

{01100694.DOCX;4 }                                                  25

~~As of the Effective Date, only if necessary, the certificate of organization and by-laws of the Debtors shall be amended to the extent necessary to carry out the provisions of the Plan.~~

~~SECTION 7.~~ The Debtors shall be dissolved promptly after the Effective Date.  The Disbursing Agent shall hold any funds for any Disputed Claims or other winddown expenses not yet paid or pre-paid.

6.2     *Intentionally Omitted.*

6.3     *Intentionally Omitted.*

6.4     *Intentionally Omitted.*

**SECTION 7.   DISTRIBUTIONS.** ~~7.1.~~

7.1     *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the ~~Debtors~~Bankruptcy Court shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests.  The ~~Debtors~~Disbursing Agent shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

7.2     ~~7.2.~~ *Date of Distributions*

Except as otherwise provided herein, and other than the distributions to be made at the Closing of the Sale Transaction, ~~the Post-Effective Date Debtors or~~ the Disbursing Agent shall make all distributions to Holders of Allowed Claims as set forth in the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The ~~Debtors~~Disbursing Agent shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims, unless otherwise ordered by the Bankruptcy Court.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the ~~Post-Effective Date~~

~~Debtors~~Disbursing Agent shall make a final *pro rata* distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

7.3    ~~7.3.~~ *Delivery of Distributions*.

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the ~~Debtors have~~Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without Interest; provided, however, such distributions

~~{01100694.DOCX;4 }~~                                    ~~26~~

121166379\V-4

shall be deemed unclaimed property under section 347(b) of the Bankruptcy
Code at the expiration of six months from the date the distribution is made.  After such
date, all unclaimed property or interests in property shall revert (notwithstanding any
applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary)
to the ~~Debtors~~TH Holdco automatically and without need for a further order by the
Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such
holder to such property or interest in property shall be released, settled, compromised, and
forever barred. ~~The~~ Neither the Debtors, TH Holdco nor the Disbursing Agent shall have
~~no~~any obligation to locate the current address for a returned distribution.

7.4    ~~7.4.~~ *Manner of Payment Under Plan*.

At the option of the ~~Debtors~~Disbursing Agent, any Cash payment to be made hereunder
may be made by a check or wire transfer.

7.5    ~~7.5.~~ *Minimum Cash Distributions*.

The ~~Debtors~~Disbursing Agent shall not be required to make any payment to any holder
of an Allowed Claim on any Distribution Date of Cash less than $100; provided, however, that if
any distribution is not made pursuant to this Section 7.5, such distribution shall be added to any
subsequent distribution to be made on behalf of the holder's Allowed Claim.    The
~~Debtors~~Disbursing Agent shall not be required to make any final distributions of Cash less than
$50 to any holder of an Allowed Claim.  If either (a) all Allowed Claims (other than those whose
distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any
final distributions to holders of Allowed Claims would be $50 or less and the aggregate amount
of Cash available for distributions to holders of Allowed General Unsecured Claims is less than
$2,500, then no further distribution shall be made by the ~~Post-Effective Date
Debtors~~Disbursing Agent and any surplus Cash shall be utilized to pay down any unpaid legal
fees incurred by ~~Debtors'~~ counsel to the Disbursing Agent post-confirmation.

7.6    ~~7.6.~~ *Setoffs*.

The ~~Debtors~~Estates through the Disbursing Agent may, but shall not be required to, set
off against any Claim, any Claims of any nature whatsoever that the ~~Debtors~~Estates may have
against the holder of such Claim; provided that neither the failure to do so nor the allowance of
any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim the
Debtors may have against the holder of such Claim.

~~7.7~~ Nothing herein shall impact the TH Holdco Credit Bid.

7.7    *Distributions After Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not
Allowed Claims as of the Effective Date but which later become Allowed Claims shall be
deemed to have been made on the Effective Date.

7.8.

7.8    *Allocation of Distributions Between Principal and Interest*.

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the accrued but unpaid interest first and then to principal amount (each as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

7.9.

7.9    *Payment of Disputed Claims*.

As Disputed Claims are resolved pursuant to Section 8 hereof, the Post-Effective Date DebtorsDisbursing Agent shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the DebtorsDisbursing Agent in the Debtors'its sole discretion.

**SECTION 8.** SECTION 8. **PROCEDURES FOR DISPUTED CLAIMS**.

8.1.

8.1    *Allowance of Claims*.

After the Effective Date, the Debtors and TH Holdco shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Disputed Claim, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

8.2    Nothing herein shall impact the TH Holdco Credit Bid and TH Holdco's rights under orders of this Bankruptcy Court or the Intercreditor Agreement.

8.2    *Objections to Claims*.

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Debtors or TH Holdco. Such objections and requests for estimation shall be served and filed (a) on or before the 12060th day following

the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtors.

~~8.3~~ or TH Holdco.  Nothing herein shall impact the TH Holdco Credit Bid and TH Holdco's rights under orders of this Bankruptcy Court or the Intercreditor Agreement.

8.3    *Estimation of Claims*.

{01100694.DOCX;4 }                                              28

The Debtors or TH Holdco may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Post-Effective Date DebtorsTH Holdco previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or Post-Effective Date DebtorsTH Holdco, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

8.4  Nothing herein shall impact the TH Holdco Credit Bid and TH Holdco's rights under orders of this Bankruptcy Court or the Intercreditor Agreement.

8.4    *No Distributions Pending Allowance*.

If an objection to a Claim is filed as set forth in Section 8, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5  Nothing herein shall impact the TH Holdco Credit Bid and TH Holdco's rights under orders of this Bankruptcy Court or the Intercreditor Agreement.

8.5    *Resolution of Claims*.

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors or TH Holdco shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action (to the extent preserved under the Confirmation Order and this Plan), suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their estates may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  The Debtors, TH Holdco or their successor may pursue such retained Claims, rights, Causes of Action (to the extent preserved in the Confirmation Order), suits or proceedings, as appropriate, in accordance with the best interests of the DebtorsEstates.

8.6. *Disallowed Claims*.

All Claims held by persons or entities against whom or which any of the Debtor or the Post-Effective Date Debtors has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of

{01100694.DOCX;4 }                                    29

the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtor or the Post-Effective Date Debtors from such party have been paid.

~~SECTION 9.~~

8.6    *Intentionally Omitted*

**SECTION 9.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

9.1    ~~9.1.~~ *Assumption and Assignment of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically ~~assumed~~rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, ~~and assigned to the Purchaser of the Hotel and Residential Property~~ unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Purchase Agreement as being ~~rejected~~assumed or assumed and assigned to Purchaser in connection with Confirmation of the Plan or under the Purchase Agreement; (2) as of the Effective Date is subject to a pending motion to ~~reject~~assume such Unexpired Lease or Executory Contract; (3) was previously assumed or assumed and assigned to a third party during the pendency of the Chapter 11 Cases; or (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

.

~~9.2~~  Notice of any Executory Contract or Unexpired Lease being assumed, assumed and assigned or rejected pursuant to the Plan shall be provided to the applicable contract counter party or lessor pursuant to the provisions in the Confirmation Order.

9.2    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Closing Date, subject to the limitation described below, by the Debtor as an Administrative Claim or by the Purchaser, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (1) the amount of the Cure Obligation, (2) the ability of the Debtors' Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or

Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that, depending on whether the ~~Post-Effective Date Debtors~~Disbursing Agent or the Purchaser has the obligation to pay the Cure Obligation, such party may settle any dispute regarding

~~{01100694.DOCX;4 }~~ ~~30~~

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 31 of 44 the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtors or TH Holdco shall cause notice of proposed Cure Obligations to be sent to applicable counterparties to the Executory Contracts and Unexpired Leases. Any objection by such counterparty must be filed, served, and actually received by the Debtors and TH Holdco not later than ten (10) days after service of notice of the Debtors' proposed assumption and associated Cure Obligation. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount will be deemed to have assented to such Cure Obligation and waived any objections to such assumption and assignment.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 9.3    9.3. *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Debtors and TH Holdco no later than fourteen (14) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtors, no later than fourteen (14) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Cases on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time**

**20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Pg 32 of 44 will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estate, TH Holdco, the Purchaser or the Hotel Property or Residential Property for any of the foregoing without the need for any objection by the Debtors or TH Holdco further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

### 9.4    ~~9.4.~~ *Purchase Agreement*

The ~~Debtors'~~ assumption or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to Purchaser's rights and obligations, including any Cure Obligations assumed by it in accordance with the Purchase Agreement, with respect to any such Executory Contracts or Unexpired Leases assigned Purchaser pursuant to the terms of the Purchase Agreement.

### 9.5    ~~9.5.~~ *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 9.6    ~~9.6.~~ *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors or TH Holdco that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or

~~20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Pg 33 of 44~~ unexpired at the time of assumption or rejection, the Debtors or ~~the Post-Effective Date Debtors~~TH Holdco, shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**SECTION 10.**    ~~SECTION 10.~~ **CONDITIONS PRECEDENT TO THE CONFIRMATION HEARING AND THE EFFECTIVE DATE.**

**10.1**    ~~10.1.~~ *Condition to the Confirmation Hearing*

The occurrence of the Confirmation Hearing is subject to the following condition precedent:

(a)    ~~(a)~~ The Purchase Agreement shall have been fully executed and the deposit required under the Purchase Agreement funded and placed in escrow.

(b)    The form of Confirmation Order shall be acceptable to TH Holdco in its reasonable discretion.

**10.2**    ~~10.2~~ *Conditions Precedent to the Effective Date*.

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay;

(b)    Debtors or TH Holdco shall have transferred to ~~Debtors' counsel, for deposit into its escrow account,~~the Disbursing Agent within three (3) days from the entry of the Confirmation Order, the operating funds necessary to fund the Plan Fund pursuant to the terms of this Plan;

(c)    all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Plan Supplement required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtor and Purchaser, and the transactions and other matters contemplated thereby, shall have been effected or executed;

(d)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent

~~20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Pg 34 of 44~~ authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; ~~and~~

(e) the Sale Transaction shall have closed as to both the Hotel Property and the Residential Property; and

(f) ~~(e)~~ all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

10.3   ~~10.3.~~ *Waiver of Conditions Precedent*.

Each of the conditions precedent to the Effective Date in Section 10.2 other than the condition set forth in section 10.2(a) may be waived in writing by ~~the Debtors.~~

~~10.4~~ TH Holdco.

10.4   *Effect of Failure of Conditions to Effective Date*.

If the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur, (i) no distributions under the Plan shall be made; (ii) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date ever occurred; and (iii) all monies contributed to the Plan Fund by Debtors shall be returned to ~~Debtors~~ TH Holdco within three (3) business days of the Confirmation Order being vacated.

**SECTION 11.** ~~SECTION 11.~~ **EFFECT OF CONFIRMATION.**
~~11.1.~~

11.1   *Vesting of Assets*.

On the Closing Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and as set forth in the Purchase Agreement, all property of the Debtors' Estates shall vest in the Purchaser free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided pursuant to this Plan and the Confirmation Order.

11.2   ~~11.2.~~ *Release of Liens*.

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Closing ~~e~~ Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the

Estates shall revert to the ~~Debtors~~TH Holdco, unless sold to the Purchaser
pursuant to the Sale Transaction, provided however, that the Lien securing the ~~85
Flatbush Avenue~~TH Holdco Secured Class ~~2~~3 Claim shall not be deemed released until
the ~~85 Flatbush Avenue~~TH Holdco Secured Class ~~2~~3 Claim has been paid in full, from
the proceeds of the Sale Transaction (or the TH Holdco Credit Bid) in accordance with the
terms of this Plan.

As part of its credit bid, TH Holdco its nominee or designee, may elect to take title to any
of the Properties subject to the existing TH Holdco Mortgage, which TH Holdco Mortgage may
be assigned to any such nominee's or designee's lender.  In the event TH Holdco or its nominee
or designee elects to take title to any of the Properties subject to the existing TH Holdco
Mortgage, Debtors shall have no further financial obligation to TH Holdco or any assignee of the
TH Holdco Mortgage and shall be released from any and all liability to TH Holdco or any
assignee with respect to such TH Holdco Mortgage upon the Closing.  Nothing herein shall
impact TH Holdco's rights as to any deficiency claim against the Debtors or claims against any
guarantors or other non-debtor parties.

### 11.3    ~~11.3.~~*Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Interests and the
respective distributions and treatments under the Plan take into account and conform to the
relative priority and rights of the Claims and Interests in each Class in connection with any
contractual, legal, and equitable subordination rights relating thereto, whether arising under
general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or
otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for ~~the
Post-Effective Date Debtors~~TH Holdco to re-classify any Allowed Claim or Interest in
accordance with any contractual, legal, or equitable subordination relating thereto.

### 11.4    ~~11.4.~~*Binding Effect*.

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject
to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the
Plan shall bind any holder of a Claim against, or Interest in, the Debtor, and such holder's
respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired
under the Plan and whether or not such holder has accepted the Plan.

### ~~11.5.~~ *~~Discharge of Claims and Termination of Interests.~~*

~~Except as otherwise provided in the Plan, effective as of the Closing Date: (a) the
rights afforded in the Plan and the treatment of all Claims and Interests shall be in
exchange for and in complete satisfaction, discharge and release of all Claims and
Interests of any nature whatsoever, including any interest accrued on such Claims from
and after the Petition Date, against the Debtor or any of their assets, property or
Estates; (b) all Claims and Interests shall be satisfied, discharged and released in full,
and the Debtor's liability with respect thereto shall be extinguished completely,
including any liability of the kind specified under section 502(g) of the Bankruptcy Code;
and (c) all Entities shall be precluded from asserting against the Debtors, the Debtors'~~

Estates, the Purchaser, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

11.6.

11.5    *Intentionally Omitted*.

11.6    *Term of Injunctions or Stays*.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

11.7    ~~11.7.~~ *Plan Injunction*.

Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the ~~Debtors'~~ obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtors as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtors, from the Hotel Property or Residential Property, or from property of the Estates that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Hotel Property or Residential Property and any property of the Estates that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtors, from the Hotel Property or Residential Property, or from property of the Estates, any claim, any obligation or debt that was held against the Debtors by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan.  The entry of the Confirmation Order shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.

~~11.8~~  Nothing herein shall impact TH Holdco's right to pursue claims against guarantors or other non-debtor parties.

11.8    *Limitation of Liability*

To the extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties nor any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Supplement or the any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, provided that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized

use of confidential information that causes damages, or ultra vires acts.
Nothing in this Section 11.8 shall limit the liability of the Debtors' professionals pursuant
to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct.  Nothing in the
Plan or the confirmation order shall effect a release of any claim by the United States
Government or any of its agencies or any state and local authority whatsoever, including,
without limitation, any claim arising under the Internal Revenue Code, the environmental
laws or any criminal laws of the United States or any state and local authority against the
Debtors or any of its respective members, shareholders, officers, directors, employees,
attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan
enjoin the United States or any state or local authority from bringing any claim, suit, action
or other proceedings against the Debtors or any of its respective members, officers,
directors, employees, attorneys, advisors, agents, representatives and assigns for any
liability whatever, including without limitation, any claim, suit or action arising under the
Internal Revenue Code, the environmental laws or any criminal laws of the United States or
any state or local authority, nor shall anything in this Plan exculpate Debtors or any of its
respective members, officers, directors, employees, attorneys, advisors, agents,
representatives and assigns from any liability to the United States Government or any of its
agencies or any state and local authority whatsoever, including liabilities arising under the
Internal Revenue Code, the environmental laws or any criminal laws of the United States or
any state and local authority.

**11.9** *Release*

Except as otherwise provided in the Plan, upon the Effective Date, in
consideration of the Cash and other property to be distributed to or on
behalf of the holders of Claims and Interests under the Plan, the Plan shall
be deemed to resolve all disputes and constitute a settlement and release,
between and among the Debtors, on the one hand, and each Creditor and
Interest Holder, on the other, from any claim or liability, whether legal,
equitable, contractual, secured, unsecured, liquidated, unliquidated,
disputed, undisputed, matured, unmatured, fixed or contingent, known or
unknown, that the Debtors, their Creditors or Interest
Holders ever had or now have through the Effective Date in connection with
their Claim or Interest (including, without limitation, any claims the Debtors
may assert on their own behalf or on behalf of Creditors or Interest Holders
pursuant to
sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors
or Interest Holders may have asserted derivatively on behalf of the Debtors
absent bankruptcy, any claims based on the conduct of the Debtors' business
affairs prior or subsequent to the commencement of the Cases or any claims
based on the negotiation, submission and confirmation of the Plan).

11.10.

11.9    *Intentionally Omitted*

11.10    *Solicitation of the Plan*.

As of and subject to the occurrence of the Confirmation Date: (a) ~~the Debtors~~TH Holdco shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

11.11    ~~11.11.~~ *Plan Supplement*.

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court by no later than ~~five~~fifteen (~~5~~15) ~~business~~ days prior to the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## SECTION 12.~~SECTION 12.~~ RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

(b)    to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c)    to insure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)    to adjudicate any dispute related to the Sale Transaction;

(g)    ~~(f)~~ to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 39 of 44

(h)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(j)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Purchase Agreement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(l)     to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtors' tax liability under section 505(b) of the Bankruptcy Code);

(n)     to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)     to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)     to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)     to enter a final decree closing any of the Chapter 11 Cases;

(r)     to enforce all orders previously entered by the Bankruptcy Court;

(s)     to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(t)     to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

{01100694.DOCX;4 } ——————————————————————— 39

~~SECTION 13.~~

**SECTION 13.MISCELLANEOUS PROVISIONS.**

~~13.1.~~

13.1   *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the ~~Debtors~~Disbursing Agent shall pay all fees incurred pursuant to ~~§~~section 1930 of title 28 of the United States Code, together with interest, if any, pursuant to ~~§~~section 3717 of title 31 of the United States Code for the Chapter 11 Cases; provided, however, that after the Effective Date such fees shall only be payable with respect to the applicable Chapter 11 ~~Cases~~Case until such time as a final decree is entered closing the applicable Chapter 11 ~~Cases~~Case, a Final Order converting such case to a case under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the applicable Chapter 11 ~~Cases~~Case is entered.

13.2   ~~13.2.~~*Substantial Consummation*.

On the Closing Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.3   ~~13.3.~~*Amendments*.

(a)   *Plan Modifications.*   The Plan may be amended, modified or supplemented by ~~the Debtor~~TH Holdco in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.   In addition, after the Confirmation Date, ~~the Post-Effective Date Debtors~~TH Holdco may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  TH Holdco reserves the right to modify this Plan as to the treatment of any Class to provide more favorable treatment of such Class without resolicitation of votes on this Plan.

(b)   *Other Amendments.*  Before the Effective Date, ~~the Debtors~~TH Holdco may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

13.4   ~~13.4.~~*Revocation or Withdrawal of the Plan*.

~~The Debtors reserve~~TH Holdco reserves the right to revoke or withdraw the Plan, prior to the Confirmation Date.   If ~~the Debtors revoke~~TH Holdco revokes or ~~withdraw~~withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the

Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 41 of 44 waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, TH Holdco or any other Entity.

13.5    ~~13.5.~~ *Severability of Plan Provisions Upon Confirmation*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of ~~the Debtors~~TH Holdco, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of ~~the Debtor or the Post-Effective Date Debtors (as the case may be)~~TH Holdco; and (3) nonseverable and mutually dependent.

13.6    ~~13.6.~~ *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.7    ~~13.7.~~ *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.8    ~~13.8.~~ *Additional Documents*

On or before the Effective Date, ~~the Debtor~~TH Holdco may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. ~~The Debtor~~ TH Holdco, the Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements

{01100694.DOCX;4 }                              41

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document Pg 42 of 44 or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.9    13.9. *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Purchaser, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

13.10    13.10. *Successor and Assigns*.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

13.11    13.11. *Entire Agreement*.

On the Effective Date, the Plan, the Plan Supplement, the Purchase Agreement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

13.12    13.12. *Notices*.

All notices, requests and demands to or upon the DebtorDebtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmede-mail, addressed as follows:

(i) if to the Debtors
(i)    IF TO THE DEBTORS:


GC Realty Realty Advisors, LLC
3284 N 29th Court
Hollywood, Florida 33020
Attn: David Goldwasser

- and --

Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue, 9th Floor
New York, New York 10022

{01100694.DOCX;4 } 42

Telephone: (212) 603-6300
Facsimile: (212) 956-2164
E-mail: fbr@robinsonbrog.com
Attention: Fred B. Ringel., Esq.

(ii)    IF TO TH HOLDCO:

TH Holdco, LLC
c/o Dentons US LLP
1221 Avenue of the Americas
New York, New York 10020
Attn.: Lauren Macksoud and Christopher Milenkevich
E-Mail: lauren.macksoud@dentons.com
        christopher.milenkevich@dentons.com

After the Effective Date, the Debtors or TH Holdco shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors or TH Holdco are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

*[signatures on following page]*

{01100694.DOCX;4 } 43

20-23280-rdd Doc 142 Filed 11/24/21 Entered 11/24/21 17:11:03 Main Document
Pg 44 of 44 Dated: November 24 April 5, 2021 2022
New York, New York

85 Flatbush RHO Mezz LLC
85 Flatbush RHO Hotel LLC
85 Flatbush RHO Residential LLC
By GC Realty Advisors, LLC,
Manager


By: /s/ David Goldwasser
David
Goldwasser

Managing
Member

{01100694.DOCX;4 }                                    44

TH Holdco, LLC


By: /s/ Franco Famularo
_____ Authorized Signatory

Document comparison by Workshare 10.0 on Monday, April 04, 2022 1:29:20 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\jcastillo\OneDrive - Dentons\Documents\Migrated Data\Lauren Macksoud\85 Flatbush\Debtor's Original Plan.docx |
| Description | Debtor's Original Plan |
| Document 2 ID | file://C:\Users\jcastillo\OneDrive - Dentons\Documents\Migrated Data\Lauren Macksoud\85 Flatbush\85 Flatbush - Creditor TH Holdco_s Amended Chapter 11 Plan (4.4.22).DOCX |
| Description | 85 Flatbush - Creditor TH Holdco_s Amended Chapter 11 Plan (4.4.22) |
| Rendering set | Underline Strikethrough |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 561 |
| Deletions | 579 |
| Moved from | 10 |
| Moved to | 10 |
| Style changes | 0 |

| Format changes | 0 |
|---|---|
| Total changes | 1160 |