**ROBINSON BROG LEINWAND GREENE**
  **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Fred B. Ringel
Lori Schwartz
Clement Yee
*Attorneys for the Debtor and Debtor in Possession*

<u>**Hearing Date and Time:**</u>
**May 16, 2022 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

*In re*:

**85 FLATBUSH RHO MEZZ LLC,** *et al.*,[1]

                                                    Debtors.
----------------------------------------------------------X

Chapter 11

Case No.: 20-23280 (RDD)

(Jointly Administered)

## DEBTORS' OBJECTION TO TH HOLDCO LLC'S SECOND AMENDED DISCLOSURE STATEMENT

TO:   THE HONORABLE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE:

85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential" and with Mezz and Hotel, "Debtors"), by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., file this objection to TH Holdco LLC's Second Amended Disclosure Statement in connection with the continued hearing on TH Holdco's Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are 85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

{01149416.DOC;2 }

with Respect Thereto ("TH Holdco DS Approval Motion") and respectfully represent:

## BACKGROUND AND SUMMARY OF REQUESTED RELIEF

1. Mezz is the 100% owner of Hotel and Residential LLC. Hotel and Residential collectively own the property located at 85 Flatbush Extension, Brooklyn, New York, ("Property"). The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage (together, "Hotel Property"). The residential component of the Property has nine studios, 26 one-bedroom units, and 29 two-bedroom units (together, "Residential Property"). Of the 64 units, currently, two (2) are occupied. At the time of the acquisition of the Property, the intention was to convert the residential units into condominiums

2. On December 18, 2020, ("Petition Date"), the Debtors filed separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Together with their petitions for relief, the Debtors have filed their schedules of assets and liabilities and lists of creditors and executory contracts required under section 521 of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules.

3. No committee, trustee, or examiner has been appointed in the Debtors' cases.

4. The Debtors' cases are jointly administered for procedural purposes only under an order entered on December 28, 2020.

5. On November 24, 2021, the Debtors filed their Plan of Reorganization (ECF doc. No. 142) which plan was premised on a sale of the Property through the marketing efforts of its broker, Jones Lang Lasalle ("JLL"). Debtors' intention was to seek approval of bidding

procedures based upon a stalking horse bid for the Hotel Property and Residential Property which would be submitted with the Debtors' disclosure statement. However, on January 31, 2022, Debtors' counsel was advised that TH Holdco LLC ("TH"), had acquired the mortgage loan encumbering the Hotel Property and Residential Property earlier in January 2022 from the pre-petition lender, 85 Flatbush Avenue 1 LLC, who, in September 2019, advanced a loan to Hotel and Residential in the original principal amount of $70,000,000 evidenced by a Consolidated, Amended and Restated Note and secured by a first priority mortgage on the Hotel Property and Residential Property.

6.      TH thereafter filed its own plan and disclosure statement in February 2022 (ECF Doc. Nos. 151 and 152), as amended on April 4, 2022 (ECF Doc. Nos. 175 and 177). After the initial hearing on the TH Holdco DS Approval Motion, the TH plan was further amended on April 20, 2022 (ECF Doc. No. 188). On April 26, 2022 TH filed a second amended plan (the "Second Amended Plan")(ECF Doc. No. 190) and second amended disclosure statement (the "Second Amended Disclosure Statement")(ECF Doc. No. 193) which are premised upon a sale of the Hotel Property and Residential Property, permitting TH to credit bid for the Property with an opening bid of $90,000,000. Pursuant to the Second Amended Plan and Second Amended Disclosure Statement, to the extent TH is the successful purchaser of the Property, TH will fund payments on account of certain administrative claims, including professional fees and United States Trustee Fees, and priority claims in full and establish a dedicated fund in the amount of $1,250,000 for an initial pro rata distribution to the Debtors' unsecured creditors. In addition, TH or the owners of TH will fund a second distribution to unsecured creditors, to the extent their

{01149416.DOC;2 }

3

claims are not paid from post-confirmation operations, to be paid approximately one (1) year after the closing on the sale transaction.

7. On March 30, 2022, Debtors filed an amended plan of reorganization ("Plan") (ECF Doc. No. 161) and disclosure statement for amended plan of reorganization ("Disclosure Statement") (ECF Doc. No. 162). The Debtors' Plan was to be funded by the Debtors' available cash, Exit Financing, which would be utilized to pay the Allowed amount of the TH Holdco Secured Claim, and an equity contribution, to be funded by current holders of equity in the Debtors in exchange for their maintaining their equity in the Debtors, as well as from the Reorganized Debtor's post-confirmation operations. The Debtors' Plan was also premised upon an anticipated lease with the New York City Department of Homeless Services ("DHS Lease"). Currently, DHS leases the Hotel Property on a month-to-month basis to provide shelter services. Debtors continue to work with DHS to secure a long-term lease for the entirety of the Hotel Property and Residential Property.

8. On March 23, 2022, 85 Flatbush Mezz LLC, the pre-petition mezzanine lender to Mezz filed an adversary proceeding against TH as assignee of 85 Flatbush Ave 1 LLC in its capacity as the Debtors' pre-petition mortgage lender to 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential, Adv. Proc. 22-07022 for a declaratory judgment and specific performance to enforce certain purchase option rights under the parties' intercreditor agreement. Debtors are advised that 85 Flatbush Mezz LLC and TH are conferring with respect to a case management plan and scheduling order establishing various deadlines in connection with the adversary proceeding. Debtors believe that the adversary proceeding needs to be fully adjudicated before TH's Second Amended Plan and any attendant auction sale for the Property can go forward.

9. After the initial April 6, 2022 hearing on the TH Holdco DS Approval Motion, the Debtors, TH and 85 Flatbush Mezz LLC, through their counsel, conferred in connection with certain proposed revisions to TH's plan and disclosure statement.

10. The Second Amended Disclosure Statement identified on the docket as ECF Doc. No. 193 is the document that is the subject of this objection. Certain of the objections noted herein are also objections to TH Second Amended Plan identified on the docket as ECF Doc. No.190. This objection is not meant to be the Debtors formal objection to the Second Amended Plan and confirmation of the Second Amended Plan and Debtors reserve all rights to raise additional confirmation objections in accordance with the deadlines established by the Court or as otherwise agreed to by the parties.

11. Debtors submit that TH's Second Amended Disclosure Statement should not be approved as it does not contain adequate information.

### THE TH HOLDCO SECOND AMENDED DISCLOSURE STATEMENT SHOULD NOT BE APPROVED AS IT DOES NOT CONTAIN ADEQUATE INFORMATION

12. The Second Amended Disclosure Statement cannot be approved because it fails to provide adequate information as required by Bankruptcy Code Section 1125. Bankruptcy Code Section 1125(b) provides:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time or before such solicitation, there is transmitted to such holder the plan or summary of the plan, and a written disclosure statement approved, after notice and a hearing by the court as containing adequate information.

11 U.S.C., § 1125(b).

{01149416.DOC;2 }

5

13. Adequate information, in turn, is defined as "information of a kind, and in sufficient detail,…that would enable [ ] a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. §1125(a)(1). *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information'").

14. Case law under section 1125 of the Bankruptcy Code has produced a list of factors, which, under the facts and circumstances of a particular case, may be necessary to meet the statutory requirements of section 1125. *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984). The list is not exhaustive, and a case may arise in which disclosure of all of the enumerated factors is still not sufficient. *Id.* The relevant factors are:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

{01149416.DOC;2 }

6

39 B.R. at 568; *See also In Re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D.Ohio 1990) (citing *In Re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-171 (Bankr. S.D.Ohio 1988)). A disclosure statement that omits material facts cannot be approved. *In Re Unichem Corp.*, 72 B.R. 95, 97-98 (Bankr. N.D. Ill. 1987) aff'd, 80 B.R. 448 (N.D. Ill. 1987).

15. Whether a disclosure statement contains adequate information should be determined case-by-case. *See Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008). At a minimum, however, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on their claims and the possible Code alternatives so that they can intelligently accept or reject the [p]lan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). The legislative history of section 1125 of the Bankruptcy Code states that "[t]he disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders would make an informed judgment about a plan of reorganization." *In re Jeppson,* 66 B.R. 269, 291 (Bankr. D. Utah 1986). The purpose of a disclosure statement is "to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan." *Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996). As a result, a disclosure statement should be approved only when it sets forth "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Scioto Valley Mortg. Co.,* 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988).

16. Here, the Second Amended Disclosure Statement does not contain adequate information because it fails to:

(a) adequately and clearly disclose the timeline for the post-confirmation auction and sale process for the Property and how the marketing, auction and sale process integrate with each other. For example, a Condition to the Confirmation Hearing is that: "(a) the Purchase Agreement shall have been fully executed and the deposit required under the Purchase Agreement funded and placed in escrow." See, Second Amended Disclosure Statement, Means for Implementation, Section L (p. 42). This is inconsistent with the definition of "Purchaser" in the Second Amended Plan which provides that the Purchase Agreement is to be filed <u>after</u> the Confirmation Hearing;

(b) disclose why TH asserts that the treatment of their Class 3 Secured Claim applies to the Mezz Debtor when TH did not advance any funds to the Mezz Debtor;

(c) disclose if TH intends to confirm the Mezz component of the Plan;

(d) disclose (1) how TH holds any unsecured deficiency claim against the Debtors if TH is taking title to the Property subject to its mortgage (with such mortgage amount to be reduced by the amount of the credit bid) and (2) how TH is contributing any amount it would receive on account of its deficiency claim if TH is taking title to the Property subject to its mortgage; and

(e) demonstrate TH or any other plan funder or guarantor's resources and ability to meet plan funding obligations; attach projections setting forth the anticipated amount of "excess cash flow from operations of the Hotel Property" to fund further payments to unsecured creditors; and provide a form of guaranty for plan funding obligations. In addition the Second Amended Disclosure Statement does not set forth creditor remedies to the extent that TH, any other plan funder or guarantor breaches their plan

payment obligations.

17. In addition, as the Debtors' disclosure statement is not presently before the Court, the Debtors do not believe that the language in the Second Amended Disclosure Statement comparing the features of the TH Second Amended Plan and Second Amended Disclosure Statement to the Debtors plan and disclosure statement is relevant, and submit that the language does not provide information about the TH Holdco Second Amended Plan and Second Amended Disclosure Statement to inform creditors with respect to voting on the proposed plan. Rather, these comparisons are simply attacks on the Debtors' proposed plan and disclosure statement that add nothing to the TH Holdco disclosure and solicitation process.

18. Thus, the Second Amended Disclosure Statement cannot be approved because of TH's failure to provide the above information falls short of the requirements of §1125 to provide adequate information.

19. Debtors reserve all rights to further object to the Second Amended Plan, including, but not limited to, any objections they may have to confirmation of the Second Amended Plan.

**WHEREFORE**, the Debtors request that the TH Holdco DS Approval Motion be denied in its entirety and for such other relief as the Court deems proper.

**DATED:**  New York, New York
May 9, 2022

        **ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
        **Attorneys for the Debtors**
        875 Third Avenue, 9th Floor
        New York, New York 10022
        (212) 603-6300

        By: /s/ Lori A. Schwartz
            Fred B. Ringel
            Lori A. Schwartz