**LEECH TISHMAN ROBINSON BROG PLLC**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
*Attorneys for the Debtors and Debtors in Possession*

**Hearing Date:**
**June 30, 2022 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:

85 FLATBUSH RHO MEZZ LLC, *et al.*,[1]

                                    Debtors.
-------------------------------------------------------X

Chapter 11

Case No.: 20-23280-rdd

(Jointly Administered)

## DEBTORS' OBJECTION TO CONFIRMATION OF SECOND AMENDED CHAPTER 11 PLAN FILED BY CREDITOR TH HOLDCO LLC

TO:    THE HONORABLE ROBERT D. DRAIN
       UNITED STATES BANKRUPTCY JUDGE:

85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential" and with Mezz and Hotel, "Debtors"), by their attorneys, Leech Tishman Robinson Brog PLLC, file this objection ("Objection") to confirmation of the Second Amended Chapter 11 Plan (ECF Doc. 211) ("TH Holdco Plan") filed by creditor TH Holdco LLC ("TH Holdco") and respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

## PRELIMINARY STATEMENT

1.      The TH Holdco Plan should be denied or, at best, adjourned to a future

date so the Debtors' creditors can determine whether they want to be paid in full

over the course of a year under the TH Holdco Plan or in a shorter period of time

under the Debtors' proposed plan that pays their creditors on the proposed plan's

effective date, which is expected to occur as soon as possible after the plan is

confirmed, which may be as early as July 2022.

2.      In providing the creditors with that opportunity, the Court should

consider that (i) the TH Holdco Plan cannot be confirmed as currently filed because

it provides itself with the opportunity to credit bid in excess of the appraised value

of the Property (defined below) in the amount of $72,000,000[2], (ii) the Debtors'

proposed plan pays all the creditors in full on account of their allowed claims in a

significantly shorter period of time than the TH Holdco Plan, and Mezz, the 100%

owner of Hotel and Residential, retains its equity interest in Hotel and Residential[3,]

and (iii) during the bankruptcy case TH Holdco's affiliates misled the Debtors'

principals, making them believe that they were interested in being a plan sponsor

or pursuing a joint venture with the Debtors. Instead, TH Holdco and its affiliates

---

[2] A copy of the Appraisal is attached as Exhibit A to the Declaration of Jon DiPietra in Support of Debtors' Objection to Confirmation of Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC ("DiPietra Declaration").

[3] In exchange for Hagler providing not less than $96,775,000 in funding for the Plan so that Mezz retains its equity interests, Hagler, will be admitted as an additional equity member under Mezz's

acted in bad faith and pursued a disguised "loan to own" strategy that leaves the Debtors with the prospect of losing the Property and equity will lose their multi-million dollar investment in the Property, which they can't afford to lose.[4]

3.      One of the principals, Mr. Lipa Rubin, a father and grandfather, has supported his family for the past twenty-five years as a fish monger.  During that time, he managed to save some money and purchased his first property, a three family home, in 2002. In the last twenty years, he purchased a few other properties. In 2019, his longtime friend Isaac Hager presented him with an opportunity to join him as a minor shareholder in the Property that Mr. Hager was acquiring.  As Mr. Rubin never could have imagined being a part of a project this size, he agreed to the opportunity.  In order to participate, he refinanced almost his entire portfolio and was able to obtain $10,000,000 from his equity in his real estate holdings to commit to the acquisition of the Property.  After the purchase of the Property was completed, the hotel on the Property was thriving until Covid struck in March 2020 and turned the world upside down. The hotel was shut down and Mr. Rubin was now at risk of losing his life's savings, which, is necessary to sustain him and his family in retirement, due to uncontrollable factors that could not be foreseen.  The

operating agreement.  See Declaration of Daryl Hagler in Support of Debtors' Objection to Confirmation of Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC.

[4] A summary of the bad faith actions of TH Holdco and its affiliates are set forth in the Declaration of Isaac Hager in Support of the Debtors' Motion for Order Pursuant to 11 U.S.C. Section 363(K) Disqualifying TH Holdco LLC From Credit Bidding and Granting Related Relief ("Hager Declaration"), which the Debtors are preparing to file. The Hager Declaration is incorporated herein by reference.

4890-8703-1589, v. 9

Debtors' Plan gives Mr. Rubin and Mr. Hager an opportunity to retain part of their investment in the Property as Mezz retains its equity under the Debtors' Plan (defined below), and their proposed plan is better for their creditors as they all get paid in full within a very short time period. The Debtors seek an opportunity to give the Debtors' Plan a chance to be confirmed and avoid wiping out the equity of a man who can not afford to lose his entire investment in the Property.[5]

4.      For these reasons, the Court should deny the TH Holdco Plan or, at best, adjourn it to give the Debtors' creditors an opportunity to determine which proposed plan they wish to have confirmed.

## BACKGROUND

5.      Mezz is the 100% owner of Hotel and Residential. Hotel and Residential collectively own the property located at 85 Flatbush Extension, Brooklyn, New York ("Property"). The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage (together, "Hotel Property"). The residential component of the Property has nine studios, 26 one-bedroom units, and 29 two-bedroom units (together, "Residential Property"). Of

---

[5]  The above is a summary of Mr. Rubin's letter to the Court, which is attached hereto as Exhibit A.

the 64 units, currently, two are occupied.  At the time of the acquisition of the

Property, the intention was to convert the residential units into condominiums.

6.      On December 18, 2020 (the "Petition Date"), the Debtors filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      On March 29, 2021, this Court entered the Final Consent Order

Authorizing (I) Use of Cash Collateral, (II) Granting Adequate Protection, and (III)

Granting Related Relief ("Cash Collateral Order") (ECF. Doc. No. 64).  Under the

Cash Collateral Order, the Debtors and the lender Flatbush Avenue I LLC

("Prepetition Lender") agreed that as of the Petition Date, the principal amount of

the Prepetition Lender's claims against the estates of the Debtors was

$85,158,815.00 ("Agreed Upon Lender Claim").  Cash Collateral Order at ¶14.  The

same paragraph provided that "the extent to which the [Prepetition Lender] is a

secured claim will be determined by the Court based on the value of the

[Prepetition Lender's] Collateral, and is subject to section 506(a) and (b) of the

Bankruptcy Code, and to applicable non-bankruptcy law, provided however that the

Debtor acknowledges and agrees that the [Prepetition Lender"] has a valid and

enforceable lien on the Property."  Cash Collateral Order at ¶14.

8.      On October 12, 2021, the Bankruptcy Court entered an order authorizing

the Debtors' retention of Jones Lang LaSalle ("JLL") as the Debtors' exclusive real

estate advisors, effective as of September 4, 2021, to market the Hotel Property and

Residential Property.  JLL launched their marketing efforts on October 12, 2021,

creating and establishing a data room for interested parties which was accessible immediately upon their executing a confidentiality agreement. The Debtors were advised that a total of 69 confidentiality agreements were executed and JLL conducted 14 tours of the Hotel Property and Residential Property. The marketing period continued through November 17, 2021. A total of six (6) written offers were received, that were later narrowed down to three (3) potential purchasers for the Hotel Property and Residential Property, submitting proposals for the Hotel Property and Residential Property in the range of $80,000,000 to $86,500,000. The Debtors' negotiation of a letter of intent for more than the $86,500,000 bid, and thereafter final form of purchase agreement with the interested purchasers was interrupted by TH Holdco's acquisition of the mortgage loan and related loan documents from the Prepetition Lender.

9.      On or about February 4, 2022, TH Holdco filed its notice of transfer of claim number 3 from the Prepetition Lender to TH Holdco which claim was filed against Hotel in the amount of $85,158,815.99 and its notice of transfer of claim number 1 from the Prepetition Lender to TH Holdco which claim was filed against Residential in the amount of $85,158,815.99. The claim notices reference a January 28, 2022 assignment and assumption agreement between TH Holdco and the Prepetition Lender.

10.     On March 23, 2022, 85 Flatbush Mezz LLC (the "Mezz Lender") commenced an adversary proceeding in this Court against TH Holdco, as assignee of the Prepetition Lender in its capacity as the Debtor's prepetition mortgage lender to

Hotel and Residential.  The complaint sought (i) a declaratory judgment that the

Prepetition Lender breached the intercreditor agreement with the Mezz Lender

("ICA") by declaring defaults without issuing a Purchase Option Notice (as defined

in the ICA) and that the Mezz Lender continues the right to purchase the Senior

Loan Documents (as defined in the ICA) as of July 16, 2020, and (ii) an award of

specific performance directing TH Holdco to sell and assign the senior loan to it

based on what the purchase price would have been as of July 16, 2020.

11.    On May 26, 2022, the Court entered an order approving the Second

Amended Disclosure Statement Relating to the Second Amended Chapter 11 Plan

filed by TH Holdco ("TH Holdco Disclosure Statement") as having adequate

information and scheduling confirmation on the TH Holdco Plan for June 30, 2022.

12.    The Debtors are preparing to file a Disclosure Statement for the

Second  Amended Chapter 11 Plan of Reorganization of 85 Flatbush RHO Mezz,

LLC, 85 Flatbush RHO Hotel, LLC and 85 Flatbush RHO Residential LLC (the

"Debtors'  Disclosure Statement") and accompanying Second Amended Chapter 11

Plan of Reorganization of 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel,

LLC and 85 Flatbush RHO Residential LLC ("Debtors' Plan").  The Debtors' Plan

proposes to admit Daryl Hagler or its his designee ("Hagler") as an additional equity

member under Mezz's Operating Agreement, dated September 19, 2019, in

exchange for providing no less than $96,775,000 to fund the Debtors' Plan.  The

Debtors intend to use the funds that Hagler will invest to make all required

payments under the Debtors' Plan, including funding the following claims: (i) the TH Holdco secured claim, (ii) fee claims, (iii) administrative claims, (iv) administrative claims, and (iv) unsecured claims to allow the Debtors to confirm the Debtors' Plan and exit from bankruptcy.

## THE TH HOLDCO PLAN CANNOT BE CONFIRMED

13.    The TH Holdco Plan cannot be confirmed on June 30, 2022 because it assumes that TH Holdco (i) properly purchased the Prepetition Lender's secured claim and (ii) can credit bid a secured claim of $90 million (or more). As a preliminary matter, there is an issue whether the transfer of the senior loan from the Prepetition Lender to the TH Holdco violated the ICA. On or about March 23, 2022, the Mezz Lender commenced an adversary proceeding against TH Holdco, as assignee of Prepetition Lender on the grounds that the Prepetition Lender breached the ICA on more than one occasion starting on July 16, 2020, when it declared a default under the senior loan documents, without issuing a Purchase Option Notice to the Mezz Lender as required under the ICA. If the Mezz Lender is successful, then it – not TH Holdco –would have had the right to purchase the senior loan from the Prepetition Lender. This issue needs to be resolved prior to any credit bidding by TH Holdco and should be resolved on an expedited basis. If TH Holdco improperly purchased the senior loan, it should not be entitled to credit bid.

14.    Even if TH Holdco is successful in its litigation with the Mezz Lender

and is entitled to credit bid, the $90,000,000 TH Holdco Credit Bid[6] is overstated and unsupported by any evidence, particularly in light of the Debtors' filed appraisal of the Hotel and Residential Property in the amount of $72 million as of February 16, 2022, where the Property is to be used as both a part multi-family residences and part hotel.  See Exhibit A to DiPietra Declaration (Appraisal). Although the Property is appraised as of February 16, 2022, given that the Debtors filed for bankruptcy protection in September 2020 as a result of low occupancy rate in the Hotel and only a few of the apartments were occupied as a result of the pandemic, there is no evidence in the record that demonstrates that the value of the Property as of the Petition Date exceeded $72,000,000.  To the extent that the Court believes that there is insufficient evidence in the record to determine the value of the Property as of the Petition Date, the Court should schedule a valuation hearing and then proceed with confirmation of both proposed plans after the value of the Property has been determined.

15.     Otherwise, as the Property has an appraised value of $72 million, TH Holdco's claim is secured only up to that amount.  *In re Chateaugay Corp.,* 150 B.R. 529, 537 (Bankr. S.D.N.Y. 1993) ("Pursuant to section 506(a) of the Code, a claim secured by collateral is a secured claim to the extent of the value of the collateral, and an unsecured claim for the balance.")  Based upon the Agreed Upon Lender

---

6 Unless otherwise expressly set forth herein, capitalized terms used but not otherwise defined have the same

Claim at \$85,158,815 and the appraised value at \$72,000,000, TH Holdco is not entitled to any post-petition interest and can only credit bid up to \$72,000,000, which is the secured portion of its claim. To the extent TH Holdco believes it has a claim in excess of \$72,000,000, it is an undersecured claim and is not entitled to post-petition interest. *Id.* ("As a general rule, the Code disallows post-petition interest on unsecured or undersecured claims."). Accordingly, while TH Holdco is authorized to credit bid the allowed amount of its claim, such credit bid cannot exceed \$72,000,000, which is the appraised value of the Property. On this basis alone, the TH Holdco Plan cannot be confirmed because it violates section 1129(a)(2) as it does not comply with the applicable provisions of title 11—specifically the right to credit bid under section 363(k) because it is seeking to credit bid more than its secured claim.

16.    Moreover, although the Property is appraised at \$72 million, there are priming tax liens on the Property. As of July 1, 2022, the real estate taxes owed on the Property aggregate \$2,188,134.80. A copy of the Property Tax Bill Quarterly Statements for the 4 separate lots that make up the Property are attached hereto as Exhibit B.

17.    Furthermore, the Debtors assert that based on the actions set forth in the Hager Declaration and the allegedly improper purchase of the senior loan, the

---

meanings ascribed to such terms in the TH Holdco Plan.

4890-8703-1589, v. 9

TH Holdco plan was not proposed in good faith in violation of section 1129(a)(3) of the Bankruptcy Code.

18. Even if the TH Holdco Plan is confirmable under section 1129 of the Bankruptcy Code, confirmation of the TH Holdco Plan should be delayed to allow for the Debtors to solicit the Debtors' Plan to creditors. The TH Holdco Plan intends on paying non-insider unsecured creditors 100% of their allowed claims in full by the first anniversary of the Effective Date of the Plan, which essentially pays holders of unsecured claims over a year. However, insider unsecured creditors will likely receive no recovery and Mezz's interests in Hotel and Residential will be cancelled. The Debtors' principals' equity will be wiped out.

19. The Debtors' Plan provides for the continuing operation of the Hotel Property and Residential Property based on an offer by Hagler to fund the Debtors' Plan that would infuse no less than $96,775,000 into Mezz, which will be used to pay all creditors 100% of their allowed claims on the Effective Date. The Debtors' Plan pays all unsecured creditors, including insiders, in full on the Effective Date versus paying only the unsecured non-insider creditors of Hotel and Residential. Additionally, Mezz's interests in Hotel and Residential will be retained versus being cancelled under the TH Holdco Plan.

20. Because the Debtors have presented a feasible plan that offers better treatment to all unsecured creditors and membership interests, confirmation of the TH Holdco Plan should be delayed to allow the Debtors the opportunity to solicit the

4890-8703-1589, v. 9

Debtors' Plan and the choice of plan should be put to the Debtors' creditors. When there are competing plan, "the best interests of creditors, as well as the Debtors, must be considered." *In re Mid-State Raceway, Inc.*, 343 B.R. 21, 31 (Bankr. N.D.N.Y. 2006). Additionally, under 1129(c) of the Bankruptcy Code, when more than one plan is confirmable, "the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm." 11 U.S.C. § 1129(c); *see also In re Landmark Park Plaza Ltd. P'ship*, 167 B.R. 752, 757 (Bankr. D. Conn. 1994) ("creditors should be given the opportunity to consider competing plans to determine what is in their best interests").

21.     The Debtors' Plan also proposes a reorganization of the Debtors' business, while the TH Holdco Plan provides for a sale of the Hotel and Residential Property. When two plans are confirmable, a plan of reorganization is preferable to a plan to liquidate. *See In re Holley Garden Apts., Ltd.*, 238 B.R. 488, 496 (Bankr. M.D. Fla. 1999) (debtor's plan that maximizes payments to creditors while rehabilitating debtor is preferable to a plan that extinguishes debtor's existence).

22.     Accordingly, because the Debtors' Plan provides for a better recovery to unsecured creditors of all three Debtors, including insider claims, and does not extinguish any of the Debtors' membership interests, the Debtors should be allowed to solicit votes from creditors on the Debtors' Plan and let creditors determine which plan should be confirmed.

        **WHEREFORE**, the Debtors request that confirmation of the TH Holdco Plan be

denied, or at least continued, and for such other relief as the Court deems proper.

**DATED:**  New York, New York
June 22, 2022

**LEECH TISHMAN ROBINSON BROG PLLC**
**Attorneys for the Debtors**
875 Third Avenue, 9th Floor
New York, New York 10022
(212) 603-6300

By: /s/ A. Mitchell Greene
A. Mitchell Greene

4890-8703-1589, v. 9