**LEECH TISHMAN ROBINSON BROG PLLC**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
*Attorneys for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

85 FLATBUSH RHO MEZZ LLC, *et al.*,[1]

                    Debtors.

------------------------------------------------------------X

Chapter 11

Case No.: 20-23280-rdd

(Jointly Administered)

# DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 363(K) DISQUALIFYING TH HOLDCO LLC FROM CREDIT BIDDING AND GRANTING RELATED RELIEF

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession, 85 Flatbush RHO Mezz, LLC ("Mezz"), 85 Flatbush RHO Hotel, LLC ("Hotel") and 85 Flatbush RHO Residential, LLC ("Residential" and with Mezz and Hotel, "Debtors"), by their proposed substitute counsel, Leech Tishman Robinson Brog PLLC., hereby seek the entry of an order (1) pursuant to 11 U.S.C. § 363(k) disqualifying TH Holdco LLC ("TH Holdco") from credit bidding at the auction sale for the Debtors' property (as defined herein) in connection with TH Holdco's proposed sale based plan or any subsequent plan proposed by the Debtors. In support of this application, the Debtors respectfully submit as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027);

{01152605.DOC;2 }

1

4873-2182-6341, v. 2

## PRELIMINARY STATEMENT

1.      The Debtors seek to disqualify TH Holdco from credit bidding at the auction sale for the Debtors' (i) 132,641 square foot, twelve story, mixed use property consisting of a 174-room boutique hotel on the first 6 floors known as the Tillary Hotel Brooklyn (the "Hotel Property"); (ii) a 58,652 square foot 64-unit luxury multi-family building (the "Residential Property"); and (iii) a 5,642 square foot parking garage ("Garage Property") located at 85 Flatbush Avenue Extension, Brooklyn, NY and 60 Duffield Street, Brooklyn, NY, Block 120, Lots 1201, 1202, 1203 and 7503 (collectively, the Hotel Property, Residential Property and Garage Property are referred to as the "Property") based on TH Holdco's and its affiliates inequitable and bad faith conduct in connection with: (a) the transfer of claim number 3 from 85 Flatbush Avenue 1 LLC ("Lender")[2] to TH Holdco which claim was filed against Hotel in the amount of $85,158,815.99; (b) transfer of claim number 1 from Lender to TH Holdco which claim was filed against Residential in the amount of $85,158,815.99; and (c) TH Holdco's acquisition of the Lender's mortgage and related loan documents. The transfer of Lender's claims and the acquisition of the Lender's mortgage and related loan documents were carried out in a manner calculated to circumvent an exclusive sales process for the Property that was approved by the Bankruptcy Court. Permitting TH Holdco to proceed with their $90,000,000[3] credit bid for the Property as contemplated by their proposed plan filed in the Debtors' cases --a sale process that was intended to benefit all parties in interest--will instead reward TH Holdco

---

and 85 Flatbush RHO Residential LLC (2261).

[2] Lender as defined herein is separate from 85 Flatbush Mezz LLC, the mezzanine lender ("Mezz Lender") who advanced a $6,000,000 loan to Mezz in September 2019 and whose loan is secured by pledges of the membership interests in Hotel and Residential.

[3] As set forth in the objection to TH Holdco's amended plan being filed simultaneously herewith, Debtors also submit that TH Holdco's $90,000,000 credit bid should not be permitted as it is for more than the value of the

{01152605.DOC;2 }

2

4873-2182-6341, v. 2

for evading that very same process while limiting creditor and equity recoveries, resulting in TH Holdco obtaining title to the Property to the detriment of the Debtors' unsecured creditors and equity holders.

2. Ohana Real Estate Investors LLC ("Ohana"), an affiliate of TH Holdco, and an investor in full-service hotels and resort communities, along with DivcoWest Real Estate Services LLC ("Divco") a multi-disciplinary investment firm, through certain of their representatives engaged in negotiations with Isaac Hager ("Hager"), one of the Debtors' representatives, through his equity interest in 85 Flatbush Extension LLC[4], to act as a plan sponsor or to fund a proposed joint venture or acquisition of the Debtors' Hotel Property and Residential Property ("Proposed Plan Transactions").

3. Specifically, Franco Famularo ("Famularo"), Chief Investment Officer of Ohana; Eddie Yu ("Yu"), Managing Director of Investments at Ohana; and Ariel Aber ("Aber"), Team Leader at DivcoWest Real Estate Services LLC, communicated directly with Hager regarding Proposed Plan Transactions. Isaac Hager's declaration in support of this application is attached hereto as <u>Exhibit A</u> and sets forth a detailed account and timeline of the various communications between Hager, Ohana and Divco.

4. In furtherance of these negotiations, Ohana and Divco obtained, from requests made directly to Hager, material (in some cases nonpublic material) which included: financial statements, rent rolls and rent roll analysis, property descriptions, pre-petition date capital structure and a guided tour of the Hotel Property, all under the guise of their presenting Hager

---

Property.
[4] Isaac Hager is the 80% owner of 85 Flatbush Extension LLC, which entity is the 50% owner of 85 RHO LLC, which entity is the 100% owner of Mezz, the 100% owner of Hotel and Residential, the Debtors herein.
{01152605.DOC;2 }

with a Proposed Plan Transaction. This information and Property access was provided by Hager based on Ohana and Divco's representations to him that a letter of intent would issue in December 2021 for a Proposed Plan Transaction that would pay creditors in full and provide a recovery for equity investors in the Debtors.

5. Instead, the information obtained was used to go behind the Debtors' back and circumvent the sale process being run by the Debtors' exclusive court retained broker, Jones Lang LaSalle ("JLL") to avoid any competitive bidding for the Property and, in January, 2022, TH Holdco, Ohana's affiliate, acquired the Lender's claims and mortgage and loan documents. TH Holdco thereafter filed its own sale plan in the Debtors' cases that allows them to credit bid for the Property and execute its "loan to own strategy" for the Property, all while avoiding payment of New York City Real Property Transfer Tax of approximately $2,500,000, applicable New York State Transfer taxes and, if applicable, Mortgage recording taxes, to the detriment of unsecured creditors and equity holders.

6. At the same time as Ohana and Divco were communicating with Hager regarding a Proposed Plan Transaction, however, in or about December 2021, OREI Advisors LP ("OREI"), an entity, who upon information and belief is an affiliate of Ohana, entered into a confidentiality agreement with Lender in connection with the acquisition of the mortgage loan encumbering the Hotel Property and Residential Property, which was eventually acquired by TH Holdco, along with Lender's claims in these bankruptcy cases. Ohana, Divco and OREI's simultaneous negotiations with Hager and the Lender, resulting in the transfer of claims by Lender to TH Holdco in January 2022, shortly after representatives of Ohana and Divco

indicated their interest in the Proposed Plan Transactions and the representation to Hager that a letter of intent would in issue in December 2021, was both misleading and deceptive.

7. Hager engaged in these communications with Divco and Ohana with the understanding that they were intended to explore a Proposed Plan Transaction in the form of either a plan sponsor arrangement or joint venture with the Debtors. Hager's communications with Famularo, Yu and Aber were based on this premise, not on the sale plan TH Holdco thereafter submitted, which plan permits TH Holdco to credit bid at an auction for the sale of the Property.

8. As a direct result of TH Holdco, Divco, Ohana, and OREI's bad faith actions, and improper "loan to own" strategy, if TH Holdco's plan is permitted to go forward and their credit bid allowed to establish if an auction for the Property will in fact be held[5], the Debtors face the prospect of losing the Property, certain unsecured creditors face the prospect of a much smaller, if any, recovery on account of their claims and equity will lose their entire investment in the Debtors. The acquisition of the first mortgage loan and the parties use of misleading and deceptive tactics should not be rewarded and requires that TH Holdco not be permitted to credit bid at the auction for the Property currently scheduled for August 5, 2022.

9. In addition, the Debtors are preparing to file a revised plan and disclosure statement which provides for payment in full to all creditors, which plan the Debtors submit should be considered before or simultaneous with the confirmation hearing on TH Holdco's plan currently scheduled for June 30, 2022. The Debtors' revised plan is premised upon an

---

[5] Debtors are preparing to file their own second amended plan of reorganization and disclosure statement for second amended plan of reorganization which Debtors submit provides for greater recovery to creditors than the TH Holdco plan as proposed.

{01152605.DOC;2 }

investment of not less than $96,775,000 which will be utilized make all required plan payments, including funding the following claims, as allowed under the Debtors' plan: (i) the TH Holdco secured claim, (ii) fee claims, (iii) administrative claims, (iv) priority claims, and (v) unsecured claims on the Effective Date of the Plan. The Debtors' second amended plan provides for greater recovery to unsecured creditors and for payment to made on the Effective Date of the plan, which the Debtors submit is better treatment than the payment structure proposed to be made by TH Holdco pursuant to its plan.

## JURISDICTION, VENUE AND STATUTORY PREDICATES FOR RELIEF

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

11. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

12. This application has been referred to this Court for consideration pursuant to Section 157 of the Judicial Code and the *Standing Order of Reference Regarding Title 11* (S.D.N.Y. Feb 1, 2012) (Preska, C.J.).

13. The statutory and other predicates for the relief sought herein are §§105, 363 and 510 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

14. Mezz is the 100% owner of Hotel and Residential. Hotel and Residential collectively own the real property and improvements thereon located at 85 Flatbush Extension, Brooklyn, New York consisting of the Hotel Property, the Residential Property and the Garage Property. The Debtors acquired the Property in September 2019.

15. In connection with the Property acquisition, on September 19, 2019, Hotel and

Residential each executed and delivered a Consolidated, Amended and Restated Note ("Note") payable to Lender in the original principal amount of $70,000,000, (the "Building Loan") which Note was secured by a Consolidated, Amended and Restated Mortgage and Security Agreement ("Mortgage") and an Assignment of Leases and Rents ("Assignment of Rents") executed and delivered on the same date, which constituted a lien on the Property which is identified as Kings County Block 120, Lot 1201, 1202 and 1203.

16. In addition to the Note and Mortgage, Mezz entered into a Mezzanine Loan Agreement, dated as of September 19, 2019, made by and between Mezz and Mezz Lender for a loan in the principal amount of $6,000,000 (the "Mezz Loan"), which Mezz Loan is evidenced by that certain Mezzanine Promissory Note, dated as of September 19, 2019, (the "Mezz Note"), and secured by that certain (i) Ownership Interests Pledge and Security Agreement for Hotel, dated as of September 19, 2019, and (ii) Ownership Interests Pledge and Security Agreement for Residential, dated as of September 19, 2019, both executed by Mezz in favor of Mezz Lender.

17. The COVID-19 pandemic and the attendant quarantine and travel restrictions along with the NYC shutdown of indoor dining beginning in March 2020 had an immediate and lasting effect on the hospitality industry as a whole and caused the Hotel to have to shut down operations for the month of April 2020. The Hotel reopened to provide shelter services from May 15, 2020 through June 30, 2020. The Hotel reopened to the public on July 15, 2020 and remained open for a period of time, but with a reduced occupancy rate, resulting in limited revenue. Since October 2021, the Hotel has been providing shelter services pursuant to a month to month lease with the New York City Department of Homeless Services which is currently its only source of income.

18. The Residential Property consists of 9 studio units, 26 one-bedroom units and 29 two-bedroom units. Only two of the 64 total units are currently occupied.

19. As a result of the prolonged impact of the COVID-19 pandemic, Mezz, Hotel and Residential have been unable to pay their current debt service obligations to their secured lenders.

20. The Mezz Lender noticed a UCC foreclosure sale of the pledged membership interests which was to take place in December 2020.

21. On December 18, 2020 (the "Petition Date"), the Debtors filed voluntary petition for relief under chapter 11 of the Bankruptcy Code.

22. The Debtors' cases are being jointly administered pursuant to an order entered on December 28, 2020 and the Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this application, no trustee, examiner or committee has been appointed.

23. As the bankruptcy cases progressed, Debtors worked closely with both Lender and the Mezz Lender to resolve their respective claims and work towards a consensual plan of reorganization. Debtors obtained authorization for the use of cash collateral, retained JLL as its broker to market and sell the Property, and were pursuing potential purchasers for the Property, which transaction would provide the means of implementation for the Debtors' anticipated plan. The Debtors filed a plan of reorganization in November 2021 which was to be implemented by a sale of the Property.

24. As set forth in the *Declaration of Isaac Hager* submitted in support of this Application, despite Ohana and Divco communicating regularly by text message and email with

Hager, from September 2021 through December 16, 2021, seeking information and materials related to the operations of the Hotel Property and Residential Property including a text on December 16, 2021 that deceptively informed Hager of a forthcoming letter of intent for a Proposed Plan Transaction, <u>no such letter of intent was ever issued</u>. Instead, on January 31, 2022, Debtors' counsel was advised by TH Holdco's counsel, that TH Holdco, an affiliate of Ohana, had secretly acquired the senior loan from Lender earlier in January 2022 without disclosing that fact to Hager, JLL or any other party in interest.

25. As this Court is well aware, on October 12, 2021, an order was entered authorizing the Debtors' retention of JLL as the Debtors' exclusive real estate advisors, effective as of September 4, 2021. JLL launched their marketing efforts on October 12, 2021, creating and establishing a data room for interested parties which was accessible upon execution of a confidentiality agreement. Sixty-nine (69) confidentiality agreements were executed and JLL conducted 14 tours of the Debtors Property. The marketing period continued through November 17, 2021. JLL's substantial effort resulted in a total of six (6) written offers. A second "best and final" round of offers narrowed down the competitive landscape to three (3) potential purchasers for the Hotel Property and Residential Property, submitting proposals for more than $80,000,000. The Debtor's negotiation of LOI's with the final three bidders at $87,500,000 came to a crashing halt upon TH Holdco's acquisition of the Lender's claim and TH Holdco made it known it would only take payment in full in an amount of not less than $95,000,000, which exceeded the $82,000,000 Lender had informally indicated to the Debtors it was prepared to accept under a

plan. The $95,000,000 is, upon information and belief, many millions of dollars more than TH Holdco paid for the Lender's position.[6]

26.     The unexpected transfer of the Lender's claims to TH Holdco and the timing of the acquisition of the Mortgage by TH Holdco so soon after Hager walked Ohana through the physical Hotel Property and Residential Property and provided detailed financial information regarding the Property to Ohana and Divco, illustrates their bad faith and evidences their motive to acquire the Property umimpeded by other potential purchasers. And in fact, shortly after acquiring the Lender's claims and Mortgage, TH Holdco filed its first plan of liquidation in these cases seeking to credit bid for the Property.

27.     Ohana's intent was clear from the contents of the TH Holdco original plan and disclosure statement wherein the plan provided for a fund of merely $200,000 to be distributed on a pro rata basis to Hotel and Residential's unsecured creditors whose claims aggregate approximately $1,800,000.  It was not until the Debtors interposed an objection to the TH Holdco original plan and disclosure statement that TH Holdco revised their plan to provide for a more substantial unsecured creditor distribution.   However, if TH Holdco's plan is confirmed, all unsecured creditors, specifically the insider unsecured creditor class of approximately $1,747,862 and the Mezz Lender do not stand to be paid at all and equity will lose their entire investment in the Property.

28.     Moreover, a redline of a confidentiality agreement between Lender and OREI originally included a provision that required OREI to exclusively negotiate with Lender and not pursue other proposals for transactions related to the loan.  This provision was eliminated in the

---

[6] To date TH has not disclosed what it paid Lender for its claim.

redline of the confidentiality agreement with a notation by OREI that OREI had already engaged in conversations with Debtors, stating "[W]e have already spoken with the Borrower. Let us know if that is an issue." See Hager Declaration, ¶18. Clearly, Lender and OREI were fully aware of the issues of the simultaneous negotiations with Ohana, Divco and Hager, and the impropriety of the eventual transaction by which TH Holdco acquired the Lender's claims and Mortgage.

29. The timing of the transfer of claim to TH Holdco, which took place after several months of email and text exchanges between the parties, and, notably, only shortly after a series of phone calls on November 30, 2021 between Ohana, Divco and Hager regarding the Proposed Plan Transaction and the supporting letter of intent is suspect at best. Debtors believe that Ohana and OREI, through TH Holdco, acquired the mortgage loan on the Hotel Property and Residential Property, in order to credit bid for the Hotel Property and Residential Property rather than proceed through JLL and participate in a competitive sales process with the principal purpose of avoiding the payment of transfer taxes and not competing on an even playing field with other interested purchasers.

30. All of these actions support the Debtors' position that Ohana is improperly seeking to acquire the Property in a loan to own strategy that should not be approved. TH Holdco's acquisition of the Mortgage loan, its proposed plan of liquidation and the contemplated credit bid and auction sale of the Property, if permitted to proceed will result in a windfall to TH Holdco to the detriment of unsecured creditors and equity. Ohana and TH Holdco should not be rewarded for evading the sale process for the Property, a process which the Court very clearly and explicitly advised on the record was to be run exclusively through JLL, all to the detriment

of unsecured creditors and equity investors in the Property.

31. The Debtors submit that there are significant questions regarding TH Holdco's acquisition of the Lender's claims and Mortgage loan on the Property without Ohana, OREI, Divco or TH ever communicating with JLL regarding their interest in the Property while simultaneously negotiating with Hager regarding a Proposed Plan Transaction. The Debtors submit that Ohana, OREI and Divco acted deceptively, in bad faith, and in a manner calculated to circumvent an exclusive sales process approved by the Bankruptcy Court and intended to benefit all parties in interest. This improper interference with the sale of the Property, significantly and negatively impacted the Debtors' intended sale and plan process for the Property.

32. As a result of TH Holdco, Ohana, OREI, and Divco acting in bad faith, the Debtors submit that TH Holdco's right to credit bid for the Property under section 363(k) at the auction sale of the Hotel Property and Residential Property should be denied.

## BASIS FOR RELIEF

33. Section 363(k) of the Bankruptcy Code provides in pertinent part as follows:

At a sale under subsection (b) of this section of property that is subject to a lien that secures and allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k).

34. As the statute provides, "[T]he right to credit bid is not absolute." *In re Aéropostale, Inc.*, 555 B.R. 369, 414 (Bankr. S.D.N.Y. 2016), *citing In re Free Lance-Star*, 512 B.R. at 808; *In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 59 (Bankr. D. Del. 2014). Indeed, Section 363(k) of the Bankruptcy Code affords courts discretion to prevent secured creditors

from credit bidding "for cause". 11 U.S.C. § 363(k); *see In re Phila. Newspapers, LLC*, 599 F.3d 298, 316 n.14 (3d Cir. 2010) ("A court may deny a lender the right to credit bid in the interest of any policy advanced by the Code, such as to ensure the success of the reorganization or to foster a competitive bidding environment."), *citing* 3 Collier on Bankruptcy 363.09[1].

35. Courts have denied or limited a right to credit bid on numerous grounds. For example, credit bidding rights have been limited in circumstances where credit bidding would chill bidding entirely, see, *Fisker Automotive.* Moreover and notably, Courts have found that cause to deny the right to credit bid exists where the secured creditor has engaged in inequitable conduct. *See*, *e.g.*, *In re Free Lance-Star Publishing Co. of Fredericksburg, VA,* 512 B.R. 798, 804-06 (Bankr. E.D. Va. 2014) (restricting a creditor's right to credit bid based on an "overly zealous loan-to-own strategy" and the negative impact its misconduct had on the auction process); *In re Aloha Airlines*, Nos. 08-00337, 1347, 2009 Bankr. LEXIS 4588, at *28-30 (Bankr. D. Haw. May 14, 2009)(denying secured creditor's right to credit bid because of secured creditor's undisclosed sponsorship of a third party's acquisition of the debtor's assets through that bid).

36. The factors present in this proceeding establish that the intention behind TH Holdco's acquisition of the Lender's claims and mortgage was to own the Property, not to be repaid on account of the loan. The negotiations with Hager were simply a pretense, misleading Hager into believing that a term sheet for a joint venture would issue in December 2021 upon which the Debtors would implement their plan. Instead, TH Holdco now stands to obtain title to the Property, certain unsecured creditors will receive little, if any distribution on account of their claims and the Debtors' equity investors will be wiped out entirely. Such inequitable conduct

should not be rewarded and this Court has the discretion to and should deny TH Holdco's right to credit bid for the Property.

37.  TH, Ohana, OREI and Divco are all entities who the Debtors believe have improperly interfered with the sale of the Property, significantly altering the plan and sale process and potentially resulting in a limited return to creditors and other parties in interest while providing a windfall to TH.

38.  For all of these reasons, the Debtors submit that TH Holdco's right to credit bid for the Property should be denied.

## NO PRIOR REQUEST

39.  No prior request for the relief sought in this Application has been made.

## RESERVATION OF RIGHTS

40.  The Debtors reserve all of their rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Application, and to object to the TH Holdco claim on any other ground.

**CONCLUSION**

41. The Debtors seek the entry of an order pursuant to 11 U.S.C. § 363(k) disqualifying TH Holdco LLC from credit bidding for the Debtors' Property and granting to the Debtors such other and further relief as is just and appropriate.

Dated: New York, New York
       June 22, 2022                       **LEECH TISHMAN ROBINSON BROG PLLC**

                                           By: /s/ A. Mitchell Greene
                                           A. Mitchell Greene
                                           875 Third Avenue
                                           New York, New York 10022
                                           (212) 603-6300
                                           Counsel for the Debtors