# EXHIBIT A

**LEECH TISHMAN ROBINSON BROG PLLC**
875 Third Avenue
New York, New York 10022
*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
In re:                                                      Chapter 11

**85 FLATBUSH RHO MEZZ LLC,**                  Case No. 20-23280 (RDD)
                                                            (Jointly Administered)

                              Debtors.
---------------------------------------------------------X

### DECLARATION IN SUPPORT OF THE DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. SECTION 363(K) DISQUALIFYING TH HOLDCO LLC FROM CREDIT BIDDING AND GRANTING RELATED RELIEF

I, Isaac Hager, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am the 80% owner of 85 Flatbush Extension LLC, which entity is the 50% owner of 85 RHO LLC, which entity is the 100% owner of 85 Flatbush RHO Mezz LLC ("Mezz") one of the Debtors herein. Mezz is the 100% owner of 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential" and with Mezz and Hotel, the "Debtors"). As a result, I am fully familiar with the facts set forth below.

2.      I submit this declaration in support of the Debtors' Application for Order Pursuant to 11 U.S.C. Section 363(k) Disqualifying TH Holdco LLC ("TH Holdco") from Credit Bidding and Granting Related Relief.

3.      I personally participated in various phone calls and communicated with representatives of Ohana Real Estate Investors LLC, ("Ohana") and DivcoWest Real Estate Services LLC ("Divco") by email and text in connection with their alleged interest as a plan sponsor or in a

1

proposed joint venture or acquisition of the Debtors' Hotel Property[1] and Residential Property.  I

communicated regularly with Ariel Aber ("Aber"), Team Leader at DivcoWest, who is

responsible for investment activities for the metropolitan New York area and with Franco

Famularo ("Famularo"), Chief Investment Officer of Ohana and Eddie Yu ("Yu"), Managing

Director of Investments at Ohana, regarding the Debtors and the Property, which

communications started in September 2021 and concluded in December 2021.

4.      Throughout this process, I was assured by Famularo that Ohana was prepared to

become a joint venture partner and I therefore responded to Ohana's information requests and

other inquiries regarding the Debtors' Property to facilitate the joint venture that would result in

a plan paying all creditors in full.

5.      Yet after numerous emails, texts, calls and two physical walkthroughs of the

Property, I was notified in January 2022, that instead of Ohana and Divco pursuing a plan

sponsor or joint venture with the Debtors, Ohana, through an affiliate, TH Holdco, had acquired

the mortgage loan and related loan documents previously held by 85 Flatbush Avenue 1 LLC

("Prepetition Lender") and the Prepetition Lender's claims in these bankruptcy cases.  I was later

advised that TH Holdco had filed its own plan of reorganization in the Debtors' cases that

provides for a sale of the Property and permits TH Holdco to credit bid at any such sale.  As the

representative of the Debtors who communicated regularly with Aber, Famularo and Yu, I was

led to believe they were interested in being a plan sponsor or pursuing a joint venture with the

Debtors.  As detailed here, I spent significant time and communicated with Aber, Famularo and

Yu between September 2021 and December 2021 at which time I was anticipating Ohana issuing

a letter of intent and deal structure regarding the plan sponsor or joint venture terms.  Instead,

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Application for Order Pursuant
to 11 U.S.C. Section 363(k) Disqualifying TH Holdco LLC from Credit Bidding and Granting Related Relief.

TH, Divco, Ohana, and OREI Advisors LP's ("OREI") bad faith actions and improper "loan to own" strategy leaves the Debtors faced with the prospect of losing the Property, certain unsecured creditors are faced with the prospect of a much smaller, if any, recovery on account of their claims and equity will lose their entire multi-million dollar investment in the Property. I believe it is critical to the Debtors' reorganization prospects, including the Debtors' newly proposed plan being filed concurrently with this declaration that provides for all creditors to be paid in full once it goes effective, and that TH Holdco be disqualified from credit bidding in connection with the August 5, 2022 auction sale of the Property.

**Summary**

6.      On December 18, 2020 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      On October 12, 2021, the Bankruptcy Court entered an order authorizing the Debtors' retention of Jones Lang LaSalle ("JLL") as the Debtors' exclusive real estate advisors, effective as of September 4, 2021, to market the Hotel Property and Residential Property. JLL launched their marketing efforts on October 12, 2021, creating and establishing a data room for interested parties accessible immediately upon their executing a confidentiality agreement. I am advised that a total of 69 confidentiality agreements were executed and JLL conducted 14 tours of the Hotel Property and Residential Property. The marketing period continued through November 17, 2021. A total of six (6) written offers were received, that were later narrowed down to three (3) potential purchasers for the Hotel Property and Residential Property, submitting proposals for the Hotel Property and Residential Property in the range of $80,000,000 to $86,500,000. The Debtors' negotiation of a letter of intent for more than the $86,500,000 bid, and thereafter final form of purchase agreement with one of the interested purchasers was

interrupted by TH Holdco's acquisition of the mortgage loan and related loan documents from the Prepetition Lender.

8.      I am further advised that on February 4, 2022, TH Holdco filed its notice of transfer of claim number 3 from the Prepetition Lender to TH Holdco which claim was filed against Hotel in the amount of $85,158,815.99 and its notice of transfer of claim number 1 from the Prepetition Lender to TH Holdco which claim was filed against Residential in the amount of $85,158,815.99.  The claim notices reference a January 28, 2022 assignment and assumption agreement between TH Holdco and Prepetition Lender.

9.      In September 2021, prior to TH Holdco acquiring the mortgage loan and related loan documents from the Prepetition Lender, I was contacted by Aber regarding the Tillary Hotel which is the Hotel Debtor's operating name.  That initial inquiry was followed by numerous texts, emails and calls between myself and Aber and in October included communications with Famularo and Yu as well my personally walking Aber through the Property on or about October 12 and walking Famularo and Yu through the property on or about October 13, 2021.  Aber introduced Ohana as Divco's "hotel partner" and throughout October, November and December 2021 I believed that Ohana and Divco were performing their due diligence to present a plan sponsor or joint venture transaction with the Debtors that would be the basis for the Debtors to propose a plan of reorganization, which plan would provide for payment in full to creditors and a return of investment to equity.

10.      Debtors believe that TH Holdco may have improperly acquired the Prepetition Lender's senior loan secured by the Hotel Property and Residential Property to facilitate Ohana's loan to own strategy for the Property, unimpeded by other potential purchasers, and as such, TH Holdco should not be permitted to credit bid at the August 5, 2022 auction sale of the Property.

11.    The following briefly summarizes the timeline of the various communications between myself and Aber, Famularo and Yu.

## COMMUNICATIONS WITH DIVCOWEST AND OHANA:

12.    In September 2021, I was contacted in a text message from Aber regarding the Tillary Hotel.

13.    Commencing on or about October 6, 2021, and continuing through December 16, 2021, I communicated regularly via text and email with Aber, providing him with copies of the "as built" plans and other information regarding the Hotel Property and Residential Property, information regarding the capital structure including the Property and mezzanine loans, rent roll and buyout status of any remaining tenants at the Residential Property, the condominium offering plan, and various other financial information regarding the Hotel Property and Residential Property.  I also walked Aber through the Hotel Property and Residential Property on or about October 12, 2021.

14.    Through my communications with Aber of DivcoWest, I was introduced by email to Famularo and Yu of Ohana, who Aber introduced as "our hotel partners, Ohana" (See October 12, 2021 email attached as Exhibit A).  I am advised that Divco is a 50% partner with Ohana.

15.    After a series of emails between us, on October 12 and 13, we scheduled a time for Famularo and Yu of Ohana to tour the Hotel Property and Residential Property and I personally walked them through the Property.  Famularo thereafter emailed me requesting me additional financial information about the Hotel Property and Residential Property and advising "we look forward to receiving the information and continuing our discussions" (see October 18, 2021 email attached as Exhibit B).

16.     I continued to communicate with Aber, Famularo and Yu through October and
November 2021.  On November 30, Aber texted me requesting I participate in a conference call
with Ohana that afternoon at 4pm.  Between 4:45 and 5:36 p.m. on November 30, I participated
in four calls totaling 35 minutes with Aber and Ohana.  One of these calls included Josh Zegen,
one of the principals of the Debtors' Prepetition Lender.

17.     Between December 6 and December 16, 2021 I continued to communicate with
Aber and provide him with additional financial information on the Hotel Property and
Residential Property.

18.     On December 9, 2021 I was copied on an email where Ohana returned a mark-up
of a confidentiality agreement with the Prepetition Lender regarding a potential acquisition of the
mortgage loan and related documents.  The agreement contained a comment from OREI that
reads: "[w]e have already spoken with the Borrower.  Let us know if that is an issue."  (See
redline confidentiality agreement attached hereto as Exhibit C).

19.     The email was sent from Woody Shattan at Ohana to Henry Bodek, a broker at
Galaxy Capital, who was the broker that connected Ohana to the Perpetition lender.  Bodek was
also the broker on the original transaction between the Debtors and the Prepetition Lender.

20.     Yet despite their negotiating and entering into a confidentiality agreement with
the Prepetition lender, on December 13, several days after the email referencing and attaching
the marked up confidentiality agreement, Aber advised via text message that Ohana was
reviewing the senior loan information and Aber was reviewing the Residential Property rent roll.
Several texts followed from Aber to me between December 13 and 16 with respect to the rent
roll.  Finally, on December 16, 2021, Aber advised me by text that Ohana would be providing
me with a letter of intent including the deal structure.  No such letter of intent was ever provided

and in January 2022 we were notified by Debtors' counsel that Ohana, through TH Holdco, had instead acquired the senior loan on the Hotel Property and Residential Property from the Prepetition Lender.

21.     Believing the parties were acting in good faith and interested in pursuing a plan sponsor arrangement or some form of joint venture, I continued to provide financial information to DivcoWest and Ohana, not realizing that they were simultaneously negotiating with the Prepetition Lender to acquire its loan position.

22.     I was assured by Aber and Famularo that they were interested in becoming a plan sponsor or proposing a joint venture with the Debtors' equity holders that would pay creditors in full, otherwise, I would not have provided them with the Debtors' financial information and would have notified counsel that the parties should communicate with the Debtors' real estate broker, JLL.  I was prepared to forward the anticipated term sheet, that I was assured was forthcoming, to JLL to complete the transaction.

**Loan Acquisition**

23.     I am advised that in January 2022, Ohana, through an affiliate, TH Holdco, acquired the Prepetition Lender's mortgage loan and related loan documents secured by the Hotel Property and Residential Property.  I am advised by Debtors' counsel that TH Holdco has since filed a plan of reorganization (which has been revised several times) that is premised on a sale of the Hotel Property and Residential Property and that TH Holdco intends to "credit bid" to acquire the Hotel Property and Residential Property.

24.     TH Holdco's proposed plan is far different from the plan sponsor or joint venture I anticipated and, if confirmed, would result in TH Holdco acquiring the Hotel Property and Residential Property without paying the Debtors' creditors in full, and with equity losing their

entire investment in the Property, a windfall in favor of TH Holdco, and which I believe shows Ohana and TH Holdco's improper "loan to own" strategy.

25.    I believe Ohana, OREI and Divco might have had ulterior motives in seeking information from me related to the Debtors on the premise that they were interested in a plan sponsor arrangement or joint venture with the Debtors rather than participating in the sale process being run by JLL.

**Conclusion**

26.    Divco, Ohana, OREI and TH Holdco's behavior, including Divco and OHana's representations to me that they were interested in a plan sponsor arrangement or joint venture, including a text from Aber on December 16, 2021 that a letter of intent with deal terms was forthcoming, is a clear showing of bad-faith negotiations, and supports the Debtors' belief that TH Holdco's acquisition of the Prepetition mortgage loan and related documents is an improper "loan to own" maneuver, executed to facilitate Ohana's ownership of the Property, unimpeded by other potential purchasers, and substantiates the Debtors' position that TH Holdco should not be permitted to credit bid at the August 5, 2022 auction sale for the Property.

27.    The Debtors believe that Ohana, OREI, Divco and TH Holdco acted in bad faith and if their plan is permitted to go forward as proposed, the Debtors face the prospect of losing the Hotel Property and Residential Property, while the Debtors' creditors will not be paid in full, and equity will lose their entire investment.

28.    Accordingly, the Debtors respectfully requests that this Court grant the Debtors'

application for an order Pursuant to 11 U.S.C. Section 363(k) Disqualifying TH Holdco from Credit

Bidding and Granting Related Relief.

**Dated:**  New York, New York
        June 22, 2022


                                    /s/ Isaac Hager
                                    **ISAAC HAGER**

# <u>EXHIBIT A</u>

-----Original Message-----
From: Ariel Aber <AAber@divcowest.com>
Sent: Tuesday, October 12, 2021 11:04 AM
To: Isaac Hager <Isaac@cornellrealty.com>; Eddie Yu <eyu@ohanare.com>
Cc: Sam Hamilton <SHamilton@divcowest.com>; Michael Provost <mprovost@divcowest.com>
Subject: Re: 85 Flatbush Ave Ext. Hotel & condos

Isaac, thank you for taking the time to tour me through 85 Flatbush today. As I mentioned I would like to introduce
you to our hotel partners Ohana, and have copied Eddie Yu from their group on this email.

Can we set up a quick call with Eddie to discuss timing (they know ASAP) and some follow up questions and
diligence requests that they may have.


Thank you, Ariel

Sent from my iPhone


> On Oct 6, 2021, at 10:21 PM, Isaac Hager <Isaac@cornellrealty.com> wrote:
>
> [EXTERNAL EMAIL]
>
> _____
> Hi Ariel,
>
> Please see attached all info and sq ft re 85 Flatbush Ave Ext. Hotel & condos.
>
> In summary:
> 174 Keys – Hotel rooms
> Ball room in basement
> Restaurant and bar on first floor
> Roof Deck on 2nd Floor
> parking garage
> and ontop of Hotel we have 64 Condos, with a separate entrance on 60 Duffield Street  + a nice residential roof
deck on top of the building
>
> Please see attached area matrix and sq ft for 85 Flatbush, Floor Plans (dropbox Link) and a picture downloaded
from google, ill get you a nice rendering from the building soon.
>
> Please Let me know what else you need on this project and ill get you
>
> Thanks
> .....................................................
> Isaac Hager
> Cornell Realty Management LLC
> 75 Huntington St.
> Brooklyn, NY 11231
> Office. 718.942.9191 x 108
> Cell. 917.497.2424
>
> Floor Plans: https://www.dropbox.com/sh/idkt8s9by353tgq/AACKsNyvHYDWI_cGwxDIWUL7a/13)%20As-
built%20Plans-

Specifications/Drawings%20PDF?dl=0&subfolder_nav_tracking=1<https://www.dropbox.com/sh/idkt8s9by353tgq/
AACKsNyvHYDWI_cGwxDIWUL7a/13)%20As-built%20Plans-
Specifications/Drawings%20PDF?dl=0&subfolder_nav_tracking=1>
>

This message may contain confidential or privileged information and is intended only for the party named above. If you are not the addressee, you must not use, copy, disclose or take any action based on the information herein. Please notify the sender immediately by e-mail if you have received this message in error and delete this message from your system. This message is for information purposes only and is not an offer to sell or a solicitation of an offer to buy any security. Any performance information provided is estimated and unaudited; no representation or warranty is made to, and no reliance should be placed on, the fairness, accuracy, completeness or timeliness of the information contained herein. Any investment strategy entered into for potential profit also involves risk of loss. For more information regarding how we collect and process personal information, please visit our Privacy Policy. <https://www.divcowest.com/privacy-policy.php>

--

.....................................................

**Isaac Hager**

*Cornell Realty Management LLC*

75 Huntington St.

Brooklyn, NY 11231

Office. 718.942.9191 x 108

Cell. 917.497.2424

--

.....................................................

**Isaac Hager**

*Cornell Realty Management LLC*

75 Huntington St.

Brooklyn, NY 11231

Office. 718.942.9191 x 108

Cell. 917.497.2424

--

....................................................

**Isaac Hager**

*Cornell Realty Management LLC*

75 Huntington St.

Brooklyn, NY 11231

Office. 718.942.9191 x 108

Cell. 917.497.2424

--

# **<u>EXHIBIT B</u>**

On Mon, Oct 18, 2021 at 12:08 PM Franco Famularo <FFamularo@ohanare.com> wrote:

No problem.  Thanks very much.  We look forward to receiving the information and continuing our discussions.  Best,
Franco

**Franco Famularo**

(404) 667-6297 (Office/Cell)

**From:** Isaac Hager <Isaac@cornellrealty.com>
**Sent:** Monday, October 18, 2021 12:06 PM
**To:** Franco Famularo <FFamularo@ohanare.com>
**Cc:** Ariel Aber <AAber@divcowest.com>; Eddie Yu <eyu@ohanare.com>
**Subject:** Re: 85 Flatbush Ave Ext. Hotel & condos

Hi Franco,

I really apologize i didn't get back till now, i just saw this friday afternoon, i am going to talk to my BK attorney now re
all the creditors claims and ill get back to you with the info soon

Thanks

Isaac

On Thu, Oct 14, 2021 at 9:03 AM Franco Famularo <FFamularo@ohanare.com> wrote:

Isaac, good seeing you yesterday and thanks for making time.  When you get a chance, can you send us the detail
behind:

- The outstanding creditor claims (principal balance, accrued regular interest, accrued default interest, and vendors)

- What you think you can buy / resolve each claim for

- The cash assets you referenced ($1.5mm in a reserve account?)

Thanks,

Franco

**Franco Famularo**

(404) 667-6297 (Office/Cell)

---

**From:** Isaac Hager <Isaac@cornellrealty.com>
**Sent:** Tuesday, October 12, 2021 11:54 AM
**To:** Franco Famularo <FFamularo@ohanare.com>
**Cc:** Ariel Aber <AAber@divcowest.com>; Eddie Yu <eyu@ohanare.com>; Michael Provost <mprovost@divcowest.com>; Sam Hamilton <SHamilton@divcowest.com>
**Subject:** Re: 85 Flatbush Ave Ext. Hotel & condos

Let's do tomorrow after 5 works better

On Tue, Oct 12, 2021 at 2:49 PM Franco Famularo <FFamularo@ohanare.com> wrote:

Hi Isaac, nice to connect with you, and appreciate you accommodating a tour on short notice.  I can do after 5pm tomorrow or before 11am on Thursday.  Do you prefer one over the other?

**Franco Famularo**

(404) 667-6297 (Office/Cell)

**From:** Isaac Hager <Isaac@cornellrealty.com>
**Sent:** Tuesday, October 12, 2021 11:37 AM
**To:** Eddie Yu <eyu@ohanare.com>
**Cc:** Ariel Aber <AAber@divcowest.com>; Sam Hamilton <SHamilton@divcowest.com>; Michael Provost <mprovost@divcowest.com>; Franco Famularo <FFamularo@ohanare.com>
**Subject:** Re: 85 Flatbush Ave Ext. Hotel & condos

Hi Eddie,

Thanks for your email, Ariel talks highly about you. We can meet up whatever time is best for you, if you wanna swing by in the next hour or so or we can do tomorrow afternoon, whatever works for you, here is my cell 917-497-2424, lets connect looking fwd.

Thanks

.....................................................

**Isaac Hager**

*Cornell Realty Management LLC*

75 Huntington St.

Brooklyn, NY 11231

Office. 718.942.9191 x 108

Cell. 917.497.2424

On Tue, Oct 12, 2021 at 2:08 PM Eddie Yu <eyu@ohanare.com> wrote:

Thanks, Ariel. Nice to meet you Isaac. Ariel gave me an overview of the situation and it would be great to connect and figure out what can be done here.

Also including my colleague Franco as well. Would you able to arrange for a tour tomorrow afternoon or before 11am on Thursday? Franco may be in the area already and can swing by in that window.

We'll prepare an initial diligence request list and then plan on a call later this week, if that works.

Eddie Yu
(914) 400-4970 (Office/Cell)

# EXHIBIT C

---------- Forwarded message ---------
From: **Woody Shattan** <wshattan@ohanare.com>
Date: Thu, Dec 9, 2021, 9:26 PM
Subject: RE: 85 Flatbush
To: Henry Bodek <hbodek@glxcapital.com>
Cc: Franco Famularo <FFamularo@ohanare.com>, Ariel Aber <AAber@divcowest.com>, Isaac Hager
<isaac@cornellrealty.com>, Eddie Yu <eyu@ohanare.com>


Henry,


Please see attached for our redline of the NDA. Happy to discuss - not trying to be difficult on any of these points, but
just trying to navigate the current situation.


Thanks,


**Woody Shattan**

(917) 280-3095 (Office/Cell)

---

**From:** Henry Bodek <hbodek@glxcapital.com>
**Sent:** Thursday, December 9, 2021 10:58 AM
**To:** Franco Famularo <FFamularo@ohanare.com>; Ariel Aber <AAber@divcowest.com>; Isaac Hager

<isaac@cornellrealty.com>

**Subject:** Fwd: 85 Flatbush

Franco and Ariel,

Pls sign the NDA and we can get you all the info.

Hb

### CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (this "**Agreement**") is dated as of December 9——, 2021, by and between 85 FLATBUSH AVENUE 1 LLC, a Delaware limited liability company having an address at c/o Madison Realty Capital, 520 Madison Avenue, Suite 3501, New York, New York 10022 (together with its affiliates and subsidiaries collectively hereinafter referred to as "**Madison**"), and ————————————————, OREI Advisors LP, with a principal place of business located at ————————1991 Broadway, Suite 100, Redwood City, CA 94063 ("**Recipient**") in connection with the possible acquisition of that certain mortgage loan held by Madison encumbering or related to 85 Flatbush Avenue Extension, Condominium Commercial Unit and Hotel Unit, and Condominium Residential Unit, Brooklyn, New York 11201 (hereinafter referred to as the "**Loan**").

Madison is or may be furnishing you, the undersigned, and/or certain of your affiliates and agents with certain information relating to the Loan, including analyses, compilations, studies, pleadings, documents and records (collectively, the "**Information**"). As a condition to the receipt of the Information, you agree to treat confidentially any Information. Wheresoever in this Agreement reference is made to "you", such term is intended to mean Recipient and its affiliates and your agents.

The term "Information" does not include information that (a) was or becomes generally available to the public other than as a result of a disclosure by you, (b) was or becomes available to you on a non-confidential basis from a source other than Madison or its representatives; provided that such source is not to your knowledge bound by a confidentiality agreement with Madison or otherwise prohibited from transmitting the information to you by a contractual, legal or fiduciary obligation, or (c) was within your possession prior to its being furnished to you by or on behalf of Madison; provided that the source of such information was not known by you to be bound by a confidentiality agreement with Madison or to be otherwise prohibited from transmitting the information to you by a contractual, legal or fiduciary obligation.

You hereby agree that the Information shall be used solely for the purpose of evaluating a acquisition of the Loan and that the Information shall be kept confidential by you. You will not disclose or distribute, either orally or in writing, or otherwise make available, any of the Information, except to your partners, members, directors, officers, employees, advisors or representatives (collectively, "**Representatives**") who need to know the Information for the purpose described above, and provided that (a) such Representatives shall be informed by you of the confidential nature of the Information and , (b) you shall cause inform such Representatives to treat the Information confidentially , (c) you shall maintain a list of those persons to whom the Information has been disclosed, which list shall be presented to Madison upon request, and (d) under all circumstances, you shall be responsible for any breach of this Agreement by any of your Representatives.

If you are required by applicable law to disclose any of the Information, you shall provide Madison with prompt notice of any request or requirement so that Madison may seek an appropriate protective order should it desire to do so. If in the absence of a protective order you

1

are legally obligated to disclose any of the Information, you may disclose such Information only to the extent so obligated.

Without Madison's prior written consent, you will not disclose to any person, other than your Representatives, either the fact that discussions or negotiations are taking place concerning an acquisition the Loan or any of the terms, conditions or other facts with respect to any such possible relationship, including the status thereof,  The term "person" as used in this Agreement shall be interpreted broadly and shall include, without limitation, any corporation, limited liability company, partnership, trust or individual.  ~~For the avoidance of doubt it is expressly prohibited to communicate with the borrower or guarantors in connection with the Loan.~~

~~Without Madison's prior written consent, you will not communicate with the borrower, guarantor and any representatives and/or affiliates of such borrower and/or guarantor with respect to the Loan.~~

~~All communications related to the Information or the Loan will be solely through Madison. You hereby agree that you shall not circumvent Madison by directly or indirectly seeking to execute a transaction relating to the Loan without the knowledge or express written consent of Madison. You hereby agree that you will not, and will cause any other person acting on your behalf not to, directly or indirectly, solicit or pursue any offers, inquiries or proposals for, or entertain any offer, inquiry or proposal to enter into, a transaction related to the Loan.~~

> **Commented [WS1]:**  We have already spoken with the Borrower. Let us know if that is an issue

The delivery to the undersigned of this Agreement and/or the Information shall under no circumstances be construed as a prospectus, advertisement or offer to acquire the Loan, nor shall any public offering of securities be deemed made thereby.

Madison makes no representation or warranty, express or implied, as to the accuracy or completeness of any of the Information and no legal liability of Madison is assumed or to be implied with respect thereto. The Information is provided for general reference purposes only and is based upon assumptions relating to the general economy, competition and other factors beyond the control of Madison and, therefore, is subject to material variation. You agree that neither Madison nor any of its affiliates, subsidiaries, officers, directors, employees or representatives, shall have any liability to you resulting from the use of the Information by you.

This Agreement and the provisions thereof shall be in effect for a period of one (1) year following the date hereof.  If you do not acquire the Loan for any reason, or if Madison elects to terminate access to the Information or if this Agreement is otherwise terminated, you will promptly (i) return or destroy all original Information provided to you, and destroy all other Information (including any summaries, abstracts, compilations, or other analyses made based on the Information), (ii) cause all persons to whom you have provided any Information to return any original Information to Madison, and destroy all other Information (including any summaries, abstracts, compilations, or other analyses made based on the Information) to the best of our knowledge~~, and (iii) certify to Madison that all original Information has been returned to Madison and all other Information (including any summaries, abstracts, compilations, or other analyses made based on the Information) has to the best of our knowledge been destroyed~~. Notwithstanding the aforementioned, all parties may retain one copy of the Information for legal

2

and customary record retention purposes.   ~~Further, you agree not to incorporate any of the Information into any retrieval system, whether electronic, mechanical or otherwise.~~   Madison may elect, at any time, to terminate further access by you to the Information.  No such termination will affect your obligations hereunder or those of your members, directors, officers, employees, or affiliates, all of which obligations shall continue in effect following any such termination.

Madison shall have no legal commitment or obligation to any person reviewing the Information unless and until a written agreement has been fully executed, delivered and approved by Madison.  If there is any legal action or proceeding between Madison and you arising from or based on this Agreement, the unsuccessful party to such action or proceeding shall pay to the prevailing party all costs and expenses, without limitation, including reasonable attorneys' fees, incurred by such prevailing party in such action or proceeding and in any appeal in connection therewith. If such prevailing party recovers a judgment in any such action, proceeding or appeal, such costs, expenses and attorneys' fees shall be included in and as a part of such judgment.

The undersigned also hereby acknowledges that it has not dealt with any broker regarding the acquisition of the Loan, other than Madison's advisor (Galaxy Capital), or if it has, the undersigned hereby agrees to indemnify Madison (and its respective members, affiliates, subsidiaries, officers, directors, employees and representatives) against any compensation, liability or expense, arising from claims by any other broker or other party the undersigned had dealings with in connection with a purchase of the Loan.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The undersigned hereby irrevocably (i) submits now and in the future to the jurisdiction of the courts of competent jurisdiction in the City, County and State of New York, (ii) agrees that any action relating to this Agreement may be heard in such court, (iii) waives the defense of inconvenient forum with respect to such action, and (iv) agrees to be subject to suit, service of legal process of such courts in connection with any action relating to this Agreement.

You hereby acknowledge and agree that due to the unique nature of the Information there may be no adequate remedy at law for any breach of your obligations hereunder, and that any such breach may allow yourself or third parties to cause irreparable harm to Madison.  Therefore, upon any actual or threatened breach Madison shall be entitled to appropriate equitable relief in addition to whatever remedies it might have at law, and you shall indemnify Madison from and against any loss, cost or harm (including but not limited to reasonable attorneys' fees) in connection with any breach or enforcement of your obligations hereunder or the unauthorized use or release of any Information.  You will notify Madison in writing immediately upon the occurrence of any such unauthorized release or other breach of which you are aware.

This Agreement may be executed in one or more counterparts and delivered by facsimile or email transmission with original signatures to follow, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

*[Signature Page Follows]*

3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**85 FLATBUSH AVENUE 1 LLC,**
a Delaware limited liability company

By_____
Name:
Title:

**OREI Advisors LP**

By_____
Name: Franco Famularo
Title: Authorized Signatory

*[Signature Page]*