Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800
Email:  lauren.macksoud@dentons.com
             sarah.schrag@dentons.com

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>85 FLATBUSH RHO MEZZ LLC, *et al.*,[1]<br><br>Debtors | Case No. 20-23280 (RDD)<br>Chapter 11<br><br>(Jointly Administered) |

**TH HOLDCO LLC'S OBJECTION TO DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9006(C) FOR ORDER SHORTENING NOTICE ON DEBTORS' MOTION FOR ORDER (I) PRELIMINARILY APPROVING DISCLOSURE STATEMENT AND (II) SCHEDULING HEARING ON THE DEBTORS' MOTION FOR AN ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING DEBTORS' PLAN OF REORGANIZATION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

US_ACTIVE\121794317\V-5

TH Holdco LLC ("TH Holdco")[2] hereby files this Objection to *Debtors' Motion Pursuant to Bankruptcy Rule 9006(c) for Order Shortening Notice on Debtor's Motion for Order (I) Preliminarily Approving Disclosure Statement and (II) Scheduling Hearing on the Debtors' Motion for an Order Approving Disclosure Statement and Confirming Debtor's Plan of Reorganization* [Docket No. 243] (the "Motion to Shorten"), and requests that the Court (i) deny the Motion to Shorten and (ii) not provisionally approve the Disclosure Statement related to a Plan which is not confirmable on its face.

## INTRODUCTION

1. On the afternoon of June 23, 2022, the Debtors filed an amended plan [Docket No. 240] (the "Debtors' Amended Plan") and amended disclosure statement [Docket No. 241] (the "Debtors' Amended Disclosure Statement"). Later on that same day, the Debtors filed a *Motion for an Order (I) Preliminarily Approving the Disclosure Statement and (II) Scheduling Hearing on the Debtors' Motion for an Order Approving Disclosure Statement and Confirming Debtors' Plan of Reorganization* [Docket No. 242] (the "Debtors' Combined Hearing Motion").

2. Through the Motion to Shorten, the Debtors seek an order shortening notice on the Debtors' Combined Hearing Motion, and for approval of the Debtors' Amended Disclosure Statement and confirmation of the Debtors' Amended Plan. The Debtors request to have the Combined Hearing Motion and Motion to Shorten heard on the morning of June 30, 2022, the same day as the confirmation hearing on the TH Holdco Plan (which was timely filed on May 26, 2022, more than one month ago).

3. The Motion to Shorten is nothing more than (another) eleventh hour attempted end run around proper notice of a disclosure statement and solicitation of a plan. Once again, the Debtors demonstrate a blatant disrespect for established bankruptcy rules and procedures, which provide creditors and parties in interest with specific periods of notice before relief that affects

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Docket No. 211] (as the same has been or maybe amended, modified, supplemented, or restated, the "TH Holdco Plan").

US_ACTIVE\121794317\V-5

parties' rights can be obtained. The Debtors have not established cause sufficient to justify the extraordinary relief of holding a combined disclosure statement approval and confirmation hearing on a mere seven (7) days' notice. Nor have they established that the plan construct, which denies creditors the opportunity to vote, is appropriate. The Debtors present sparse details surrounding the funding purported to be provided by Daryl Hagler[3], and it is questionable whether such funding is in fact within his control. Such information, however, is ultimately irrelevant, as the Debtors' Amended Plan and Amended Disclosure Statement are fatally flawed and patently unconfirmable. As such, the Debtors' Combined Hearing Motion and Motion to Shorten notice to a mere seven (7) days should be denied, and the confirmation hearing on the TH Holdco Plan should proceed as scheduled.

## ARGUMENT

4.     Bankruptcy Rule 9006(c) requires that the Court find that cause exists to support granting an order to hear a motion on shortened time. Orders shortening time are the exception, not the rule. Indeed, where, as here "the cause for expedited hearing is one of the movant's own making", cause under Rule 9006(e) is not shown. *In re Schindler*, No. 09-71199-AST, 2011 WL 1258531, at *2–3 (Bankr. E.D.N.Y. Mar. 31, 2011).

5.     Further, there are two general bases on which a disclosure statement should not be approved: (i) the underlying plan is patently unconfirmable; and (ii) the disclosure statement does not contain adequate information. *See* 11 U.S.C. § 1125(a)(1); *In re Quigley Co.*, 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) (stating that courts will not approve a disclosure statement that describes a "patently unconfirmable" plan, which is on its face, incapable of confirmation as a matter of law).

6.     It is black letter law where a disclosure statement describes a plan that cannot be confirmed, the disclosure statement cannot be approved regardless of the amount of disclosure it contains. *See, e.g.*, *In re 18 RVC, LLC*, 485 B.R. 492, 495 (Bankr. E.D.N.Y. 2012) ("a bankruptcy

---

[3] *See Declaration of Daryl Hagler in Support of Debtors' Objection to Confirmation of Second Amended Chapter 11 Plan.* [Docket No. 213].

court should not approve a disclosure statement if the proposed plan which it describes is incapable of confirmation.") (citing *In re GSC, Inc.*, 453 B.R. 132, 157 n. 27 (Bankr.S.D.N.Y.2011); *Quigley*, 377 B.R. at 115); *see also In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012). Courts may deny approval of disclosure statements where the plans they describe are "patently unconfirmable." *See, e.g.*, *In re Moshe*, 567 B.R. 438, 447 (Bankr. E.D.N.Y. 2017) (denying approval of disclosure statement where plan failed to provide for appropriate rate of interest on cure payments). "A plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Am. Capital Equip.*, LLC, 688 F.3d at 154–55. Soliciting votes on an unconfirmable plan "would be futile" (*Quigley*, 377 B.R. at 116), and it is therefore "incumbent upon the court to decline approval of the disclosure statement and prevent diminution of the estate" (*In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986)).

7.    Here, the Debtors' Amended Plan is not confirmable because (i) the Debtors cannot cap the TH Holdco Secured Claim, (ii) the market test is the best evidence of valuation, and (iii) the Debtors are bound by the terms of the Final Cash Collateral Order (defined below). Further, the Debtors' Amended Plan violates the Intercreditor Agreement.[4]

## I. The Amended Plan Does Not Provide For Sufficient Funding and is Thus Patently Unconfirmable

8.    The Debtors' Amended Plan attempts to cap the amount of the TH Holdco Secured Claim, and attempts to divert value to subordinated creditors in violation of the Intercreditor Agreement and the absolute priority rule. Such a plan is not confirmable. For these reasons, and as more specifically set forth below, the Debtors' efforts should be rejected.

---

[4] TH Holdco reserves the right to raise additional or expanded objections to the Debtors' latest Plan and Disclosure Statement which were just filed on the afternoon of June 23, 2022.

4

A. <u>The Debtors Cannot Cap TH Holdco's Secured Claim.</u>

9.     The value of the collateral during the pendency of a bankruptcy inures to the benefit of the lienholder. Here, that creditor is TH Holdco.

10.    In *Matter of T-H New Orleans Ltd. P'ship*, for purposes of valuing a creditor's allowed claim under § 506(b) of the Bankruptcy Code, the Fifth Circuit stated that "any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, and not to the debtor." 116 F.3d 790, 798 (5th Cir. 1997); *see also Qmect, Inc. v. Burlingame Cap. Partners II, L.P.*, 373 B.R. 682, 688 (N.D. Cal. 2007) (affirming bankruptcy court decision finding that secured lenders' pre-petition collateral could increase in value and increase could inure to lenders' benefit); *In re Bloomingdale Partners*, 160 B.R. 93, 97 (Bankr. N.D. Ill. 1993) (citing *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)) ("Since *Dewsnup* mandates that increases in the value of collateral accrue to the benefit of the secured creditor in chapter 7, the best interest test entitles the creditor in chapter 11 to at least the present value of its secured claim, as increased during the pendency of the case.").

11.    As such, all value from the collateral would flow to TH Holdco until TH Holdco receives its full contractual amount, including accrued and accruing post-petition interest and attorneys' fees, which exceed $112 million. The entire funding for the Debtors' Amended Plan (if such funding is legitimate) is under $97 million, which is inadequate. This funding does not contain sufficient amounts to pay the TH Holdco Secured Claim in full, much less all other amounts the TH Holdco Plan proposes to pay (including Chapter 11 administrative expenses and priority claims which must be paid in full to have a confirmable plan).

12.    Because the Debtors lack sufficient funding to confirm the Amended Plan, the Amended Plan is patently unconfirmable. The only assets of value belonging to the Hotel Estate are the Hotel real property and its cash on hand (which is proceeds of the DHS rent), both of which are encumbered by TH Holdco. The only asset of the Residential Estate is the real property, which is encumbered by TH Holdco. The Mezz Estate is a holding company and has no assets of value unless the Hotel or Residential Estates are solvent. In other words, the Debtors' only asset is the

Property. And the Property is fully encumbered by TH Holdco's liens and claims, which exceed $112 million.

13. As such, the Court should not approve the Debtors' Amended Disclosure Statement on shortened notice, or otherwise, because the Debtors' Amended Plan is not confirmable.

B. <u>The Market Test is the Best Evidence of Valuation.</u>

14. The Debtors have submitted the *Declaration of Jon DiPietra in Support of the Debtors' Objection to Confirmation of the Second Amended Chapter 11 Plan Filed by Creditor TH Holdco*. [Docket No. 230]. The Declaration attaches an appraisal report, dated June 22, 2022 purporting to show the current value of the property. Any value suggested by the appraisal would not trump the value establish by the market test currently being conducted pursuant to the TH Holdco Plan.

15. In *203 N. Lasalle St. Partnership*, the United States Supreme Court made clear that a market test is the best evidence of value. *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 119 S. Ct. 1411 (1999). The auction run by Jones Long LaSalle, the Debtors' Court approved broker ("<u>JLL</u>") – as provided for in the TH Holdco Plan – provides that final market test. TH Holdco's current bid provides $94 million of value. The proposed funding from Mr. Hagler (if it is real) suggests he believes the collateral is worth at least $96.75 million, given Mr. Hagler states he is willing to fund that much for equity in the Reorganized Debtors.[5] Given the nature and value of TH Holdco's claims against the estates, all of the value to be provided by Mr. Hagler would go solely to TH Holdco on account of its liens and claims. Mr. Hagler's proposed funding leaves nothing available to pay the Debtors' remaining administrative expense claims, priority claims, or Class 6 and Class 8 unsecured creditor claims.

16. Likewise, the Debtors state in their latest Amended Disclosure Statement (at electronic page 9) that the original JLL marketing process "continued through November 17,

---

[5] It is unclear what percentage of ownership in the reorganized Debtor Mr. Hagler would receive for his $96.75 million alleged funding. It is also unclear whether Mr. Hagler is the proper owner of the funds identified on the Wilmington Trust account statement [filed at Docket No. 231-2]. This statement reflects the operating account for a business called Centers Plan for Healthy Living LLC. Mr. Hagler is not listed as an owner of that business, per the business's website.

2021.[6] A total of six (6) written offers were received, that were later narrowed down to three (3) potential purchasers for the Hotel Property and the Residential Property ranging from $80,000,000 to $86,500,000." These offers, and the current TH Holdco offer, are stronger market evidence of current values of the Property, as opposed to a third party appraisal from an expert witness recently hired by the Debtors (or their insiders) which allegedly values the Properties at $72 million.[7]

    C. <u>The Debtors and All Parties are Bound by the Final Cash Collateral Order.</u>

    17.    On March 29, 2021, this Court entered the *Final Consent Order Authorizing (I) Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief* [Docket No. 64] (the "<u>Final Cash Collateral Order</u>"), which at paragraph 14, provides that "the Debtors and the Lender agree that as of the Petition Date, the principal amount of the Lender's claims against the estates of the Debtors is $85,158,815.99 (the "<u>Lender Claim</u>")." Namely, the Final Cash Collateral Order lists the components of the Lender Claim, which clearly include default interest, and provides that the Lender Claim will "continue to accrue interest and additional charges pursuant to and under the Loan Documents."

    18.    The Final Cash Collateral Order is final, non-appealable, and binding on the Debtors and all other parties. Among other things, the Final Cash Collateral Order provides as follows:

    a. "Debtors acknowledge and agree that the Loan Documents are legal, valid, and binding obligations of the Debtors, and that the Loan Documents are enforceable against the Debtors in accordance with their respective terms."

    b. "Debtors acknowledge and agree that the Lender has duly perfected, valid, non-avoidable, first priority liens on and security interests in its pre-petition collateral . . . to secure the obligations under the Loan Documents."

---

[6] Notably, these bids were received and negotiated before TH Holdco bought the senior debt and it appears the JLL marketing process was complete well before January 28, 2022.

[7] If the Court does decide to consider the $72 million value as probative of the value of the property, TH Holdco will present testimony that the valuation is seriously flawed and not persuasive. TH Holdco also reserves all other rights and remedies, including, without limitation, its rights to make a § 1111(b) election if the value of its Collateral is determined to be less than the amount of its debt. Per the Final Cash Collateral Order, TH Holdco has a superpriority administrative expense claim for any diminution in value of its liens on its collateral.

    c. "Debtors acknowledge and agree that the Pre-Petition Obligations, Pre-Petition Liens, and Loan Documents are not subject to counterclaims, rights of offset, claims, or other defenses of any kind."

    d. "Debtors acknowledge and agree that all cash, accounts receivable, and other proceeds in the Debtors custody, possession, or control as of the Petition Date, and all cash, accounts receivable, and other proceeds coming into the Debtors' possession or control after the Petition Date, constitute Cash Collateral in which the Lender has an interest."

    e. "Debtors and the Lender have agreed to the Debtors' use of Cash Collateral to operate their respective property and to provide adequate protection to the Lender in accordance with the terms set forth subject to the Bankruptcy Court's approval and entry of this Final Order."

    . . .

    h. "Lender is granted, and the Debtors hereby grant to the Lender, first priority, valid, and perfected replacement liens on and security interests in all the Debtors' now existing and hereafter acquired real and personal property and assets and all cash and non-cash proceeds thereof (collectively, 'Post-Petition Collateral'), which first priority, valid, and perfected replacement liens and security interests shall be deemed to be effective nunc pro tunc from the Petition Date without further action by the Lender, except that the replacement liens and security interests shall not attach to any claims or causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549 or its proceeds, excluding recoveries under 11 U.S.C. § 549 on account of Post-Petition Collateral. Any Diminution in the value of the valid, perfected and enforceable Pre-Petition Liens in favor of the Lender securing the Pre-Prepetition Obligations caused by the Debtors' use of the Lender's Cash Collateral that is not compensated by Post-Petition Collateral shall constitute a cost and expense of administration in the bankruptcy cases in accordance with § 503(b)(1) of the Bankruptcy Code and shall have a superpriority status under § 507(b) of the Bankruptcy Code and thus will be paid ahead of all other costs and expenses of administration of the bankruptcy cases, including, without limitation, those specified in §§ 503(b) or 507(a) of the Bankruptcy Code; subject only to: (i) the fees of the United States Trustee under 28 U.S.C. § 1930, statutory interest thereon, and fees of the Clerk of the Court; (ii) all accrued and unpaid claims for unpaid fees, costs, and expenses incurred at any time before the Termination Date (as defined below), payable to estate professionals, retained by the Debtors whose retention is approved by the Bankruptcy Court pursuant to §§ 327 or 328 of the Bankruptcy Code ("Professional Persons," and the fees, costs, and expenses of Professional Persons, the "Professional Fees"), to the extent that such Professional Fees are allowed by the Bankruptcy Court at any time (i.e., before or after the Termination Date) on an interim or final basis; (iii) all Professional fees incurred on or after the Termination Date by Professional Personals and allowed by the Bankruptcy Court at any time whether before or after the Termination Date whether

8

        allowed by an interim order or otherwise, not to exceed $75,000 (collectively, items (ii) and (iii) are hereinafter referred to as the 'Carve-Out') and (iv) no more than $15,000 for the commissions, fees and expenses of any Chapter 7 trustee appointed in these cases, provided, however, that none of those funds may be used to challenge or object to Lender's claims and liens, and provided further, that Lender has no liability for, or obligation to advance such funds. For the avoidance of doubt, the Carve Out will be senior to any claims arising under or relating to and liens securing the Lender's Collateral including, without limitation, any administrative or superpriority claims and all forms of adequate protection liens or security interests."

    i. "The postpetition replacement liens and security interests granted to the Lender pursuant to this Final Order are automatically perfected by operation of law upon the Court's entry of this Final Order nunc pro tunc from the Petition Date without further action by the Lender. The Lender may, but shall not be required to, file any Uniform Commercial Code financing statements and record any additional documents in any jurisdiction or take any other or further action to validate or perfect the security interests and liens granted to it pursuant to and in accordance with this Final Order. If the Lender deems it necessary or convenient, the Debtors shall execute and deliver to the Lender, or shall have executed and delivered to the Lender, all in form and substance reasonably satisfactory to the Lender, any other agreements, instruments, documents, or writings to evidence the terms of this Final Order, the use of Cash Collateral, and/or the Lender's liens and security interests, and the Lender may request from time to time the execution and delivery of Uniform Commercial Code financing statements, continuation statements, amendments to financing statements, and any other agreements, instruments, and/or documents relating to the use of Cash Collateral and/or the security interests and liens granted hereunder. The Debtors hereby authorize the execution and filing of all financing statements, amendments, continuations, and other agreements, instruments, and documents desired by the Lender or the perfection of the security interests and liens granted hereunder, and Debtors agree to and the Lender shall receive a lifting of the automatic stay for the limited purpose of carrying out the purposes of this Section. Furthermore, the Debtors irrevocably authorize the filing of a carbon, photographic or other reproduction of this Final Order as a financing statement and agree that such filing is sufficient as a financing statement subject to applicable state law."

    j. "All the liens on and security interests in the Post-Petition Collateral granted under this agreement are deemed to be effective on and after the Petition Date, will continue in full force and effect, and will survive the Termination Date . . ."

    k. "The Lender has provided the Debtors with as payoff statement containing the amounts set forth in this paragraph. The Lender represents that the calculations set forth on the payoff statement are true and correct. The Debtors and the Lender agree that as of Petition Date, the principal amount of the Lender's claims against the

9

estates of the Debtors is $85,158,815.99 ('Lender Claim'), which claim consists of these components:

Unpaid principal balance $70,000,000.00
Contract interest to 2/29/20 $496,222.22
Default Interest to 12/18/20 $13,673,333.32
(less) Interest Paid $(1,201.91)
Protective Advance for Taxes $247,849.21
Interest on Protective Advance $25,115.39
Legal Fees $28,605.00
Late Fee $24,751.00
Entity Fees $2,641.74
Exit Fee $525,000.00
Servicing Fee $136,500.00

The Lender's Claim will continue to accrue interest and additional charges pursuant to and under the Loan Documents, subject to the next sentence. The extent to which the Lender Claim is a secured claim will be determined by the Court based on the value of the Lender's Collateral, and is subject to § 506(a) and (b) of the Bankruptcy Code, and to applicable non-bankruptcy law, provided however that the Debtor acknowledges and agrees that the Lender has a valid and enforceable lien on the Property."

m. "This Final Order: (a) shall not limit the amount of the Lender's Claim against the Debtors and the guarantor, as well as any portion of that claim for interest, fees, costs, and expenses; and (b) does not constitute a waiver of any rights of the Lender under the Bankruptcy Code or otherwise including any rights for adequate protection, relief from the stay, and to object to a plan and disclosure statement, except as specifically provided otherwise here."

n. "The Debtors acknowledge that the Loan Documents (as modified and supplemented here and to the extent enforceable under the Bankruptcy Code) will constitute valid, binding, and enforceable obligations of the Debtors in accordance with their terms. The Debtors are authorized to do and perform all acts, to make, execute, and deliver all agreements, assignments, instruments, and documents to give effect to any of the terms of this Final Order."

19.    Based on these provisions, TH Holdco's claims, liens, and entitlement to post-petition interest cannot be challenged. As such, the only issue is what the collateral is worth. TH Holdco has submitted a bid for $94 million. The opportunity for another qualified bidder to submit a higher and better bid by July 2, 2022 pursuant to the Court approved Sale and Bid Procedures,[8]

---

[8] The Sale and Bid Procedures folded in all the substantive comments provided by Debtors' counsel and there was no further objection from Debtors counsel to those procedures when the Court approved them.

and any auction thereafter on August 5, 2022 will complete the market test to see if the Property is worth more than the current $94 million bid. Mr. Hagler can submit a bid, in accordance with the approved Sale and Bid Procedures, and the relevant parties, including JLL can determine whether such bid is viable and/or qualified. The Debtors cannot end run these stipulations via their *Motion for an Order Pursuant to 11. U.S.C. §363(k) Disqualifying TH Holdco from Credit Bidding and Granting Related Relief* [Docket No. 232] or otherwise.

II.     **The Proposed Distributions to the Mezz Lender Violate the Intercreditor Agreement, the Absolute Priority Rule and § 510 of the Bankruptcy Code.**

20.     The Debtors' Amended Plan proposes to pay $4.6 million to the Mezz Lender in full satisfaction of the Mezz Lender's claims. The Mezz Lender, however, cannot accept any such payment and must pay all distributions to TH Holdco as senior lender until TH Holdco's claim at the contractual rate is satisfied in full. Under Section 7 of the Intercreditor Agreement, the Mezz Lender has agreed to subordinate and make junior its mezzanine loan and corresponding loan documents, security interests and liens created thereby to the senior loan (which is now held by TH Holdco).

21.     Further, pursuant to Section 8 of the Intercreditor Agreement, the Mezz Lender agreed to subordinate any right to payment. Specifically, the Intercreditor Agreement provides:

> Mezzanine Lender's rights to payment of the Mezzanine Loan and the obligations evidenced by the Mezzanine Loan Documents are hereby subordinated to all of Senior Lender's rights to payment by Borrower and Guarantor of the Senior Loan and the obligations secured by the Senior Loan Documents, and Mezzanine Lender shall not accept or receive payments (including whether in cash or other property and whether received directly, indirectly or by setoff, counterclaim or otherwise) from Borrower, Mezzanine Borrower, any Affiliate of Borrower or Mezzanine Borrower, any Person in Control of Mezzanine Borrower and/or from the Premises (or any portion thereof or any other collateral securing the Senior Loan) prior to the date that all obligations of Borrower to Senior Lender under the Senior Loan Documents are indefeasibly paid in full. If a [bankruptcy] Proceeding shall have occurred and has not been dismissed or if a Senior Event of Default or a Mezzanine Lender Intercreditor Event of Default exists, Senior Lender shall be entitled to receive payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender is entitled to receive any payment on

account of the Mezzanine Loan. All payments or distributions upon or with respect to the Mezzanine Loan which are received by Mezzanine Lender contrary to the provisions of this Agreement shall be received and held in trust by Mezzanine Lender for the benefit of Senior Lender and shall be paid over to Senior Lender promptly after such receipt in the same form as so received (with any necessary endorsement) to be applied (in the case of cash) to, or held as collateral (in the case of non-cash property or securities) for, the payment or performance of the Senior Loan Liabilities in accordance with the terms of the Senior Loan Documents.

22. This applies regardless of whether the TH Holdco Secured Claim is deemed paid in full under the Bankruptcy Code because TH Holdco has received the full value of its collateral. The Intercreditor Agreement is enforceable under § 510 of the Bankruptcy Code. *See* 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.").

23. The Mezz Lender, as a creditor only of the Mezz Debtor, is not entitled to any distribution until TH Holdco, as a creditor of the Hotel and Residential Debtors, is satisfied in full. Through their Amended Plan, the Debtors are improperly attempting to end run or modify the Intercreditor Agreement. As such, the Debtors' Amended Plan cannot be confirmed.

\* \* \*

24. These straight forward real estate cases have been pending for eighteen (18) months. The Debtors have had ample time to formulate a feasible and confirmable plan and indeed, have filed three (3) different plans, none of which are confirmable. The Debtors filed the last two (2) plans at the eleventh hour and in each instance, sought to shorten notice, without providing sufficient cause for doing so. The Debtors cannot circumvent proper notice of a disclosure statement and solicitation of a plan.[9] The Debtors also cannot reduce TH Holdco's legitimate secured claims (as allowed by this Court and as stipulated to by the Debtors) to divert value to subordinate creditors or equity.

---

[9] TH Holdco reserves all rights as to any solicitation in favor of the Debtors' Amended Plan without a Court approved disclosure statement.

US_ACTIVE\121794317\V-5

25. The Debtors have not established sufficient cause to justify the extreme relief requested in their Motion to Shorten. Creditors and parties in interest will be harmed if such relief is granted. Moreover, and in any event, the flaws in the Debtors' latest plan remain fundamental and fatal, and cannot be fixed through tweaks or the passage of time. As such, the Motion to Shorten should be denied.

## CONCLUSION

The hearing on the Debtors' Disclosure Statement and Amended Plan should not be heard on shortened notice, and the Court should deny the Motion to Shorten and the request to provisionally approve the Disclosure Statement. The focus of the June 30, 2022 hearing should be on TH Holdco's Plan, which has been properly noticed, solicited, and is confirmable.

Dated: June 24, 2022
    New York, New York

**DENTONS US LLP**

/s/ *Lauren M. Macksoud*
Lauren M. Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
E-mail: lauren.macksoud@dentons.com
       sarah.schrag@dentons.com

Robert Richards (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2022, a true and correct copy of the foregoing *TH Holdco LLC's Objection To Debtors' Motion Pursuant To Bankruptcy Rule 9006(C) For Order Shortening Notice On Debtors' Motion For Order (I) Preliminarily Approving Disclosure Statement And (II) Scheduling Hearing On The Debtors' Motion For An Order Approving Disclosure Statement And Confirming Debtors' Plan Of Reorganization* was caused to be served via the Court's CM/ECF system on all parties authorized to receive electronic notice in these cases and by first class U.S. Mail on the parties listed in the attached service list.

/s/ *Lauren M. Macksoud*
Lauren M. Macksoud

US_ACTIVE\121794317\V-5