**Confirmation Hearing Date: June 30, 2022, at 10:00 a.m. (prevailing Eastern Time)**

Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800
E-mail: lauren.macksoud@dentons.com
          sarah.schrag@dentons.com

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>    85 FLATBUSH RHO MEZZ LLC, et al.,[1]<br><br>            Debtors | Case No. 20-23280 (RDD)<br>Chapter 11<br><br><br>(Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF TH HOLDCO'S**
**PLAN AND IN RESPONSE TO OBJECTIONS TO TH HOLDCO'S PLAN**

| |
|---|
| **NOTICE TO CREDITORS AND PARTIES IN INTEREST:**<br><br>**IN THIS MEMORANDUM OF LAW, TH HOLDCO SEEKS CERTAIN RULINGS OF THE BANKRUPTCY COURT IN SUPPORT OF CONFIRMATION OF THE PLAN. YOU ARE ENCOURAGED TO READ THIS DOCUMENT AND THE EXHIBIT HERETO.** |

---

1 The Debtors (as defined) in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include:  85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iv

I.    PRELIMINARY STATEMENT .......................................................................... 1

II.    JURISDICTION AND VENUE ......................................................................... 2

III.    DEBTORS' BACKGROUND ............................................................................ 3

    A.    General Background. ................................................................................ 3

        i.    Senior Loan Background ................................................................ 3

        ii.    85 Flatbush Mezz Loan Agreement and Intercreditor Agreement ................. 4

        iii.    September 2020 Mechanics Liens Filings ........................................ 4

        iv.    December 2020 Foreclosure Sale .................................................... 5

    B.    Postpetition Developments. ...................................................................... 5

        i.    Debtors' Counsel ......................................................................... 5

        ii.    Early Substantive Motions in Debtors' Cases .................................. 6

        iii.    Cash Collateral ............................................................................ 6

        iv.    The Debtors' Exclusivity Periods ................................................... 7

        v.    Claims Bar Date ......................................................................... 8

    C.    TH Holdco's Plan. .................................................................................. 9

        i.    Procedural Background .................................................................. 9

        ii.    The Plan and Sale Process ........................................................... 13

IV.    ARGUMENT ................................................................................................. 15

    A.    The Sale of the Debtors' Properties as Contemplated in the Plan is in the Best Interests of the Debtors' Estates. .............................................................. 15

    B.    TH Holdco has Satisfied the Burden of Proof Under § 1129. ................................. 17

    C.    The Plan Complies With § 1129 .............................................................. 18

        i.    The Plan Satisfies the Requirements Under § 1129(a) ....................... 18

        ii.    The Plan Satisfies The "Cram Down" Requirements Under § 1129(b) ......... 39

        iii.    The Plan is the Only Viable Plan Solicited in these Chapter 11 Cases ......... 41

        iv.    The Plan's Purpose Does Not Run Afoul of § 1129(d) ................................. 42

    D.    The Sale of the Properties are Exempted from Certain Taxes ................................. 43

    E.    Any Mechanics Liens Against the Debtors' Properties have Been Extinguished Under § 546(b) for Failure to File Requisite Notice ................................. 44

    F.    Responses to Objections to Confirmation. ................................................. 46

        i.    The Mezz Lender's Objection Fails ................................................. 46

ii

ii.    The NYC Dept. of Finance's Limited Objection is Resolved. ....................... 50

iii.    The Debtors' Confirmation Objection Fail. ................................................... 50

G.    TH Holdco's Request for a Waiver of Stay to Consummate the Plan Should be Approved. ............................................................................................................... 54

**V.    CONCLUSION ............................................................................................................ 55**

US_ACTIVE\121716967\V-7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 11,111, Inc.*,
　117 B.R. 471 (Bankr. D. Minn. 1990) ...................................................................39

*In re 68 West 127 St., LLC*,
　285 B.R. 838 (Bankr. S.D.N.Y. 2002) .................................................................27

*In re 8315 Fourth Ave. Corp.*,
　172 B.R. 725 (Bankr. E.D.N.Y. 1994) .................................................................17

*In re Adelphia Bus. Solutions, Inc.*,
　341 B.R. 415 (Bankr. S.D.N.Y. 2003) .................................................................37

*In re Adelphia Commc'ns Corp.*,
　368 B.R. 140 (Bankr. S.D.N.Y. 2007), *stay granted by* 361 B.R. 337
　(S.D.N.Y. 2007), *appeal dismissed*, 367 B.R. 84 (S.D.N.Y. 2007), *appeal
　dismissed*, 371 B.R. 660 (S.D.N.Y. 2007), *order aff'd*, 544 F.3d 420 (2d Cir.
　2008) .........................................................................................................19, 34, 35, 49

*In re Apex Oil Co.*,
　118 B.R. 683 (Bankr. E.D. Mo. 1990) .................................................................29

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
　526 U.S. 434 (1999) ...............................................................................................32, 33

*In re Best Prods. Co.*,
　168 B.R. 35 (Bankr. S.D.N.Y. 1994), *appeal dismissed*, 177 B.R. 791
　(S.D.N.Y. 1995), *aff'd*, 68 F.3d 26 (2d Cir. 1995) .........................................27, 33

*In re Bloomingdale Partners*,
　160 B.R. 93 (Bankr. N.D. Ill. 1993) .....................................................................32

*Boston Post Rd. L.P. v. FDIC (In re Boston Post Road, L.P.)*,
　21 F.3d 477 (2d Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995) .............................19

*In re Bush Indus.*,
　315 B.R. 292 (W.D.N.Y. 2004) .............................................................................17

*In re Buttonwood Partners, Ltd.*,
　111 B.R. 57 (Bankr. S.D.N.Y. 1990) ...................................................................40

*In re Calpine Corp.*,
No. 05-60200 (BRL), 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007),
*cert. denied,* 2008 WL 207841 (Bankr. S.D.N.Y. Jan 24, 2008), *appeal
denied,* 309 B.R. 508 (S.D.N.Y. 2008) ...............................................................................17, 28

*In re Cellular Information Sys., Inc.*,
171 B.R. 926 (Bankr. S.D.N.Y. 1994) ...................................................................................38

*In re Century Glove*, Inc.,
Civ. A. Nos. 90-400-SLR, 90-401-SLR, 1993 WL 239489 (D. Del. Feb. 10,
1993) .......................................................................................................................................26

*In re Crowthers McCall Pattern, Inc.*,
120 B.R. 279 (Bankr. S.D.N.Y. 1990) ...................................................................................33

*Dewsnup v. Timm*,
502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) ..........................................................32

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) .......................................................................19, 33, 37

*In re Elsinore Shore Assocs.*,
91 B.R. 238 (Bankr. D.N.J. 1988) .............................................................................26, 28, 29

*In re Fur Creations by Varriale, Ltd.*,
188 B.R. 754 (Bankr. S.D.N.Y. 1995) ...................................................................................33

*In re Granite Broad. Corp.*,
369 B.R. 120 (Bankr. S.D.N.Y. 2007) ...................................................................................42

*In re Great Bay Hotel & Casino, Inc.*,
251 B.R. 213 (Bankr. D.N.J. 2000) .......................................................................................40

*Greer v. Gaston & Snow* (*In re Gaston & Snow*),
Nos. 93 Civ 8517 (JGK), 93 Civ. 8628 (JGK), 1996 WL 694421 (S.D.N.Y.
Dec. 4, 1996)...........................................................................................................................27

*In re IFL Corp.*,
Case No. 08-13589 (MG) (Bankr. S.D.N.Y. Sept. 14, 2009) .................................................32

*In re Ionosphere Clubs, Inc.*,
98 B.R. 174 (Bankr. S.D.N.Y. 1989) .....................................................................................19

*IRS v. Kaplan* (*In re Kaplan*),
104 F.3d 589 (3d Cir. 1997)....................................................................................................37

v

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other
   grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom., Kane v. Johns-
   Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ......................................................18, 27, 32, 40

*In re Lavigne*,
   114 F.3d 379 (2d Cir. 1997)............................................................................................47

*In re Leslie Fay Cos., Inc.*,
   207 B.R. 764 (Bankr. S.D.N.Y. 1997)................................................................26, 27, 32, 33

*Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop, Inc.)*,
   150 F.3d 503 (5th Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999)........................................26

*In re Mal Dunn Assocs., Inc.*,
   Case No. 07-36299 (CGM) (Bankr. S.D.N.Y. Mar. 12, 2008)................................................32

*In re Mcorp Fin., Inc.*,
   137 B.R. 219 (Bankr. S.D. Tex. 1992) .............................................................................40

*Mercury Cap. Corp. v. Milford Connecticut Assocs., L.P.*,
   354 B.R. 1 (D. Conn. 2006)............................................................................................42

*Nadeau v. Equity Residential Properties Mgmt. Corp.*,
   251 F. Supp. 3d 637 (S.D.N.Y. 2017)...........................................................................46, 47

*In re One Times Square Assocs. Ltd.*,
   159 B.R. 695 (Bankr. S.D.N.Y. 1993) ...............................................................................40

*In re PPI Enters. (U.S.), Inc.*,
   228 B.R. 339 (Bankr. D. Del. 1998) .................................................................................27

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000)............................................................................................26

*In re Resorts Int'l*,
   145 B.R. 412 (Bankr. D.N.J. 1990) ..................................................................................28

*In re River Village Assocs.*,
   161 B.R. 127 (Bankr. E.D. Pa. 1993) ................................................................................28

*In re Ruti-Sweetwater, Inc.*,
   836 F.2d 1263 (10th Cir. 1988) ..............................................................................34, 35, 49

*In re Seasons Partners, LLC*,
   2010 WL 4386939 (Bankr. D. Ariz. October 28, 2010) .........................................................40

vi

*In re Sherwood Square Assocs.*,
 107 B.R. 872 (Bankr. D. Md. 1989) ...............................................................30

*In re Smidth & Co.*,
 Case No. 08-10516 (KG) (Bankr. D. Del. Jan. 21, 2009)..............................32

*In re Sound Radio, Inc.*,
 103 B.R. 521 (D.N.J. 1989), *aff'd*; 908 F.2d 964 (3rd Cir. 1990) ................37

*In re SPC Seller, Inc.*,
 Case No. 09-12647 (BLS) (Bankr. D. Del. Dec. 8, 2010) .............................32

*In re Spiegel, Inc.*,
 No. 03-11540 (BRL), 2005 WL 1278094 (Bankr. S.D.N.Y. May 25, 2005) ..........................17

*In re Texaco, Inc.*,
 84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988) ......................................................................................................18

*In re Toy & Sports Warehouse, Inc.*,
 37 B.R. 141 (Bankr. S.D.N.Y. 1984).........................................................26, 27

*In re Tribune Co.*,
 464 B.R. 126 (Bankr. D. Del.), *on reconsideration in part*, 464 B.R. 208
 (Bankr. D. Del. 2011), *aff'd sub nom. In re Trib. Media Co.*, 587 B.R. 606 (D.
 Del. 2018), *aff'd sub nom. In re Trib. Co.*, 972 F.3d 228 (3d Cir. 2020), *and
 aff'd in part sub nom. In re Trib. Media Co.*, 587 B.R. 606 (D. Del. 2018), *and
 aff'd sub nom. In re Trib. Co.*, 972 F.3d 228 (3d Cir. 2020)...................................49

*United Sav. Ass'n of Tx. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers
 of Inwood Forest Assocs., Ltd.*),
 793 F.2d 1380 (5th Cir. 1986), *aff'd*, 808 F.2d 363 (5th Cir. 1987) (*en banc*),
 *aff'd*, 484 U.S. 365 (1988) ...............................................................................40

*United States v. Energy Res. Co.*,
 495 U.S. 545 (1990).........................................................................................37

*United States v. Reorganized CF & I Fabricators, Inc.*,
 518 U.S. 213 (1996).........................................................................................33

*In re Vail Plaza Dev.*,
 Nos. 08-26930 (HRT), 0826924 (HRT) 2010 WL 74801 (Bankr. D. Colo.
 January 4, 2010)................................................................................................26

*In re W. E. Parks Lumber Co.*,
 19 B.R. 285 (Bankr. W.D. La. 1982) ...............................................................30

*WHBA Real Estate Ltd. P'ship v. Lafeyette Hotel P'ship (In re Lafeyette Hotel P'ship)*,
    227 B.R. 445 (S.D.N.Y. 1998), *aff'd* 198 F.3d 234 (2d. Cir. 1998) .........................................19

*In re Wireless Data, Inc.*,
    547 F.3d 484 (2d Cir. 2008) ..........................................................................................32, 33

*In re Worldcom, Inc.*,
    No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ...................25, 26

**Rules**

Fed. R. Bankr. P. 26(f) ...........................................................................................................47

Fed. R. Bankr. P. 2002 .......................................................................................................3, 15

Fed. R. Bankr. P. 3003(c)(2) ...................................................................................................8

Fed. R. Bankr. P. 3003(c)(3) ...................................................................................................8

Fed. R. Bankr. P. 3020 .............................................................................................................53

H.R. Rep. No. 95-595 (1977) ............................................................................................18, 25

S.D. N. Y. L.R. 3017-1 .............................................................................................................3

S.D. N. Y. L.R. 3018-1 .............................................................................................................3

S.D. N. Y. L.R. 3020-1 .............................................................................................................3

**Statutes**

11 U.S.C. § 101(14) ...............................................................................................................30

11 U.S.C. § 101(31) ...........................................................................................................16, 23

11 U.S.C. § 101 *et seq.* .........................................................................................................1, 26

11 U.S.C. § 105 .....................................................................................................................31

11 U.S.C. § 105(a) ......................................................................................................1, 3, 17, 26

11 U.S.C. § 121 ....................................................................................................................1, 26

11 U.S.C. § 330 .....................................................................................................................29

11 U.S.C. § 362 .....................................................................................................................45

11 U.S. C. § 363 ...................................................................................................................2, 3

US_ACTIVE\121716967\V-7

11 U.S.C. § 363(b) ...........................................................................................................17

11 U.S.C. § 363(f) ......................................................................................................15, 17

11 U.S.C. § 363(f)(1)-(5) ...............................................................................................16

11 U.S.C. § 363(f)(2) ......................................................................................................16

11 U.S.C. § 363(k) ..............................................................................................11, 12, 51

11 U.S.c. § 363(m) .....................................................................................................15, 17

11 U.S.C. § 363(n) ...........................................................................................................15

11 U.S.C. § 365 ............................................................................................................3, 25

11 U.S.C. § 365(a) ...........................................................................................................17

11 U.S.C. § 365(b) ...........................................................................................................17

11 U.S.C. § 365(f) ............................................................................................................17

11 U.S.C. § 502(i) ............................................................................................................22

11 U.S.C. § 503(b) ...........................................................................................................36

11 U.S.C. § 503(b)(3) .......................................................................................................29

11 U.S.C. § 506(a) .............................................................................................................7

11 U.S.C. § 506(b) .............................................................................................................7

11 U.S.C. § 507 ................................................................................................................38

11 U.S.C. § 507(a) ...........................................................................................................35

11 U.S.C. § 507(a)(2) .......................................................................................................24

11 U.S.C. § 507(a)(3) ..........................................................................................21, 22, 24

11 U.S.C. § 507(a)(4) .................................................................................................21, 22

11 U.S.C. § 507(a)(5) .................................................................................................21, 22

11 U.S.C. § 507(a)(6) .................................................................................................21, 22

11 U.S.C. § 507(a)(7) .................................................................................................21, 22

11 U.S.C. § 507(a)(8) .................................................................................................22, 36

11 U.S.C. § 507(a)(l) .................................................................................................38

11 U.S.C. § 524 ..........................................................................................................31

11 U.S.C. § 544 ..........................................................................................................45

11 U.S.C. § 545 ..........................................................................................................45

11 U.S.C. § 546(b) ...........................................................................................4, 5, 44, 45

11 U.S.C. § 549 ..........................................................................................................45

11 U.S.C. § 1107(a) .....................................................................................................5

11 U.S.C. § 1108 .........................................................................................................5

11 U.S.C. § 1114 ........................................................................................................38

11 U.S.C. § 1121 ...............................................................................................1, 3, 26

11 U.S.C. § 1122 ................................................................................................. *passim*

11 U.S.C. § 1123 ................................................................................................. *passim*

11 U.S.C. § 1123(a) ....................................................................................................23

11 U.S.C. § 1123(a)(1) ................................................................................................24

11 U.S.C. § 1123(a)(2) ................................................................................................24

11 U.S.C. § 1123(a)(3) ................................................................................................24

11 U.S.C. § 1123(a)(4) ................................................................................................24

11 U.S.C. § 1123(a)(5) ......................................................................................15, 24, 31

11 U.S.C. § 1123(a)(6) ................................................................................................24

11 U.S.C. § 1123(a)(7) ................................................................................................24

11 U.S.C. § 1123(a)(8) ................................................................................................24

11 U.S.C. § 1123(b) ....................................................................................................24

11 U.S.C. § 1123(b)(1) ................................................................................................25

11 U.S.C. § 1123(b)(2) ................................................................................................25

11 U.S.C. § 1123(b)(6) ................................................................................................31

x

11 U.S.C. § 1125 ............................................................................................................... *passim*

11 U.S.C. § 1126 ....................................................................................................1, 3, 25, 26

11 U.S.C. § 1126(c) ........................................................................................................35

11 U.S.C. § 1126(f) .........................................................................................................33

11 U.S.C. § 1126(g) ........................................................................................................35

11 U.S.C. § 1127 ........................................................................................................1, 3, 26

11 U.S.C. § 1129 ............................................................................................................... *passim*

11 U.S.C. § 1129(a) ............................................................................................17, 18, 25

11 U.S.C. § 1129(a)(1) .............................................................................................18, 25

11 U.S.C. § 1129(a)(2) ........................................................................................................25

11 U.S.C. § 1129(a)(3) ..................................................................................................26, 27

11 U.S.C. § 1129(a)(4) ..................................................................................................28, 29

11 U.S.C. § 1129(a)(5) ..................................................................................................29, 30

11 U.S.C. § 1129(a)(6) ........................................................................................................31

11 U.S.C. § 1129(a)(7) ............................................................................................32, 33, 34

11 U.S.C. § 1129(a)(8) ..................................................................................34, 39, 48, 49

11 U.S.C. § 1129(a)(9) ..................................................................................................35, 36

11 U.S.C. § 1129(a)(9)(A) ................................................................................................36

11 U.S.C. § 1129(a)(9)(B) ................................................................................................36

11 U.S.C. § 1129(a)(9)(C) ................................................................................................36

11 U.S.C. § 1129(a)(10) ...............................................................................................37, 48

11 U.S.C. § 1129(a)(11) ..........................................................................................37, 38, 42

11 U.S.C. § 1129(a)(12) .....................................................................................................38

11 U.S.C. § 1129(a)(13) .....................................................................................................38

11 U.S.C. § 1129(a)(14) .....................................................................................................38

xi

11 U.S.C. § 1129(a)(15) ................................................................................................39

11 U.S.C. § 1129(a)(15) ................................................................................................39

11 U.S.C. § 1129(a)(16) ................................................................................................39

11 U.S.C. § 1129(b) ................................................................................................ passim

11 U.S.C. § 1129(b)(1) ..................................................................................................39

11 U.S.C. § 1129(b)(2) ..................................................................................................40

11 U.S.C. § 1129(b)(2)(C) .............................................................................................41

11 U.S.C. § 1129(b)(2)(C)(b) ........................................................................................41

11 U.S.C. § 1129(c) .................................................................................................41, 42

11 U.S.C. § 1129(d) ......................................................................................................42

11 U.S.C. § 1142 ...........................................................................................................31

11 U.S.C. § 1146(a) .............................................................................................2, 43, 44

11 U.S.C. § 3020(e) .......................................................................................................53

15 U.S.C. § 77(e) ...........................................................................................................42

28 U.S.C. § 157 ...............................................................................................................2

28 U.S.C. § 157(b)(2) ......................................................................................................2

28 U.S.C. § 1334 .............................................................................................................2

28 U.S.C. § 1408 .............................................................................................................3

28 U.S.C. § 1409 .............................................................................................................3

28 U.S.C. § 1930 ...........................................................................................................38

N.Y. Lien Law § 3 ...................................................................................................24, 45

N.Y. Lien Law § 17 ......................................................................................................45

**Other Authorities**

H.R. Rep. No. 95-595 (1977) .................................................................................18, 25

S. Rep. No. 95-989 (1978) .....................................................................................18, 25

TH Holdco LLC ("TH Holdco") hereby files this Memorandum of Law in support of confirmation of the *Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC Related To 85 Flatbush RHO Mezz LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Docket No. 211] (as may be amended, supplemented, or modified from time to time, the "Plan")[2] pursuant to *inter alia* §§ 105(a), 1121, 1122, 1123, 1125, 1126, 1127, and 1129 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code").[3]  In support hereof, TH Holdco respectfully state as follows.

## I.    PRELIMINARY STATEMENT

1.    More than eighteen (18) months ago, the Debtors filed their voluntary petitions commencing these chapter 11 cases (the "Chapter 11 Cases").  Since that time, the Debtors have been operating (nominally as debtors in possession) and incurring administrative expenses without any apparent source to pay those obligations.  Indeed, prior to TH Holdco filing its initial version of the Plan, the Debtors had taken no steps to file their requisite disclosures or otherwise solicit acceptance of their proposed but unfeasible plan.  As a result, TH Holdco, as the only proponent of a viable plan, has, among other things, taken steps to move things forward, maximize the value of the Debtors' assets, and provide distribution to the Debtors' creditors.  Specifically, the Plan provides for the continued marketing and eventual Sale of the Debtors' Properties as a final market test of TH Holdco's current $94 million bid, which Sale is to be implemented pursuant to the Plan.  At bottom, confirmation of the Plan represents the best and only confirmable avenue to get the Chapter 11 administrative expenses, priority taxes, and trade creditors at the operating entities paid.

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings set forth in the Plan or Disclosure Statement, as applicable.

[3] Unless otherwise specifically stated, all references to "§" or "section" herein are to a § of the Bankruptcy Code; all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); all references to "Local Rule" are to the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

2.      TH Holdco respectfully submits that the Plan should be confirmed as it satisfies all of the requirements for confirmation that are set forth in the Bankruptcy Code and is in the best interests of all stakeholders in these Chapter 11 Cases.

3.      By this Memorandum of Law, TH Holdco seeks to demonstrate that the Plan satisfies all applicable requirements.  In Section IV below, **Point A** establishes that the Sale of the Properties is in the best interests of the Debtors' estates and qualifies for protection under §§ 363 and 1123 as free and clear of all Liens, Claims, Interests, and encumbrances, with the exception of the TH Holdco Mortgage (which may be assigned to a lender by the Purchaser) and the Permitted Exceptions (as defined in the Purchase Agreement), with all such Liens, Claims, Interests, and encumbrances to attach to the cash component of the purchase price of the Properties.   **Point B** sets forth the burden of proof TH Holdco is required to meet to seek confirmation of the Plan under § 1129.   **Point C** demonstrates that TH Holdco has satisfied the elements of § 1129 that must be satisfied for the Plan to be confirmed.   **Points D** establishes that the Sale of the Properties are exempted from certain taxes under § 1146(a).   **Point E** addresses the treatment of mechanics liens.   **Points F** responds to the three (3) objections to confirmation of the Plan.   **Point G** demonstrates that a waiver of the stay to consummate the Plan is appropriate in these Chapter 11 Cases.

4.      In addition to this Memorandum of Law, TH Holdco relies on the *Declaration of Franco Famularo In Support of Confirmation of TH Holdco's Second Amended Plan* and the exhibits thereto (the "Famularo Declaration") and the entire record in these Chapter 11 Cases.

## II.      JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are §§ 105(a), 363, 365, 1121, 1122, 1123, 1125, 1126, 1127, and 1129, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, 6004, 6006 and Local Rules 3017-1, 3018-1, and 3020-1.

## III.    DEBTORS' BACKGROUND

### A.    General Background.

9.      85 Flatbush RHO Mezz LLC ("85 Flatbush RHO Mezz" or the "Mezz Debtor") is the 100% owner of 85 Flatbush RHO Hotel LLC ("85 Flatbush RHO Hotel") and 85 Flatbush RHO Residential LLC ("85 Flatbush RHO Residential").  The property is located at 85 Flatbush Extension, Brooklyn, New York (the "Property").  The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six (6) floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage (together, the "Hotel Property").  The residential component of the Property has nine (9) studios, twenty-six (26) one-bedroom units, and twenty-nine (29) two-bedroom units (together, the "Residential Property").  Of the sixty-four (64) units, currently, up to five (5) are occupied.  [Docket No. 103].  TH Holdco asserts that the Debtors intentionally reduced residential occupancy as part of their business plan to convert the residential units to condominiums.

#### i.    Senior Loan Background

10.     The Property was acquired on September 19, 2019.  The original senior lender, 85 Flatbush Avenue 1, LLC ("85 Flatbush Avenue"), through an assignment of mortgage from CMTG JP Finance, extended to Hotel and Residential a loan in the original principal amount of $57,500,000 plus a new advance in the amount of $12,500,000 for a total principal loan amount

of $70,000,000 evidenced by a consolidated, amended and restated note and consolidated, amended and restated mortgage and security agreement, which was assigned to TH Holdco on January 28, 2022 (the "TH Holdco Prepetition Loan Agreement"). The TH Holdco Prepetition Loan Agreement term was for twenty-four (24) months, with a maturity date of October 1, 2021. That maturity date has not been extended.

### ii.    85 Flatbush Mezz Loan Agreement and Intercreditor Agreement

11.    On September 19, 2019, the 85 Flatbush Mezz LLC (the "Mezz Lender") advanced a loan to 85 Flatbush RHO Mezz in the original principal amount of $6,000,000 secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement (the "85 Flatbush Mezz Loan Agreement").

12.    85 Flatbush Avenue as the original senior lender and 85 Flatbush Mezz as the mezzanine lender are party to an Intercreditor Agreement dated September 19, 2019 and amended as of July 23, 2020 (the "Intercreditor Agreement") which set forth certain rights between the two lenders. 85 Flatbush Avenue's interest and rights under the Intercreditor Agreement are now assigned to TH Holdco. TH Holdco reserves all rights and remedies under the Intercreditor Agreement.

### iii.    September 2020 Mechanics Liens Filings

13.    On September 16, 2020, Rightway Restoration LLC ("Rightway Restoration") filed a mechanics lien with the Office of the City Register of the City of New York (County of Kings) against Debtor 85 Flatbush RHO Hotel for $35,047.80. Rightway Restoration did not file an extension, and such mechanic lien no longer appears of record in a title search performed on or about June 20, 2022. Furthermore, Rightway Restoration did not file the requisite §546(b) notice with the Bankruptcy Court.

14.    On September 24, 2020, Greater Shield LLC d/b/a GSS ("Greater Shield") filed a mechanics lien with the Office of the City Register of the City of New York (County of Kings) against Debtor 85 Flatbush RHO Hotel for $38,300.35. Greater Shield filed an extension on

September 13, 2021.  Although Greater Shield's mechanics lien is shown as "OPEN" on Kings County records, Greater Shield did not file the requisite §546(b) notice with the Bankruptcy Court.

15.     On September 26, 2020, 85 Flatbush Avenue filed a mechanics lien with the Office of the City Register of the City of New York (County of Kings) against Debtor 85 Flatbush RHO Hotel for $399,293.93.  85 Flatbush Avenue did not file an extension, and such mechanic lien no longer appears of record in a title search performed on or about June 20, 2022.  Furthermore, 85 Flatbush Avenue did not file the requisite §546(b) notice with the Bankruptcy Court.

### *iv.     December 2020 Foreclosure Sale*

16.     Prior to the bankruptcy filing, a Uniform Commercial Code foreclosure auction of the pledge equity interest was scheduled by 85 Flatbush Mezz for December 15, 2020 and then, at the Debtors' request, was rescheduled on two occasions with a final sale date of December 18, 2020.  On December 18, 2020, the Debtors filed their chapter 11 petitions and the automatic stay prevented the foreclosure sale from going forward.

17.     Pursuant to §§ 1107(a) and 1108, the Debtors continue to operate their business and manage their assets as debtors in possession.  As of the date hereof, no creditors' committee has been appointed in these Chapter 11 Cases.

### B.    Postpetition Developments.

18.     On December 18, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

### *i.     Debtors' Counsel*

19.     After the Petition Date, the Debtors filed an application to retain and employ Robinson Brog Leinwand Greene Genovese & Gluck P.C. as its bankruptcy counsel [Docket No. 40], which the Bankruptcy Court approved thereafter [Docket No. 62].

US_ACTIVE\121716967\V-7

### ii.    *Early Substantive Motions in Debtors' Cases*

20.    On the Petition Date, the Debtors also filed a *Motion for Approval of Adequate Assurance of Payment to Utility Services and Continuation of Service*. [Docket No. 3]. The Bankruptcy Court entered an interim order granting that motion on December 28, 2020, and a final order on January 6, 2021. [Docket Nos. 22 and 29]. Similarly, on the Petition Date, the Debtors filed a *Motion to Authorize Debtors' to Pay Wages and Compensation and for Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations*. [Docket No. 6]. The Bankruptcy Court entered an interim wage order on December 28, 2020, and a final wage order on January 13, 2021. [Docket Nos. 22 and 32].

### iii.    *Cash Collateral*

21.    On the Petition Date, 85 Flatbush RHO Hotel filed a *Motion to Use 85 Flatbush Avenue's Cash Collateral*. [Docket No. 5]. On December 28, 2020, the Bankruptcy Court entered an *Interim Order Granting Debtors Motion to Use Cash Collateral*. [Docket No. 21]. The Bankruptcy Court entered a second Interim Cash Collateral Order on January 19, 2021. [Docket No. 34]. On March 29, 2021, the Bankruptcy Court entered a *Final Consent Order Authorizing the Use of Cash Collateral and Granting Adequate Protection between the Debtors and 85 Flatbush Avenue* [Docket No. 64] (the "Agreed Final Cash Collateral Order"). The Agreed Final Cash Collateral Order is now a Final Order.

22.    The Agreed Final Cash Collateral Order provided certain acknowledgements and rights of 85 Flatbush Avenue as senior lender (defined in the Agreed Final Cash Collateral Order as "Lender"), which rights are now held by TH Holdco as successor to 85 Flatbush Avenue, and the most important of which is:

> **"The Lender has provided the Debtors with as payoff statement containing the amounts set forth in this paragraph. The Lender represents that the calculations set forth on the payoff statement are true and correct. The Debtors and the Lender agree that as of Petition Date, the principal amount of the Lender's claims against the estates of the Debtors is $85,158,815.99 ('Lender Claim'), which claim consists of these components:**

6

**Unpaid principal balance $70,000,000.00**
**Contract interest to 2/29/20 $496,222.22**
**Default Interest to 12/18/20 $13,673,333.32**
**(less) Interest Paid $(1,201.91)**
**Protective Advance for Taxes $247,849.21**
**Interest on Protective Advance $25,115.39**
**Legal Fees $28,605.00**
**Late Fee $24,751.00**
**Entity Fees $2,641.74**
**Exit Fee $525,000.00**
**Servicing Fee $136,500.00**

**The Lender's Claim will continue to accrue interest and additional charges pursuant to and under the Loan Documents, subject to the next sentence. The extent to which the Lender Claim is a secured claim will be determined by the Court based on the value of the Lender's Collateral, and is subject to § 506(a) and (b) of the Bankruptcy Code, and to applicable non-bankruptcy law, provided however that the Debtor acknowledges and agrees that the Lender has a valid and enforceable lien on the Property."** [BOLDING AND UNDERLINING ADDED].

  *iv.  The Debtors' Exclusivity Periods*

  23. The Debtors' exclusive right to file a chapter 11 plan was set to expire on April 19, 2021.  On March 31, 2021, the Debtors filed a *Motion to Extend the Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement* [Docket No. 65] ("First Motion to Extend Exclusivity Period").  On June 25, 2021, the Bankruptcy Court held a hearing on the First Motion to Extend the Exclusivity Period, wherein it granted relief in the Debtors' favor and overruled all objections. [Docket No. 99].  On August 17, 2021, the Debtors filed a *Second Motion to Extend the Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement* [Docket No. 103] ("Second Motion to Extend Exclusivity Period").  The objections to the Second Motion to Extend Exclusivity Period were resolved through an agreed order summarized below.

  24. On September 21, 2021, the Bankruptcy Court entered an *Order Extending Exclusive Right to File a Plan of Reorganization and to Solicit Acceptances for the Debtors' Plan and For Related Relief* [Docket No. 125] (the "Final Exclusivity Order").  The Final Exclusivity Order extended Debtors' exclusive right to file a chapter 11 plan through November 24, 2021 (the "Exclusivity Period"), and provided that if the Debtors filed a chapter 11 plan during the

Exclusivity Period, they would have the exclusive right to solicit acceptances for such plan through January 24, 2022 (the "Acceptance Period").

25.    On November 24, 2021, the Debtors filed the its original plan [Docket No. 142] (the "Debtors' Original Plan"). The Debtors' Original Plan was based on a sales process including an opportunity for the holder of senior mortgage debt or its nominee to credit bid and is in many ways similar to the TH Holdco Plan. Debtors never filed a disclosure statement related to the Debtors' Original Plan or otherwise solicited acceptance of the Debtors' Original Plan or sought a further extension of the Acceptance Period. Therefore, the Exclusivity Period and the Acceptance Period both expired.

### *v.    Claims Bar Date*

26.    On March 12, 2021, the Debtors filed a *Motion to Establish a Deadline to File Proofs of Claim*. [Docket No. 55]. In accordance with Bankruptcy Rule 3003(c)(3), by order dated March 15, 2021 [Docket No. 58] (the "Bar Date Order"), the Bankruptcy Court fixed April 21, 2021 (the "Bar Date") as the last day by which general creditors would be permitted to file claims in the Debtors' Chapter 11 Cases, and June 16, 2021 as the last day for governmental units to file claims in the Debtors' Chapter 11 Cases (the "Governmental Bar Date"). On May 26, 2021, the Debtors filed an Amended Schedule E/F scheduling additional creditors who may have claims against the Debtors. [Docket Nos. 80 and 81]. Pursuant to the Bar Date Order, the deadline to file a proof of claim for creditors scheduled on Amended Schedule E/F was extended to June 28, 2021 ("Supplemental Bar Date"). Pursuant to Bankruptcy Rule 3003(c)(2), any creditor whose claim had not been scheduled by the Debtors or was scheduled as disputed, contingent, or unliquidated and has failed to file a proof of claim on or before the Bar Date, the Supplemental Bar Date, or the Governmental Bar Date, as the case may be, is deemed not to be a creditor with respect to such claim for purposes of voting on and receiving a distribution under a Chapter 11 plan.

C.      **TH Holdco's Plan.**

        i.      *Procedural Background*

27.     On February 20, 2022, TH Holdco filed the *Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Docket No. 151] and the accompanying *Disclosure Statement* [Docket No. 152].

28.     On February 24, 2022, TH Holdco filed its *Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto.* [Docket No. 158].

29.     On April 4, 2022, TH Holdco filed its *Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Docket No. 175] and the accompanying *Amended Disclosure Statement* [Docket No. 177], along with the *Declaration of Franco Famularo In Support of TH Holdco LLC's Combined (A) Response To Objections To Motion To Approve (I) The Adequacy of Information In The Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto and (B) Objection To Debtors Disclosure Statement For Amended Plan of Reorganization* [Docket No. 174] (the "Disclosure Statement Declaration").

30.     On May 26, 2022, TH Holdco filed its *Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Docket No. 211] (the "Plan") and the accompanying *Second Amended Disclosure Statement* [Docket No. 212] (the "Disclosure Statement").

31.     On May 26, 2022, the Bankruptcy Court entered the *Order Granting TH Holdco LLC's Motion to Approve   (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect*

*Thereto, approving, among other things, the Sale and Bid Procedures for the Properties and the form of Purchase Agreement* (the "<u>Disclosure Statement Order</u>") [Docket No. 210].

32.    The Disclosure Statement Order approved the Disclosure Statement as containing adequate information in accordance with § 1125, directed TH Holdco to solicit ballots accepting or rejecting the Plan, set deadlines for the filing of ballots and objections to the Plan, and approved and directed the form and manner of service of notice thereof.

33.    Pursuant to the Disclosure Statement Order, Confirmation Hearing is scheduled for June 30, 2022.

34.    As set forth in the Affidavit of Publication filed on May 31, 2022 [Docket No. 214], the notice of sale (the "<u>Notice of Sale</u>") for the Debtors' Properties was published in the *Wall Street Journal (National Edition)* print edition for a period beginning on May 31, 2022.  The Notice of Sale will also be published in *Green Street's Commercial Mortgage Alert* on July 1, 2022.

35.    As evidenced by the *Affidavit of Service of Solicitation Materials* [Docket No. 216], filed on June 2, 2022, the Disclosure Statement Order, Plan, Disclosure Statement, and an appropriate ballot or notification of non-voting status (the "<u>Solicitation Package</u>") was served upon all interested parties in accordance with the Disclosure Statement Order and applicable Bankruptcy Rules.

36.    On June 15, 2022, TH Holdco caused to be filed the *Notice of Filing of Plan Supplement for Second Amended Chapter 11 Plan Filed By Creditor TH Holdco LLC Related to 85 Flatbush RHO MEZZ, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Docket No. 223] (the "<u>Plan Supplement</u>") attaching thereto as an exhibit:  (a) the Schedule of Executory Contracts and/or Unexpired Leases to be Rejected, (b) the Schedule of Executory Contracts and/or Unexpired Leases to be Assumed, and (c) the Proposed form of Confirmation Order.

37.    On June 15, 2022, TH Holdco caused to be filed the *Notice Regarding Executory Contracts and Unexpired Leases to be Rejected Pursuant to the Plan* [Docket No. 224] (the

10

"Rejection Notice"), copies of which were provided to all counterparties listed on Exhibit A attached thereto.

38.     On June 22, 2022, the Mezz Lender filed its *Objection to Confirmation of Amended Plan* [Docket No. 227] (the "Mezz Lender's Objection").  On June 22, 2022, the New York City Department of Finance and Water Board (the "NYC Dept. of Finance") filed its *Limited Objection to Plan* [Docket No. 228] (the "NYC Dept. of Finance's Limited Objection").

39.     On June 22, 2022, the Debtors filed the *Debtors' Objection to Confirmation of Second Amended Chapter 11 Plan Filed by TH Holdco LLC* [Docket No. 229] (the "Debtors' Confirmation Objection"), along with a declaration of Jon DiPierta in support thereof [Docket No. 230] (the "DiPierta Declaration") and a declaration of Daryl Hagler in support thereof [Docket No. 231] (the "Hagler Declaration").  The Debtors also filed the *Debtors' Motion for Order Pursuant to 11 U.S.C. § 363(k) Disqualifying TH Holdco LLC from Credit Bidding and Granting Related Relief* [Docket No. 232] (the "Debtors' Disqualification Motion").  On June 23, 2022, the Debtors filed their motion to shorten notice on the Debtors' Disqualification Motion.  [Docket No. 244].

40.     On June 23, 2022, Fair Harbor Capital, LLC filed a number of claim transfers [Docket Nos. 234 – 239] (the "Claims Transfers").  It appears Fair Harbor was purchasing these trade claims prior to the claims voting deadline but then did not file the Claim Transfer notices until the day after the voting deadline.

41.     On the afternoon of June 23, 2022, the Debtors filed an amended plan [Docket No. 240] (the "Debtors' Amended Plan") and amended disclosure statement [Docket No. 241] (the "Debtors' Amended Disclosure Statement").  Later on that same day, the Debtors filed a *Motion for an Order (I) Preliminarily Approving the Disclosure Statement and (II) Scheduling Hearing on the Debtors' Motion for an Order Approving Disclosure Statement and Confirming Debtors' Plan of Reorganization* [Docket No. 242] (the "Debtors' Combined Hearing Motion").  The Debtors also filed a motion to shorten notice for a hearing on the Debtors' Amended Plan, Debtors' Amended Disclosure Statement, and the Debtors' Combined Hearing Motion  [Docket No. 243]

(the "<u>Motion to Shorten Notice on Disclosure Statement and Plan Combined Hearing</u>"), along with a notice of hearing [Docket No. 253].

42.     On June 23, 2022, TH Holdco filed its *Objection to Final Applications for an Award of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred* [Docket No. 245] (the "<u>Compensation Objection</u>").

43.     On June 24, 2022, the Debtors untimely filed several past due monthly operating reports for Debtors 85 Flatbush RHO Mezz and 85 Flatbush RHO Residential [Docket Nos. 246, 247, 248, 249, 250, 251], but nothing for 85 Flatbush RHO Hotel, which is the entity that has had the most cash, most receipts, and most disbursements in prior monthly operating reports.  The Debtors' counsel has provided different numbers for how much cash is on hand currently.

44.     On June 24, 2022, TH Holdco caused to be filed the *TH Holdco LLC's Voting Record Certifying Acceptances and Rejections of TH Holdco LLC's Second Amended Plan* [Docket No. 252] (the "<u>Certification of Ballots</u>").  As set forth in the Certification of Ballots, eight (8) classes of claims and three (3) classes of interests are impaired by the Plan.  Also as set forth in the Certification of Ballots and as detailed herein, the Plan has been accepted or deemed accepted by the holders of the impaired claims of creditors classified in Classes 1-14,[4] with only Class 15 having been conclusively deemed to reject the Plan.

45.     On June 24, 2022, TH Holdco filed its objection [Docket No. 254] (the "<u>Objection to Shorten Notice</u>") to the Motion to Shorten Notice on Disclosure Statement and Plan Combined Hearing.

46.     On June 27, 2022, TH Holdco caused to be filed the Famularo Declaration in support of confirmation of the Plan.  TH Holdco also caused to be filed the *Declaration Of Franco Famularo In Response To (I) Debtors' Motion For Order Pursuant To 11 U.S.C. §363(k) Disqualifying TH Holdco LLC From Credit Bidding And Granting Related Relief, (II) Debtors'*

---

4 TH Holdco, as agent and holder of power of attorney for the Mezz Lender, cast a Class 11 ballot to accept the Plan on May 27, 2022, and then sent the Mezz Lender notice of the same (the "<u>Class 11 Notice</u>").  *See* **Exhibit 1B** attached to the Certification of Ballots.  TH Holdco also received an ineligible Class 11 ballot cast by the Mezz Lender in the amount of $7,787,500.00 on June 22, 2022.  *See* **Exhibit 1C** attached to the Certification of Ballots.  This ineligible Class 11 ballot purported to reject the Plan.  For the reasons stated herein, Class 11 is deemed to accept the Plan.

12

*Second Amended Chapter 11 Plan Of Reorganization, And (III) In Support Of Th Holdco's Second Amended Plan* (the "§ 363(k) Declaration") contemporaneously herewith.

47.    On June 27, 2022, TH Holdco caused to be filed contemporaneously herewith an objection (the "Objection to Debtors' Disqualification Motion") to the Debtors' Disqualification Motion.

48.    Should the Plan be confirmed following the scheduled Confirmation Hearing, TH Holdco will fund the Plan in accordance with the terms of the Plan.

### ii.    The Plan and Sale Process

49.    The Plan provides for the sale of the Properties under the Purchase Agreement.

50.    The Purchase Agreement provides for the Properties to be sold (i) to TH Holdco[5] for the purchase price consisting of the TH Holdco Credit Bid or, in the event that another bidder submits a higher and better bid at the Auction which is approved by the Bankruptcy Court, or (ii) to the Purchaser for such amount.

51.    Jones Lang LaSalle, as broker (the "Broker"), initially marketed the Properties commencing in October of 2021.  Following entry of the Disclosure Statement Order, the Broker resolicited offers to acquire the Properties from a wide variety of parties.  The Broker will conduct an Auction for the Properties, in accordance with the terms of the Sale and Bid Procedures, if one or more Qualified Competing Bid (as such term is defined in the Sale and Bid Procedures) is received in accordance with the terms of the Sale and Bid Procedures.

52.    As described in the Plan, the Plan Fund shall be funded by (i) the TH Holdco Additional Consideration, (ii) the Sale Proceeds (if any), which shall be allocable to the Hotel Property and the Residential Property as set forth in the Purchase Agreement, and (iii) the Debtors' Available Cash, and shall be established upon the Closing Date.  Creditor distributions to be made separate from or later than the Closing Date shall be made by the Disbursing Agent

---

5 TH Holdco includes any nominee, designee, or assignee of TH Holdco to whom TH Holdco has assigned or transferred its claim, in whole or in part, for purpose of making the TH Holdco Credit Bid or to whom TH Holdco may assign or transfer its rights as Purchaser, in whole or in part.

under the Plan.  Any remaining retainers held by any of the Debtors' professionals shall be applied to the fees of such professional as provided in an order of the Bankruptcy Court allowing the fees of such professional.  In addition, if TH Holdco acquires the Hotel Property and/or the Residential Property pursuant to the TH Holdco Credit Bid, TH Holdco shall fund the TH Holdco Unsecured Claim Dedicated Fund for the sole Pro Rata benefit of holders of Allowed General Unsecured Claims in Classes 6 and 8 and the TH Holdco Unsecured Claim Additional Funding for the sole Pro Rata benefit of holders of Allowed General Unsecured Claims in Classes 6 and 8.

53.    Except as otherwise provided elsewhere in the Plan, and other than the distributions to be made at the Closing of the Sale Transaction, the Disbursing Agent shall make all distributions to holders of Allowed Claims as set forth in the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

54.    Furthermore, the Disbursing Agent shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims, unless otherwise ordered by the Bankruptcy Court.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Disbursing Agent (identified in the Plan Supplement as Kroll) shall make a final Pro Rata distribution to all holders of Allowed Claims.  Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

IV.    **ARGUMENT**

A.    **The Sale of the Debtors' Properties as Contemplated in the Plan is in the Best Interests of the Debtors' Estates.**

55.    The Sale of the Debtors' Properties as contemplated in the Plan is in the best interests of the Debtors' estates.  The model Purchase Agreement was based on another purchase agreement proposed by Debtors' counsel in the East Village case and also incorporates subsequent comments received from Debtors' counsel.  For the reasons stated herein, the Debtors and Purchaser are entitled to the protections of, *inter alia*, § 363(f) (as contemplated under the Plan) §§ 363(m) and 1123(a)(5) with respect to the Sale Transaction.

56.    TH Holdco has not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under § 363(n).

57.    The Sale and Bid Procedures also reflect the comments from Debtors' counsel, and the marketing and bidding processes implemented by the Broker were fair, proper, and reasonably calculated to result in the highest and best value received for the Properties.

58.    The consideration for the Properties offered by the Purchaser, including the TH Holdco Credit Bid, which serves as the opening bid for the Auction, is fair and reasonable, and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code.

59.    A sale of the Properties other than one free and clear of all Liens, Claims, Interests, and encumbrances, with the exception of the TH Holdco Mortgage (which may be assigned to a lender by the Purchaser) and the Permitted Exceptions (as defined in the Purchase Agreement) would materially and adversely impact the Debtors' bankruptcy estates, would yield substantially less value for the Debtors' estates, with less certainty than the available alternatives, and thus the alternative would be of substantially less benefit to the Debtors' estates.  Therefore, the sale of the Properties under the Purchase Agreement free and clear of all Liens, Claims, Interests, and encumbrances, with the exception of the TH Holdco Mortgage and the Permitted Exceptions (as

15

defined in the Purchase Agreement) is in the best interests of the Debtors and their estates, creditors, and other parties in interest.

60.     A reasonable opportunity to object or be heard with respect to the Sale Transaction under the Plan has been afforded to all interested persons and entities, including:  (i) the Office of the United States Trustee; (ii) counsel for TH Holdco; (iii) all entities known to have asserted any Lien in or upon the Properties; (iv) all creditors and parties in interest of the Debtors; (v) all federal, state, and local taxing authorities which have a reasonably known interest in the sale of the Properties; (vi) the Internal Revenue Service; and (vi) all entities that have filed a notice of appearance in these cases under Bankruptcy Rule 2002.

61.     TH Holdco (or its nominee or designee) are not "insiders" of the Debtors, as that term is defined in §101(31).

62.     The transfer of the Properties to the Purchaser will be a legal, valid, and effective transfer of the Properties, and will vest Purchaser with all rights, title, and interests of the Debtors to the Properties free and clear of all Liens, Claims, Interests, and encumbrances, with the exception of the TH Holdco Mortgage (which may be assigned to a lender by the Purchaser) and the Permitted Exceptions (as defined in the Purchase Agreement).

63.     TH Holdco would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and creditors, if the sale of the Properties to TH Holdco (or its nominee or designee) were not free and clear of all Liens, Claims and encumbrances, other than the TH Holdco Mortgage (which may be assigned to a lender by the Purchaser) and the Permitted Exceptions (as defined in the Purchase Agreement), or if TH Holdco (or its nominee or designee) would, or in the future could, be liable for any of the Liens, Claims, Interests and encumbrances (other than the TH Holdco Mortgage and the Permitted Exceptions).

64.     The Estates may sell the Properties free and clear of all Liens of any kind or nature whatsoever because, in each case, one or more of the standards set forth in § 363(f)(1)(5) has been

satisfied. Those holders of Liens who did not object, or which withdrew their objections, to the Sale Transaction are deemed to have consented pursuant to § 363(f)(2).

65.    The Estates may sell the Properties free and clear of all Liens, Claims, Interests and encumbrances, including but not limited to, mortgages, judgments, liens for delinquent real estate taxes, and attachments (other than the TH Holdco Mortgage (which may be assigned to a lender by the Purchaser) and the Permitted Exceptions), with all such Liens, Claims, Interests, and encumbrances to attach to the cash component of the purchase price for the Properties to be paid in accordance with Section 4 of the Plan.

66.    The Purchase Agreement is a legal, valid, and binding contract between the Estates and Purchaser and is enforceable according to its terms, and the Purchase Agreement is approved in all respects.

67.    As of the Closing Date (as defined in the Purchase Agreement), the consummation of the Sale Transaction and the other transactions contemplated by the Purchase Agreement will be legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including §§ 105(a), 363(b), 363(f), 363(m), 365(a), 365(b) and 365(f), 1123 and/or 1129, and 1146 thereof, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

68.    All of the conditions precedent to confirmation of the Plan, if any, set forth in the Plan have been met or waived on the record in open court.

**B.    TH Holdco has Satisfied the Burden of Proof Under § 1129.**

69.    To obtain confirmation of the Plan, TH Holdco must demonstrate that the Plan satisfies the provisions of § 1129(a) by a preponderance of the evidence. 11 U.S.C. § 1129(a); *see also In re Bush Indus.*, 315 B.R. 292, 297 (W.D.N.Y. 2004) (applying the "lesser standard of proof by a preponderance of evidence"); *In re Calpine Corp.*, No. 05-60200 (BRL), 2007 WL 4565223, at *4 (Bankr. S.D.N.Y. Dec. 19, 2007), *cert. denied,* 2008 WL 207841 (Bankr. S.D.N.Y. Jan 24, 2008), *appeal denied,* 309 B.R. 508 (S.D.N.Y. 2008) (plan proponents met their burden

of proving the elements of § 1129(a) "by a preponderance of the evidence, which is the applicable evidentiary standard for the Confirmation"); *In re Spiegel, Inc.*, No. 03-11540 (BRL), 2005 WL 1278094, at *4 (Bankr. S.D.N.Y. May 25, 2005) (debtors met their burden of proving the elements of § 1129(a) by a preponderance of the evidence); *In re 8315 Fourth Ave. Corp.*, 172 B.R. 725, 735 (Bankr. E.D.N.Y. 1994) ("The Debtor bears the burden of proving confirmation by a preponderance of the evidence").

70.    As set forth below, TH Holdco will demonstrate, by a preponderance of the evidence, that all of the subsections of § 1129 have been satisfied with respect to the Plan.  Further, TH Holdco will demonstrate that it will be able to pay requisite Allowed Administrative Expense Claims and Priority Tax Claims no later than the Effective Date.  Finally, TH Holdco will establish that it is appropriate to waive the stay of consummation of the Plan in Chapter 11 Cases.

C.    **The Plan Complies With § 1129.**

i.    ***The Plan Satisfies the Requirements Under § 1129(a)***

(a)    **The Plan Complies With All Applicable Provisions**

71.    Section 1129(a)(l) provides that a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(1).

72.    The legislative history of § 1129(a)(1) and case law provide that this provision encompasses the requirements of §§ 1122 and 1123 governing classification of claims and contents of the plan, respectively.  *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom., Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988) (citations omitted).  As demonstrated below, the Plan fully complies with all of the applicable provisions as required by § 1129(a)(1), including, without limitation, §§ 1122 and 1123.

18

### (b)    Classification of Claims and Interests

73.    Section 1122 authorizes multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to other claims or interests in that class.  11 U.S.C. § 1122.[6]  Differing classifications in a plan are proper if there is a sufficient and fair basis for the classification and TH Holdco is able to "adduce credible proof of a legitimate reason for separate classification of similar claims."  *Boston Post Rd. L.P. v. FDIC (In re Boston Post Road, L.P.)*, 21 F.3d 477, 483 (2d Cir. 1994), *cert. denied,* 513 U.S. 1109 (1995); *accord WHBA Real Estate Ltd. P'ship v. Lafeyette Hotel P'ship (In re Lafeyette Hotel P'ship)*, 227 B.R. 445 (S.D.N.Y. 1998), *aff'd* 198 F.3d 234 (2d. Cir. 1998); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 246 (Bankr. S.D.N.Y. 2007), *stay granted by* 361 B.R. 337 (S.D.N.Y. 2007), *appeal dismissed,* 367 B.R. 84 (S.D.N.Y. 2007), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y. 2007), *order aff'd,* 544 F.3d 420 (2d Cir. 2008) ("[S]eparate classification of substantially similar unsecured claims is permissible . . . when there is a reasonable basis for doing so."); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims.  It does not require that similar classes be grouped together. . . ."); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 177-78 (Bankr. S.D.N.Y. 1989) ("a debtor may place claimants of the same rank in different classes and thereby provide different treatment for each respective class").

74.    Section 3 of the Plan entitled "Classification of Claims and Interests" and Section 4 of the Plan entitled "Treatment of Claims and Interests" provide for the separate classification of any right to payment ( "Claims") and any right, title, and interest of the Debtors' equity holders ("Equity Interests") in Classes based upon differences in the legal nature and/or priority of such

---

6 Section 1122 provides as follows:

    (a)    Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

    (b)    A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Claims and Equity Interests. The Plan divides Claims against, and Equity Interests in, each of the Debtors into these Classes on the basis of (a) their security position, if any (*i.e.*, secured Claims and unsecured Claims are separately classified), (b) their legal ranking (*i.e.*, debt obligations are classified separately from equity interests), and (c) other relevant criteria.

75.    Specifically, the Plan classifies Claims and Equity Interests according to the following structure:

| Class | Designation | Treatment |
|-------|-------------|-----------|
| Unclassified Claims | Administrative Expense Claims | Payment in full on the Effective Date (or as otherwise agreed). |
| | Priority Tax Claims | Payment in full in accordance with applicable statutes. |
| 1 | 85 Flatbush RHO Hotel Other Priority Claims | Unimpaired |
| 2 | 85 Flatbush RHO Residential Other Priority Claims | Unimpaired |
| 3 | TH Holdco Secured Claim | Impaired |
| 4 | 85 Flatbush RHO Hotel Other Secured Claims | Unimpaired |
| 5 | 85 Flatbush RHO Residential Other Secured Claims | Unimpaired |
| 6 | 85 Flatbush RHO Hotel General Unsecured Claims | Impaired |
| 7 | 85 Flatbush RHO Hotel Existing Equity Interests | Impaired |
| 8 | 85 Flatbush RHO Residential General Unsecured Claims | Impaired |
| 9 | 85 Flatbush RHO Residential Existing Equity Interests | Impaired |
| 10 | 85 Flatbush Mezz Other Priority Claims (if any) | Impaired |
| 11 | 85 Flatbush Mezz Claim | Impaired |
| 12 | 85 Flatbush Mezz Other Secured Claims (if any) | Impaired |

| 13 | 85 Flatbush Mezz General Unsecured Claims | Impaired |
| 14 | Insider General Unsecured Claims | Impaired |
| 15 | 85 Flatbush Mezz Existing Equity Interests | Impaired |

76.     In addition to the Administrative Expense Claims and Priority Tax Claims listed in Section 2 of the Plan, which are not required to be designated as separate classes, the Plan designates fifteen (15) Classes of Claims and Equity Interests.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  TH Holdco's classification of Claims and Equity Interests under the Plan (a) was not for the purpose of creating a consenting impaired Class under the Plan, and (b) does not unfairly discriminate between or among holders of Claims or Equity Interests.  Moreover, as discussed below, valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests.

77.     The Plan provides for four (4) classes of unimpaired Claims:

- **Class 1** consists of Allowed Other Priority Claims against 85 Flatbush RHO Hotel, which are defined as any Claim against the Debtor entitled to priority in payment as specified in § 507(a)(3), (4), (5), (6), (7) or (9), other than an Administrative Expense Claim or a Priority Tax Claim.

- **Class 2** consists of Allowed Other Priority Claims against 85 Flatbush RHO Residential, which are defined as any Claim against the Debtor entitled to priority in payment as specified in § 507(a)(3), (4), (5), (6), (7) or (9), other than an Administrative Expense Claim or a Priority Tax Claim.

- **Class 4** consists of the 85 Flatbush RHO Hotel Other Secured Claims, which are defined as a Secured Claim, other than the 85 Flatbush Avenue Secured Claim or 85 Flatbush Mezz Secured Claim.  To the extent that 85 Flatbush RHO Hotel Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 4.

- **Class 5** consists of the 85 Flatbush RHO Residential Other Secured Claims, which are defined as a Secured Claim, other than the 85 Flatbush Avenue Secured Claim or 85 Flatbush Mezz Secured Claim.  To the extent that 85 Flatbush RHO

21

Residential Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 5.

Each of these Classes of Claims is unimpaired by the Plan, and as such the holders are not entitled to vote on the Plan; rather, they are deemed to accept the Plan.

78.    The Plan defines Priority Tax Claims as any unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in §§ 502(i) and 507(a)(8).  The Priority Tax Claims include:  (i) Claim No. 7-5 filed by the New York State Department of Taxation & Finance (the "<u>NYS Dept. of Tax</u>") in the amount of $91,872.96; (ii) Claim No. 1-3 filed by the NYS Dept. of Tax in the amount of $635,682.55; (iii) Claim No. 2 filed by the New York State Department of Labor in the amount of $0.00; and (iv) Claim No. 14 filed by the NYC Dept. of Finance in the amount of $1,119,193.  Each of these Priority Tax Claims is unimpaired by the Plan, and as such the holders are not entitled to vote on the Plan; rather, they are deemed to accept the Plan.

79.    The Plan provides ten (10) classes of impaired Claims that are entitled to vote:

- **<u>Class 3</u>** consists of the TH Holdco Secured Claim, which is a Claim pursuant to the TH Holdco Prepetition Loan Agreement, which is secured by the TH Holdco Mortgage and constitutes a first priority security interest on the Hotel Property and Residential Property.

- **<u>Class 6</u>** consists of General Unsecured Claims against 85 Flatbush RHO Hotel, which are defined as any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

- **<u>Class 7</u>** consists of Existing Equity Interests in 85 Flatbush RHO Hotel, which are held by debtor 85 Flatbush RHO Mezz.

- **<u>Class 8</u>** consists of General Unsecured Claims against 85 Flatbush RHO Residential, which are defined as any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

- **<u>Class 9</u>** consists of Existing Equity Interests in 85 Flatbush RHO Residential, which are held by debtor 85 Flatbush RHO Mezz.

- **<u>Class 10</u>** consists of Allowed Other Priority Claims against 85 Flatbush RHO Mezz, which are defined as any Claim against the Debtor entitled to priority in

payment as specified in § 507(a)(3), (4), (5), (6), (7) or (9), other than an Administrative Expense Claim or a Priority Tax Claim. There may be not be any Claims in Class 10.

- **Class 11** consists of the 85 Flatbush Mezz Claim pursuant to the 85 Flatbush Mezz Loan Agreement, which is secured by the 85 Flatbush Hotel Pledge Agreement and 85 Flatbush Residential Pledge Agreement. TH Holdco properly exercised the right to vote Class 11 Claim in favor of the Plan pursuant to the Intercreditor Agreement and the Class 11 ballot purporting to reject the Plan is ineffective.

- **Class 12** consists of the 85 Flatbush RHO Mezz Other Secured Claims, which is defined as a Secured Claim, other than the 85 Flatbush Avenue Secured Claim or 85 Flatbush Mezz Secured Claim. To the extent that 85 Flatbush RHO Mezz Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 12. There may not be any Claims in Class 12.

- **Class 13** consists of General Unsecured Claims against 85 Flatbush RHO Mezz, which are defined as any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

- **Class 14** consists of Insider General Unsecured Claims, which is defined as any unsecured Claim made by an insider (as defined by § 101(31) that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court. To the extent the holder of any General Unsecured Claim is determined by the Bankruptcy Court to be in fact a Class 6, Class 8, or Class 13 General Unsecured Claim or Class 15 Interest rather than a Class 14 General Unsecured Claim, such Claim shall instead be treated in accordance with the treatment of such Class.

Each of these Classes of Claims is impaired by the Plan and entitled to vote on the Plan.

80.    Class 15 consists of Existing Equity Interests in 85 Flatbush RHO Mezz, including membership interests or the rights to acquire any such Interests. Interests in this Class receive no distribution under the Plan and are not entitled to vote, but are deemed to reject the Plan.

81.    As set forth above, as required by § 1122, each Class of Claims and Interests under the Plan contains only Claims or Interests that are substantially similar to the other Claims or Interests within such Class. Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of § 1122.

(c)    **Contents of Plan**

82.    Section 1123(a) sets forth eight (8) requirements with which every chapter 11 plan must comply.  11 U.S.C. § 1123(a).  As demonstrated herein, the Plan fully complies with each such requirement.

83.    Section 1123(a)(1) provides that a plan must "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507 (a)(2), 507 (a)(3), or 507 (a)(8) of this title, and classes of interests."  11 U.S.C. § 1123(a)(1).  Section 3 of the Plan designates Classes of Claims and Classes of Equity Interests as required by § 1123(a)(1).  Under the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims need not be classified and must only be designated.  Accordingly, Administrative Expense Claims and Priority Tax Claims are designated in Section 2 of the Plan with their treatment also set forth in Section 2 of the Plan.

84.    Section 1123(a)(2) provides that a plan must specify any class of claims that are unimpaired, while § 1123(a)(3) requires that a plan specify the treatment of any impaired class of claims.  Section 3 sets forth the classes of both impaired and unimpaired Claims, while Section 4 of the Plan specifies the treatment of such Claims, which satisfies §§ 1123(a)(2) and (3).

85.    Section 1123(a)(4) provides that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4)  The treatment of each Claim or Equity Interest in each particular Class is the same as the treatment of each other Claim or Equity Interest in such Class as required by § 1123(a)(4).

86.    Section 5 and various other provisions of the Plan set forth the means for implementation of the Plan as required by § 1123(a)(5).  Section 1123(a)(6) is inapplicable in these Chapter 11 Cases because the Debtors are not being reorganized and no new equity securities will be issued upon the Effective Date of the Plan.  Section 1123(a)(7) is inapplicable in these Chapter 11 Cases because the Debtors are not being reorganized and no trustee is being

appointed.  Section 1123(a)(8) is inapplicable here as it applies only when the debtor is an individual, not a corporation.

87.      Section 1123(b) sets forth the permissive provisions that may be incorporated into a chapter 11 plan. 11 § U.S.C. 1123(b).  Each provision of the Plan is consistent with § 1123(b). Specifically, pursuant to Section 3 of the Plan, Class 1 (85 Flatbush RHO Hotel Other Priority Claims); Class 2 (85 Flatbush RHO Residential Other Priority Claims); Class 4 (85 Flatbush RHO Hotel Other Secured Claims); and Class 5 (85 Flatbush RHO Residential Other Secured Claims) are rendered unimpaired.  Sections 3 and 4 of the Plan also designates Class 3 (TH Holdco Secured Claim); Class 6 (85 Flatbush RHO Hotel General Unsecured Claims); Class 7 (85 Flatbush RHO Hotel Existing Equity Interests); Class 8 (85 Flatbush RHO Residential General Unsecured Claims); Class 9 (85 Flatbush RHO Residential Existing Equity Interests); Class 10 (85 Flatbush Mezz Other Priority Claims (if any)); Class 11 (85 Flatbush Mezz Claims); Class 12 (85 Flatbush Mezz Other Secured Claims (if any)); Class 13 (85 Flatbush Mezz General Unsecured Claims); Class 14 (Insider General Unsecured Claims); and Class 15 (85 Flatbush Mezz Existing Equity Interests) as impaired and specifies the treatment of Claims and Equity Interests in those Classes, as contemplated by § 1123(b)(1).  Section 9 of the Plan provides for the assumption or rejection, as appropriate, of the executory contracts and unexpired leases of the Debtors not previously assumed, assumed and assigned, or rejected (or for which motions for assumption or rejection are pending) under § 365 as contemplated by § 1123(b)(2).  TH Holdco respectfully submits that this Bankruptcy Court should approve, among other things, the procedure outlined in Section 9 of the Plan and any resulting rejections.

88.      Based upon the foregoing, the Plan complies fully with the requirements of §§ 1122 and 1123, as well as with all other provisions, and thus satisfies the requirement of § 1129(a)(1).

25

**(d)**    **TH Holdco Has Complied With the Bankruptcy Code**

89.    Section 1129(a)(2) requires that TH Holdco "compl[y] with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(2).

90.    Section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements under §§ 1125 and 1126.  *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as § 1125 regarding disclosure."); *see also In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928**,** *49 (Bankr. S.D.N.Y. Oct. 31, 2003); *see also Mabey v. Southwestern Elec. Power Co.* (*In re Cajun Elec. Power Coop, Inc.*), 150 F.3d 503, 513 n.3 (5th Cir. 1998) (citations omitted), *cert. denied*, 526 U.S. 1144 (1999); *In re Vail Plaza Dev.,* Nos. 08-26930 (HRT), 0826924 (HRT) 2010 WL 74801 (Bankr. D. Colo. January 4, 2010); *In re Texaco*, 84 B.R. at 90607 (citations omitted); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 258 (Bankr. D.N.J. 1988).  TH Holdco has complied with the applicable provisions of title 11, including the provisions of §§ 1125 and 1126 regarding disclosure and plan solicitation.  Specifically, the transmittal and mailing of solicitation materials were proper and notice was adequate, and the Disclosure Statement provided parties with adequate information.  Moreover, no solicitation of votes on the Plan was made other than in accordance with the Disclosure Statement Order.

**(e)**    **The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law**

91.    Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).

92.    "[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes."  *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000); *see also In re Century Glove*, Inc., Civ. A. Nos. 90-400-SLR, 90-401-SLR, 1993 WL

239489, at *4 (D. Del. Feb. 10, 1993) ("Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of § 1129(a)(3) is satisfied."); *see also In re Leslie Fay Cos., Inc.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) ("A plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code") (citations omitted); *Worldcom*, 2003 WL 23861928, at *51 (same).

93.    As the Second Circuit has stated, "[t]he good-faith test means that the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Johns-Manville*, 843 F.2d at 649 (internal quotations omitted); *In re Best Prods. Co.*, 168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994), *appeal dismissed*, 177 B.R. 791 (S.D.N.Y. 1995), *aff'd*, 68 F.3d 26 (2d Cir. 1995) (same).  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan. *See Leslie Fay*, 207 B.R. at 781.

94.    In the "context of a [c]hapter 11 plan, courts have held [that] a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code.'" *Greer v. Gaston & Snow (In re Gaston & Snow)*, Nos. 93 Civ. 8517 (JGK), 93 Civ. 8628 (JGK), 1996 WL 694421, at *9 (S.D.N.Y. Dec. 4, 1996) ("failure to propose a plan in good faith occurs when the Plan is not proposed with honesty, good intentions, and to effectuate the reorganization of the enterprise, but rather for some other motive") (citations omitted); *In re 68 West 127 St., LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002); *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) (quoting *Toy & Sports Warehouse*, 37 B.R. at 149); *see also Leslie Fay Co.*, 207 B.R. at 781.  The Plan accomplishes this goal by providing the means through which the Debtors' creditors may recover on their claims while establishing an orderly framework for the wind up of the Debtors' remaining operations and liquidation of the Debtors' remaining assets.

95.    The Plan establishes a Disbursing Agent and procedures, described below, through which claims asserted against the Debtors will be satisfied.  Inasmuch as the Plan promotes the

objectives and purposes, the Plan has been filed in good faith and the requirements of § 1129(a)(3) are satisfied.

**(f)      The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Bankruptcy Court Approval**

96.      Section 1129(a)(4) requires that certain professional fees and expenses paid by the Debtors (or, as here, by TH Holdco on behalf of the applicable Estate directly or through the Disbursing Agent), or a person receiving distributions of property under the plan, be subject to approval by the Bankruptcy Court as reasonable.  11 U.S.C. § 1129(a)(4).

97.      Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval as to their reasonableness by the Bankruptcy Court.  *See In re Calpine Corp.*, No. 05-60200, 2007 WL 4565223, at *12 (Bankr. S.D.N.Y. Dec. 19, 2007); *In re River Village Assocs.*, 161 B.R. 127, 141 (Bankr. E.D. Pa. 1993); *In re Resorts Int'l*, 145 B.R. 412, 475 (Bankr. D.N.J. 1990); *Elsinore Shore*, 91 B.R. at 267-68.

98.      Pursuant to this Bankruptcy Court's *Order Granting Application of Robinson Brog Leinwand Greene Genovese & Gluck P.C., as Attorneys for the Debtors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses*, dated September 15, 2021 [Docket No. 124] (the "Debtors' Interim Fee Applications"), the Bankruptcy Court awarded the fees and expenses sought in such applications, as well as payment thereon, less a twenty-five (25) percent holdback.  On June 9, 2022, counsel to the Debtors filed their *Final Application Of Robinson Brog Leinwand Greene Genovese & Gluck P.C. As Attorneys For The Debtors For An Award Of Compensation For Professional Services Rendered And Reimbursement Of Actual And Necessary Expenses Incurred* [Docket No. 217] and *Final Application Of Leech Tishman Robinson Brog PLLC As Attorneys For The Debtors For An Award Of Compensation For Professional Services Rendered And Reimbursement Of Actual And Necessary Expenses Incurred* [Docket No. 218] (collectively, the

28

"Debtors' Final Fee Applications").  The Debtors (or TH Holdco on behalf of the applicable

Estate) are not authorized to pay any outstanding fees and expenses, including the holdback

portion, until confirmation of the Plan.  Accordingly, TH Holdco requests that TH Holdco be

authorized to pay the holdback from the Debtors' Interim Fee Applications, as well as the fees

and expenses requested in the Debtors' Final Fee Applications, on the Effective Date of the Plan.[7]

99.      Additionally, all such fees and expenses, as well as all other accrued fees and

expenses of professionals through the Effective Date, remain subject to final review for

reasonableness by the Bankruptcy Court under § 330.  In addition, pursuant to §§ 503(b)(3) and

–(b)(4), the Bankruptcy Court must review any application for substantial contribution to ensure

compliance with the statutory requirements and that the fees requested are reasonable.  Further,

all payments to be made in connection with the Effective Date or which otherwise are required to

be disclosed will be disclosed at or prior to the Confirmation Hearing.

100.     The foregoing procedures for the Bankruptcy Court's review and determination of

the fees and expenses to be paid by TH Holdco satisfy the objectives of § 1129(a)(4).  *See Elsinore

Shore*, 91 B.R. at 268 (requirements of § 1129(a)(4) satisfied where plan provided for payment of

only "allowed" administrative expenses).  Based upon the foregoing, the Plan complies with the

requirements of § 1129(a)(4).

(g)      <b><u>TH Holdco has Disclosed All Necessary Information Regarding
the Disbursing Agent, the Process for Distribution, and the
Process for Disputed Claims</u></b>

101.     Section 1129(a)(5) requires that the plan proponent disclose the identity and

affiliations of the proposed officers and directors of a debtor after confirmation; that the

appointment or continuance of such officers and directors be consistent with the interests of

creditors and equity security holders and with public policy; and that there be disclosure of the

---

[7] TH Holdco has objected to the Debtors' Final Fee Applications on the grounds that a portion of the fees sought
violate the terms of the Agreed Final Cash Collateral Order.  TH Holdco reserves its right to object to the payment of
any fees incurred by Debtors' counsel that are not required to be paid out of cash collateral under the Agreed Final
Cash Collateral Order.

identity and compensation of any insiders to be retained or employed by the reorganized Debtors. 11 U.S.C. § 1129(a)(5); *see also In re Apex Oil Co*., 118 B.R. 683, 704-05 (Bankr. E.D. Mo. 1990) (§ 1129(a)(5) is satisfied where debtor and creditors' committee believe control of entity by proposed individuals will be beneficial).

102.    In determining whether the post-confirmation management of a debtor is consistent with the interests of creditors, equity security holders and public policy, a court must consider proposed management's competence, discretion, experience, and affiliation with entities having interests adverse to the debtor. *See In re Sherwood Square Assocs*., 107 B.R. 872, 878 (Bankr. D. Md. 1989); *see also In re W. E. Parks Lumber Co.*, 19 B.R. 285, 292 (Bankr. W.D. La. 1982).

103.    Under the Plan, no such director or officer is contemplated, and thus § 1129(a)(5) is fully satisfied and/or inapplicable.

104.    Nevertheless, in an effort to be fully transparent, TH Holdco makes the following disclosures. As set forth in Sections 7 and 8 of the Plan, Kroll Restructuring Administration LLC ("Kroll") has been selected as the Disbursing Agent under the Plan. Furthermore, Kroll is a disinterested person as that term is defined in § 101(14) because (a) Kroll has no connection with the Debtors, its creditors, any other party in interest, the Debtors' current respective attorneys or professionals, the United States Trustee, or any person employed in the Office of the United States Trustee; (b) Kroll is not itself a creditor, equity security holder, or insider; (c) Kroll is not and was not, within two (2) years before Petition Date, a director, officers or employee of the Debtors; (d) Kroll does not have interests materially adverse to the interests of the Debtors, their estates, or of any Class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason, and (e) Kroll has not represented or held an interest adverse to the interests to TH Holdco, the Debtors, or any other parties in interest in these Chapter 11 Cases. The obligations and duties of the Disbursing Agent are set out in the Plan and Account Agent Agreement.

### (h)   The Plan Does Not Contain Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission

105.    Section 1129(a)(6) requires that any regulatory commission having jurisdiction over the rates charged by a debtor in the operation of its business approve any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6). This provision is inapplicable in the instant case. The Plan does not provide for rate changes subject to the jurisdiction of any governmental regulatory agency by the Debtors following confirmation of the Plan. Hence, regulatory approval is unnecessary under the terms of the statute.

### (i)   The Injunction and Exculpation In The Plan Are Appropriate

106.    The Plan Injunction and Limitation of Liability provisions of Section 11 of the Plan (i) have been negotiated in good faith and at arms' length; (ii) are consistent with and permitted pursuant to §§ 105, 524, 1123(b)(6), 1129, and 1142 and applicable caselaw, (iii) are integral to the structure of the Plan, formed part of the agreement among all parties in interest embodied therein, and are each an essential means of implementing the Plan pursuant to § 1123(a)(5); (iv) are fair and equitable; (v) are given for valuable consideration; and (vi) confer material benefits on the Debtors' estates, and are in the best interests of the Debtors and their estates, their creditors and holders of Interests. Additionally, all interested parties have timely received due, proper, and adequate notice of the release, exculpation, injunction and limitation of liability provisions in the Plan and have not objected to them. Such provisions shall be effective and binding upon all persons and entities. As set forth more fully in Section 11, the Plan provides for exculpation of the Exculpated Parties and any of their respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, the Plan Supplement or the any contract, instrument, release, or other agreement or document created or entered into, or any other action taken or omitted to be

31

taken in connection with the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.  There are no third party releases in the Plan.

107.    The injunction and exculpation provisions contained in the Plan are well within the standard provisions regularly approved in this District and others for chapter 11 plans.  *See, e.g.*, *In re SPC Seller, Inc.*, Case No. 09-12647 (BLS) (Bankr. D. Del. Dec. 8, 2010); *In re Smidth & Co.*, Case No. 08-10516 (KG) (Bankr. D. Del. Jan. 21, 2009); *In re IFL Corp.*, Case No. 08-13589 (MG) (Bankr. S.D.N.Y. Sept. 14, 2009); *In re Mal Dunn Assocs., Inc.*, Case No. 07-36299 (CGM) (Bankr. S.D.N.Y. Mar. 12, 2008).  Accordingly, the injunction and exculpation contained in Section 11 of the Plan are fair and equitable and fall well within the ambit of such releases and exculpation approved by courts.

### (j)    The Plan Is in the Best Interests of All Creditors and Equity Interest Holders

108.    Section 1129(a)(7) requires that a plan be in the best interests of creditors and stockholders.  It requires that each holder of a claim or equity interest either accept the plan or receive or retain under the plan property having a present value, as of the effective date of the plan, not less than the amount such holder would receive or retain if the debtor were liquidated under Chapter 7.  *See In re Wireless Data, Inc.*, 547 F.3d 484, 495 (2d Cir. 2008); *Leslie Fay*, 207 B.R. at 764; *In re Bloomingdale Partners*, 160 B.R. 93, 97 (Bankr. N.D. Ill. 1993) (citing *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)) ("Since *Dewsnup* mandates that increases in the value of collateral accrue to the benefit of the secured creditor in chapter 7, the best interest test entitles the creditor in chapter 11 to at least the present value of its secured claim, as increased during the pendency of the case.").

109.    The best interests test focuses on individual dissenting creditors rather than classes of claims.  *See Johns-Manville*, 843 F.2d at 649; *Bank of Am. Nat'l Trust & Sav. Ass'n v.*

*203 N. LaSalle St. P'ship*, 526 U.S. 434, 442, n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *Leslie Fay*, 207 B.R. at 787; *Drexel*, 138 B.R. at 761.

110.    Under the best interests test, the Bankruptcy Court must find that each non-accepting creditor will receive or retain value that is not less than the amount it would receive if the Debtors were liquidated under Chapter 7.  *See 203 N. LaSalle*, 526 U.S. at 440; *United States v. Reorganized CF & I Fabricators, Inc.*, 518 U.S. 213, 228 (1996); *Wireless Data*, 547 F.3d at 495; *In re Fur Creations by Varriale, Ltd.*, 188 B.R. 754, 759 (Bankr. S.D.N.Y. 1995); *Best Prods. Co.*, 168 B.R. at 72; *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).  As § 1129(a)(7) makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests.

111.    Pursuant to § 1126(f), a class that is unimpaired under a plan is conclusively deemed to have accepted the plan.  *See Drexel*, 960 F.2d at 290.  Here, Classes 1, 2, 4, and 5 are unimpaired under the Plan, and therefore did not vote on the Plan.  These Classes are deemed to have accepted the Plan (the "Deemed Acceptances").

112.    As set forth in the Disclosure Statement, the Liquidation Analysis, and the Famularo Declaration, the best interests test is satisfied as to each impaired Claim and Equity Interest.

113.    Substantially less value will be available to creditors if Chapter 11 Cases are converted to Chapter 7 than under the Plan because, among other reasons, TH Holdco is now familiar with the Debtors' operations and affairs.  The expense of transitioning the cases to a Chapter 7 trustee would be more expensive than the prompt dissolution of the Debtor entities and using a Disbursing Agent to distribution funds to creditors.

114.    The Liquidation Analysis attached as Exhibit B to TH Holdco's Disclosure Statement reflects that a Chapter 7 liquidation of the Debtors' estates would likely result in a smaller distribution (zero or near zero recovery for other creditors) to the majority of the Debtors' creditors.  As set forth in the Liquidation Analysis, the increased costs associated with a

liquidation under Chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee.

115.    Confirmation of the Plan will provide any rejecting creditor with a recovery that is significantly better than such holder would receive in a Chapter 7 liquidation of the Debtors, and the holders of Equity Interests will receive the same treatment under the Plan as would be expected in the event of the Debtors' liquidation under Chapter 7.

116.    Based upon the foregoing, the Plan satisfies the requirements of § 1129(a)(7).

### (k)    **While the Plan Does Not Satisfy § 1129(a)(8), the Plan Does Satisfy 1129(b) and thus Confirmation is Appropriate**

117.    Section 1129(a)(8) requires that each class of impaired claims or interests accept the plan, as follows: "With respect to each class of claims or interests - (A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).

118.    The impaired creditors in Classes 3 and 11 have affirmatively voted to accept the Plan. No votes were received in Classes 6-10 and 12-14, but they are nonetheless deemed to have accepted the Plan.

> The presumption under the prior law that non-voting creditors rejected the plan has been removed. Non-voting creditors are deemed neither to have accepted the plan nor rejected it; they are simply bound by the result produced by those who vote. The necessity of deeming a failure to vote as either an acceptance or a rejection of a plan arises only when [as here] no members of a class cast a vote.

*In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1265–66 (10th Cir. 1988) (internal citations omitted); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. at 263 (acknowledging the validity of the reasoning in *In re Ruti-Sweetwater, Inc.* and distinguishing cases to the contrary). A "non-voting, non-objecting creditor who is the only member of a class . . . is deemed to have accepted the plan for purposes of [§§ 1129(a)(8) and -(b)]." *In re Ruti-Sweetwater, Inc.*, at 1266 ("To hold otherwise would be to endorse the proposition that a creditor may sit idly by, not participate in

34

any manner in the formulation and adoption of a plan in reorganization and thereafter, subsequent

to the adoption of the plan, raise a challenge to the plan for the first time.").

> Regarding non-voters as rejecters runs contrary to the Code's fundamental principle, and the language of section 1126(c), that only those actually voting be counted in determining whether a class has met the requirements, in number and amount, for acceptance or rejection of a plan, and subjects those who care about the case to burdens (or worse) based on the inaction and disinterest of others. A holding to the contrary would mean that a failure to vote isn't relevant in a case where anyone else in that class votes, but is enough to force cramdown if the lack of interest in that class is so extreme that nobody at all chooses to vote, one way or the other. As Mr. Mabey, debtors' counsel in *Ruti–Sweetwater*, successfully argued in *Ruti–Sweetwater*, that cannot be the law. Section 1126(c) recognizes the unlikelihood of everyone caring enough about the plan to vote—basing acceptances not on the total claims in the class, but only those voting. And that is a principle upon which the bankruptcy community often relies, as creditor democracy could otherwise be frozen as a consequence of the disinterest of others. On a matter where the Code is essentially silent, making an exception to the principle of section 1126(c)—that only votes actually cast count—makes no sense.

*In re Adelphia Commc'ns Corp.*, at 261–62.

119.    On the other hand, Class 15 (Existing Equity Interests in 85 Flatbush RHO Mezz)

will not receive any property under the Plan and therefore, are deemed to have rejected the Plan

pursuant to § 1126(g) (the "Rejecting Class"). But, as demonstrated below, the Plan completely

satisfies the requirements of § 1129(b) with respect to the Rejecting Class, and accordingly

confirmation is appropriate.

### (l)    The Plan Provides for Payment in Full of All Allowed Priority Claims

120.    Section 1129(a)(9) requires that persons holding allowed claims entitled to priority

under § 507(a) receive specified cash payments under the plan. Unless the holder of a particular

claim agrees to a different treatment with respect to such claim, § 1129(a)(9) sets forth the

treatment the plan must provide. 11 U.S.C. § 1129(a)(9).

US_ACTIVE\121716967\V-7

121.     To the extent such obligations are outstanding following confirmation of the Plan, the Plan provides for the following treatment of such claims.  Pursuant to Section 2 of the Plan, and in accordance with §§ 1129(a)(9)(A) and 1129(a)(9)(B), the Plan provides that all Allowed Administrative Expense Claims under § 503(b) will be paid in full in Cash (plus statutory interest on such claim, if applicable), or as otherwise agreed between the Holder of such Claim on the one hand, and the Debtors and/or TH Holdco on the other hand, on or as soon thereafter as is reasonably practicable, the later of (a) the Closing Date, or (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided that* Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid by the Debtors (or TH Holdco on behalf of the applicable Estate) in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

122.     With respect to Allowed Administrative Expense Claims, TH Holdco submits that TH Holdco will be able to pay all Allowed fees and expenses upon or shortly after Confirmation of the Plan.  Any other Allowed Administrative Expense Claims not to be paid pre-Effective Date upon the consent of the parties will be the responsibility of the Disbursing Agent.  In order to satisfy § 1129(a)(9), payment of these fees and expenses must be approved in the Confirmation Order.

123.     The Plan also satisfies the requirements of § 1129(a)(9)(C) in respect to the treatment of Priority Tax Claims under § 507(a)(8).  Pursuant to Section 2 of the Plan, except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Closing Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority

Tax Claim is due and payable in the ordinary course.

### (m)   At Least One Class of Impaired Claims Has Accepted the Plan

124.    Section 1129(a)(10) requires that at least one Class of Claims or Equity Interests that is impaired under the Plan accepts the Plan, not counting the acceptance of insiders.  Classes 3 (for the Estates of 85 Flatbush RHO Hotel and in 85 Flatbush RHO Residential) and 11 (for the Estate of 85 Flatbush RHO Mezz) affirmatively voted to accept the Plan, and no other creditors voted to reject the Plan or filed an objection to the Plan (besides the NYC Dept. of Finance, which objection is resolved), meaning all impaired Classes of Claims entitled to vote on the Plan accepted or are deemed to have accepted the Plan.  TH Holdco had authority to vote the Chapter 11 Claim in favor of the Plan under the Intercreditor Agreement and properly did so and the Class 11 ballot purporting to reject the Plan is ineffective.  Accordingly, § 1129(a)(10) is satisfied.

### (n)   The Plan Is Feasible

125.    Section 1129(a)(11) requires that the Bankruptcy Court determine that the Plan is feasible as a condition precedent to confirmation.  As described below, and as demonstrated in the Famularo Declaration and the Disclosure Statement Declaration (the "Confirmation Declarations"), the Plan is feasible within the meaning of this provision.  The feasibility test set forth in § 1129(a)(11) requires the Bankruptcy Court to determine whether the Plan is workable and has a reasonable likelihood of success.  *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *IRS v. Kaplan* (*In re Kaplan*), 104 F.3d 589, 597 (3d Cir. 1997); *In re Sound Radio, Inc.,* 103 B.R. 521, 523 (D.N.J. 1989), *aff'd*; 908 F.2d 964 (3rd Cir. 1990); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003); *Drexel*, 138 B.R. at 762 ("It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success.") (quotations omitted).  A plan that proposes a liquidation of the debtor can satisfy the feasibility

requirement so long as means for such liquidation of the debtor is proposed as part of the plan. *In re Cellular Information Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994).

126.    The Plan clearly provides a means for liquidating the Debtors' remaining assets and establishing structure for distributions to creditors.  Further, as set forth in the Confirmation Declarations, the latest Monthly Operating Reports [Docket Nos. 183, 184, and 185], and the Guaranty attached as Exhibit G to the Disclosure Statement, TH Holdco anticipates that sufficient cash will be available to meet obligations under the Plan.  Therefore, TH Holdco respectfully submits that the Plan satisfies the requirements of § 1129(a)(11).

### (o)    All Statutory Fees Have Been or Will Be Paid

127.    Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 [title 28, the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12).  Section 507 provides that "any fees and charges assessed against the estate under [section 1930,] chapter 123 of title 28" are afforded priority as administrative expenses.  *Id*. at § 507(a)(l).  In accordance with §§ 507 and 1129(a)(12), Section 13 of the Plan provides that all such fees and charges payable will be paid on or before the Effective Date and thereafter as may be required.

### (p)    The Plan Adequately and Properly Treats Retiree Benefits

128.    Section 1129(a)(13) requires a plan to provide for retiree benefits at levels established pursuant to § 1114.  The Debtors have no obligation to pay retiree benefits within the meaning of § 1129(a)(13).  Accordingly, the requirements of § 1129(a)(13) are inapplicable to these Chapter 11 Cases.

### (q)    Section 1129(a)(14) is Inapplicable

129.    Section 1129(a)(14) requires that, if applicable, the debtor pay all domestic support obligations.  Here, the Debtors are a company and are not required by any judicial or

38

administrative order to pay domestic support obligations.  As such, § 1129(a)(14) is inapplicable to these Chapter 11 Cases.

### (r)      Section 1129(a)(15) is Inapplicable

130.    Section 1129(a)(15) applies only in cases in which the debtor is an "individual" as defined by §§ 1129(a)(14) and 1129(a)(15).  The Debtors are not individuals and therefore this provision does not apply.

### (s)      Section 1129(a)(16) is Inapplicable

131.    Section 1129(a)(16) requires that transfers of property under the plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.  This Section is inapplicable as the Plan calls for no such transfers.

### ii.     The Plan Satisfies The "Cram Down" Requirements Under § 1129(b)

132.    Section 1129(b) provides a mechanism (known colloquially as "cram down") for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims as required by § 1129(a)(8).  Under § 1129(b), the court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes.  11 U.S.C. § 1129(b).

### (a)     The Plan Does Not Discriminate Unfairly

133.    The Plan does not "discriminate unfairly" with respect to impaired Equity Interests in the Debtors that are deemed to reject the Plan.  Section 1129(b)(1) does not prohibit discrimination between classes.  Rather, it prohibits discrimination that is unfair.  *See, e.g.*, *In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990).  The weight of judicial authority holds that a plan unfairly discriminates in violation of § 1129(b) only if similar claims are treated

differently without a reasonable basis for the disparate treatment. *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 228 (Bankr. D.N.J. 2000); *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990). Accordingly, as between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests (*see, e.g.*, *Johns-Manville*, 68 B.R. at 636), or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment (*see, e.g.*, *Buttonwood Partners*, 111 B.R. at 63).

134.    The Plan reflects that Class 15 will not receive any property under the Plan and therefore is conclusively presumed to have rejected the Plan. Class 15 is comprised of the Existing Equity Interests in 85 Flatbush RHO Mezz, which are held entirely by 85 Flatbush RHO Mezz LLC and 85 RHO LLC c/o GC Realty Advisors.

135.    The legal rights of holders of Equity Interests in such Class are treated consistently with the treatment of other classes whose legal rights are substantially similar, and such Equity Interest holders do not receive more than they legally are entitled to receive for their Equity Interests. Unless all of the Claimants are repaid in full, it would be inappropriate for the Equity Interests to receive any distribution from the Debtors' estates.

136.    Based upon the foregoing, the Plan does not "discriminate unfairly" with respect to any impaired rejecting Class of Claims and satisfies the requirements of § 1129(b) in that regard.

## (b)    The Plan is Fair and Equitable

137.    Section 1129(b) defines the phrase "fair and equitable." 11 U.S.C. § 1129(b)(2); *see United Sav. Ass'n of Tx. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 793 F.2d 1380, 1410 (5th Cir. 1986), *aff'd*, 808 F.2d 363 (5th Cir. 1987) (*en banc*), *aff'd*, 484 U.S. 365 (1988); *In re One Times Square Assocs. Ltd.*, 159 B.R. 695, 698-99 (Bankr. S.D.N.Y. 1993); *see also In re Seasons Partners, LLC*, 2010 WL 4386939 (Bankr. D. Ariz. October 28, 2010); *In re Mcorp Fin., Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992). With

respect to equity interests, "fair and equitable" means that (a) each equity interest holder will receive or retain property of a value, as of the effective date of the plan, equal to the greatest of (i) the allowed amount of any fixed liquidation preference to which such holder is entitled, (ii) any fixed redemption price to which such holder is entitled, or (iii) the value of such interest; or (b) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.  11 U.S.C. § 1129(b)(2)(C).

138.    With respect to Class 15 Equity Interests in the Debtors, there are no holders of any interest junior to such Class.  Accordingly, no holder of any interest that is junior to the interests of such Class will receive or retain any property under the Plan on account of such junior interest, and therefore, the Plan satisfies the "absolute priority rule" codified in § 1129(b)(2)(C)(b).  Conversely, holders of Claims senior to Class 15 Equity Interests are likely not all being paid in full. Accordingly, it would violate the absolute priority rule for holders of Class 15 Equity Interests to retain property on account of their Interests in the Debtors.

139.    The Plan "does not discriminate unfairly" and is "fair and equitable" with respect to any holders of Class 15 claims.  The Plan can be confirmed with respect to the Rejecting Class because § 1129(b) is satisfied.

### iii.    *The Plan is the Only Viable Plan Solicited in these Chapter 11 Cases*

140.    Section 1129(c) requires that the Bankruptcy Court only confirm one plan.  The TH Holdco Plan is the only viable plan that has been submitted for solicitation of acceptance in these Chapter 11 Cases.  There is no other viable plan – the Debtors latest plan is not feasible or confirmable as discussed herein and in other pleadings.  Accordingly, this requirement is not an impediment to confirmation of TH Holdco's Plan.

141.    Even assuming *arguendo* the Debtors are able to obtain a real financing commitments prior to the Confirmation Hearing, this conclusion is not altered.  Under § 1129(c), "[i]f the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in

determining which plan to confirm." 11 U.S.C. § 1129(c). Here, however, the Debtors cannot establish they have a confirmable plan, much less that the Debtors' Amended Plan would be preferred by creditors. *See e.g.*, *In re Granite Broad. Corp.*, 369 B.R. 120, 145 (Bankr. S.D.N.Y. 2007) (reasoning among other things that "[t]he feasibility requirement of § 1129(a)(11) of the Bankruptcy Code is not optional," the court confirmed one plan over competing plan where competing plan failed to meet feasibility requirements).

142.    Moreover, the Debtors do not have an approved disclosure statement and have not solicited creditors. Indeed, at least two significant creditors would vote against the Debtors' Amended Plan: (i) TH Holdco, and (ii) TH Holdco as agent and holder of the power of attorney for 85 Flatbush Mezz LLC and despite the Debtors' attempt to characterize them as unimpaired, they are in fact impaired. Moreover, postponing approval of TH Holdco's Plan based on the mere possibility that the Debtors will some day have a confirmable plan not only risks what is now an essentially certain distribution under TH Holdco's Plan (pending confirmation) but prejudices creditors who will be required to postpone receipt of such disbursement.

143.    Furthermore, even assuming *arguendo* the Debtors' Amended Plan (and any further amendments thereto) is confirmable at TH Holdco's Confirmation Hearing, which TH Holdco disputes, a "court must choose only one plan to confirm." *Mercury Cap. Corp. v. Milford Connecticut Assocs., L.P.*, 354 B.R. 1, 6 (D. Conn. 2006) (citing 11 U.S.C. § 1129(c)).

### *iv.* *The Plan's Purpose Does Not Run Afoul of § 1129(d)*

144.    Section 1129(d) provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act of 1933." 11 U.S.C. § 1129(d). As set forth herein, the purpose of the Plan is to create an efficient structure for the analysis of and distribution on Claims against the Debtors. Accordingly, § 1129(d) does not require denial of confirmation of the Plan.

D.    **The Sale of the Properties are Exempted from Certain Taxes.**

145.    Pursuant to § 1146(a) of the Bankruptcy Code "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any State or local law imposing a stamp tax or similar tax."  Here, pursuant to Section 5.5 of the Plan states:

> To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan as confirmed by the Court, including an instrument of transfer executed in furtherance of the Sale Transaction contemplated by the Plan, shall not be subject to tax under any law imposing a Transfer Tax due on the sale of the Hotel and/or Residential Property in connection with or in furtherance of the Plan as confirmed by the Bankruptcy Court and the funding requirements contained herein and shall not be subject to any state, local or federal law imposing such tax and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

> Pursuant to Section 1146(a) of the Bankruptcy Code, the deeds conveying any of the Properties to TH Holdco or its nominee or designee upon the Effective Date of this Plan shall be an instrument of transfer in connection with or in furtherance of the Plan and shall not be subject to tax under any law imposing a Transfer Tax.

146.    It is respectfully submitted that this Bankruptcy Court permit all such transfers under the Plan to be exempt under § 1146(a) as provided in Section 5.5 of the Plan, as this is integral to confirmation of the Plan.

147.    Under Section 4.3 of the Plan, the treatment of the TH Holdco Secured Claim includes the preservation of the TH Holdco Mortgage as against guarantors or other non-Debtor parties, while specifically exempting the transfer to TH Holdco on account of its credit bid from any transfer tax under § 1146(a):

> (b) *Treatment*:  The holder of the TH Holdco Secured Claim shall receive:

> (i) if the Hotel Property and/or Residential Property is sold to a party other than TH Holdco, Cash in an amount sufficient to satisfy the sum of the Allowed Class 3

Claim, together with all applicable pre-petition and post-petition interest, costs and fees. Pending the Closing of the Sale Transaction, the holder of the Class 3 Claims shall retain its Lien on the Hotel and Residential Property.

(ii) If the Hotel and/or Residential Property is sold to TH Holdco pursuant to a TH Holdco Credit Bid, then TH Holdco shall receive the Hotel and/or Residential Property. In any event, TH Holdco preserves all of its rights and claims against all guarantors and non-Debtor parties.

As part of the TH Holdco Credit Bid, TH Holdco its nominee or designee, may elect to take title to any of the Properties subject to the existing TH Holdco Mortgage (as reduced by the value of the TH Holdco Credit Bid), which TH Holdco Mortgage may be assigned to any such nominee's or designee's lender. In the event TH Holdco or its nominee or designee elects to take title to any of the Properties subject to the existing TH Holdco Mortgage, Debtors shall have no further financial obligation to TH Holdco or any assignee of the TH Holdco Mortgage and shall be released from any and all liability to TH Holdco or any assignee with respect to such TH Holdco Mortgage upon the Closing. Nothing herein shall impact TH Holdco's rights as to any remaining claims against any guarantors or other non-Debtor parties.

Pursuant to Section 1146(a) of the Bankruptcy Code, the deeds conveying any of the Properties to TH Holdco or its nominee or designee upon the Effective Date of this Plan shall be an instrument of transfer in connection with or in furtherance of the Plan and shall not be subject to tax under any law imposing a Transfer Tax.

### E.    **Any Mechanics Liens Against the Debtors' Properties have Been Extinguished Under § 546(b) for Failure to File Requisite Notice.**

148.    There are no valid mechanics liens against the Properties. As noted above, Rightway Restoration, Greater Shield, and 85 Flatbush Avenue each filed prepetition mechanics liens against the Debtors' Properties with the Office of the City Register of the City of New York (County of Kings). However, to the extent such liens were valid, they have since been extinguished as Rightway Restoration, Greater Shield, and 85 Flatbush Avenue failed to foreclose, file an extension, and/or file the requisite § 546(b) notices in these Chapter 11 Cases. In any event, Rightway Restoration, Greater Shield, and the holders of any other such Claims are not prejudiced because they are being paid in full pursuant to the terms of the Plan. *See* Section 4 of the Plan regarding treatment of Classes 6 and 8.

149.    Section 546(b) provides:

"(b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If--
(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and

(B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;

such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement."  11 U.S.C. § 546(b).

150.    Here, under New York law, the holders of these Claims were required to file a notice of the mechanics liens in the county records (N.Y. Lien Law § 3), which they apparently did.  Then in September of 2021, when the holders were required to commence a foreclosure or file an extension (N.Y. Lien Law § 17) to continue perfection, they were instead supposed to file a § 546(b) notice in the Bankruptcy Court to continue perfection.

151.    Here, the mechanics liens of Rightway Restoration and 85 Flatbush Avenue were extinguished for failure to commence a foreclosure or file an extension.  Additionally, although Greater Shield appears to have filed for an extension of its mechanics lien in Kings County (perhaps in violation of the automatic stay of § 362), Greater Shield failed to provide the requisite § 546(b) notice.  These liens were therefore extinguished and any associated Claims are now General Unsecured Claims falling in Classes 6 and 8, respectively.

**F.**     **Responses to Objections to Confirmation.**

*i.*     ***The Mezz Lender's Objection Fails.***

152.     As an initial matter, the Mezz Lender's Objection is yet another violation of the

Intercreditor Agreement, as are most of the Mezz Lender's actions in these Chapter 11 Cases to

date.  The Intercreditor Agreement Section 9(d) expressly provides that "Mezzanine Lender shall

not challenge . . . the validity or amount of any claim submitted in such Proceeding by Senior

Lender in good faith or any valuations of the Premises or any other Senior Loan collateral

submitted by Senior Lender in good faith in such Proceeding, or take any other action in such

Proceeding which is adverse to Senior Lender's enforcement of its claim or receipt of adequate

protection."[8]  At best, the Mezz Lender may have monetary damages[9] (which TH Holdco denies),

but the Mezz Lender is certainly not permitted to interfere with TH Holdco's Plan.  As such, the

Mezz Lender is expressly prohibited from doing the very thing it is now attempting to do, and

its actions may give rise to a claim for damages by TH Holdco.

153.     Further, the Mezz Lender fails to provide an adequate basis for its claim that 85

Flatbush Avenue's alleged violations of the Intercreditor Agreement somehow result in TH

Holdco's Class 11 ballot and Class 11 Notice being deemed "invalid and of no effect".  *See* Mezz

Lender's Objection at ¶ 6.  The Mezz Lender cites *Nadeau v. Equity Residential Properties Mgmt.

Corp.*, 251 F. Supp. 3d 637 (S.D.N.Y. 2017) for the proposition that since 85 Flatbush Avenue

materially breached the Intercreditor Agreement, TH Holdco now cannot enforce it.   This

draconian result is not supported by any case cited by the Mezz Lender.

154.     In *Nadeau*, the defendant refused to arbitrate pursuant to an arbitration agreement,

and then attempted to later compel the plaintiff to arbitrate.  *Nadeau* establishes that the party

---

8 *See also* May 16, 2022 Hearing Transcript at 34, wherein the Bankruptcy Court reasoned, " . . . you can't object to
their claim.  You can't -- you can't challenge the validity of the claim.  So  you can't, that's the basis for objecting to
the credit bid, is that the claim isn't a claim.  So I think the lawsuit is about money, not about the validity of a claim.
Now, you can maybe persuade me differently at confirmation.  But I don't think I have to decide the lawsuit before I
can schedule the confirmation hearing.  And certainly not, it wouldn't bar me approving a disclosure statement."
9 *See* May 16, 2022 Hearing Transcript at 36, wherein the Bankruptcy Court identifies that Mezz Lender's claim is
likely "a suit for money for a lost opportunity to exercise an option.  Which maybe actually properly raised in State
Court instead of in Federal Court."

46

claiming the terms of the agreement were inapplicable or invalid bears the burden of such proposition. *Id.* at 641. Furthermore, in the underlying case cited in *Nadeau*, the Second Circuit says: "First, under New York law, only 'a breach in a contract which substantially defeats the purpose of that contract can be grounds for rescission. The non-breaching party will be discharged from the further performance of its obligations under the contract when the breach goes to the root of the contract.'" *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997). The Mezz Lender here has failed to establish the terms of the Intercreditor Agreement are void and unenforceable, much less that there was a material breach of the Intercreditor Agreement. Moreover, *Nadeau* does not suggest that an assignee to a contract is precluded from enforcing the agreement as a result of the assignor's breach. Certainly not where such breach has not been conclusively established and where such breach may, at best, give rise to a claim for monetary damages.

155.    Indeed, the Mezz Lender has failed to diligently prosecute the adversary proceeding since filing its Complaint. Shortly after filing its Complaint, the Mezz Lender represented that it intended to conduct discovery promptly, that it believed that discovery should be completed within sixty days (by mid-June 2022), and that dispositive motions could be briefed in mid-June. But the Mezz Lender's representations have proven hollow. In the weeks leading up to the May 16, 2022 hearing in these proceedings, the Mezz Lender was dilatory in seeking and responding to discovery, and combative and intractable in discussions regarding discovery issues. By way of just one example (out of many that TH Holdco previously articulated in the Rule 26(f) Report that the parties filed in the adversary proceeding), the Mezz Lender failed to timely respond to TH Holdco's discovery requests. TH Holdco had promptly served those requests on April 4, 2022 (the same date that TH Holdco filed its answer and weeks before that answer was due), and the requests called for any responses and objections to be served, as well as any responsive documents to be produced, on or before May 4, 2022. But the Mezz Lender unilaterally disregarded that deadline and did not serve its responses and objections or produce any documents until May 13, 2022 (the business day before the May 16, 2022 hearing). Moreover, the Mezz Lender's belated production of documents was meager and

incomplete, consisting of just forty (40) documents and containing no emails or text messages. The Mezz Lender has made no further productions since that date, nor has it offered any timeline by which it intends to continue or complete its production.

156. In fact, since the May 16, 2022 hearing when the Bankruptcy Court expressed skepticism that "confirmation must await determination of the adversary proceeding," and stated that it believes that the adversary proceeding "should proceed on its own as a lawsuit that raises these issues would normally proceed," (May 16, 2022 Hearing Transcript at 35:8-10, 37:18-22), the Mezz Lender has not taken any action in the adversary proceeding whatsoever. The Mezz Lender's complete inaction since the May 16, 2022 hearing seemingly confirms that the Mezz Lender's true intention all along was to attempt to delay confirmation of TH Holdco's Plan in order to extract hold-up value from TH Holdco, and that the Mezz Lender has no interest in actually pursuing the (meritless) claims that it has asserted in the adversary proceeding and in the Mezz Lender's Objection.

157. Given the above, TH Holdco's Class 11 ballot voting in favor of the Plan is valid. *See* Certification of Ballots at ¶ 11; *see also* Intercreditor Agreement at Section 9(d)(ii) (providing TH Holdco with the right to vote any and all claims of the Mezz Lender in any bankruptcy proceeding). The rest of the Mezz Lender's Objection is premised on this false assertion that Class 11 has rejected the Plan, and therefore all other arguments likewise fail.

158. The Mezz Lender's argument that the Plan fails under §§ 1129(a)(8), 1129(a)(10), and 1129(b), and that the "even better course of action" is to wait for the now-filed but still unconfirmable Debtors' Amended Plan also fails. Because the Mezz Lender's security interest is in the Mezz Debtor, which is a subordinate estate, unless the 85 Flatbush RHO Hotel and 85 Flatbush RHO Residential estates are paid in full, which requires payment in full of TH Holdco's liens and claims (significantly more than the $97 million offered under the Debtors' Amended Plan), then the Mezz Lender is out of the money and entitled to no recovery. Even assuming *arguendo* the Mezz Lender is correct that Class 11 has rejected the Plan (which TH Holdco

denies), then TH Holdco can still confirm its Plan for some but not all of the Debtors. *See* Plan at page 2:

> The Plan constitutes a separate chapter 11 plan for each Debtor. The classifications set forth in Classes shall be deemed to apply to each Debtor identified, except that Class 3 shall apply to each of the Debtors. TH Holdco reserves the right to proceed to seek confirmation with respect to the Plan as to each Debtor separately and to proceed to confirm the Plan with respect to some but not all of the Debtors.

159.    In any event, there is no basis to postpone the Confirmation Hearing and Auction until the Mezz Lender's adversary proceeding is resolved. The Bankruptcy Court has already summarily rejected this proposition. April 6, 2022 Hearing Transcript at 12 ("I'm just saying, I don't see how it's a gating item for pursuit of TH Holdco's plan.") The Debtors and any potential new investor are welcome to submit a bid for the Property at the Auction. The Mezz Lender's Claims will be paid only *after* TH Holdco's liens and claims are paid in full (which now requires more than $112 million).

160.    With respect to the Mezz Lender's argument relating to § 1129, TH Holdco satisfies § 1129(a)(8) because it voted the Class 11 ballot on behalf of the Mezz Lender to accept the Plan, as it is entitled to do so under the Intercreditor Agreement. As a result, no voting creditors cast a valid ballot to reject the Plan. *See* Section IV.C.k (discussing the legal basis to deem non-voting Class as having accepted the Plan). Again, Section 9(d) of the Intercreditor Agreement grants to TH Holdco the right to vote any claim in a bankruptcy. The Mezz Lender has expressly agreed that it has no right to vote the Class 11 ballot. Accordingly the Mezz Lender's Class 11 ballot is void. Even assuming *arguendo* the Mezz Lender's Class 11 Ballot is valid, which it is not, TH Holdco can effectuate a cramdown against the Mezz Lender as each of the Debtors has an impaired accepting class.[10]    TH Holdco's Plan thus satisfies § 1129(b).

---

[10] For the Mezz Debtor, *e.g.*, an impaired accepting class is Class 13 (85 Flatbush Mezz General Unsecured Claims). The Mezz Lender is mistaken that it is the "only impaired class with respect to 85 Flatbush RHO Mezz LLC that contains a claim." Mezz Lender's Objection at ¶ 8. As of this juncture, it appears that at least National Grid and Con Edison, who are classified as Class 13, have at least some Claims against the Mezz Debtor that will not be reclassified against one of the other Debtors. See Summary of Claims by Estate attached as **Exhibit C** to the Disclosure Statement. *In re Ruti-Sweetwater, Inc.*, 836 F.2d at 1265–66; *In re Adelphia Commc'ns Corp.*, 368 B.R. at 263. Even *In re Tribune Co.*, which was cited by the Mezz Lender (Mezz Lender's Objection at ¶ 8) supports this conclusion: "Would

For the reasons stated above, the Mezz Lender's Claim is out of the money and there is no requirement that the Plan pay the Mezz Lender's Claim in order to be "fair and equitable." Accordingly, the Bankruptcy Court should overrule the Mezz Lender's Objection in its entirety and confirm the Plan at the Confirmation Hearing.

### ii.    The NYC Dept. of Finance's Limited Objection is Resolved.

161.    TH Holdco has resolved the NYC Dept. of Finance's Limited Objection by agreeing to insert the requested language in the Confirmation Order.

### iii.    The Debtors' Confirmation Objection Fail.

162.    The Debtors' Confirmation Objection and additional filings are smoke and mirrors, and confirmation of TH Holdco's properly filed, noticed, and solicited Plan, which creditors have voted in favor of, and to which no creditor voted to reject, should be approved.  If the Debtors or Mr. Hagler are truly interested the Properties, then they can submit a Qualified Bid within the construct of the Bid Procedures already approved by the Bankruptcy Court by July 29, 2022 and demonstrate to the Broker that they indeed have committed financing for their bid.  There is no legitimate reason for further delay in approving TH Holdco's Plan.

163.    Furthermore, as an initial matter before addressing the substance (or lack thereof) of the Debtors' Confirmation Objection, at no time has TH Holdco acted in any manner other than in good faith.  Any statements to the contrary are false.  If anything, it is the Debtors who have continuously deployed delay tactics and otherwise flouted the rules of engagement in bankruptcy proceedings throughout these Chapter 11 Cases (*e.g.*, entering into non-ordinary course leases without court approval, failing to provide promised financial documents to TH Holdco for its analysis, failing to file monthly operating reports timely and in some cases at all, filing objections and cornerstone documents well after deadlines have passed or on the eve of

---

'deemed acceptance' by a non-voting impaired class, in the absence of objection [within that class], constitute the necessary 'consent' to a proposed 'per plan' scheme? I conclude that it may." 464 B.R. 126, 183 (Bankr. D. Del.), *on reconsideration in part*, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd sub nom. In re Trib. Media Co.*, 587 B.R. 606 (D. Del. 2018), *aff'd sub nom. In re Trib. Co.*, 972 F.3d 228 (3d Cir. 2020), *and aff'd in part sub nom. In re Trib. Media Co.*, 587 B.R. 606 (D. Del. 2018), *and aff'd sub nom. In re Trib. Co.*, 972 F.3d 228 (3d Cir. 2020).

hearings, requesting extraordinary relief from the Bankruptcy Court without abiding by general notice requirements, etc.) – all to the detriment of the entire creditor body.

164.    Setting aside the Debtors' inflammatory statements and their insider's emotional appeal for this Bankruptcy Court to disregard the equitable treatment of the Debtors' creditors in favor of the Debtors' insiders, the Debtors' Confirmation Objection fails for a plethora of reasons, the greatest of which is that the Debtors' Amended Disclosure Statement and the Debtors' Amended Plan (on which the Debtors' Confirmation Objection is primarily premised) are materially deficient, and the Debtors' Amended Plan is unconfirmable and definitively incapable on its face of paying *any* creditor in full, much less all creditors in full on the effective date.  This is because, among other things, (i) the purported appraisal of the Properties attached as Exhibit A to the DiPietra Declaration is faulty and unreliable, (ii) TH Holdco's senior secured claim is greater than the total amount offered under the Debtors' Amended Plan, and yet the Debtors propose to not pay TH Holdco in full despite the fact that the only thing of value is the very thing securing TH Holdco's claim, and (iii) the Debtors' proposed plan financing is illusory. On the other hand, TH Holdco's Plan is confirmable and ready to be approved now.  This Bankruptcy Court should overrule the Debtors' Confirmation Objection and move forward with approving TH Holdco's Plan.[11]

165.    As set forth in TH Holdco's Objection to Shorten Notice and incorporated fully herein, the Debtors' Amended Plan is unconfirmable on its face, and therefore, there is only one real world plan here – TH Holdco's Plan.  Moreover, as set forth in the § 363(k) Declaration and incorporated fully herein, the purported appraisal of the Properties is faulty and unreliable.  It is illogical to argue the Properties and the cash on hand (all of which secure TH Holdco's claims) are only worth $72 million given TH Holdco has already offer another $22 million to keep them and Mr. Hagler apparently values the Property at $24.75 million more than the appraisal amount.

---

11 TH Holdco reserves all rights to object to the Debtors' Amended Disclosure Statement and the Debtors' Amended Plan.

166.    Addressing the crux of the Debtors' arguments against confirming TH Holdco's Plan, TH Holdco properly purchased the TH Holdco Prepetition Loan Agreement and has proposed a confirmable Plan.  Indeed, the Bankruptcy Court has tentatively ruled that TH Holdco did not improperly purchase the TH Holdco Prepetition Loan Agreement, noting in open court at the April 6, 2022 hearing that TH Holdco is the owner of the claim.  April 6, 2022 Hearing Transcript at 15-16 ("[I]f there was a breach by the senior lender, at the time, which wasn't TH Holdco, of the purchase option provisions of the agreement . . ., it's hard to see how that would mean that another purchase from the senior lender, *i.e.*, TH Holdco, would somehow not own the debt.").  Indeed, the Bankruptcy Court further acknowledged that "[n]one of those rights [that the Mezz Lender purports are owed to it] are spelled out in the intercreditor agreement, so people need to figure out what they are.  But I think the most extreme one would be to say that notwithstanding having spent millions of dollars to buy the claim from the Flatbush senior lender, TH Holdco doesn't have a claim.  I mean, that's pretty farfetched to me.  So I'm going to overrule those two objections."  April 6, 2022 Hearing Transcript at 16.

167.    At bottom, the Debtors and all parties are bound by the terms of the March 2021 Agreed Final Cash Collateral Order, which is final and nonappealable.  The Debtors cannot re-trade that deal now.  That order expressly provides for (i) an allowed prepetition claim of $85.1 million, (ii) an agreed right to postpetition interest to the extent the collateral value exceeds $85.1 million, and (iii) in acknowledge of the liens on the property.  Moreover, (a) given that the Court has already approved TH Holdco's right to credit bid in the Sale and Bid Procedures (*see id.* at VI(n) at p. 6 ("any credit bid by TH Holdco, which credit bid shall be in an amount up to and including the Amount of the Allowed TH Holdco Secured Claim, is deemed to be a 'Qualified Bid' and a 'Qualified Competing Bid'")), which Sale and Bid Procedures were approved through the Disclosure Statement Order, and (b) given that the Debtors did not file an appeal to the Disclosure Statement Order (and the time to do so has expired), TH Holdco's status as a Qualified Bidder is the law of these Chapter 11 Cases.

168.    Furthermore, the idea there is another competing plan is fanciful.  As currently filed, the Debtors' Second Amended Plan is patently unconfirmable as it is not feasible and purports to divert value that belongs to TH Holdco as secured creditor to subordinate creditors, among other things.  The Debtors have had eighteen (18) months in these Chapter 11 Cases, and they have yet to file anything with a solid financial commitment, an articulated business plan, or the requisite projections necessary for any plan of reorganization.  The Debtors unquestionably need something more than just a short declaration purporting to show the $97 million financial commitment.  The Debtors do not even have a term sheet, and there is no indication of ownership to the source of alleged funds.  Specifically, although the Hagler Declaration states Daryl Hagler is the owner of Centers Plan for Healthy Living LLC ("CPHL"), which is a managed care organization in Staten Island, New York, CPHL's website indicates Daryl Hagler has no ownership.  *See* attached **Exhibit A** at 4 (listing four members but not including Hagler).  Furthermore, the Wilmington Trust statement provided in the Hagler Declaration indicates not that Daryl Hagler is entitled to the CPHL Operating Fund, but that Steven Stender (CPHL's Chief Financial Officer) and CPHL itself are entitled to the account's funds.  There is absolutely no indication in any of the provided documentation that Daryl Hagler is in any manner entitled to the funds in that account.  Therefore, the Plan fails basic § 1129 requirements, among other things.

169.    In sum, the Bankruptcy Court should deny approval of all of the Debtors' requests for relief and instead refer the Debtors and their apparent new financing source to the terms of the TH Holdco Plan, which allows them to submit a real and committed bid by the Bid Deadline.  To do otherwise rewards the Debtors' lack of diligence and their other intentional delay tactics.  Moreover, the Debtors' Second Amended Plan is not better than TH Holdco's Plan because their plan remains speculative as to feasibility.  For the avoidance of doubt, if the Bankruptcy Court delays confirmation of TH Holdco's Plan (which pays everyone in full), creditors will be further prejudiced by the unnecessary delay.

**G.      TH Holdco's Request for a Waiver of Stay to Consummate the Plan Should be Approved.**

170.      For good cause, TH Holdco seeks a limited waiver of the 14-day stay provided under Bankruptcy Rule 3020, which provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  11 U.S.C. § 3020(e).  Here, the Plan has been vigorously negotiated and contested among sophisticated parties, and the immediate effectiveness of the Plan will mitigate administrative and professional costs while not prejudicing any party in interest and so that the parties can move forward with the marketing and Sale of the Properties upon entry of the Confirmation Order.

171.      TH Holdco is prepared to purchase the property through a credit bid shortly after entry of the Confirmation Order, should the Bankruptcy Court determine that the Plan is confirmable.  TH Holdco has worked diligently to confirm the Plan and have it "go effective" by no later than mid-August.  Delay due to appeal is expected to result in significant additional expenses and potential delayed distributions to creditors.  Accordingly, TH Holdco seeks a waiver of the stay period to the extent necessary for the Plan to "go effective" no later than mid-August.

## V.    **CONCLUSION**

The Plan complies with and satisfies all of the requirements of § 1129 an all other

applicable requirements under the Bankruptcy Code and should be confirmed.

Dated: June 27, 2022               **DENTONS US LLP**
      New York, New York

                                    */s/ Lauren M. Macksoud*
                                    Lauren Macksoud
                                    Sarah M. Schrag
                                    **DENTONS US LLP**
                                    1221 Avenue of the Americas
                                    25th Floor
                                    New York, New York 10020
                                    Telephone: (212) 768-6700
                                    Facsimile:  (212) 768-6800
                                    E-mail: lauren.macksoud@dentons.com
                                                        sarah.schrag@dentons.com

                                    Robert Richards  (admitted *pro hac vice*)
                                    **DENTONS US LLP**
                                    233 S. Wacker Drive
                                    Suite 5900
                                    Chicago, IL 60606
                                    Telephone: (312) 876-8000
                                    Facsimile: (312) 876-7934
                                    Email: robert.richards@dentons.com

                                    *Counsel to TH Holdco LLC*

**<u>Exhibit A</u>**

(CPHL Ownership)

X

ENROLL OR CONTACT US TODAY

ENROLL NOW **(/ENROLL.HTML)**
CONTACT US **(/CONTACT.HTML)**

A- A A+

HOME (/) > ABOUT (/ABOUT.HTML) > WHAT IS CENTERS PLAN FOR HEALTHY LIVING? (/ABOUT/WHAT-IS.HTML)

# What is Centers Plan for Healthy Living?

**Centers Plan for Healthy Living** is a managed care organization whose goal is provide eligible members with access to quality healthcare so that they can continue to live healthy and productive lives in the least restrictive manner possible.

## Leadership

**Mark Bloom**
*Chief Executive Officer*

**Steven J. Stender, FSA, MAAA**
*Chief Financial Officer*

**Lois Faust, MBA, CHC**
*Chief Compliance Officer*

**Dr. Marco Michelson**
*Chief Medical Officer*

**Steve Hirsch**
*Chief Information Officer*

## Ownership

*Click here  (/about/what-is-new)*

6/23/22, 3:40 PM                    Centers Plan — What is Centers Plan for Healthy Living?

20-23280-rdd    Doc 264    Filed 06/27/22    Entered 06/27/22 15:55:38    Main Document
                                    Pg 70 of 72
Last modified: Oct 25, 2020

TERMS OF USE (HTTPS://CENTERSHEALTHCARE.COM/TERMS.HTML)
NOTICE OF PRIVACY PRACTICES (HTTPS://WWW.CENTERSPLAN.COM/SHARE/PDFS/CPHL_UPLOADS/HIPAA_NOTICE_OF_PRIVACY_PRACTICES_FINAL_09092015_NF_.PDF)
PRIVACY POLICY (HTTPS://CENTERSHEALTHCARE.COM/PRIVACY.HTML)
SITE MAP (/SITEMAP.HTML)
COPYRIGHT ©2022 CENTERS PLAN. ALL RIGHTS RESERVED. (/COPYRIGHT)

Centers Plan affiliated facilities and companies are independently owned and operated. Centers Plan provides administrative and business support to its affiliated health care providers. Centers Plan is neither the owner nor operator of any health care provider or managed care plan.

## ABOUT (HTTP://CENTERSPLAN.COM/ABOUT)

Community (http://centersplan.com/about/community)
What is Centers Plan for Healthy Living? (http://centersplan.com/about/what-is)
CPHL's Mission Statement (http://centersplan.com/about/cphl-mission)
HIPAA Compliance (http://centersplan.com/about/hipaa-c)
Report Fraud, Waste and Abuse (http://centersplan.com/about/report-fraud)
What is Centers Plan for Healthy Living? (http://centersplan.com/about/what-is-new)
Code of Conduct (https://www.centersplan.com/share/pdfs/CPHL_Uploads/code_of_conduct_compliance_final.pdf)

## PLANS (HTTP://CENTERSPLAN.COM/PLANS)

Centers Plan for Medicaid Advantage Plus (HMO D-SNP) (http://centersplan.com/plans/map)
Managed Long Term Care Plan (http://centersplan.com/plans/mltc)
Centers Plan for Medicare Advantage Care (HMO) (http://centersplan.com/plans/mapd-plan)
Centers Plan for Dual Coverage Care (HMO D-SNP) (http://centersplan.com/plans/dsnp-plan)
Centers Plan for Nursing Home Care (HMO I-SNP) (http://centersplan.com/plans/isnp-plan)

## PROVIDERS (HTTP://CENTERSPLAN.COM/PROVIDERS)

COVID (http://centersplan.com/providers/covid)
Clinical Guidelines (http://centersplan.com/providers/clinical-guidelines)
Healthy Living Newsletter (http://centersplan.com/providers/healthy-living-newsletter)
Provider Recruitment (http://centersplan.com/providers/provider-recruitment)

## FIND A PROVIDER (HTTP://CENTERSPLAN.COM/FIND-PROVIDER)

Managed Long Term Care Plan (http://centersplan.com/find-provider/mltc)
Medicare Advantage Plans (http://centersplan.com/find-provider/medicare)

## CAREERS (HTTP://CENTERSPLAN.COM/CAREERS)

X

# ENROLL OR CONTACT US TODAY

**ENROLL NOW (/ENROLL.HTML)**
**CONTACT US (/CONTACT.HTML)**

A-    A    A+

HOME (/) > ABOUT (/ABOUT.HTML) > WHAT IS CENTERS PLAN FOR HEALTHY LIVING? (/ABOUT/WHAT-IS-NEW.HTML)

## Kenneth Rozenberg
*Member*

## Dr. Sumir Sahgal
*Member*

## Saul E. Goldbaum
*Member*

## Jonathan Strasser
*Member*

**Last modified:** Apr 5, 2018

TERMS OF USE (HTTPS://CENTERSHEALTHCARE.COM/TERMS.HTML)
NOTICE OF PRIVACY PRACTICES (HTTPS://WWW.CENTERSPLAN.COM/SHARE/PDFS/CPHL_UPLOADS/HIPAA_NOTICE_OF_PRIVACY_PRACTICES_FINAL_09092015_NF_.PDF)
PRIVACY POLICY (HTTPS://CENTERSHEALTHCARE.COM/PRIVACY.HTML)
SITE MAP (/SITEMAP.HTML)
COPYRIGHT ©2022 CENTERS PLAN. ALL RIGHTS RESERVED. (/COPYRIGHT)

Centers Plan affiliated facilities and companies are independently owned and operated. Centers Plan provides administrative and business support to its affiliated health care providers. Centers Plan is neither the owner nor operator of any health care provider or managed care plan.

## ABOUT (HTTP://CENTERSPLAN.COM/ABOUT)

Community (http://centersplan.com/about/community)
What is Centers Plan for Healthy Living? (http://centersplan.com/about/what-is)
CPHL's Mission Statement (http://centersplan.com/about/cphl-mission)
HIPAA Compliance (http://centersplan.com/about/hipaa-c)
Report Fraud, Waste and Abuse (http://centersplan.com/about/report-fraud)
What is Centers Plan for Healthy Living? (http://centersplan.com/about/what-is-new)
Code of Conduct (https://www.centersplan.com/share/pdfs/CPHL_Uploads/code_of_conduct_compliance_final.pdf)

## PLANS (HTTP://CENTERSPLAN.COM/PLANS)

Centers Plan for Medicaid Advantage Plus (HMO D-SNP) (http://centersplan.com/plans/map)
Managed Long Term Care Plan (http://centersplan.com/plans/mltc)
Centers Plan for Medicare Advantage Care (HMO) (http://centersplan.com/plans/mapd-plan)
Centers Plan for Dual Coverage Care (HMO D-SNP) (http://centersplan.com/plans/dsnp-plan)
Centers Plan for Nursing Home Care (HMO I-SNP) (http://centersplan.com/plans/isnp-plan)

## PROVIDERS (HTTP://CENTERSPLAN.COM/PROVIDERS)

COVID (http://centersplan.com/providers/covid)
Clinical Guidelines (http://centersplan.com/providers/clinical-guidelines)
Healthy Living Newsletter (http://centersplan.com/providers/healthy-living-newsletter)
Provider Recruitment (http://centersplan.com/providers/provider-recruitment)

## FIND A PROVIDER (HTTP://CENTERSPLAN.COM/FIND-PROVIDER)

Managed Long Term Care Plan (http://centersplan.com/find-provider/mltc)
Medicare Advantage Plans (http://centersplan.com/find-provider/medicare)

## CAREERS (HTTP://CENTERSPLAN.COM/CAREERS)