Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800
Email:  lauren.macksoud@dentons.com
          sarah.schrag@dentons.com

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>85 FLATBUSH RHO MEZZ LLC, *et al.*,[1]<br><br>Debtors | Case No. 20-23280 (RDD)<br>Chapter 11<br><br><br>(Jointly Administered) |

**TH HOLDCO LLC'S OBJECTION TO DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 363(K) DISQUALIFYING TH HOLDCO LLC FROM CREDIT BIDDING AND GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

TH Holdco LLC ("TH Holdco")[2] hereby files this Objection to the *Debtors' Motion for an Order Pursuant to 11 U.S.C. § 363(k) Disqualifying TH Holdco LLC from Credit Bidding and Granting Related Relief* (the "Section 363(k) Motion") [Docket No. 232], and requests that the Court deny the Section 363(k) Motion.

**INTRODUCTION**

1. The Section 363(k) Motion should be denied in its entirety for three primary reasons: (i) the Debtors have failed to meet their burden under Section 363(k) of the Bankruptcy Code ("Section 363(k)"); (ii) the relief sought in the Section 363(k) Motion contradicts the Final Cash Collateral Order (defined below) and the Disclosure Statement Order (defined below); and (iii) Section 363(k) Motion contains numerous factual inaccuracies and mischaracterizes the circumstances surrounding TH Holdco's involvement in these Chapter 11 Cases.

2. On June 22, 2022, the Debtors filed the Section 363(k) Motion and corresponding *Declaration in Support of the Debtors' Motion for Order Pursuant to 11 U.S.C. Section 363(k) Disqualifying TH Holdco LLC from Credit Bidding and Granting Related Relief* (the "Hager Declaration") [Docket No. 232-1, Exhibit A].

3. On April 4, 2022, TH Holdco filed the *Declaration of Franco Famularo in Support of TH Holdco LLC's Combined (A) Response to Objections to Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto and (B) Objection to Debtors' Disclosure Statement for Amended Plan of Reorganization* ("Original Famularo Declaration") [Docket No. 174].

---

[2]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush RHO Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC (Docket No. 211) (as the same has been or maybe amended, modified, supplemented, or restated, the "TH Holdco Plan").

2

US_ACTIVE\121790519\V-4

4.  The Original Famularo Declaration accurately provides TH Holdco's perspective on why TH Holdco purchased the debt directly from the Lender after the Debtors' exclusivity period expired. TH Holdco hereby incorporates by reference the Original Famularo Declaration into this Objection.

5.  The Original Famularo Declaration is further supplemented by the *Declaration of Franco Famularo in Support of TH Holdco's Objection to Debtors' Motion for an Order Pursuant to 11 U.S.C. § 363(k) Disqualifying TH Holdco LLC from Credit Bidding and Granting Related Relief* (the "Supplemental Famularo Declaration," together with the Original Famularo Declaration, the "Famularo Declarations"), which is being filed contemporaneously herewith.

6.  For the reasons set forth below, TH Holdco requests that the Court deny the Debtors' Section 363(k) Motion.

## ARGUMENT

### I.  The Debtors Have Not Shown Cause to Disqualify TH Holdco's Credit Bid, As Required Under Section 363(k).

7.  The Debtors have failed to meet their burden required under Section 363(k) and TH Holdco should be allowed to credit bid the full amount of its claim. Section 363(k) of the Bankruptcy Code grants secured creditors an express statutory right to credit bid the full face amount of their entire claim. Specifically, Section 363(k) provides as follows:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchase such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k). Absent "cause" under Section 363(k), a creditor is entitled to credit bid the full amount of its claim. *See, e.g., In re Joseph*, 330 B.R. 87, 92 (Bankr. D. Conn. 2005) (objection

3

to credit bid overruled, where there was "no cause that would justify the court's denial of [creditor's] right to credit-bid at the proposed sale up to the amount of . . . [creditor's] lien").

8. "The ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price [ ]" by enabling the secured "creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan." *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070 n.2 (2012).

9. "The decision of whether to deny credit bidding based on cause is within the discretion of the court," but this "discretion does not give the bankruptcy court the authority to act arbitrarily or to be freewheeling. In other words, the standard is not standardless." *In re: Aéropostale, Inc.*, 555 B.R. 369, 415 (Bankr. S.D.N.Y. 2016) (internal citations and quotations omitted). The objecting party to a creditor's right to credit bid the full amount of its claim at a sale of assets bears the burden of proving "cause" to limit the creditor's right. *In re Merit Grp., Inc.*, 464 B.R. 240, 256 (Bankr. D.S.C. 2011).

10. "The modification or denial of credit bid rights for cause under § 363(k) should be an extraordinary exception that is used only upon equitable considerations (e.g., competing claims, collusion, or other fraudulent or bad faith acts)." *In re RML Dev., Inc.*, 528 B.R. 150, 156 (Bankr. W.D. Tenn. 2014) (permitting holder of allowed secured claim to credit bid).

11. A few courts have limited a secured creditor's right to credit bid because of inequitable conduct. For instance, in the case of *In re Aloha Airlines, Inc.*, 2009 WL 1371950 (Bankr. D. Haw. May 14, 2009), a secured creditor was denied the right to credit bid because of its undisclosed sponsorship of a third party's acquisition of the debtor's assets through that bid.

12. The *Aloha* case cited by the Debtors is readily distinguishable. There, the court denied a credit bid for the assets of Aloha Airlines because, among other things, one of the participants in the bid had entered the Hawaiian inter-island air travel market for the purposes of putting Aloha Airlines out of business, supported its effort by misusing information subject to confidentiality agreements, and relying on sworn misstatements to cover up its dishonesty and intentional destruction of records. *Id.* at *8-9. The *Aloha* court relied upon factual findings made by the court in its decision on the merits of a completed adversary proceeding (in another bankruptcy case), as well as findings made in connection with a motion for sanctions in that proceeding. *Id.* at 2-3. Here, TH Holdco has not engaged in any such conduct, but as further explained below, has supported the auction and competitive bidding process. Additionally, the comprehensive factual record and extensive proceedings in the *Aloha* case is simply not present in this case, and TH Holdco disputes that it engaged in any dishonest conduct.

13. The *Fisker* and *Free Lance-Star* cases cited by the Debtors are also inapposite to the case at bar. *In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55 (Bankr. D. Del. 2014). In *Fisker*, the court capped the secured creditor's credit bid because there was evidence that there would be no bidding (not just chilled bidding), if the bid were to be allowed in full. *Id.* at 60. In contrast, there is no such evidence here. Indeed, the Debtors recently identified a new plan funder proposing to pay $96.75 million, which further buttresses the fact that bidding is not being chilled. In *Free Lance-Star*, the court limited a claim purchaser's bid under § 363(k) where a party purchased a secured loan prepetition, encouraged the debtor to file bankruptcy, and engaged in an aggressive loan to own strategy. *In re The Free Lance-Star Publ'g Co. of Fredericksburg, VA*, 512 B.R. 798, 806 (Bankr. E.D. Va. 2014). As discussed further below, TH Holdco's actions have not been overly zealous, as evidenced by the second round of Jones Lang LaSalle ("JLL") marketing and

5

auction procedures, and all of TH Holdco's actions were post-petition and after the initial marketing was completed. The Debtors provide no significant evidence of adverse impact, particularly given TH Holdco's $94 million offer is higher than all prior offers, including the $72 million value the Debtors assert for the Properties and bidders who are currently looking at the Properties through JLL.

14. Further, in *In re Aéropostale, Inc.*, the court failed to find any conduct that would justify denying the lenders' right to credit bid in full, particularly where there were no "allegations of collusion, undisclosed agreements, or any other actions designed to chill the bidding or unfairly distort the sale process." 555 B.R. at 416. Therefore, the court granted the term lenders the right to bid the full amount of their secured claim. The *Aeropostale* court also noted that the court was unaware of any cases where the chilling of bidding *alone* is sufficient to justify a limit on a credit bid—providing that "cases that cite concerns about chilling a bid almost invariably also feature some other factor that supports a limitation on the creditor." *Id.* at 417.

15. Contrary to Debtors' assertion, purchasing debt, including with a possible goal to later own property, does not in itself constitute bad faith and is very common. Under Section 363(k) and the relevant case law, bad faith is usually found where there is an intent of the secured creditor to chill bidding. These cases are limited and evidence a trend that favors protecting the rights of a secured creditor to offset the full amount of its allowed claim in connection with the acquisition of its collateral, whether or not those secured claims were acquired on the secondary market.

16. Here, JLL marketed the Property until November 2021. Then, according to the Debtors' latest Disclosure Statement, JLL conducted negotiations with three potential bidders in the $80 million to $86.5 million range. JLL's marketing was done well before TH Holdco's

January 28, 2022 purchase of the secured debt and before TH Holdco filed its current Plan with a bid of $94 million. The loan acquisition did not chill the bidding factually, because here, the bidding had already occurred.

17. It is also odd that the Debtors (or their insiders) recently commissioned and filed an appraisal saying the Property is currently worth $72 million[3] and its highest and best use is as homeless shelter, while at the same time trying to block a bid with a total value of $94 million from TH Holdco for use as a hotel and residential property. It is difficult to understand how TH Holdco's bid, which is $22 million in excess of the Debtors' asserted valuation of the Property, could be seen as chilling bidding.

18. While TH Holdco believes its current $94 million is clearly fair value for the Properties, TH Holdco included in each version of its Plan a final opportunity for other parties to overbid. TH Holdco proposed, and this Court approved specific sale and bid procedures based on procedures used in the *East Village* case (which was also before this Court). TH Holdco then folded in all of the substantive comments received from Debtors' counsel. Debtors' counsel did not object to the Sale and Bid Procedures as approved by this Court. TH Holdco specifically proposed that JLL, as a well-known third party broker, run the process and any auction, should there be an overbid. JLL is actively marketing the Properties and any potential bidder can participate in the auction so long as their bid satisfies the terms of the Court approved Sale and Bid Procedures.

19. JLL has already started its further marketing of the Properties, and will have completed two months of marketing by the July 27, 2022 bid deadline. A further sale advertisement was run in the Wall Street Journal and is also being run in a specialized real estate

---

[3] The new appraisal is flawed, as further discussed further in the Supplemental Famularo Declaration.

7

publication. TH Holdco understands that JLL has reached out to potential bidders (including those from the Fall 2021 process) and that one of them is doing a site tour of the Properties soon. The Debtors have also obtained a plan funding proposal for $96.75 million.

20. If TH Holdco's goal in holding the debt or submitting its bids in the $90 to $94 million range was to chill other bidders, TH Holdco's Plan could have just provided title to the Property transfers to TH Holdco with no further marketing or opportunities for overbids. It did not do that. The fact that the Debtors have a plan funder proposing to pay $96.75 million to obtain the Reorganized Equity of the Debtors is further evidence that bidding is not in fact being chilled real world.

II. <u>The Relief Sought in the Section 363(k) Motion is Contrary to the Final Cash Collateral Order and the Disclosure Statement Order.</u>

21. On March 29, 2021, this Court entered the *Final Consent Order Authorizing (I) Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief* [Docket No. 64] (the "<u>Final Cash Collateral Order</u>"), which at paragraph 14, provides that "the Debtors and the Lender agree that as of the Petition Date, the principal amount of the Lender's claims against the estates of the Debtors is $85,158,815.99" (the "<u>Lender Claim</u>"). Namely, the Final Cash Collateral Order lists the components of the Lender Claim, which clearly include default interest, and provides that the Lender Claim will "continue to accrue interest and additional charges pursuant to and under the Loan Documents." Additionally, the Final Cash Collateral Order provides for (i) an allowed prepetition claim of $85.1 million, (ii) an agreed right to post-petition interest to the extent the collateral value exceeds $85.1 million and (iii) an acknowledgement of the liens on the property.

22. The marketing efforts to date and TH Holdco's bids show that TH Holdco's collateral is worth more than the $85.1 million loan balance of the Petition Date. Therefore, TH

Holdco is entitled to post-petition interest and costs under Section 506 of the Bankruptcy Code and the Final Cash Collateral to the extent of that additional value, which based on TH Holdco's current bid, is about $9 million above its pre-petition debt value. Whatever qualified bidders are bidding here is inherently their view of what the collateral is worth – these estates do not have any material unencumbered assets.

23.     The Debtors and all parties are bound by the terms of the Final Cash Collateral Order which is final and non-appealable. The Debtors cannot retrade that deal now.

24.     The prevailing view of courts, including in this district, is that a secured creditor can credit bid up to the full face amount of its claim, including any unsecured deficiency portion thereof. *See In re SubMicron Systems Corp.*, 432 F.3d 448 (3d Cir. 2006) (court approved credit bid for lenders holding liens on substantially all assets of the debtor in a § 363 sale in the amount of the full face value of their secured claims, including the unsecured deficiency portion); *In re SunCruz Casinos, LLC*, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003) ("The legislative history of section 363(k) further clarifies that a secured creditor may credit bid the entire amount of its claim."); *see also* 124 Cong. Rec. H 11093 (Daily Ed. Sept. 28, 1978) (statement of Rep. Edwards) (stating "a secured creditor may bid in the full amount of the creditor's allowed claim, including the secured portion and any unsecured portion thereof in the event the creditor is undersecured").

25.     A creditor who credit bids its secured claim under Section 363(k) can also include in its bid interest and costs to the extent permitted under the governing loan documents. *See In re VeraSun Energy Corp.*, No. 08-12606(BLS), 2009 WL 7215683, at *4 (Bankr. D. Del. Apr. 9, 2009) (allowing secured creditor to credit bid principal and secured interest under loan agreements); *In re KLCG Prop., LLC*, No. 09-14418(KJC), 2010 WL 2745977, at *6 (Bankr. D.

Del. Mar. 25, 2010) (order approving sale motion authorized prepetition lender to credit bid principal, accrued interest, and reimbursable fees and expenses under loan documents).

26. The value of the Collateral during the pendency of a bankruptcy inures to the benefit of the lienholder. Here, that creditor is TH Holdco.

27. In *Matter of T-H New Orleans Ltd. P'ship*, for purposes of valuing a creditor's allowed claim under Section 506(b) of the Bankruptcy Code, the Fifth Circuit stated that "any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, and not to the debtor." 116 F.3d 790, 798 (5th Cir. 1997); *see also Qmect, Inc. v. Burlingame Cap. Partners II, L.P.*, 373 B.R. 682, 688 (N.D. Cal. 2007) (affirming bankruptcy court decision finding that secured lenders' pre-petition collateral could increase in value and increase could inure to lenders' benefit); *In re Bloomingdale Partners*, 160 B.R. 93, 97 (Bankr. N.D. Ill. 1993) (citing *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)) ("Since *Dewsnup* mandates that increases in the value of collateral accrue to the benefit of the secured creditor in chapter 7, the best interest test entitles the creditor in chapter 11 to at least the present value of its secured claim, as increased during the pendency of the case.").

28. Even if the debtors were successful in reducing the amount of TH's credit bid, TH Holdco's rights under the Intercreditor Agreement are preserved as are all of its other rights. Section 7 of the Intercreditor Agreement provides that the Mezz Lender has agreed to subordinate the Mezz Loan and liens to the Senior Loan. Further, in Section 8 of the Intercreditor Agreement, the Mezz Lender agreed to subordinate any right to payment. The Intercreditor Agreement provides:

> Mezzanine Lender's rights to payment of the Mezzanine Loan and the obligations evidenced by the Mezzanine Loan Documents are hereby subordinated to all of Senior Lender's rights to payment by Borrower and Guarantor of the Senior Loan and the obligations secured by the Senior Loan Documents, and Mezzanine Lender

10

shall not accept or receive payments (including whether in cash or other property and whether received directly, indirectly or by setoff, counterclaim or otherwise) from Borrower, Mezzanine Borrower, any Affiliate of Borrower or Mezzanine Borrower, any Person in Control of Mezzanine Borrower and/or from the Premises (or any portion thereof or any other collateral securing the Senior Loan) prior to the date that all obligations of Borrower to Senior Lender under the Senior Loan Documents are indefeasibly paid in full.  If a [bankruptcy] Proceeding shall have occurred and has not been dismissed or if a Senior Event of Default or a Mezzanine Lender Intercreditor Event of Default exists, Senior Lender shall be entitled to receive payment and performance in full of all amounts due or to become due to Senior Lender before Mezzanine Lender is entitled to receive any payment on account of the Mezzanine Loan. All payments or distributions upon or with respect to the Mezzanine Loan which are received by Mezzanine Lender contrary to the provisions of this Agreement shall be received and held in  trust by Mezzanine Lender for the benefit of Senior Lender and shall be paid over to Senior Lender promptly after such receipt in the same form as so received (with any necessary endorsement) to be applied (in the case of cash) to, or held as collateral (in the case of non-cash property or securities) for, the payment or performance of the Senior Loan Liabilities in accordance with the terms of the Senior Loan Documents.

29.     This applies regardless of whether the TH Holdco Secured Claim is deemed paid in full under the Bankruptcy Code because TH Holdco has received the full value of its collateral. Further, the Intercreditor Agreement is enforceable under Section 510 of the Bankruptcy Code. *See* 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.").

30.     Similarly the *Order Granting TH Holdco LLC's Motion to Approve the (I) Adequacy of the Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto* [Docket No. 210] (the "Disclosure Statement Order") approved the Sale and Bid Procedures [Docket No. 212-6].  The Sale and Bid Procedures provide that TH Holdco is deemed to be a "Qualified Bidder" and further provides that "any credit bid by TH Holdco, which credit bid shall be in an amount up to and including the amount of the Allowed TH Holdco Secured Claim, is deemed to be a 'Qualified Bid' and a 'Qualified Competing Bid'".  *See* Sale and Bid Procedures, VI(n) at p. 6.

11

31. The Debtors have not presented any facts to demonstrate the extraordinary circumstances necessary for a bankruptcy court to limit TH Holdco's right to credit bid its claim. Given that the Court has already approved TH Holdco's right to credit bid in the Sale and Bid Procedures, which were approved through the Disclosure Statement Order, and given that the Debtors did not file an appeal to the Disclosure Statement Order (and the time to do so has expired), TH Holdco's status as a Qualified Bidder is the law of the case.

III.   The Section 363(k) Motion Mischaracterizes the Relevant Facts.

32. As further indicated in the Original Famularo Declaration and Supplemental Famularo Declaration, the Debtors' Section 363(k) Motion inaccurately depicts TH Holdco's role in these Chapter 11 Cases.

33. TH Holdco refutes that it ever agreed to participate as a "plan sponsor." The Debtors did not refer TH Holdco to JLL or say that TH Holdco had to pursue a transaction solely through JLL. Further, Mr. Hager specifically suggested that TH Holdco consider buying the Madison debt as one of the alternatives. The Famularo Declarations and the terms of the Court approved Sale and Bid Procedures, as being implemented by JLL, show a reasonable marketing process and not an egregious attempt to suppress bidding or drive down bid values.

## CONCLUSION

34. TH Holdco respectfully requests that the Court deny the Debtors' Section 363(k) Motion, and not limit TH Holdco in credit bidding the full amount of its claim.

[*Remainder of Page Intentionally Left Blank.*]

Dated: June 27, 2022
      New York, New York

**DENTONS US LLP**

/s/ *Lauren M. Macksoud*
Lauren Macksoud
Sarah M. Schrag
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

and

Robert Richards  (admitted *pro hac vice*)
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

*Counsel to TH Holdco LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2022, a true and correct copy of the foregoing *Objection* was caused to be served via the Court's CM/ECF system on all parties authorized to receive electronic notice in these cases and by overnight courier on the parties listed in the attached service list.

/s/ *Lauren M. Macksoud*
Lauren M. Macksoud