**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>   85 FLATBUSH RHO MEZZ LLC, et al.,<br><br>             Debtors | Case No. 20-23280 (RDD)<br>Chapter 11<br><br><br>(Jointly Administered) |

**DECLARATION OF FRANCO FAMULARO IN RESPONSE TO (I) DEBTORS'
MOTION FOR ORDER PURSUANT TO 11 U.S.C. §363(k) DISQUALIFYING TH
HOLDCO LLC FROM CREDIT BIDDING AND GRANTING RELATED RELIEF, (II)
DEBTORS' SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION,
AND (III) IN SUPPORT OF TH HOLDCO'S SECOND AMENDED PLAN**

I, Franco Famularo, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746

and state as follows[1]:

1.      I am a partner and Chief Investment Officer at Ohana Real Estate Investors

("Ohana"). I am a resident of the State of California and am over the age of 18. TH Holdco LLC

is an affiliate of Ohana. I submit this declaration in response to *Debtors' Motion for an Order*

*Pursuant to 11. U.S.C. §363(k) Disqualifying TH Holdco from Credit Bidding and Granting*

*Related Relief* [Docket No. 232], in opposition to the *Debtors' Second Amended Chapter 11 Plan*

*of Reorganization* [Docket No. 240], and in support of *TH Holdco's Second Amended Plan*

[Docket No. 211] (the "Plan").

2.      I know each of the following facts to be true of my own personal knowledge and,

if called as a witness, I could and would competently testify with respect thereto.

3.      Reference is made to my prior declaration, submitted on April 4, 2022, in support

of *TH Holdco's Combined (A) Response To Objections To Motion To Approve (I) The Adequacy*

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed in the Plan.

US_ACTIVE\121798801\V-4

*of Information In The Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto and (B) Objection To Debtors Disclosure Statement For Amended Plan of Reorganization* [Docket No. 174]. All statements made therein are incorporated by reference here. Reference is also made to my *Declaration in Support of TH Holdco LLC's Request for Confirmation of Second Amended Chapter 11 Plan*, submitted concurrently herewith, which is also incorporated by reference herein.

4.      There was nothing nefarious about TH Holdco's acquisition of the TH Holdco Prepetition Loan Agreement. I had conversations with Isaac Hager relating to the Property starting in September of 2021. I met with Mr. Hager on October 13, 2021 for an on-site tour of the Property. Mr. Hager's memory of those discussions and meetings is flawed as I never told Mr. Hager that Ohana was prepared to become a joint venture partner with him or his partners, and never suggested that Ohana was looking to serve as plan sponsor for the Debtors. Further, contrary to Mr. Hager's assertion, my colleague Eddie Yu was not present at the October on-site tour.

5.      I have been involved in numerous due diligence and auction processes throughout my career. I recall noting during my October on-site tour that Mr. Hager was not well informed about the Property and its financial situation, he was unable to articulate a credible business plan, and he was not forthcoming on basic facts about the project (such as the amount of and types of claims against the Property). Mr. Hager's lack of knowledge of the Property and his inability to answer basic questions was highly concerning. It caused an immediate loss of confidence. In my experience, investors and principals are far more knowledgeable about the properties they own. I followed up with Mr. Hager in order to obtain additional information about the Property. Mr. Hager was quite delayed in responding and even when he did respond, his responses were lacking the basic but critical information that an institutional investor would need to evaluate the Property

and the situation.

6.    During my interactions with Mr. Hager, I also noted that he seemed very self-interested in terms of what he personally would get out of any transaction, versus what was best or even what was reasonably possible for the creditors or the bankruptcy estates.   What he represented, in terms of his expectation to receive a full recovery, despite the fact that creditors were being impaired, did not comport with how I understood the bankruptcy process to work. *See* email from Mr. Hager to Mr. Aber dated November 11, 2021 attached hereto as **Exhibit A**.  Mr. Hager's representation that a separate rabbinical court ruling regarding a settlement between Mr. Hager and the majority owner of the Property took precedence over the bankruptcy court process seemed incorrect.  As a result of all of these factors, and of our overall impression of Mr. Hager as a businessman, we made a decision to move on and politely cut off direct communication with Mr. Hager.

7.    Mr. Hager suggests that Ohana was DivcoWest's "hotel partner".  That is not correct.  Ohana had no agreement with DivcoWest on TH Holdco and neither DivcoWest nor Ariel Aber has any authority to represent Ohana.  In Ohana's research on the background of the Property in September 2021, Ohana reached out to DivcoWest and Mr. Aber, who is DivcoWest's New York City market representative, to see if they knew anything about the Property.  Mr, Aber said that he knew Mr. Hager and offered to make an introduction.  Mr. Aber made that introduction, and in an effort to vouch for Ohana described us as DivcoWest's hotel partner (referring to three investments we partnered on previously).  Because Mr. Aber had the relationship with Mr. Hager, our initial introductory interactions with Mr. Hager were largely through Mr. Aber, but at no time did Mr. Aber have authority to speak on Ohana's behalf.

8.    I never suggested to Mr. Hager or Mr. Aber that Ohana would be submitting a letter

of intent related to the Property. Ohana has a distinct and comprehensive process that it must follow before it submits a letter of intent, including extensive underwriting analyses, which were not possible at that time due to the disparate and incomplete information that Mr. Hager shared over an approximately two-month interaction.

9.      I have reviewed the BBG, Inc. ("BBG") appraisal report dated June 22, 2022, and filed with the Court at Docket No. 230 (the "Appraisal"). This report lacks credibility. First of all, the Appraisal is in direct conflict with the numerous other datapoints for a potential valuation on the property including TH Holdco's $94 million credit bid, the Debtors' own statements about negotiating a sale in the range of $80-$86.5 million at the end of JLL's first marketing process, and the willingness of the Debtors and Daryl Hagler to offer "no less than $96,775,000" now. Additionally, the Appraisal is misleading and there are a couple of notable errors in the Appraisal's facts and methodologies.

10.     For instance, the Appraisal engagement letter was executed on June 21, 2022 (one day before it was submitted to the court on June 22, 2022 (Appraisal at 110), but the date of inspection and Market Value as-is date were February 16, 2022 (Appraisal at 11). The Appraisal was also done on the premise that (1) the Property was 100% vacant at the time (even though it was not, due to the month-to-month DHS lease, which is acknowledged multiple times throughout the Appraisal) and (2) that the Property would be the most valuable if it were fully leased to DHS to serve as a homeless shelter (Appraisal at 9) through Debtors modified business plan – hardly a conclusion that a typical unbiased appraiser would arrive at on a newly built (9-year old) hotel and multifamily building in downtown Brooklyn.

11.     Most notably, the Appraisal's as-is valuation is very unscientifically derived by first estimating the projected valuation on an as-stabilized basis at $119,652,110. This as-stabilized

valuation explicitly assumes that the owner signs a long-term lease with DHS and that property is permanently converted to a homeless shelter. But then, to estimate the February 2022 as-is valuation, the appraiser deducts $48,000,000 from the as-stabilized valuation based on three incredible assumptions: (1) the appraiser assumes that the DHS lease could not be executed for 24 months (resulting in $21.2 million of lost value), (2) the owner would incur a $3.2 million leasing commission, and (3) another, very arbitrary and non-cash, $23.9 million should be deducted for "Entrepreneurial Incentive". I find it very confusing that the appraiser claims the highest and best use for the 9-year old property is a homeless shelter, only to then say that such a plan would cause 24 additional months of operating at 100% vacancy and would result in $48,000,000 of lost value. I also find it confusing that the Debtor would submit an Appraisal that emphasizes that the property is only worth $72 million under Debtor's previously stated business plan of pursuing a long-term DHS lease. Based on these logical inconsistencies, the appraiser's methodology seems transparently designed to generate an artificially low as-is valuation, and that valuation is, again, significantly below offers that were received less than a month prior.

12.     The Appraisal states that there are very few sales comps for hotels in this market, and uses that fact as a justification for pulling inferior sales comps in outlying locations and otherwise erroneously reporting sales comps. Notably, there is not a single hotel sales comp from Manhattan. The appraiser states, "After analyzing the [four] comparable sales, the concluded valuation of the hotel portion of the subject is $200,000 per room, or $34,800,000." In my opinion, the estimated value of the hotel at $200,000 per room grossly undervalues the hotel portion of the Property.

13.     The four comparable sales addressed in the Appraisal are easily challenged. Most notably, the very first "hotel" sales comp that appears in the table on page 73 of the Appraisal was

not, in fact, a hotel sale.  The purported $45 million sale of the Ace Hotel Brooklyn was actually a sale of the land underneath the Ace Hotel Brooklyn for $45 million.  The remaining leasehold interest in the Ace Hotel, and the value of its long-term property tax abatement were not sold as part of the 2021 transaction.  Those assets have a very significant value that the Appraisal ignores.  Confusing a land sale with the sale of a fee simple hotel property is beyond careless for an appraiser.   The remaining three properties are inferior physical properties in mostly inferior locations.  Two of them were from August 2020 and November 2021, during more depressed periods of the pandemic.  The fourth property is a physically inferior Hilton Garden Inn in outer Long Island City.

14.     Suffice it to say, we do not agree with the valuation provided in the Appraisal.  The bids generated by JLL's marketing process and the TH Holdco bid more accurately speak to the current value of the Property.  TH Holdco did nothing to justify being disqualified from submitting its bid.

Executed on this 27th day of June, 2022.

___/s/ Franco Famularo_____
Franco Famularo, Partner and CIO
Ohana Real Estate Investors

# **Exhibit A**

Message

| | |
|---|---|
| **From:** | Ariel Aber [AAber@divcowest.com] |
| **Sent:** | 11/18/2021 1:57:00 PM |
| **To:** | Eddie Yu [eyu@ohanare.com]; Woody Shattan [wshattan@ohanare.com]; Jackson Hunter [jhunter@divcowest.com]; Chase Parisi [CParisi@divcowest.com]; Alvaro Carrillo-Sanchez [ACarrillo-Sanchez@divcowest.com]; Roman Bertozzi [RBertozzi@divcowest.com] |
| **Subject:** | Fwd: 85 Flatbush Ext |

We obviously need real bask up to these numbers..

Sent from my iPhone

Begin forwarded message:

> **From:** Isaac Hager <Isaac@cornellrealty.com>
> **Date:** November 17, 2021 at 8:03:33 PM EST
> **To:** Ariel Aber <AAber@divcowest.com>
> **Subject: 85 Flatbush Ext**

[EXTERNAL EMAIL]

Hi Ariel,

This is the breakdown of equity and loans payoff for 85 Flatbush Ext.

Paying down 81 million to Madison Realty Capital

4 Million to Bluestone

Then we have equity in the deal a total of 21.2 million, out of this 75% is from the rubins that's $16,050,000, and the rest 5.3 mill is from me.

+ we have money escrow in the BK account, with that money we can settle all other 3rd party bills, liens, coned, sales tax etc.

Thanks
......................................................
Isaac Hager
Cornell Realty Management LLC
75 Huntington St.
Brooklyn, NY 11231
Office. 718.942.9191 x 108
Cell. 917.497.2424

This message may contain confidential or privileged information and is intended only for the party named above. If you are not the addressee, you must not use, copy, disclose or take any action based on the information herein. Please notify the sender immediately by e-mail if you have received this message in error and delete this message from your system. This message is for information

purposes only and is not an offer to sell or a solicitation of an offer to buy any security. Any performance information provided is estimated and unaudited; no representation or warranty is made to, and no reliance should be placed on, the fairness, accuracy, completeness or timeliness of the information contained herein. Any investment strategy entered into for potential profit also involves risk of loss. For more information regarding how we collect and process personal information, please visit our **Privacy Policy.**