Jerry Montag
SEYFARTH SHAW LLP
620 8th Avenue
New York, NY  10018
Telephone:  (212) 218-4646
Facsimile:  (917) 344-1339
Email: jmontag@seyfarth.com

M. Ryan Pinkston (*pro hac vice*)
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone:  (415) 544-1013
Facsimile:  (415) 397-8549
Email:  rpinkston@seyfarth.com

Kevin J. Nash
GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
1501 Broadway, 22nd Floor
New York, New York 10036
Telephone : (212) 221-5700
Facsimile: (212) 221-6532
Email: kjnash@gwfglaw.com

*Attorneys for 85 Flatbush Mezz LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 85 FLATBUSH RHO MEZZ LLC, *et al.*,[1] | Case No. 20-23280 (RDD) |
| Debtors. | Jointly Administered |

### REPLY TO TH HOLDCO LLC'S OPPOSITION
### TO THE MEZZANINE LENDER'S OBJECTION

Secured creditor 85 Flatbush Mezz LLC ("Mezzanine Lender"), through its undersigned

counsel, hereby submits this Reply to the Opposition (ECF Nos. 264-270) filed by  TH Holdco

---

[1] The debtors in these chapter 11 cases are 85 Flatbush RHO Mezz LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC (collectively, the "Debtors").

LLC (the "New Senior Lender") to the Mezzanine Lender's Objection (ECF No. 227) to the Second Amended Chapter 11 Plan (ECF No. 211) (the "Plan"), and hereby states as follows:

1. In its recent submissions in support of confirmation of its Plan, the New Senior Lender continues its attempt to silence the Mezzanine Lender from any participation in the bankruptcy under the premise that the terms of the Intercreditor Agreement (the "ICA") remain in effect despite existing defaults. The New Senior Lender has voted the Mezzanine Lender's Class 11 claim in favor of its own Plan even though it provides no recovery for the Mezzanine Lender, and refuses to acknowledge the ballot rejecting the Plan timely submitted by the Mezzanine Lender.

2. To be sure, Section 9 of the ICA would ordinarily prevent the Mezzanine Lender from exercising independent rights in bankruptcy. However, those provisions should no longer be enforced following the Original Senior Lender's undeniable default in having failed to provide the required Purchase Option Notices dating back to July 2020. This significantly impacts the Mezzanine Lender's bargained for rights and cannot be ignored.

3. In its Objection to Confirmation, the Mezzanine Lender cited to *Nadeau v. Equity Residential Properties Mgmt. Corp.*, 251 F. Supp. 3d 637 (S.D.N.Y. 2017) ("*Nadeau*") and the case cited therein, *In re Lavigne*, 114 F.3d 379 (2d Cir. 1997) ("*Lavigne*") for the proposition that since the Original Senior Lender materially breached the ICA, the New Senior Lender cannot now seek to enforce the ICA. Notably, while the New Senior Lender tries to distinguish these cases, it affirmatively cites no actual caselaw or other authority in support of its position that the ICA can be violated with impunity. Fairness and logic dictate that this is not a proper outcome, and the Mezzanine Lender should be permitted to participate in the Chapter 11 case on its own.

4. To quell participation, the New Senior Lender essentially makes two arguments. First, that the failure to provide timely notice was not a material breach; and second, even if it was, the New Senior Lender is not bound by the actions of its assignor, the Original Senior Lender. Both of these arguments should be rejected.

5. "A breach is material when it "substantially defeats the purpose of that contract." *Nadeau, supra*, 251 F. Supp. 3d at 641, *citing Lavigne, supra*, 114 F.3d at 387. The right of the Mezzanine Lender to purchase the Senior Lender's secured claim is a key protection for the Mezzanine Lender in the event of a default by the borrower and provides the right to buy-out the Original Lender and step into its shoes. The failure to provide that notice was, therefore, a material breach, since it defeats a material protection afforded to the Mezzanine Lender.

6. Moreover, it is elementary that the assignee of a non-negotiable instrument is subject to all of the equities and burdens that attach to the property assigned, because the assignee receives no more than the assignor possessed. *See, Citibank, N.A. v. Tele/Res., Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) ("An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged."). Thus, the consequences of the pre-assignment material breach by the Original Senior Lender are fully enforceable against the New Senior Lender.

7. In fact, the Original Senior Lender is still involved as it financed the acquisition of the mortgage by the New Senior Lender and holds the assignment of mortgage. As such, it is disingenuous for the New Senior Lender to disclaim continuing liability.

8. In the event that the Court determines that confirmation should proceed, the New Senior Lender argues that even without regard to the Class 11 ballot, it can confirm a plan as to

the other Debtors. While it may be true that a plan can be confirmed as to the hotel and residential debtor entities, and not the mezzanine entity, this would require confirming separate plans for separate estates, rather than the proposed single joint plan. This is far different from the single sentence in the approved Disclosure Statement that the plan is essentially a separate plan for each debtor. Accordingly, it is outside of the scope of the solicitation to bifurcate plans, and any such modification would require new disclosure and balloting to comply with 11 U.S.C. §1127(c).

9. Additionally, the New Senior Lender asserts that it has accepting classes based entirely on votes cast by itself, and its contention that classes where no votes were cast should be deemed to have accepted the Plan. A review of the certification of ballots filed by the New Senior Lender (ECF No. 252) shows that there are 9 impaired classes of creditors. Class 3 is the New Senior Lender, which accepted its Plan. Class 11 is the claim of the Mezzanine Lender, where the Mezzanine Lender filed a rejecting ballot[2] which the New Senior Lender seeks to disregard in favor of its own accepting ballot. No ballots were received in any of the other impaired classes, 6, 7, 8, 9, 12, 13 or 14.

10. Relying on *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir. 1988), the New Senior Lender argues that these classes should be deemed to have accepted the Plan. This position finds some support in the decision of the Hon. Robert E. Gerber, in *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 262 (Bankr. S.D.N.Y. 2007). Notably, however, the Court in *Adelphia* was faced with denying confirmation in the face of millions of dollars in claims in classes which had voted to accept the plan, because no votes were received from several small classes of creditors.

---

[2] Class 13 consists of any unsecured claim held by the Mezzanine Lender. Since the New Senior Lender contends that the claim asserted by the Mezzanine Lender is undersecured, it follows that the unsecured portion of the Class 11 claim should be classified as a Class 13 claim, and the ballot rejecting the Plan under Class 11 must be deemed to be a Class 13 ballot rejecting the Plan as well.

These facts contrast greatly with those considered by the Hon. Tina Brozman in *In re Friese*, 103 B.R. 90 (Bankr. S.D.N.Y. 1989), where no votes whatsoever were cast.

11. As Judge Brozman held:

> the court cannot deem an impaired class to have accepted a plan if no creditors in that class have voted. *See In re Townco Realty, Inc.,* 81 B.R. 707, 708 (Bankr.S.D.Fla. 1987). To the extent that *In re Ruti-Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir. 1988), which held that a single creditor class which fails to vote may be deemed to accept the plan, is in conflict with this decision, I believe its rationale is faulty; where the class fails to vote it should not be deemed to accept the plan, but the plan may nonetheless be subject to confirmation pursuant to the so-called "cramdown" provisions of section 1129(b).

*Id*, at 92. The analysis in *Friese* has been accepted as the majority interpretation of Section 1126. *See, e.g. In re Vita Corp.*, 358 B.R. 749, 751 (Bankr. C.D. Ill. 2007), *aff'd,* 380 B.R. 525 (C.D. Ill. 2008) ("If Congress had intended otherwise, instead of basing a class's acceptance on whether 'such plan has been accepted by creditors' of a certain number and amount, it would have used the phrase 'if such plan has not been rejected by creditors.' In addition, Congress used the concept of a presumption of acceptance without voting, for an unimpaired class, in Section 1126(f). The same concept was clearly not incorporated into the acceptance requirements for impaired classes spelled out in Section 1126(c)."); *In re M. Long Arabians*, 103 B.R. 211, 2150216 (9th Cir. BAP 1989) ("The holder of a claim must affirmatively accept the plan").

12. Since no creditors other than the New Senior Lender have voted to accept its Plan, it is respectfully submitted that the facts presented in *Ruti–Sweetwater* and *Adelphia* are not applicable here, and the Court should follow the analysis in *Friese*. Any confirmation of the Plan must be obtained through cramdown.

WHEREFORE, the Mezzanine Lender respectfully prays for the entry of an Order consistent with the foregoing.

| | |
|---|---|
| Dated: June 29, 2022<br>San Francisco, California | SEYFARTH SHAW LLP<br><br>By: /s/ *M. Ryan Pinkston*<br>M. Ryan Pinkston (*pro hac vice*)<br>SEYFARTH SHAW LLP<br>560 Mission Street, Suite 3100<br>San Francisco, California 94105<br>Telephone: (415) 544-1013<br>Facsimile: (415) 397-8549<br>Email: rpinkston@seyfarth.com<br><br>Jerry A. Montag<br>SEYFARTH SHAW LLP<br>620 8th Avenue<br>New York, NY 10018<br>Telephone: (212) 218-4646<br>Facsimile: (917) 344-1339<br>Email: jmontag@seyfarth.com<br><br>Kevin J. Nash<br>GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP<br>1501 Broadway, 22nd Floor<br>New York, New York 10036<br>Telephone : (212) 221-5700<br>Facsimile: (212) 221-6532<br>Email: kjnash@gwfglaw.com<br><br>*Attorneys for 85 Flatbush Mezz LLC* |