Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile:   (212) 768-6800
Email: lauren.macksoud@dentons.com
          sarah.schrag@dentons.com

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>85 FLATBUSH RHO MEZZ LLC, et al.,[1]<br><br>Debtors | Case No. 20-23280 (RDD)<br>Chapter 11<br><br><br>(Jointly Administered) |

### TH HOLDCO LLC'S OBJECTION TO
### MOTION FOR STAY PENDING APPEAL

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include:  85 Flatbush RHO Mezz LLC (6184) (the "Mezz Debtor"); 85 Flatbush RHO Hotel LLC (5027) (the "Hotel Debtor"); and 85 Flatbush RHO Residential LLC (2261) and (the "Residential Debtor", and together with the Mezz Debtor and the Hotel Debtor, the "Debtors").

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL BACKGROUND............................................................................................ 2

ARGUMENT ............................................................................................................................. 7

I.  THE MEZZ LENDER FAILS TO MEET ANY OF THE FACTORS FOR
    GRANTING A STAY OF THE CONFIRMATION ORDER PENDING
    APPEAL. ........................................................................................................................ 7

    A.  The Mezz Lender Is Not Likely to Succeed on the Merits of the Appeal. ............. 9

    B.  The Mezz Lender Will Not Suffer Irreparable Harm Absent A Stay. .................. 13

    C.  A Stay Would Substantially Harm TH Holdco And Other Creditors................... 15

    D.  A Stay Is Not In The Public Interest. ................................................................... 19

II. IF THIS COURT GRANTS A STAY, WHICH IT SHOULD NOT, MEZZ
    LENDER SHOULD BE REQUIRED TO POST A SUBSTANTIAL BOND OF
    AT LEAST $8.6 MILLION FOR A TWO MONTH STAY SCENARIO AND
    $70.6 MILLION FOR A 24 MONTH STAY SCENARIO............................................. 21

III. THE STAY MOTION AND APPEAL SHOULD BE STRICKEN OR DENIED
     UNDER SECTION 510 OF THE BANKRUPTCY CODE. .......................................... 24

CONCLUSION........................................................................................................................ 26

US_ACTIVE\121945217\V-12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 1567 Broadway Ownership Assocs.*,
   202 B.R. 549 (S.D.N.Y. 1996)..................................................................................9

*In re 461 7th Ave. Mkt., Inc.*,
   623 B.R. 681 (S.D.N.Y. 2020), *aff'd,* No. 20-3555, 2021 WL 5917775 (2d Cir.
   Dec. 15, 2021)...........................................................................................................7

*In re 473 West End Realty Corp.*,
   507 B.R. 496 (Bankr. S.D.N.Y., 2014)....................................................................9

*In re 85 Flatbush RHO Mezz LLC*,
   Case No. 20-23280....................................................................................................1

*In re Adelphia Commc'ns Corp.*,
   333 B.R. 649 (S.D.N.Y. 2005)..................................................................................8

*In re Adelphia Commc'ns Corp.*,
   361 B.R. 337 (S.D.N.Y. 2007)....................................................................... *passim*

*In re Albicocco*,
   No. 06-CV-3409 (JFB), 2006 WL 2620464 (E.D.N.Y. Sept. 13, 2006) ...........18, 19

*In re Am. Rds. LLC*,
   496 B.R. 727 (Bankr. S.D.N.Y. 2013) ...................................................................11

*In re AMR Corp.*,
   No. 11-15463 (SHL), 2021 WL 5016606 (Bankr. S.D.N.Y. Oct. 28, 2021)............8

*In re Bart*,
   82 S. Ct. 675 (1962)..................................................................................................8

*In re Best Prods. Co.*,
   177 B.R. 791 (S.D.N.Y.1995) *aff'd on other grounds*, 68 F.3d 26 (2d
   Cir.1995) .................................................................................................................13

*In re Brown*,
   2020 WL 3264057 (Bankr. S.D.N.Y. June 10, 2020)............................................16

*In re Burkett*,
   279 B.R. 816 (Bankr. W.D. Tx. 2002).....................................................................22

*Callanan v. Powers*,
   199 N.Y. 268, 92 N.E. 747 (1910)..........................................................................11

*In re Calpine Corp.*,
No. 05–60200, 2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ........................................19

*Centauri Shipping Ltd. v. Western Bulk Carriers KS*,
528 F. Supp. 2d 186 (S.D.N.Y. 2007) ........................................................................................9

*In re Chemtura Corp.*,
2010 Bankr. LEXIS 3988, 2010 WL 4638898 (Bankr. S.D.N.Y. Nov. 8, 2010) ......................8

*In re Citation Corp.*,
371 B.R. 518 (N.D. Ala. 2007) ................................................................................................17

*Daly v. Germain (In re Norwich Historic Pres. Tr., LLC)*,
No. 3:05CV12 (MRK), 2005 WL 977067 (D. Conn. Apr. 21, 2005) ........................................9

*de la Fuente v. DCI Telecommunications, Inc.*,
269 F. Supp. 2d 237 (S.D.N.Y. 2003) ....................................................................................21

*Frank Felix Associates, Ltd. v. Austin Drugs, Inc.*,
111 F.3d 284 (2d Cir.1997) ....................................................................................................11

*In re Gaston & Snow*,
No. 93 CIV. 8517 (JGK), 1996 WL 694421 (S.D.N.Y. Dec. 4, 1996) ....................................25

*In re Gen. Motors Corp.*,
409 B.R. 24 (Bankr. S.D.N.Y. 2009) ......................................................................................21

*In re Genesis Health Ventures, Inc.*,
280 B.R. 339 (D. Del. 2002) ....................................................................................................17

*Gramercy Warehouse Funding I LLC v. Colfin Jih Funding LLC*,
2012 U.S. Dist. LEXIS 3244 (S.D.N.Y. 2012) ........................................................................14

*Green Point Bank v. Treston*,
188 B.R. 9 (S.D.N.Y. 1995) ....................................................................................................18

*Hirschfeld v. Bd. of Elections in City of New York*,
984 F.2d 35 (2d Cir. 1993) ........................................................................................................9

*In re Jersey City Medical Ctr.*,
817 F.2d 1055 (3d Cir.1987) ..................................................................................................25

*In re LATAM Airlines Grp. S.A.*,
No. 20-11254 (JLG), 2022 WL 2657345 (Bankr. S.D.N.Y. July 8, 2022) ........................14, 15

*Ledesma v. Garland*,
850 F. App'x 84 (2d Cir. 2021) ................................................................................................8

iii

*McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*,
   503 F.3d 167 (2d Cir. 2007)........................................................................................8

*In re Metiom, Inc.*,
   318 B.R. 263 (S.D.N.Y. 2004).................................................................................20

*In re Moreau*,
   135 B.R. 209 (N.D.N.Y.1992)..................................................................................14

*In re Mount Carbon Metro. Dist.*,
   No. 97-20215MSK, 1999 WL 34995477 (Bankr. D. Colo. July 20, 1999)...........................25

*Nat. Res. Defense Council, Inc. v. U.S. Food & Drug Admin.*,
   884 F. Supp. 2d 108 (S.D.N.Y. 2012).........................................................................7

*New Windsor Volunteer Ambulance Corps., Inc v. Meyers*,
   442 F.3d 101 (2d Cir. 2006).....................................................................................11

*Nken v. Holder*,
   556 U.S. 418 (2009)............................................................................................7, 8

*In re Pulp Finish 1 Co.*,
   No. 12-13774 (SMB), 2014 WL 201482 (Bankr. S.D.N.Y. Jan. 16, 2014) .....................18, 19

*In re Roche*,
   448 U.S. 1312 (1980)..............................................................................................8

*Sabine Oil*,
   548 B.R. 674 (Bankr. S.D.N.Y. 2016)...............................................................9, 17, 20

*San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*,
   548 U.S. 1301 (2006)........................................................................................18, 19

*Septembertide Publishing, B.V. v. Stein & Day, Inc.*,
   884 F.2d 675 (2d Cir.1989)....................................................................................11

*In re Sphere Holding Corp.*,
   162 B.R. 639 (E.D.N.Y. 1994) ...........................................................................21, 22

*In re Taub*,
   470 B.R. 273 (E.D.N.Y. 2012) ............................................................................9, 13

*In re Terrestar Corp.*,
   No. 11-10612 SHL, 2012 WL 1028218 (Bankr. S.D.N.Y. Mar. 26, 2012) ...........................8

*Texaco Inc. v. Pennzoil Co.*,
   784 F.2d 113 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987)................................2

iv

*Thapa v. Gonzales*,
  460 F.3d 323 (2d Cir. 2006)...........................................................................8

*In re Tower Auto., Inc.*,
  No. 05-10578 ALG, 2006 WL 2583624 (Bankr. S.D.N.Y. June 28, 2006) ...........................17

*In re Turner*,
  207 B.R. 373 (2d Cir. B.A.P. 1997).................................................................8

*Williams v. George Junior Republic (In re Cujas)*,
  376 B.R. 480 (Bankr. E.D. Pa. 2007) ..............................................................15

*In re Wonder Corp. of Am.*,
  70 B.R. 1018 (Bankr. D. Conn. 1987) ..............................................................25

**Statutes**

11 United States Code
  § 363(K)..................................................................................10, 23, 24
  § 510(a).......................................................................................24

Bankruptcy Code
  § 510.......................................................................................2, 24
  § 1129(a)(1) ....................................................................................6

**Rules and Regulations**

Federal Rule of Bankruptcy Procedure
  Rule 8007(b) ....................................................................................7
  Rule 8005......................................................................................21

Federal Rule of Civil Procedure
  12(b)(1)...................................................................................10, 24
  12(c).....................................................................................10, 24
  12(h)(3)..................................................................................10, 24
  62(d).........................................................................................21

S.D.N.Y.L.R. 7056-1(a)..............................................................................4

**Other Authorities**

8 *Norton Bankruptcy Law and Practice* 3d § 170:81 ................................................17

9 Collier on Bankruptcy ¶ 8005.07 [2] (1993)......................................................21

23 *Williston on Contracts* § 63:3 (4th ed. 2002).................................................11

v

TH Holdco LLC ("TH Holdco"), by and through undersigned counsel, hereby submits this objection (the "Objection") to the *Secured Creditor 85 Flatbush Mezz LLC's Motion for Stay Pending Appeal or, Alternatively, Stay Pending Resolution of Adversary Proceeding Order* ("Stay Motion") [Docket No. 294].[2]  By the Stay Motion, 85 Flatbush Mezz LLC (the "Mezz Lender") seeks a stay pending appeal of the *Findings of Fact, Conclusions of Law, and Order Confirming TH Holdco LLC's Second Amended Chapter 11 Plan, As Modified by This Order* (the "Confirmation Order") [Docket No. 280] entered by the Bankruptcy Court on July 6, 2022.  In support of this Objection, TH Holdco respectfully states as follows.[3]

## **PRELIMINARY STATEMENT**

1.     The Mezz Lender's Stay Motion – which seeks a stay pending appeal without posting *any* bond – is the latest salvo in the Mezz Lender's ongoing strategy of interfering with TH Holdco's credit bid (the "Credit Bid").  The Stay Motion will result in delay of, or potentially risk entirely, distributions to creditors.  It is also yet another direct violation of the express provisions of the Intercreditor Agreement.  At the Disclosure Statement and Confirmation Hearings, Judge Drain ruled that the Mezz Lender's arguments were not a gating item to confirmation of TH Holdco's Plan, or for the Auction to occur.  Judge Drain's rulings are sound in law and fact.

2.     As discussed in further detail below, the Mezz Lender must establish – by a heavy burden – evidence on all four elements to be entitled to a stay pending appeal and has failed to do so.  Even if the Court were to find the Mezz Lender has met its burden, a substantial appeal bond is required (even for a short term stay) to protect against harms to (i) TH Holdco and (ii) the taxing

---

[2]     Unless noted otherwise, all docket entries are in reference to *In re 85 Flatbush RHO Mezz LLC*, Case No. 20-23280.

[3]     Capitalized terms used but not otherwise defined herein shall have the meaning set forth in TH Holdco's *Second Amended Chapter 11 Plan Filed by Creditor TH Holdco LLC Related to 85 Flatbush Mezz, LLC, 85 Flatbush RHO Hotel LLC, and 85 Flatbush RHO Residential LLC* [Docket No. 211] (the "Plan").

1

authorities and the trade creditors who will otherwise be paid in full in August, 2022 under the TH

Holdco Plan when that Plan goes effective.

3.          Further, the Mezz Lender's Stay Motion and related appeal should also be stricken

under Section 510 of the Bankruptcy Code as a violation of its obligations under the Intercreditor

Agreement.  The Mezz Lender expressly agreed in the Intercreditor Agreement that it would not

seek to stop or delay 85 Flatbush Avenue's (the "Senior Lender," which rights are now held by

TH Holdco as successor to 85 Flatbush Avenue) exercise of remedies against the collateral or take

certain other actions discussed below adverse to the Senior Lender, which is *de facto* what the

Mezz Lender continues to seek to do in its Stay Motion and appeal of the Confirmation Order.

## **PROCEDURAL BACKGROUND**

4.          The Mezz Lender filed the adversary proceeding against TH Holdco [Adv. No. 22-

07022] (the "Adversary Proceeding") on March 23, 2022, seeking to enforce rights that had

purportedly accrued in favor of the Mezz Lender in July of 2020 pursuant to the parties'

Intercreditor Agreement.[4]  TH Holdco filed an answer on April 4, 2022, weeks before its deadline

to do so, and concurrently served discovery on the Mezz Lender.  The Mezz Lender assured the

Court at the time that it would proceed on an expedited discovery and briefing schedule that would

allow the merits of the Adversary Proceeding to be decided quickly, and in advance of any auction

---

[4]        As the Court has noted, the "lawsuit seeks performance of the purchase option at the price when it should
have been exercised." Pursuant to the Intercreditor Agreement, the Loan Purchase Price is explicitly to be calculated
as of the date that the Mezz Lender purchases the Senior Loan. Intercreditor Agreement § 1(a) (definition of "Loan
Purchase Price"). Thus, even if the Mezz Lender prevails on its claim, the option price would be the over $112 million
currently owed to TH Holdco, and the Mezz Lender has shown no evidence it is willing or able to pay this purchase
price.

          There is no support whatsoever in the Intercreditor Agreement that the Mezz Lender can exercise that option
at the loan balance as of two years prior.  The Mezz Lender cites to *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 113 (2d Cir.
1986), *rev'd on other grounds*, 481 U.S. 1 (1987) for the proposition that a party moving for stay should be restored
to the status quo ante if successful.  Here, there are no circumstances which allow the Mezz Lender to go back in time
and exercise a purchase option at the 2020 price and the language of the Intercreditor Agreement is clear on this point.
Rather, the consequence of any failure to provide a purchase option (if any) is the Mezz Lender's ability to exercise
such option at today's price.

under TH Holdco's proposed plan. *See* Docket No. 186 (Apr. 6, 2022 Hearing Tr.) at 12:22-25-13:1 (Mr. Nash: "[T]here will be, I think, a prompt resolution of that. And so, if we could put together a procedure that allows resolution before there's an auction, then we could see [ ] whether or not they do have credit bid rights."), 34:25-35:2 (Mr. Nash: "[W]e're going to try to dovetail resolution of the adversary proceeding before we start that auction."), 35:12 (Mr. Nash: "I'm not trying to hold up the process.").[5]

5.    However, despite the fact that TH Holdco was amenable to an expedited schedule, the Mezz Lender failed to move forward with prosecuting the Adversary Proceeding. Among other things, Mezz Lender failed to timely respond to TH Holdco's discovery requests, made a woefully deficient production in response thereto, and delayed in serving its own discovery requests on TH Holdco. *See* Adv. No. 22-0702, Docket No. 9, Ex. A at 4-5 (describing the Mezz Lender's intransigence). Moreover, while TH Holdco proposed a schedule that would have resolved the Adversary Proceeding prior to the expected date for the auction, the Mezz Lender pushed back, requesting a longer schedule. Adv. No. 22-07022, Docket No. 10-2 at 4, 7. Neither schedule was entered by the Court.

6.    Judge Drain raised the clear lack of progress in the Adversary Proceeding at the June 30 Confirmation Hearing, and noted that TH Holdco had moved to dismiss the action:[6]

> That lawsuit is still in its very early stages, notwithstanding that the potential importance of the decision on the lawsuit either here . . . has been highlighted at least for several months, including at the hearing on the disclosure statement on May 16th where it was the subject of considerable discussion starting at page 34 of the transcript. And I urge[d] the parties to focus on discovery in that lawsuit as well as the jurisdictional issues raised by it. I don't

---

[5]    Similar representations were made to counsel for TH Holdco. *See* Adv. No. 22-07022, Docket No. 10-2 at 7 n.3 ("These representations were made on a phone call between counsel for [the Mezz Lender] and counsel for [TH Holdco] on April 7, 2022, and in [the Mezz Lender]'s comments to Defendant's Second Amended Disclosure Statement, which counsel for [the Mezz Lender] provided on April 18, 2022.").

[6]    TH Holdco has made a motion for judgment on the pleadings on the basis that this Court lacks jurisdiction to hear the Adversary Proceeding.

> believe . . . any pretrial order has been submitted to me setting up a schedule for discovery or consideration of summary judgment motions. I believe there is a motion to dismiss on in August. But I've not decided any of the issues raised in that lawsuit. And they were contested heavily, including the proper remedy.

Adv. No. 22-07022, Docket No. 282 (June 30, 2022 Hearing Tr.) at 37:22-38:17.

7.      However, even after the June 30 hearing, the Mezz Lender failed to move with any sense of urgency.  Instead, the Mezz Lender has continued its pattern and practice of delay.  Mezz Lender did not seek to pursue discovery in the Adversary Proceeding in any manner.  Additionally, the Mezz Lender waited the full fourteen-day period to file its appeal of the Confirmation Order, and then an additional two days to file this Stay Motion, despite knowing full well that the bid deadline was July 29, 2022, and that the Auction if needed was scheduled for August 5, 2022.[7]

8.      Further, in a desperate and transparent attempt to make it appear that the Adversary Proceeding could be resolved quickly, four days after filing the Stay Motion, the Mezz Lender filed a motion for partial summary judgment in the Adversary Proceeding (the "Summary Judgment Motion").  *See* Adv. No. 22-07022, Docket No. 21.  That filing was made in violation of this Court's Local Rules, which provides that "no party shall file a motion for summary judgment without first seeking a pre-motion conference" by filing a letter with the Court.  S.D.N.Y. Bankr. L.R. 7056-1(a).  Because the Mezz Lender did not file a letter seeking a pre-motion conference before filing the Summary Judgment Motion, the Court should strike that motion in its entirety.  *See* Adv. No. 22-07022, Docket No. 22.

---

[7]      Jones Lang LaSalle as broker ("Broker") has advised TH Holdco that no other bids were received by the bid deadline of July 29, 2022 at 4 p.m.  Therefore, TH Holdco will be proceeding with the closing of its credit bid. There will be no auction held.

4

9.    Moreover, in addition to being premature (because, among other things, TH Holdco has not had the opportunity to take any of the depositions it noticed), the Partial Summary Judgment Motion is without merit because there are triable issues of fact concerning all aspects of the Adversary Proceeding (including but not limited to, whether there was any breach of the Intercreditor Agreement as well as TH Holdco's numerous affirmative defenses).  Moreover, the Summary Judgment Motion only purports to seek *partial* summary judgment "on the issue of liability" while leaving the issue of the "appropriate remedy to which Mezzanine Lender is entitled" -- which issue the Mezz Lender concedes is "dispute[d]" -- for future resolution.  *See* Adv. No. 22-07022, Docket No. 21-1 at 1, 2 n.3.  Therefore, even if the Mezz Lender were to prevail on the Summary Judgment Motion (and it will not), that would not result in the Adversary Proceeding being resolved expeditiously as the Mezz Lender would have this Court believe.

10.    Given the foregoing, the Mezz Lender's circumstances are entirely of its own making and its leisurely pace demonstrates that its true goal is to cause delay (and benefit from the attendant hold-up value).  The Mezz Lender does not have a colorable argument to justify a stay or a viable plan if a stay is granted.  Any delay that results from its antics will simply harm creditors and the bankruptcy estates.[8]

11.    Moreover, the Mezz Lender's actions -- in filing the Adversary Proceeding, in objecting to TH Holdco's Plan, in filing its notice of appeal, and in seeking a stay pending appeal -- are all blatant violations of Section 9(d) of the Intercreditor Agreement, which this Court has already determined to enforce.  Specifically, Section 9(d) provides that, absent senior lender's prior written consent, the Mezz Lender ***shall not*** do any of the following:

- "commence any action";

---

[8]    The Mezz Lender's current representation that it will promptly move its appeal along to a decision on the merits rings hollow in light of its past conduct, and should be taken with a grain of salt.

US_ACTIVE\121945217\V-12

- "file any motion, claim, obligation, notice or application";

- "challenge (or join in another party's challenge to) the validity or amount of any claim submitted in such Proceeding by Senior Lender in good faith";

- "take any . . . action . . . which is adverse to Senior Lender's enforcement of its claim";

- "take any other action . . . ."  or

- "file, propose, support, accept or reject any plan of reorganization of any Loan Party [which includes the Debtors]."

Docket No. 294 (Intercreditor Agreement) § 9(d)(i), (iii), (v).

12.        Based on Section 9(d) as well as Bankruptcy Code § 1129(a)(1), the Court overruled the Mezz Lender's objection to confirmation of TH Holdco's Plan, finding that TH Holdco has the right to vote the Mezz Lender's claim on the Plan, and that the Mezz Lender had not showed it was "relieved under some applicable principle from" the strictures of Section 9(d). [May 16 Tr. at 36:16 - 41:24].  The Mezz Lender has now filed an appeal of that determination -- again at the eleventh hour -- and sought a stay pending resolution of the Adversary Proceeding that it has purposefully failed to prosecute.  The Mezz Lender's gamesmanship should not be countenanced by the Court.  The Mezz Lender has not, and cannot, demonstrate its entitlement to a stay pending appeal, and its Stay Motion should be denied.

13.        Contrary to the Mezz Lender's arguments in the Stay Motion and in the Adversary Proceeding, the Intercreditor Agreement clearly provides that the Mezz Lender has agreed to subordinate the Mezz Loan and liens to the Senior Loan, not to challenge the Senior Lender's claims and given other related rights to the Senior Lender. [9]  Judge Drain's ruling in the Confirmation Order finds as much, and finds that these arguments are not a gating issue to the Plan

---

[9]        The Mezz Lender continues to repeatedly violate the Intercreditor Agreement, including in filing its appeal of the Confirmation Order, its Motion for a Stay, and the Summary Judgment Motion.  Upon information and belief, the Mezz Lender entity's only asset is the Mezz Loan and therefore, it appears it thinks it is judgment proof.  TH Holdco reserves all rights and remedies against parties and persons related to the Mezz Lender entity.

US_ACTIVE\121945217\V-12

process. *See* April 6, 2022 Hearing Transcript at 12 ("I'm just saying, I don't see how it's a gating

item for pursuit of TH Holdco's plan."); June 30, 2022 Hearing Transcript at 66 ("I don't see that

as a gating issue. It hasn't been in the two years of this case brought anywhere close to a

conclusion, and I don't think that in light of that the party who I think had the onus to bring it to

something, at least a lot closer to conclusion than we have here, can say that they can keep the gate

shut.").

## ARGUMENT

### I.    THE MEZZ LENDER FAILS TO MEET ANY OF THE FACTORS FOR GRANTING A STAY OF THE CONFIRMATION ORDER PENDING APPEAL.

14.    A stay pending appeal is "an intrusion into the ordinary processes of administration

and judicial review," *Nken v. Holder,* 556 U.S. 418, 427 (2009), and thus an "extraordinary

remedy" evaluated under "stringent" standards. *Nat. Res. Defense Council, Inc. v. U.S. Food &*

*Drug Admin.,* 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012); *see also In re 461 7th Ave. Mkt., Inc.*,

623 B.R. 681, 688–89 (S.D.N.Y. 2020), *aff'd,* No. 20-3555, 2021 WL 5917775 (2d Cir. Dec. 15,

2021) (denying stay pending appeal because debtor failed to make the showing required for the

"extraordinary relief" sought under Bankruptcy Rule 8007(b)).    A request for a stay requires

application of four-factor test laid out by the Supreme Court:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Nken,* 556 U.S. at 434 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).  "All four criteria

must be satisfied to some extent before a stay is granted."  *In re Adelphia Commc'ns Corp.*, 333

B.R. 649, 659 (S.D.N.Y. 2005).

15.     "The party requesting a stay bears the burden of showing that the circumstances

justify an exercise of . . . discretion."  *Id.* at 433-34; *In re Terrestar Corp.*, No. 11-10612 SHL,

2012 WL 1028218, at *2–3 (Bankr. S.D.N.Y. Mar. 26, 2012) (stating that "[t]he moving party

faces a heavy burden.").

16.     "To obtain a stay, the party must 'show satisfactory evidence on all four criteria.'"

*Terrestar*, 2012 WL 1028218 at *3 (citing *In re Turner,* 207 B.R. 373, 375 (2d Cir. B.A.P. 1997)

and *Adelphia,* 333 B.R. at 659).  Recent cases in this circuit have "engaged in a balancing process

with respect to the four factors, as opposed to adopting a rigid rule."  *In re AMR Corp.*, No. 11-

15463 (SHL), 2021 WL 5016606, at *4 (Bankr. S.D.N.Y. Oct. 28, 2021) (citing *In re Chemtura

Corp.*, 2010 Bankr. LEXIS 3988, 2010 WL 4638898 (Bankr. S.D.N.Y. Nov. 8, 2010)).  However,

where the balance of the equities (factors two, three, and four) weigh against granting relief, a stay

pending appeal may be denied outright.  *See, e.g., Ledesma v. Garland,* 850 F. App'x 84, 89-90

(2d Cir. 2021) ("[W]e need not resolve whether [movant] has actually met th[e] [merits] factor

because, even if he has, his motion still fails on the other remaining *Nken* prongs.").  The Mezz

Lender fails to demonstrate that any of the stay factors support a stay of the Confirmation Order

pending appeal, much less meeting its burden of establishing sufficient evidence with respect to

all four of those factors.[10]  Therefore, no stay should be issued here.

---

[10]     As a general matter, many cases cited by the Mezz Lender are non-bankruptcy cases related to criminal law,
immigration, employment, or other situations where the harm is different and clear.  *See e.g.*, *In re Roche*, 448 U.S.
1312, 1316 (1980) (granting stay on order finding reporter guilty of civil contempt); *In re Bart*, 82 S. Ct. 675, (1962)
(granting petitioner's stay application and admitting petitioner to bail); *McCue v. City of New York (In re World Trade
Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007) (vacating stay in case where workers performing restoration
on World Trade Center filed suit for injuries sustained while inhaling toxic fumes on job); *Thapa v. Gonzales*, 460
F.3d 323, 334 (2d Cir. 2006) (granting stay of immigrant's 60-day voluntary departure order pending consideration

### A.    The Mezz Lender Is Not Likely to Succeed on the Merits of the Appeal.

17.    An applicant for a stay pending appeal must show that it has a "substantial possibility" of success on the merits of its appeal, an "intermediate level between 'possible' and 'probable'" that is "'intended to eliminate frivolous appeals.'" *In re 473 West End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y., 2014); *Hirschfeld v. Bd. of Elections in New York*, 984 F.2d 35, 39 (2d Cir. 1993). Moreover, in order to succeed on a motion for a stay pending appeal, the applicant must do more than regurgitate its already-rejected arguments. *See Sabine Oil*, 548 B.R. at 683–84 (where appellants failed to cite new case law in support of arguments presented to bankruptcy court in support of previously presented arguments, appellants failed to satisfy this prong); *Daly v. Germain (In re Norwich Historic Pres. Tr., LLC)*, No. 3:05CV12 (MRK), 2005 WL 977067, at *4 (D. Conn. Apr. 21, 2005) (where movant "merely repeat[ed] his assertion, previously pressed in the Bankruptcy Court," court found movant failed to show substantial possibility of winning appeal).

18.    In considering whether to grant a stay, "[t]he single most important factor is likelihood of success on the merits." *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) (citing *In re 1567 Broadway Ownership Assocs.*, 202 B.R. 549, 552 (S.D.N.Y. 1996)). The merits of the Mezz Lender's Stay Motion are weak (bordering on frivolous) as evidenced by previous findings of this Court.

19.    While the Mezz Lender has not yet filed its appeal papers, based on its Stay Motion, the basis of its appeal appears to be the same contention it advanced at the Confirmation Hearing: *i.e.*, that TH Holdco was ***not*** entitled to vote the Mezz Lender's ballot pursuant to the clear powers

---

of petition for review); *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35 (2d Cir. 1993) (stay pending appeal sought regarding city board of elections placing name of candidate on ballot for general election); and *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186 (S.D.N.Y. 2007) (shipper sought writ of maritime attachment against carrier).

9

granted to TH Holdco under Section 9(d) of the Intercreditor Agreement because TH Holdco's predecessor breached the Intercreditor Agreement. Stay Motion at 8. This argument -- which presumes the outcome of the Adversary Proceeding that the Mezz Lender has failed to prosecute -- was already considered and rejected by this Court.[11] There is no reason to depart from this prior conclusion.

20.    Section 9(d) of the Intercreditor Agreement, which prohibited the Mezz Lender from commencing the Adversary Proceeding upon which its Motion for Stay is predicated, also granted the senior lender an irrevocable power of attorney to vote the Mezz Lender's ballot in any bankruptcy. *See* Docket No. 294-1 (Intercreditor Agreement) § 9(d) ("Senior Lender may vote in any [bankruptcy proceeding] any and all claims of Mezzanine Lender, and Mezzanine Lender hereby appoints Senior Lender as its agent, and grants to Senior Lender an irrevocable power of attorney coupled with an interest, and its proxy, for the purpose of exercising any and all rights and taking any and all actions available to Mezzanine Lender in connection with any case by or against Borrower [ ] in any [bankruptcy proceeding], including without limitation, the right to . . . vote to accept or reject a plan."); June 30 Tr. at 37:9-15 (in Section 9(d) of the Intercreditor Agreement, the Mezz Lender "agreed and provided a power of attorney to support that agreement that the senior lender, in this case TH Holdco, has the right to vote its claim on a bankruptcy plan.").

21.    Bankruptcy courts have found such contractual provisions to be enforceable and "have upheld pre-petition inter-creditor agreements waiving a creditor's bankruptcy rights where

---

[11]    TH Holdco incorporates by reference the arguments made in TH Holdco's *Objection to Motion for Order Pursuant To 11 U.S.C. § 363(K) Disqualifying TH Holdco LLC From Credit Bidding And Granting Related Relief* [Docket No. 266], *Memorandum of Law In Support Of Confirmation of TH Holdcos Plan and In Response To Objections To TH Holdco's Plan* [Docket No. 264], *Memorandum of Law in Support of Defendant TH Holdco LLC's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(b)(1), (c), & (h)(3)* [Adv. No. 22-07022, Docket No. 15].

the creditors are sophisticated parties fully aware of the implications of such a waiver." *In re Am. Rds. LLC*, 496 B.R. 727, 732 (Bankr. S.D.N.Y. 2013) (collecting cases). Therefore, as the Court explained, "the mezz lender would . . . have to show that it is relieved under some applicable principle from [Section 9(d)]." June 30 Tr. at 37:13-15.

22.    Under New York law, in order for a breach to relieve a counterparty of its obligations, the breach must be material and go to the essence of the parties' agreement. *See, e.g., New Windsor Volunteer Ambulance Corps., Inc v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006) (citing *Callanan v. Powers*, 199 N.Y. 268, 284, 92 N.E. 747, 752 (1910) ("[Rescission] is not permitted for a slight, casual, or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."); *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir.1997); *Septembertide Publishing, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir.1989); 23 *Williston on Contracts* § 63:3, at 438–39 (4th ed. 2002) ("[F]or a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." (internal quotation marks and footnotes omitted)).

23.    Here, the purported breach of the Intercreditor Agreement upon which the Mezz Lender relies, failing to provide purchase option notices under Section 11, does not go to the fundamental nature of the contract.

24.    Indeed, as the Intercreditor Agreement specifically states, "[t]he failure of Senior Lender to provide a purchase Notice to Mezzanine Lender regarding the occurrence of a Purchase Option Event shall ***have no adverse effect on Senior Lender other than the resulting extension of time in which the Purchase Notice may be given.***" Docket No. 294-1 (Intercreditor Agreement)

11

§ 11(a). Thus, the Mezz Lender cannot seek to impose another adverse effect -- such as precluding TH Holdco from enforcing Section 9(d) of the Intercreditor Agreement -- based on the purported breach of Section 11.

25.    Contrary to the Mezz Lender's assertion, TH Holdco properly purchased the TH Holdco Prepetition Loan Agreement and is the current holder of the Senior Loan and its related rights under the Intercreditor Agreement.  Indeed, the Bankruptcy Court has stated as much on several occasions.  *See* April 6, 2022 Hearing Transcript at 15-16 ("[I]f there was a breach by the senior lender, at the time, which wasn't TH Holdco, of the purchase option provisions of the agreement . . ., it's hard to see how that would mean that another purchase from the senior lender, i.e., TH Holdco, would somehow not own the debt."); June 30, 2022 Hearing Transcript at 63 ("Well, the law is already set out as far as the secured creditor is concerned . . . it doesn't matter how they value the property.  They [TH Holdco] own a claim . . .").  The Bankruptcy Court further acknowledged that "[n]one of those rights [that the Mezz Lender purports are owed to it] are spelled out in the intercreditor agreement, so people need to figure out what they are.  But I think the most extreme one would be to say that notwithstanding having spent millions of dollars to buy the claim from the Flatbush senior lender, TH Holdco doesn't have a claim. I mean, that's pretty farfetched to me. So I'm going to overrule those two objections."  April 6, 2022 Hearing Transcript at 16.

26.    As the Court explained regarding TH Holdco's ability to vote the Mezz Lender's claim:

> [TH Holdco is] not saying that they win on the merits because of that provision. They're saying that they win on the issue as to whether there is a -- there has been a material breach of the agreement that would entitle the mezz lender to disregard its obligations under the agreement.  That's why Ms. Cooper was citing that language. So that -- that's really the point, not whether there is

12

> an issue as to whether there was a default or not but whether -- if it's proven that there was such a default, which hasn't happened yet, the default is of a nature that would relieve the mezz lender of its obligations under the agreement which mezz lender is still suing on in the adversary proceeding. So I don't -- I agree with you. The adversary proceeding is still open. But I don't think that solves -- that means that the mezz lender's vote can be counted.

June 30 Tr. at 41: 10; *see also id.* at 38-40 ("So I conclude that under this record, separate and apart from the plan interpretation of Section 1129(a)(10), that the mezz lender has not established a basis to relieve it of its obligations under Section 9B of the intercreditor agreement. And, therefore, its vote which it submitted, notwithstanding that provision, would not be counted.").

27.    Thus, the Court held that TH Holdco properly voted the Mezz Lender's rights pursuant to Section 9(d)(ii) of the Intercreditor Agreement and Class 11 (the Mezz Lender) class is deemed to have accepted the TH Holdco Plan.

28.    The Mezz Lender has failed to point to any new or contrary law that justifies a different finding from the Confirmation Order.   The possibility of success the merits of an appeal is the single most important factor when deciding a stay motion.   *Taub*, 470 B.R. at 278. Considering the merits of the Mezz Lender's Adversary Proceeding, objection to confirmation of TH Holdco's Plan, and that all of the Mezz Lender's arguments are ultimately prohibited under the Intercreditor Agreement, further supports a denial of the Stay Motion.

**B.    The Mezz Lender Will Not Suffer Irreparable Harm Absent A Stay.**

29.    The Mezz Lender's Stay Motion should also be denied because the Mezz Lender has not presented sufficient evidence demonstrating that it will be irreparably harmed if its Stay Motion is denied.

30.    The potential mootness of an appeal absent a stay does not constitute irreparable harm. *In re Best Prods. Co.*, 177 B.R. 791, 808 (S.D.N.Y.1995) *aff'd on other grounds*, 68 F.3d

26 (2d Cir.1995); *In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y.1992). *see also In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007) ("A majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm.").

31.     Likewise, and contrary to the Mezz Lender's argument, Stay Motion at p. 6, a contractual provision providing that there is no adequate remedy at law is insufficient to establish irreparable harm. *See, e.g., Gramercy Warehouse Funding I LLC v. Colfin Jih Funding LLC*, 2012 U.S. Dist. LEXIS 3244 (S.D.N.Y. 2012) (contractual provision in intercreditor regarding lack of an adequate remedy of law was insufficient to establish irreparable harm). Rather, the Court must make an independent inquiry.

32.     Here, the Court repeatedly observed that it viewed the Adversary Proceeding as an action for damages. *See* May 16 Hearing Transcript at 34 ("So I think the lawsuit is about money"); May 16, 2022 Hearing Transcript at 36 (Mezz Lender's claim is likely "a suit for money for a lost opportunity to exercise an option. Which maybe actually properly raised in State Court instead of in Federal Court."); June 30 Hearing Transcript at 26-27 (requiring the Mezz Lender to make an election between monetary damages and pursuing its objection to the confirmation of the plan).[12]

33.     The Mezz Lender cites *Adelphia* for the proposition that mootness is "the quintessential form of prejudice." *See* Stay Motion at 5; *Adelphia*, 361 B.R. 337 (finding bankruptcy court had erroneously approved an invalid settlement and permitted its inclusion into the plan, and thus appellants showed a substantial possibility of success on their claim, but requiring a $1.3 billion bond). However, as other courts in this district have more recently noted, "the mere threat of equitable mootness is not grounds, per se, for granting stay relief." *In re*

---

[12]     TH Holdco reserves all rights in connection with any claim that Mezz Lender may make for damages.

*LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 2657345, at *5 (Bankr. S.D.N.Y. July 8, 2022) (citing *Williams v. George Junior Republic (In re Cujas)*, 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007). Rather, "the existence of such harm is no guarantee that an appellant is entitled to a stay pending appeal. It is also necessary to go one step further and consider the nature of the underlying dispute and the harm that the loss of appellate rights may have on the moving party. That harm must then be balanced against the potential harm other parties may suffer if the stay is granted." *Id.* As further discussed below, the harm to TH Holdco and other creditors in these Chapter 11 Cases greatly outweighs any potential harm to the Mezz Lender.

34.     Additionally, in *Adelphia*, the court rested its decision to stay a confirmation order, in part, on the fact that the movant presented at a single legal question for the district court's review, which was an issue governed by a *de novo* standard. *See Adelphia*, 361 B.R. at 357 ("Because appellants have shown a substantial possibility that there was never a settlement agreed to by all authorized litigants, there is also a substantial possibility that the appellate court, in its de novo review, would find that the Bankruptcy Court erred in approving the Settlement."). The Mezz Lender's appeal implicates multiple legal and factual findings by this Court. In any event, the Mezz Lender has objected to the Confirmation Order on the same legal grounds as previously rejected by this Court, and has done no more than regurgitate its already-rejected arguments. The Mezz Lender has not established that it will suffer irreparable harm and therefore its Stay Motion should be denied.

### C.    A Stay Would Substantially Harm TH Holdco And Other Creditors.

35.     The Mezz Lender will not be harmed by the absence of a stay. TH Holdco, the estates and its creditors, however, will be substantially harmed.

15

36.    To overcome potential harm to TH Holdco and other creditors, the Mezz Lender must prove that "the balance of harms tips in favor of granting the stay." *In re Brown*, 2020 WL 3264057, at *7 (Bankr. S.D.N.Y. June 10, 2020) (quoting *Adelphia*, 361 B.R. at 349). As set forth in the *Declaration of Franco Famularo in Support of TH Holdco LLC's Objection to Mezz Lender's Motion for Stay Pending Appeal of the Confirmation Order* (the "Famularo Declaration") submitted contemporaneously with this Objection, TH Holdco would suffer significant harm from even a short term delay (which will likely become a long term delay given the Mezz Lender's pattern of delay in moving forward its meritless Adversary Proceeding)[13] and its likely further appeals to the Second Circuit Court of Appeals and/or the United States Supreme Court and its Stay Motion to the District Court, then the Second Circuit Court of Appeals and potentially the United Supreme Court if denied at the current initial levels of decision. Additionally, under the Intercreditor Agreement, interest continues to accrue at a great cost to TH Holdco, with post-petition default interest already totaling over $26 million.

37.    A stay would also cause substantial harm and risk to the taxing authorities (who anticipate receiving approximately $2.9 million of pre-petition and post-petition real property and other taxes due on the Effective Date of the Plan) and to the Class 6 and 8 trade creditors (who expect to receive on the Effective Date over $1.3 million in satisfaction of their pre-petition claims). These parties have been waiting over two and a half years for payment on their claims.

---

[13]    To the extent that the Mezz Lender contends that "any stay need not be lengthy" because it "is prepared . . . to move expeditiously towards a conclusion of the Adversary Proceeding" by filing the Summary Judgment Motion (Stay Motion at 7 & n.7), its position is undermined by its own admission in the Summary Judgment Motion. Specifically, as noted above, the Summary Judgment Motion only seeks partial summary judgment, and Mezz Lender concedes that the issue of the appropriate remedy is not ripe for summary adjudication at this time. *See* Adv. No. 22-07022, Docket No. 21-1 at 2 n.3. Thus, even if the Mezz Lender were allowed to proceed with its Summary Judgment Motion **and** the Mezz Lender prevailed, the Summary Judgment Motion would still not move the Adversary Proceeding to an "expeditious" conclusion because, at a minimum, there would still need to be extensive discovery on the unresolved issue, followed by the possibility of dispositive motion practice and ultimately a trial. Consequently, the Summary Judgment Motion and the Mezz Lender's assurances that the Adversary Proceeding will be resolved promptly do nothing to mitigate the inevitable harm to TH Holdco and others resulting from a stay.

16

They should not be forced to wait any longer, or risk losing payment on their claim altogether, on account of the Mezz Lender's baseless appeal. The additional two month marketing process by the Broker concluded on July 29, 2022 with no higher and better bids to the TH Holdco Credit Bid having been received.

38.     Further, the Mezz Lender had ample time to file an appeal of the Confirmation Order (entered on July 6, 2022) and request a stay of such order. Instead, the Mezz Lender waited until the eleventh hour at the end of a Friday – a total of 16 days after the Confirmation Order was entered – to request this stay pending appeal. As such, any harm to the Mezz Lender is of its own making. *See In re Tower Auto., Inc.*, No. 05-10578 ALG, 2006 WL 2583624, at *3 (Bankr. S.D.N.Y. June 28, 2006) (stating that "[i]n analyzing the balance of the harms, the [appellant's] own action and inaction is telling" because it delayed seeking a stay until the eve of settlement consummation). A party seeking a stay pending appeal must move quickly, and there is no excuse for Mezz Lender's failure to do so. *See In re Genesis Health Ventures, Inc.*, 280 B.R. 339, 344 (D. Del. 2002) (finding that movants failure to promptly seek a stay of the confirmation order weighed in favor of dismissing the appeal); *In re Citation Corp.*, 371 B.R. 518, 523 (N.D. Ala. 2007) ("[A] motion to stay pending appeal under Federal Rule of Bankruptcy Procedure 8005 is a relatively short pleading which can easily be filed quickly.")

39.     Harm to TH Holdco should be considered in the context of these Chapter 11 Cases. This factor is especially difficult for movants "to establish in the context of [] reorganization cases, because courts are reluctant to stay the enforcement of an order pending its appeal if this delay could thwart efforts to confirm a plan," and courts in this district have found as much. 8 *Norton Bankruptcy Law and Practice* 3d § 170:81; *see Sabine Oil*, 548 B.R. 674, 683 (Bankr. S.D.N.Y. 2016) (stating that certain harms may befall the debtor-appellee if chapter 11 case was stayed);

*Adelphia*, 361 B.R. at 342 (finding that "[t]he inability to consummate the Plan resulting from a

stay of that order could cause the estates to incur more than a billion dollars in additional costs or

could even cause the Plan to collapse"); *Green Point Bank v. Treston*, 188 B.R. 9, 12 (S.D.N.Y.

1995) (finding the non-movant would be harmed from "continued delay" of a sale in a chapter 13

case).

40.     Even if the Mezz Lender succeeds in its Stay Motion, neither the Mezz Lender, nor

the Debtors have presented a viable path forward.  The Debtors have not presented a confirmable

plan and have no approved disclosure statement.  The Mezz Lender has never proposed a Chapter

11 plan, despite plan exclusivity having expired in January 2022.  As such, any stay will only cause

harm to TH Holdco and to creditors.  *See In re Pulp Finish 1 Co.*, No. 12-13774 (SMB), 2014 WL

201482, at *10 (Bankr. S.D.N.Y. Jan. 16, 2014) ("A stay of proceedings will also injure the

creditors with allowed claims by delaying their distributions and preventing the Debtors from

completing consummation and closing the last estate."); *In re Albicocco*, No. 06-CV-3409 (JFB),

2006 WL 2620464, at *4 (E.D.N.Y. Sept. 13, 2006) (finding estate and creditors would suffer

substantial harm where creditor asserted that "the sale value of the Debtor's home will be damaged

by pushing the sale into the winter, and that the property continues to depreciate and accrue unpaid

property taxes.").

41.     Lastly, the Mezz Lender only cites to one case for the proposition that a "harm of

slight delay outweigh[s] [the] risk of irreparable harm."  *See* Stay Motion at 7 (citing *San Diegans

for Mt. Soledad Nat'l War Mem'l v. Paulson,* 548 U.S. 1301 (2006)).  In *San Diegans*, the Supreme

Court granted the city of San Diego's motion to stay removal of a Latin cross at a veterans'

memorial.  The Court based its decision largely on two factors that made the case "sufficiently

unusual . . . to warrant granting a stay,"  namely that (i) Congress had passed legislation impacting

18

the removal of the cross, and (ii) San Diego citizens had voted to donate the monument to the U.S. government. *Id.* at 1303. It goes without saying that these facts are completely inapplicable to this case, and there are no "sufficiently unusual" factors at issue here. Rather, the Mezz Lender has made the same arguments time and time again, each time without success. Accordingly, the Mezz Lender's Stay Motion should be denied.

### D.    A Stay Is Not In The Public Interest.

42.    As noted at the Confirmation Hearing, a primary goal of the bankruptcy process is to distribute proceeds to third-party creditors and confirm a chapter 11 plan. *See Pulp Finish*, 2014 WL 201482 at *10 (Bankr. S.D.N.Y. Jan. 16, 2014) (noting that "there is a strong public interest in the finality of bankruptcy proceedings.") (citing *In re Calpine Corp.*, No. 05–60200, 2008 WL 207841, at *7 (Bankr. S.D.N.Y. Jan. 24, 2008)); *Albicocco*, No. 06-CV-3409 (JFB), 2006 WL 2620464, at *4 (giving weight to creditor's argument against stay and denying debtor's stay application where the "Debtor's continued use and occupancy of estate property . . . frustrates the interest of reaching finality by satisfying the estate's creditors.").

43.    At the Confirmation Hearing, the Court found that the Sale and Bid Procedures were reasonable and appropriate, and consequently authorized the Broker with the support of all key constituencies to complete its two month supplemental marketing process which had recommended upon entry of the Disclosure Statement Order.[14] The Court later confirmed TH Holdco's Plan, which is premised on TH Holdco's valid right to credit bid its debt, but which also allows for one last market test for the Properties, via the public Auction. TH Holdco has

---

[14] *See* June 30, 2022 Hearing Transcript ("Moreover, the parties were in agreement immediately before I approved the disclosure statement that a sale process as contemplated by the bidding procedures which culminates an extensive process run by Jones Lang LaSalle starting in October of 2021, in essence with TH Holdco as the stalking horse, will maximize the value of the property for creditors and to the extent there's leftover value for shareholders. That process, I believe, has led to the emergence of a very credible competing bidder, who has put more money on the table, I believe, than the amounts that the senior lender stated at the time of the disclosure statement it was at that time currently prepared to bid . . .").

unequivocally supported the Auction process and has even paid for the Auction's publication notice. No higher and better bids were received by the July 29, 2022 bid deadline by the Broker.

44.    Any further delay of the closing of the winning bid and the payments to taxing authorities and trade creditors would harm, not benefit, the public. *In re Metiom, Inc*., 318 B.R. 263, 272 (S.D.N.Y. 2004) (finding "the public interest in the expeditious administration of bankruptcy cases as well as in the preservation of the bankrupt's assets for purposes of paying creditors, rather than litigation of claims lacking a substantial possibility of success, outweighs the public interest in resolving the issues presented here on appeal"); *see also Sabine*, 548 B.R. at 683 ("[C]ourts have recognized numerous harms resulting from the postponement of reorganization proceedings, including ... incurrence of administrative and professional expenses; ... placing plan settlements in jeopardy; and ... exposing the equity to be granted to non-moving creditors to market volatility and other risks."). Such a delay would not only damage creditors' economic interests, but it could also foster a lack of trust with the bankruptcy process.

45.    To grant a stay at this time would effectively bring this entire case to a halt, where it has already been prolonged by the Debtors' failure to propose a confirmable plan or the Mezz Lender's failure to propose any Chapter 11 plan whatsoever, much less a confirmable plan. Should a stay be granted, the estates will continue to accrue administrative expenses, which will continue to eat into distributions to be received by creditors in these Chapter 11 Cases, all in service to an adversary proceeding that the Mezz Lender has delayed repeatedly.

46.    Because each of the foregoing factors weighs against granting a stay as well as the balance of the factors weighing against issuance of a stay, the extraordinary remedy of staying the Confirmation Order is inappropriate, and the Mezz Lender's Stay Motion should be denied.

## II.    IF THIS COURT GRANTS A STAY, WHICH IT SHOULD NOT, MEZZ LENDER SHOULD BE REQUIRED TO POST A SUBSTANTIAL BOND OF AT LEAST $8.6 MILLION FOR A TWO MONTH STAY SCENARIO AND $70.6 MILLION FOR A 24 MONTH STAY SCENARIO.

47.    For the reasons set forth above, the Mezz Lender is not entitled to a stay pending appeal and the Court need not even reach the issue of a bond. However, if the Court determines that it will issue a stay pending appeal – which TH Holdco respectfully submits it should not for all the above reasons – then this Court should require the Mezz Lender to post a bond.

48.    Federal Rule of Bankruptcy Procedure 8005, which is guided by Federal Rule of Civil Procedure 62(d), requires appellants to post a bond absent "exceptional circumstances." *In re Adelphia Commc'ns. Corp.*, 361 B.R. 337, 350 (S.D.N.Y. 2007).  "The reason for requiring a bond is to secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." *In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y. 1994) (citing 9 *Collier on Bankruptcy* ¶ 8005.07 [2] (1993)) (suggesting that reasons for requiring a bond include the need to protect against diminution in the value of property pending appeal, whether there is collateral at stake, and whether creditors will be damaged if the movant is unsuccessful on appeal); *see also Adelphia*, 361 B.R. at 350; *see also In re Gen. Motors Corp.*, 409 B.R. 24, 34 (Bankr. S.D.N.Y. 2009) (finding party seeking stay was not in financial position to post anything more than a nominal bond and even if they could, there was non-monetary loss to estate and creditors, who would not receive the "slightest semblance of compensation").

49.    Because the decision regarding whether to require a bond under Rule 8005 is discretionary, the Court must first determine whether the party seeking the stay pending appeal has met its burden in showing no bond is required.  *See Adelphia*, 361 B.R. at 350; *de la Fuente v. DCI Telecommunications, Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) ("Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has

21

the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of supersedeas bond in the full amount of the judgment. The bond requirement should not be eliminated or reduced unless doing so 'does not unduly endanger the judgment creditor's interest in ultimate recovery.'") (citations omitted). Here, the Mezz Lender has failed to meet this burden. As such, the Court should require the Mezz Lender to post a substantial bond.

50.    The Mezz Lender relies on the *Sphere* case for the argument that a "bond is unnecessary where little to no risk of injury to an appellee exists." (Stay Motion at 10); *Sphere*, 162 B.R. 639. However, in *Sphere*, the court stated that the case did not require a bond for reasons inapposite to this case – namely that there was no collateral at issue, no party would be damaged, and no party had asked for a bond.

51.    Here, the Mezz Lender's requested stay will result in a delay of the implementation of the Plan. This delay will cause direct financial harm to TH Holdco, the bankruptcy estates and its Class 6 and 8 creditors, who anticipate receiving payment in full on the Effective Date. *See also In re Burkett*, 279 B.R. 816, 817 (Bankr. W.D. Tx. 2002) (finding that offer of bond failed to protect estate from losses resulting from "property's being tied up in litigation during the pendency of an appeal" and from "vagaries of the marketplace"). This harm is realistic and is a proper basis for requiring a bond. The Mezz Lender has failed to meet its burden of establishing no bond is needed here. TH Holdco has serious doubts that the Mezz Lender would in fact post any appeal bond required by this Court and therefore, any stay must be conditioned on the Mezz Lender actually posting a bond in the required amount. *See e.g. Adelphia*, 361 B.R. at 343 (requiring appellants to post 10% of cash or a bond within twenty-four hours of the opinion, and remainder within seventy-two hours of the opinion).

22

52.    While overall harm to TH Holdco and the Chapter 11 estates is irreparable, portions of those harms can be calculated.  These amounts include costs of potential damage to the property, legal costs associated with fighting the appeal, accruing interest and penalties, costs of keeping the Chapter 11 cases open including quarterly US Trustee fees and administration costs and lost profits of operating the Properties. (*See* Famularo Declaration ¶¶ 4-7).[15]  Attached as **Exhibit B** to the Famularo Declaration is a chart summarizing certain key costs and risks for two scenarios:  (i) a shorter term stay of 2 months and (ii) a longer term stay of 24 months.  Based on those two scenarios, a bond of at least $3.6 million for the 2 month short stay scenario and at least $65.6 million for the 24 month longer stay scenario should be required to protect TH Holdco and the Chapter 11 estates against these risks if a stay is issued.

53.    In addition, TH Holdco's Plan anticipates payment to taxing authorities, administrative claimants and certain unsecured creditors in excess of $5 million.  (*See* Famularo Declaration at ¶6).  Because the Mezz Lender's appeal puts these payments at risk, a total bond of at least $8.6 million should be required for a 2 month stay and a total bond of at least $70.6 million should be required for a 24 month stay in order to protect both TH Holdco and the creditors in this case..

---

[15]    TH Holdco further incorporates by reference the *Declaration of Franco Famularo in Support of TH Holdco LLC's Combined (A) Response to Objections to Motion to Approve (I) the Adequacy of Information in the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Forms of Ballots, and (IV) Certain Dates with Respect Thereto and (B) Objection to Debtors' Disclosure Statement for Amended Plan of Reorganization* [Docket No. 174]; *Declaration of Franco Famularo In Support of TH Holdco LLCs Request For Confirmation of Second Amended Chapter 11 Plan* [Docket No. 265]; *Declaration of Franco Famularo in Support of TH Holdco's Objection to Debtors' Motion for an Order Pursuant to 11 U.S.C. § 363(k) Disqualifying TH Holdco LLC from Credit Bidding and Granting Related Relief* [Docket No. 267]; and the testimony of Franco Famularo given at the Confirmation Hearing.

## III.    THE STAY MOTION AND APPEAL SHOULD BE STRICKEN OR DENIED UNDER SECTION 510 OF THE BANKRUPTCY CODE.

54.      As discussed in TH Holdco's previous pleadings in this bankruptcy case and in the Adversary Proceeding,[16] the Mezz Lender's ongoing actions to (i) delay and prevent the TH Holdco Credit Bid, (ii) to improperly seek to exercise a purchase option at the 2020 loan balance amount rather than the current loan balance amount, (iii) to oppose the TH Holdco Plan and support the Debtors' plan and (iv) other actions are direct violations of the Intercreditor Agreement and should be denied or stricken under Section 510 of the Bankruptcy Code.  *See* 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.").  The Mezz Lender should not be permitted to pursue arguments it expressly gave up in the Intercreditor Agreement.

55.      Further, per Section 9(d) of the Intercreditor Agreement, the Mezz Lender agreed that it would not be a creditor of any entity other than the mezzanine borrower, here the Mezz Debtor.[17]  As a result, the Mezz Lender has no standing to pursue a stay against the Hotel Debtor or the Residential Debtor.  To the extent the Court is inclined to grant the Mezz Lender's stay request, which it should not, the Court could only grant such stay with respect to the Mezz Debtor. The Mezz Lender has agreed it has no standing to request a stay vis a vis the Hotel Debtor or the Residential Debtor.

---

[16]      *See e.g.*, TH Holdco's *Objection to Motion for Order Pursuant To 11 U.S.C. § 363(K) Disqualifying TH Holdco LLC From Credit Bidding And Granting Related Relief* [Docket No. 266], *Memorandum of Law In Support Of Confirmation of TH Holdcos Plan and In Response To Objections To TH Holdcos Plan* [Docket No. 264], *Memorandum of Law in Support of Defendant TH Holdco LLC's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(b)(1), (c), & (h)(3)* [Adv. No. 22-07022, Docket No. 15].

[17]      Section 9(d) states in relevant part "Mezzanine Lender hereby agrees that it shall not make any election, give any consent, commence any action, credit bid on all or any portion of the collateral for the Senior Loan or file any motion, claim, obligation, notice or application or take any other action in any Proceeding by or against Borrower or Guarantor without the prior written consent of Senior Lender, except to the extent necessary to preserve or realize upon Mezzanine Lender's interest in the Equity Collateral; provided, however, that any such filing shall not be as a creditor of Borrower and shall be subject to the provisions of Section 5(d) hereof."

56.    Further, it is anomalous for the Mezz Lender to be appealing and seeking to stay confirmation of a Plan where the Class 11 ballot was deemed voted in favor of the Plan, and where such vote was considered proper by this Court.  *See* ¶¶ 18-25 supra.  *In re Jersey City Medical Ctr.*, 817 F.2d 1055, 1061-62 (3d Cir.1987) (affirming confirmation over unfair discrimination objection by creditor whose class accepted plan; "since [objecting creditor's class] has accepted [the] plan § 1129 (b)(1) affords [] no protection."); *In re Gaston & Snow*, No. 93 CIV. 8517 (JGK), 1996 WL 694421, at *7 (S.D.N.Y. Dec. 4, 1996) ("Only parties adversely affected by provisions of a plan may raise an objection to confirmation based on such provisions.") (citations omitted); *In re Mount Carbon Metro. Dist.*, No. 97-20215MSK, 1999 WL 34995477, at *6 (Bankr. D. Colo. July 20, 1999) ("Most courts conclude that parties may not object to confirmation of a plan based upon interests of parties who have accepted it, and that parties who have voted to accept a plan may not object to confirmation based upon unfair treatment.");  *In re Wonder Corp. of Am.*, 70 B.R. 1018, 1023 (Bankr. D. Conn. 1987) ("To allow claimants who are conclusively presumed to have accepted a reorganization plan to object to that plan at the confirmation hearing would vitiate the effectiveness of § 1126(f).").  For this reason, the Mezz Lender lacks standing to appeal the Confirmation Order, or seek a stay pending appeal, at least as to the Hotel estate and the Residential estate.

25

## CONCLUSION

For the reasons set forth herein, TH Holdco respectfully requests that the Court deny the Stay Motion. If the Court determines the Mezz Lender otherwise meet the standards for a stay pending appeal, which TH Holdco respectfully requests it does not, then the Court should condition any such stay on the Mezz Lender posting a bond in the amount of at least $8.6 million for a two month stay or a much larger bond for a longer term stay, that would cover any potential harms to TH Holdco and to other creditors who would otherwise be paid in full under the TH Holdco Plan in August 2022 and provide that the stay is not effective until that bond is actually posted by the Mezz Lender.

Dated: August 1, 2022
New York, New York

**DENTONS US LLP**

____/s/ Lauren Macksoud____
Lauren Macksoud
Sarah M. Schrag
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Fax: (212) 768-6800
Email: lauren.macksoud@dentons.com
        sarah.schrag@dentons.com

-and-

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

<u>Certificate of Service</u>

 The undersigned caused the *Objection of TH Holdco to the Mezz Lender's Motion for a Stay Pending Appeal of the Confirmation Order* and the *Declaration of Franco Famularo in support of TH Holdco's Objection to Mezz Lender's Motion for a Stay Pending Appeal of the Confirmation Order* to be served via ECF on counsels for the Mezz Lender and other parties who have appeared in these case via ECF on August 1, 2022.

Date:  August 1, 2022         <u>/s/ Lauren Macksoud</u>

27