**LEECH TISHMAN ROBINSON BROG PLLC**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
*Attorneys for the Debtors and Debtors in Possession*

Hearing Date:
**August 3, 2022 at 3:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:

85 FLATBUSH RHO MEZZ LLC, *et al.*,[1]

            Debtors.
----------------------------------------------------------X

Chapter 11

Case No.:  20-23280 (SHL)

(Jointly Administered)

## DEBTORS' JOINDER TO SECURED CREDITOR 85 FLATBUSH MEZZ LLC'S MOTION FOR STAY PENDING APPEAL OR, ALTERNATIVELY STAY PENDING RESOLUTION OF ADVERSARY PROCEEDING

TO:    THE HONORABLE SEAN H. LANE
         UNITED STATES BANKRUPTCY JUDGE:

85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential" and with Mezz and Hotel, "Debtors"), by their attorneys, Leech Tishman Robinson Brog PLLC, file this joinder ("Joinder") to Secured Creditor 85 Flatbush Mezz LLC's Motion for Stay Pending Appeal or, Alternatively, Stay Pending Resolution of Adversary Proceeding and respectfully represent as follows:

# PRELIMINARY STATEMENT

1.  Debtors submit that a stay pending appeal of the Confirmation Order (defined below) or a stay of the auction sale contemplated by the Confirmation Order pending resolution of the pending adversary proceeding ("Mezz Adversary Proceeding") styled: *In Re 85 Flatbush Mezz LLC v. TH Holdco LLC*, Adv. Proc. No. 22-07022 (SHL) is warranted.

2.  Without a stay of the sale of the Debtors' property, title will be transferred to TH Holdco LLC ("TH Holdco"), the current holder of the senior secured mortgage on the property, or its designee, which will extinguish the rights of the mezzanine lender, 85 Flatbush Mezz LLC ("Mezz Lender"), including, but not limited to, Mezz Lender's rights under the Intercreditor Agreement ("ICA") between TH Holdco and Mezz Lender as well as foreclosing any opportunity for Mezz Lender to recover on account of the $6,000,000 it advanced to Mezz in September 2019.

# BACKGROUND

3.  Mezz is the 100% owner of Hotel and Residential. Hotel and Residential collectively own the property located at 85 Flatbush Extension, Brooklyn, New York ("Property"). The Property is a 132,641 square foot, twelve-story, mixed-use property consisting of a 174-room boutique hotel on the first six floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage (together, "Hotel Property"). The residential component of the Property has nine studios, 26 one-

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 85 Flatbush RHO Mezz LLC. (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

2

bedroom units, and 29 two-bedroom units (together, "Residential Property"). Of the 64 units, currently, two are occupied. At the time of the Debtors' acquisition of the Property, the intention was to convert the residential units into condominiums.

4. On December 18, 2020 ("Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. On October 12, 2021, the Bankruptcy Court entered an order authorizing the Debtors' retention of Jones Lang LaSalle ("JLL") as the Debtors' exclusive real estate advisors, effective as of September 4, 2021, to market the Hotel Property and Residential Property. JLL launched their marketing efforts on October 12, 2021, creating and establishing a data room for interested parties accessible right after their executing a confidentiality agreement. The Debtors were advised that 69 confidentiality agreements were executed and JLL conducted 14 tours of the Hotel Property and Residential Property. The marketing period continued through November 17, 2021. A total of six written offers were received, that were later narrowed down to three potential purchasers for the Hotel Property and Residential Property, submitting proposals for the Hotel Property and Residential Property in the range of $80,000,000 to $86,500,000. The Debtors' negotiation of a letter of intent for more than the $86,500,000 bid, and final form of purchase agreement with the interested purchasers was interrupted by TH Holdco's acquisition of the mortgage loan and related loan documents from the Hotel and Residential Debtors' prepetition lender, who advanced $70,000,000 to Hotel and Residential in September 2019, when the Debtors acquired the Property..

6. On or about February 4, 2022, TH Holdco filed its notice of transfer of claim number 3 from the prepetition lender to TH Holdco which claim was filed against Hotel in the amount of $85,158,815.99 and its notice of transfer of claim number 1 from the prepetition lender to TH

Holdco which claim was filed against Residential in the amount of $85,158,815.99. The claim notices reference a January 28, 2022 assignment and assumption agreement between TH Holdco and the prepetition lender. TH Holdco then filed its original plan and disclosure statement, seeking to acquire the Property by a credit bid of its secured claim.

7. On March 23, 2022, the Mezz Lender started the Mezz Adversary Proceeding against TH Holdco, as assignee of the prepetition lender in its capacity as the prepetition mortgage lender to Hotel and Residential. The complaint sought (i) a declaratory judgment that the prepetition lender breached the ICA by declaring defaults without issuing a Purchase Option Notice (as defined in the ICA) and that the Mezz Lender holds an exclusive option right to purchase the Senior Loan Documents (as defined in the ICA) as of July 16, 2020, and (ii) an award of specific performance directing TH Holdco to sell and assign the senior loan to Mezz Lender based on what the purchase price would have been as of July 16, 2020.

8. Debtors and Mezz Lender each objected to the various TH Holdco plans and disclosure statements on many bases, including that confirmation should be delayed until the Mezz Lender Adversary Proceeding was fully adjudicated as TH Holdco's standing to propose and confirm any plan needed to be determined before confirmation of any plan. The Bankruptcy Court overruled these objections.

9. On May 26, 2022, the Bankruptcy Court entered an order approving the Second Amended Disclosure Statement Relating to the Second Amended Chapter 11 Plan filed by TH Holdco ("TH Holdco Disclosure Statement") as having adequate information and scheduling confirmation on the TH Holdco Plan for June 30, 2022.

10. The TH Holdco Second Amended Chapter 11 Plan was confirmed by the Bankruptcy Court after a June 30, 2022 hearing by entry of the Findings of Fact, Conclusions of Law, and Order Confirming TH Holdco LLC's Second Amended Chapter 11 Plan, as Modified by this Order ("Confirmation Order") which plan contemplated a sale of the Property, with TH Holdco submitting an opening bid consisting of a $90,000,000 credit bid plus cash in the amount of $4,000,000.

11. Notices of appeal of the Confirmation Order have been filed by both Debtors and Mezz Lender.

12. JLL continued to market the Property after approval of the TH Holdco Disclosure Statement and accompanying bidding procedures which bidding procedures established a bid deadline of July 29, 2022 at 4:00 p.m. and, to the extent qualified bids were received, an auction for the Property on August 5, 2022.

13. JLL advised Debtors and TH Holdco that no bids were received as of the July 29, 2022 bidding deadline. Therefore, the August 5, 2022 auction will be canceled, and a closing through which TH Holdco or its designee obtains title to the Property is imminent.

14. Thus, in order to preserve Debtors' ownership of the Property and protect Mezz Lender's rights from becoming moot- as noted by Mezz Lender, the "*quintessential* form of prejudice" - a stay pending appeal of the Confirmation Order or a stay of the sale of the Property, preserving the status quo until a determination is made in the Adversary Proceeding of who can properly credit bid for the Property is absolutely required.

15. If the Mezz Lender succeeds in the Mezz Lender Adversary Proceeding, then it – not TH Holdco –would have had the right to purchase the senior loan from the prepetition lender.

This issue needs to be resolved before any sale of the Property, or, in this case, the transfer of title to TH Holdco or its designee, as any such transfer will permanently extinguish Mezz Lender's rights, as well as eliminating Debtors' attempts to confirm a plan providing for payment of the Mezz Lender obligation.  If TH Holdco improperly purchased the senior loan, it should not be entitled to credit bid and to proceed to acquire title to the Property under its liquidating plan, which, with no qualified bids for the Property, does not provide for any distribution to Mezz Lender on account of its claim.

16. As pointed out by the Mezz Lender in its Motion, it has a substantial possibility of success on its claims. TH Holdco has no evidence that Original Senior Lender provided Mezzanine Lender with a single "Purchase Option Notice," after the Debtors commenced their bankruptcy cases, which constituted an event of default by the Debtors, triggering the Mezz Lender's rights under Section 11(a) of the ICA. As a result, Mezz Lender argues that "[g]iven this breach [of the ICA], TH Holdco was not entitled to silence Mezzanine Lender by utilizing Section 9(d) of the ICA to vote Mezzanine Lender's secured claim in favor of TH Holdco's plan. . . . under New York law that a party in material breach cannot then enforce that contract against a nonbreaching party. *See, e.g.*, *Nadeua v. Equity Residential Properties Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (citation omitted)." The Debtors wholeheartedly agree.

17. Moreover, the public interest favors a stay. A stay will protect Mezz Lender's rights on the merits of its dispute with TH Holdco; preserve Debtors' interest in the Property and Debtors' ability to satisfy claims of its legitimate creditors; and avoid the threat of equitable and statutory mootness from TH Holdco's rush to substantially consummate the plan prior to an adjudication of the Adversary Proceeding on the merits.

18. Finally, the Debtors disagree with TH Holdco's preposterous claims that a sizable bond is required here to support the stay the Mezz Lender has requested. An appropriate bond is based on an estimate of what loss may result during the pendency of the requested stay. *See, e.g.*, *In re Weinhold*, 389 B.R. 783, 789 (Bankr. M.D. Fla. 2008) (bond in case involving non-monetary judgment is only estimate of potential loss during stay).

19. TH Holdco's claim that Mezz Lender should have to bond the *priming* $2.9 million claim of the real property taxing authority creditors makes no sense. First, the principal amount due the taxing authorities is not at risk. The claims remain priming claims against the Property. Second, TH Holdco doesn't have standing to complain on behalf of the taxing authorities who have not objected to the request for a stay or on behalf of other creditors who have not opposed the stay.

20. Amounts for interest expense, loan fees and refinancing costs as set forth in the damage chart attached to the Famularo declaration in support of TH Holdco's objection to the Mezz Lender's motion are also questionable as TH Holdco's own plan in the treatment of the TH Holdco claim reserves TH Holdco or its designee's right to take title to the Property subject to the existing TH Holdco mortgage (as reduced by the value of the credit bid) which may thereafter be assigned to any new lender.

21. TH Holdco's citation to cases such as *de la Fuente v. DCI Telecommunications,*

*Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) for the proposition that the Mezz Lender must provide specific reasons why the court should depart from the "standard" requirement of granting a stay only after posting of supersedeas bond in the full amount of the judgment are simply inapplicable to an order confirming a plan or reorganization, as that requirement applies only to money judgments and a confirmation order is not an order for a money judgment. *See, e.g., In re Capital West Investors*, 180 B.R. 240, 243 (N.D. Cal. 1995)(" The Court holds that HUD is not entitled to a stay of right, because that entitlement has been limited to an appeal from a money judgment or the equivalent (upon posting of a supersedeas bond), and an order confirming a plan of reorganization is not a money judgment or the equivalent…")

**WHEREFORE**, the Debtors join in the Mezz Lender's request for a stay of the Confirmation Order pending appeal or, alternatively, a stay of the sale of the Property pending resolution of the pending adversary proceeding and for such other relief as the Court considers proper.

**DATED:** New York, New York
August 1, 2022

**LEECH TISHMAN ROBINSON BROG PLLC**
**Attorneys for the Debtors**
875 Third Avenue, 9th Floor
New York, New York 10022
(212) 603-6300

By: /s/ A. Mitchell Greene
A. Mitchell Greene