**LENDER:**    450 Skokie Blvd, Ste 1000
Northbrook, IL 60062-7917
P:(800) 837-2511 F:(800) 837-3709
www.firstinsurancefunding.com

# FIRST INSURANCE FUNDING
A WINTRUST COMPANY

## PREMIUM FINANCE AGREEMENT

☐ Personal  ☑ Commercial  ☐ Additional Premium

**Quote #: 38254264**

| INSURED/BORROWER | Customer ID: N/A | AGENT or BROKER |
|---|---|---|
| (Name and Address as shown on Policy) | | (Name and Business Address) |
| NDIP 85 Flatbush RHO Hotel LLC | | Allsure Insurance Brokerage, Inc. |
| 85 Flatbush Avenue Extension | | 4208 18th Ave. |
| Bridge Plaza, NY 11201 | | Brooklyn, NY 11218 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 323,215.00 | 194,622.54 | 128,592.46 | 0.00 | 128,592.46 | 3,186.56 | 131,779.02 | 4.490 % |

*YOUR PAYMENT SCHEDULE WILL BE:*   **Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000**

| Number of Payments | Amount of Each Payment | **First Installment Due** | 9/13/2022 |
|---|---|---|---|
| 6 | 21,963.17 | **Installment Due Dates** | 13th (Monthly) |

**INSURED'S AGREEMENT:**
**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.
**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.
**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.
**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

## SCHEDULE OF POLICIES

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| IMP E851159 | C01351-GREAT AMERICAN  INSURANCE CO<br>G02667-RT SPECIALTY<br>[ME:25.000 %, CX:10]          [PR] A/F [10,769.45] | DIC | 12 | 5/13/2022<br>ERN TXS/FEES<br>FIN TXS/FEES | 26,937.00<br>674.00<br>0.00 |
| | | | | Earned Broker Fee | 400.00 |
| (Policies continued on next page.) | | | | TOTAL | 323,215.00 |

Q# 38254264, PRN: 090922, CFG: 15/10-10E-16-25D, RT: A58325-Standard-25D, DD: 25, BM: Invoice, Qtd For: A58325 Original, Memo 5

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay LENDER, the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, subject to all the provisions of this Agreement.
**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for repayment of the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, irrespective of whether LENDER exercises this right to cancel the Financed Policies.
**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. By signing below, you certify that you have the requisite authority to (a) enter into this Agreement on behalf of Insured (if applicable, including as agent, trustee, executor, or otherwise in a representative capacity) and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all insureds named on the Financed Policies to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**
**NOTICE TO INSURED: (1)** Do not sign this Agreement before you read both pages of it, or if it contains any blank space. **(2)** You are entitled to a completely filled-in copy of this Agreement. **(3)** You have the right prepay the loan in full and receive a refund of any unearned finance charge. **(4)** Keep a copy of this Agreement to protect your legal rights. **(5)** See last page of Agreement for your consent to electronic statement and notice delivery.

| _Shiraz Ali_ | 09/09/22 | _[signature]_ | 9.12.22 |
|---|---|---|---|
| Signature of Insured or Authorized Agent | Date | Signature of Agent | Date |

FIF0521NBP

Insured: A004-85 Flatbush RHO Hot
Quote #: 38254264

## ADDITIONAL PROVISIONS – PREMIUM FINANCE AGREEMENT

**8. APPLICATION OF PAYMENTS.** (a) Payments received by LENDER from Insured shall be applied first to installments, then to any unpaid fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may be reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. (b) Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured's payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER's representations about the Financed Policies.

**14. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. Where permissible by law, LENDER may pay some portion of the finance charge or other form of compensation to the Agent or Broker executing this Agreement for aiding in the administration of this Agreement. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.** The loan terms subject to this Agreement are governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any term herein to be invalid, such finding will not affect the remaining provisions.

**18. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker or Lender in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS.** (a) Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. (b) Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, the signer of this Agreement (whether Insured or its agent) has valid authority to bind Insured and any other insureds named under the Financed Policies to the terms of this Agreement, including the Power of Attorney provision, Insured's signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer's authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker's knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney's fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker's violations of these Representations and Warranties or from Agent or Broker's errors, omissions, or inaccuracies in preparing this Agreement, and will promptly reimburse LENDER for any loss or expense incurred in connection with any incidence of fraud or lack of valid authority on behalf of Insured or any other named insureds with respect to the terms of this transaction, the Agreement, or the Financed Policies, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

FIF0521NBP

SCHEDULE OF POLICIES

Insured: NDIP 85 Flatbush RHO Hot
Quote #: 38254264

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| yB2-L9L-474461-012 | C00317-LIBERTY MUTUAL FIRE INS CO<br>G02667-RT SPECIALTY<br>[ME:10.000 %, CX:10]    [90%PR] A/F [1,858.28] | EQPT | 12 | 5/13/2022<br>ERN TXS/FEES<br>FIN TXS/FEES | 4,648.00<br>0.00<br>0.00 |
| PR202200001756 | C02052-SOUTHWEST MARINE & GENERAL<br>G01260-RT SPECIALTY<br>[ME:35.000 %, CX:10]    [90%PR] A/F [80,907.91] | PROP | 12 | 5/13/2022<br>ERN TXS/FEES<br>FIN TXS/FEES | 195,000.00<br>500.00<br>7,370.35 |
| 795018636 | C00399-HOMELAND INSURANCE COMPANY DE<br>G01260-RT SPECIALTY<br>[ME:35.000 %, CX:0]    [90%PR] A/F [35,056.82] | PROP | 12 | 5/13/2022<br>ERN TXS/FEES<br>FIN TXS/FEES | 84,500.00<br>0.00<br>3,185.65 |

FIF0214P-SCH