Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile:  (212) 768-6800
E-mail: lauren.macksoud@dentons.com
         sarah.schrag@dentons.com

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>    85 FLATBUSH RHO MEZZ LLC, et al.,[1]<br><br>              Debtors | Case No. 20-23280 (SHL)<br>Chapter 11<br><br><br>(Jointly Administered) |

**TH HOLDCO LLC'S MOTION TO PURSUE DISCOVERY AND DEPOSITIONS
PURSUANT TO BANKRUPTCY RULE 2004**

TH Holdco LLC ("TH Holdco") hereby files this *Motion to Pursue Discovery and Depositions Pursuant to Bankruptcy Rule 2004* ("Motion") and respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include:  85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

## BACKGROUND

1. On July 6, 2022, this Court entered the *Findings of Fact, Conclusions of Law and Order Confirming TH Holdco's Second Amended Chapter 11 Plan, as Modified by this Order* (Docket No. 280) (the "Confirmation Order"), which among other things, confirmed *TH Holdco's Second Amended Chapter 11 Plan* (Docket No. 211) filed on May 26, 2022 (the "Confirmed Plan")[2] and approved the *Purchase and Sale Agreement By and Between 85 Flatbush RHO Hotel, LLC and 85 Flatbush RHO Residential LLC as Sellers and TH Holdco LLC* filed on June 27, 2022 (Docket No. 268) (the "TH Holdco Purchase Agreement", and collectively with the Confirmation Order and Confirmed Plan, the "Key Documents").

2. The Key Documents required the Debtors and Debtors in Possession to cooperate with the closing of TH Holdco's credit bid, including, without limitation, the provisions quoted in the Motion to Enforce Cooperation discussed below.

3. The United States District Court for the Southern District of New York has affirmed the Confirmation Order and overruled both pending appeals of that order in a detailed opinion issued in both appeals dated October 20, 2022. *85 Flatbush RHO Mezz LLC, et al. v. TH Holdco LLC*, No. 22-CV-6241 (CS); *85 Flatbush Mezz LLC v. TH Holdco LLC*, No. 22-CV-6233 (CS). No further appeals of the District Court's ruling have been taken.

4. TH Holdco filed a *Motion to Enforce Debtors' Obligation to Cooperate with Closing of Credit Bid* (Docket No. 330) (the "Motion to Enforce Cooperation") and two supplemental updates to that motion (Docket Nos. 333 and 334).

5. The Court held three emergency status hearings in connection with the Motion to Enforce Cooperation, and at each hearing told the Debtors' counsel that the Debtors were required to cooperate with the closing and instructed Debtors' counsel to advise their clients (*i.e.*, the Debtors) of that obligation. A further status date has been set for December 1, 2022 at 10:00 a.m. on the open items on the Motion to Enforce and remaining matters.

---

[2] Capitalized terms used in this Motion but not otherwise defined herein shall have meaning set forth in the Confirmed Plan.

2

6. At the status hearing on the Motion to Enforce Cooperation held at 9 a.m. on November 9, 2022, the Court entered an agreed-upon order styled as *Order Resolving TH Holdco LLC's Motion to Enforce Debtors' Obligation to Cooperate with Closing of Credit Bid* (Docket No. 336).

7. The credit bid transaction closed later in the day on November 9, 2022, and TH Holdco and its affiliates now own the Properties and related assets.

8. As part of the transition, James Cole, on behalf of TH Holdco, led the on-site transition efforts and went to the Properties at the pre-arranged time on the morning of November 9, 2022 to begin the transition. Numerous issues arose during that visit and thereafter, including the following:

- New individuals were moving into the apartments without a lease or permission from TH Holdco to do so.

- A staging company (Stage One NY, LLC) ("Stage One") was moving furniture into approximately eighteen (18) of the apartments.

- There were other apparent squatters living in other apartment units about whom TH Holdco had never been advised and who, to TH Holdco's knowledge, were not paying any rent (at least to the Debtors). Squatters in four (4) of those units remain on premises as of the filing of this Motion.

- All on-site personnel were locked out of the Debtors' electronic records and systems.

- The office where the Debtors' main paper records were stored was locked and the person with the key to that office refused to come to the Property to unlock it.

- The key card system for accessing rooms in the hotel portion of the Properties was sabotaged to be inoperable such that anyone could enter any of the hotel rooms.

3

- The access system to the doors to each of the sixty-two (62) Residences was damaged with screws such that the normal key card access system would not work and manual key locks had to be installed by a locksmith.

- Certain vendors, including, without limitation Consolidated Edison and certain IT and systems providers, advised that they were owed material postpetition amounts that were past due.[3]

- None of the domain name or other passwords/access codes were turned over to TH Holdco, including, without limitation, the web domain, the property management system, the Safelock key system, the Butterfly Apartment entry system, the CCTV system and/or the shared drives on the cloud.

- Engineering and repair equipment and tools have been removed from the Property and have not been returned or otherwise accounted for.

9. It is TH Holdco's understanding, including based on information provided by squatters at the Property, Stage One and others, that many of the issues identified above took place at the direction of or with the consent of Sam Rubin, one of the Debtors' insiders. TH Holdco has not been able to determine who else has been involved in the various issues at this time.

10. TH Holdco has reached out to the Debtors' counsel several times to resolve these issues without Court intervention, but several of the aforementioned problems at the Property have persisted.

11. TH Holdco first raised these issues in a letter to the Court filed on November 10, 2022 (Docket No. 340) and requested a further status hearing to address them.

---

[3] The Hotel Debtor's cash on hand has dropped from $1,221,300 as of June 1, 2022 to $854,710 as of June 30, 2022 (with $500,000 of that cash in a reserve for real estate taxes) (Docket No. 322) to $202,971 cash on hand as of October 31, 2022 with nothing in the reserve for real estate taxes (which were used for other purposes by the Debtors) - despite receipts of $1,956,240 during the month of October, 2022 (Docket No. 351) - to remaining cash for all three Debtors of $6,150 transferred to TH Holdco as of November 9, 2022 as part of the closing under the confirmed plan. TH Holdco is analyzing the disbursements and related matters further.

4

12. The Debtors filed a response to that letter (Docket No. 349) with two supporting declarations from representatives of GC Realty Advisors LLC ("GC Realty"), the Debtors' manager. No declaration from Sam Rubin was submitted, and the Debtors' counsel and GC Realty expressly noted they "d[id] not represent any party other than the Debtors."

13. Based on the copy of the agreement provided by and representation by Debtors' counsel that the occupancy by Exodus Transitional Services, Inc. ("Exodus") of the hotel portion of the Property was on a month-to-month basis since June 30, 2022, TH Holdco sent a thirty-(30) day notice terminating that arrangement effective December 10, 2022 in accordance with the operative agreement with Exodus. Exodus subsequently has taken the position that it had an agreement with the Debtors to occupy the hotel portion of the Property through December 31, 2022 and provided TH Holdco with an unsigned version of a further six-month lease for the period of July 1, 2022 to December 31, 2022. The Debtors did not seek Bankruptcy Court approval, as required pursuant to Section 363 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), for the original six-month lease for the period of January 1, 2022 to June 30, 2022, which was signed by Sam Rubin, or for any new unsigned lease for the period of July 1, 2022 to December 31, 2022. TH Holdco is finalizing a resolution of this issue with Exodus.

14. TH Holdco hereby incorporates by reference all of the foregoing referenced pleadings.

15. TH Holdco has incurred and continues to incur substantial additional costs trying to resolve these issues without adequate cooperation from the Debtors. For example, squatters in four (4) of the units remain at the Property but are not paying rent as of the date of this Motion. If necessary, TH Holdco will go to eviction court to remove those squatters which will result in additional costs and delays.

16. Any payments made by a squatter or other resident and not turned over to the Debtors' estates may be recoverable from Mr. Rubin or any other individual who has wrongfully kept estate funds under Section 549 of the Bankruptcy Code or otherwise.

17. Given the serious issues presented above, including the fact that estate assets may have been misappropriated and that TH Holdco's closing on the Property appears to have been intentionally sabotaged, TH Holdco, who acquired all remaining assets of the estates, including potential causes of action, under the Confirmed Plan, hereby exercises its right to seek discovery from parties and persons who may have knowledge and/or documents related to the foregoing pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). While some of the parties named in the proposed form of order have stated that they were not involved with, and had no advance knowledge of the aforementioned issues, they may still have relevant documents and communications with Sam Rubin or others regarding the same.

18. TH Holdco has also made inquiries to the Debtors and to Greater Shield, LLC ("Greater Shield") about the Greater Shield invoices and payments by the Debtors to Greater Shield and is awaiting additional details from Greater Shield about the sizeable payments Greater Shield has received and the sizeable post-petition amounts Greater Shield claims are outstanding.

19. Attached hereto as **Exhibit B** is a model form of Interrogatories and Document Requests. TH Holdco seeks authority from this Court to serve these discovery requests on the parties identified below, some of whom are currently known to TH Holdco and others who may be identified based on additional information received. For certain parties (like the squatters), only the interrogatories and documents requests relevant to them would be served from the model form.

20. TH Holdco seeks discovery from the following persons and entities:

   i. Owners or insiders of the Debtors, including, without limitation, Sam Rubin and Lipa Rubin;

   ii. Current or former employees or independent contractors of the Debtors in 2021 or 2022;

   iii. GC Realty, LLC;

   iv. Debtors' counsel;

   v. Stage One and any persons or entities related to the staging company;

6

    vi.    Any occupants in the apartment buildings other than the two (2) tenants with signed leases previously identified by the Debtors (those two units being Units 8A and 11F);

    vii.    Greater Shield;

    viii.    Any other vendors identified to have material connections with Insiders.

## BASIS FOR RELIEF REQUESTED

21.    Bankruptcy Rule 2004(a) states that on "motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of any examination sought under Bankruptcy Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

22.    Thus, a party "may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred." *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008); *see also In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (citing *Cameron v. United States*, 231 U.S. 710, 714 (1914)).

23.    Courts routinely authorize Bankruptcy Rule 2004 discovery in order to uncover "information necessary to determine whether claims beneficial to the estates exist and whether to pursue such claims." *See In re Recoton Corp.*, 307 B.R. 751 (Bankr. S.D.N.Y 2004); *see also In re CIS Corp.*, 123 B.R. 488, 490–91 (S.D.N.Y. 1991) (acknowledging that Bankruptcy Rule 2004

may be used to examine the debtor's auditors regarding potential estate claims); *In re Table Talk, Inc.*, 51 B.R. 143, 145–46 (Bankr. Mass. 1985) (allowing Bankruptcy Rule 2004 examination sought by the trustee where one purpose was to examine potential anti-trust claims).

24. The granting of a motion under Bankruptcy Rule 2004 is within the discretion of the Court. *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination . . ."). The rule "allows considerable leeway for all manner of so-called fishing expeditions provided that there is a reasonable nexus to the debtor and the administration of the debtor's case." *In re Hilsen*, 2008 WL 2945996, at *1.

25. As noted above, Bankruptcy Rule 2004(a) provides that on "motion of any party in interest, the court may order the examination of any entity." Moreover, "[a]ny third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing *Air Line Pilots Ass'n., Int'l v. Am. Nat'l Bank & Trust Co. of Chi.* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 432 (S.D.N.Y. 1993)); *see also ePlus, Inc. v. Katz* (*In re Metiom, Inc.*), 318 B.R. 263, 268 (S.D.N.Y. 2004) (holding that Bankruptcy Rule 2004 may be employed by debtors who seek to compel discovery of information maintained by creditors or third parties where such information relates to the effective reorganization and administration of the estate).

26. Here, the actions of the Debtors' insiders, and possibly others, caused significant disruption and additional costs during TH Holdco's closing on the Property as well as extensive damage to the Property. Those actions continue to cause ongoing additional costs and losses to TH Holdco, including the incurrence of significant legal fees and further delays in getting the Property renovated and opened for business. TH Holdco is currently itemizing the total amount of damages and costs being incurred but they are substantial. That amount continues to grow. The relief requested herein is necessary so that TH Holdco may identify the party or parties responsible for these damages.

8

27. Further, it is possible that the squatters and/or unreported tenants provided rent payments to Sam Rubin and/or another of the Debtors' insiders, which were never turned over to the Debtors as required. The discovery requested in this Motion will help determine whether funds were misappropriated from the Debtors' estates.

**CONCLUSION**

**WHEREFORE,** TH Holdco seeks entry of an order in substantially the form attached as **Exhibit A** hereto (i) authorizing TH Holdco to seek discovery in accordance with the model forms attached as **Exhibit B** to this Motion pursuant to Bankruptcy Rule 2004 from each of the parties listed in paragraph 20 above and depositions thereafter; and (ii) for such other and further relief as the Court deems proper.

Dated: November 23, 2022
      New York, New York

**DENTONS US LLP**

/s/ *Lauren M. Macksoud*
Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
E-mail: lauren.macksoud@dentons.com
         sarah.schrag@dentons.com

Robert Richards (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
Email: robert.richards@dentons.com

*Counsel to TH Holdco LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, a true and correct copy of the foregoing *TH Holdco LLC's Motion to Conduct Rule 2004 Discovery and Depositions* was caused to be served via the Court's CM/ECF system on all parties authorized to receive electronic notice in these Cases and on Paul Aloe of Kudman Law (Sam Rubin's personal counsel) via email and overnight courier.

/s/ *Lauren M. Macksoud*
Lauren M. Macksoud