| | |
|---|---|
| LEECH TISHMAN ROBINSON BROG, PLLC<br>875 Third Avenue<br>New York, New York 10022<br>Fred B. Ringel, Esq.<br>Lori Schwartz, Esq.<br>Steven B. Eichel, Esq.<br>*Attorneys for the Debtors and Debtors in Possession* | <u>Hearing Date and Time:</u><br>December 1, 2022 at 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:

**85 FLATBUSH RHO MEZZ LLC,** *et al.*,[1]

                            Debtors.
---------------------------------------------------------X

Chapter 11

Case No.: 20-23280 (SHL)

(Jointly Administered)

### PRELIMINARY OBJECTION OF DEBTORS AND DEBTORS' COUNSEL TO TH HOLDCO'S MOTION TO PURSUE DISCOVERY AND DEPOSITIONS PURSUANT TO BANKRUPTCY RULE 2004

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

      Leech Tishman Robinson Brog, PLLC ("<u>LTRB</u>"), as attorneys for 85 Flatbush RHO Mezz LLC ("<u>Mezz</u>"), 85 Flatbush RHO Hotel LLC ("<u>Hotel</u>") and 85 Flatbush RHO Residential LLC ("<u>Residential</u>," and defined together with Mezz and Hotel, as "<u>Debtors</u>") and on behalf of Debtors and itself, submit this preliminary objection ("Objection") to TH Holdco's motion to pursue discovery and depositions (collectively, "Discovery Motion") pursuant to Rule 2004 of the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are 85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

1

Procedure ("Bankruptcy Rules") and the discovery sought therein ("Discovery"). In support of this Objection, the Debtors and LTRB represent:

## PRELIMINARY STATEMENT

1. Debtors and their counsel, LTRB, take seriously the matters raised by TH Holdco in the Discovery Motion. Debtors and their counsel also note that much of the Discovery Motion is targeted towards Sam Rubin, one of the Debtors' insiders, and not the Debtors. With respect to TH Holdco's assertion that the Debtors have not adequately cooperated with TH Holdco with respect to the credit bid closing on November 9, 2022 ("Closing"), Debtors disagree and submit that they and their counsel have cooperated fully, have made themselves accessible and available to TH Holdco well beyond the requirements set forth in the TH Holdco confirmed plan ("TH Holdco Plan") and the purchase and sale agreement ("PSA"), by which TH Holdco acquired the Debtors' hotel and residential property ("Property") both before and after the Closing and will continue to cooperate. Yet the Discovery sought by TH Holdco from the Debtors and LTRB in the Discovery Motion is neither warranted nor appropriate, and, if the Court determines Discovery is warranted, a 2004 is not the appropriate post-effective date mechanism by which TH Holdco should be permitted to proceed.

## BACKGROUND

2. The TH Holdco Plan was confirmed by an order entered on July 7, 2022. The TH Holdco Plan provided for TH Holdco or its designee to acquire the Debtors' Property by a credit bid transaction under the June 30, 2022 PSA between Debtors

as sellers and TH Holdco as purchaser and for TH Holdco to fund various plan payments to secured, administrative[2] and unsecured creditors under the TH Holdco Plan. Timely appeals of the confirmation order were taken by the Debtors and the Mezzanine Lender. The District Court affirmed the Bankruptcy Court's entry of the confirmation order on October 20, 2022. The Debtors afterward notified TH Holdco on October 27, 2022 that they were prepared to proceed with the Closing. Through the November 9, 2022 Closing and afterward, Debtors through their counsel have communicated regularly with TH Holdco's counsel, and in some cases with representative of TH Holdco directly, with counsel, to respond to various Closing related matters.

3. Prior to the Closing, TH Holdco moved to Enforce Debtors' Obligation to Cooperate with Credit Bid ("Motion to Enforce"). An order resolving the Motion to Enforce was entered and the Debtors continue to comply to the best of their ability with its terms.

## ARGUMENT

4. Discovery sought under Rule 2004 is generally a broad-based inquiry, often called a "fishing expedition" that under Rule 2004(a) "may relate only to the

---

[2] In accordance with the confirmed TH Holdco Plan, TH Holdco is responsible for the continued accrual of legal fees incurred by LTRB in representing the Debtors' estates in connection with this matter. Fee Applications were recently filed covering the period through and including November 20, 2022 and will be supplemented to include all additional fees and expenses incurred herein. In furtherance of the TH Holdco Plan, on November 8, 2022, Debtors' counsel provided TH Holdco with a breakdown of fees and expenses outstanding as of November 4, 2022, amounts being held in reserve for professional fees and the amount that TH Holdco was required to reserve and fund into the Estimated Professional Fee Escrow which, at that time, was $386,016.14.

acts, conduct or property or the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate…"

5. Notably, TH Holdco acknowledges in its Motion for Order Shortening Notice with respect to Motion to Pursue Discovery and Depositions Pursuant to Bankruptcy Rule 2004 that the Discovery it seeks is "regarding the various problems at the Property that have been identified <u>on or after the credit bid transaction closed and the Properties were turned over to TH Holdco</u>." (emphasis added). Clearly, matters that arose after the Closing are not matters that "may affect the administration of the debtors' estate". TH Holdco's Plan was confirmed, and later affirmed on appeal, the Closing took place, the Debtors' assets have been transferred and the TH Holdco Plan has gone effective. The parties and their rights are governed by the PSA, hence the Discovery Motion made under Rule 2004 is improper.

6. Furthermore, Bankruptcy Rule 2004 is an improper mechanism to pursue the Discovery to the extent the Discovery sought is in furtherance of the Motion to Enforce.

7. Finally, examination of LTRB, Debtors' counsel, is not justified based on the Discovery Motion and any inquiry is protected by attorney-client privilege[3].

8. The plain language of the PSA bars TH Holdco from pursuing the Discovery and the Discovery Motion as it relates to the Debtors and LTRB.

---

[3] LTRB and Debtors reserve all rights to file a motion for a protective order or to quash any subpoena that issues in the event TH Holdco is permitted to pursue the Discovery.

4

9. The PSA at Article 14 expressly provides that TH Holdco agreed to accept the Property "AS IS and WHERE IS". Specifically, Article 14 provides, in pertinent part at 14.1.1:

> Purchaser acknowledges and represents that it (a) **is a sophisticated purchaser** with experience in owning and operating real property in the nature of the Property, (b) **realizes the nature of this transaction, understands and is freely taking risks** including the risks that Purchaser may be outbid at an Auction, if any, involved in connection with this transaction, (c) **has undertaken such independent investigations and evaluations of the Property as it has determined to be necessary or desirable in connection with the transaction contemplated herein**, including the matters set forth in Section 14.1.2 below, and (d) acknowledges that the foregoing is reflected in the Purchase price and the terms upon which Purchaser is willing to purchase and Seller is willing to sell.
>
> [emphasis added]

10. The PSA further provides at 14.1.2 that:

> **Purchaser agrees to accept the Property AS IS AND WHERE IS, in its condition on the date hereof** (subject to reasonable wear and tear and natural deterioration between the date hereof and the Closing Date). Purchaser acknowledges, represents and warrants that (i) **Purchaser has had ample opportunity to make an independent investigation and examination of the Property (and all matters of every nature related thereto),** and to become fully familiar with the physical condition, state of title, compliance with Law and environmental conditions of the Property, (ii) Purchaser inspected, examined, investigated and sampled the Property to its satisfaction and is familiar with the physical conditions, state of title, compliance with Law and environmental conditions of the Property and uses thereof and will rely on that inspection, examination, investigation and sampling, (iii) Purchaser has inspected, examined and investigated to its satisfaction all laws, ordinances, and governmental rules and regulations relating thereto and is purchasing the Property subject to any Violations thereof, (iv) Purchaser has inspected and examined to its satisfaction all licenses and permits relating to the facility, including but not limited to environmental and operational permits, and it agrees to be bound by the terms of those licenses and permits and/or will ensure that it obtains new or additional licenses and permits to fully comply with all applicable governmental rules and regulations, (v) Purchaser has independently investigated, analyzed and appraised the value and the

profitability of the Property, (vi) Purchaser has independently investigated the tenant files made available for review by Purchaser and all other due diligence documents delivered to Purchaser by Seller, (vii) Purchaser has independently investigated and evaluated all matters of a financial nature relating to the Property, and (viii) Purchaser has been in possession of the Property and has been managing same, and (ix) Seller has not made and shall not make any verbal or written representations, warranties or statements of any nature or kind whatsoever to Purchaser, whether express or implied, except as expressly set forth in this Agreement, with respect to the above, and, in particular, except as expressly set forth herein, **no representations or warranties have been made or shall be made with respect to (a) the physical condition or operation of the Property,** including the existence of any environmental hazards or conditions thereon (including the presence of asbestos containing materials or the release or threatened release of Hazardous Materials), (b) the revenues or expenses of the Property, (c) the zoning and other laws applicable to the Property or the compliance of the Property therewith, (d) the status of any approvals required for the development of the Property, (e) the nature and extent of any matter affecting title to the Property or to any Personalty, (f) the quantity, quality, or condition of the Personalty, or (g) any other matter or thing affecting or relating to the Property, or any portion thereof, the interests therein to be conveyed to Purchaser pursuant to the terms of the transactions contemplated hereby or the status thereof. **Purchaser has had the opportunity to inspect the Property and will rely on that inspection and its other investigations and evaluations of the Property**.

[emphasis added]

11. The PSA also includes a provision at Section 14.2 that provides that:

Purchaser's acceptance of the Deed(s) and the other Closing Documents shall be and be deemed to be an acknowledgment by Purchaser that Seller has fully performed, discharged and complied with all of Seller's obligations, covenants and agreements hereunder to be performed prior to Closing and that Seller shall have no further liability with respect thereto.

12. Based on the provisions of the PSA alone, TH Holdco is not entitled to the Discovery it seeks against the Debtors and LTRB. Upon the Closing, the Debtors fulfilled their obligations to Purchaser. Even though the PSA does not require the Debtors to assist TH Holdco with any post-Closing matters, Debtors have continued

6

to do so in accordance with this Court's orders. However, TH Holdco fails to acknowledge the specific terms of the PSA by which they acquired the Property, as is and where is, at the Closing, based on their own investigation and due diligence prior to the Closing. There is no evidence in the Discovery Motion to show that TH Holdco performed any onsite inspection of the subject Property in advance of the November 9, 2022 multi-million dollar closing other than when they executed the PSA. Rather than requesting a pre-Closing walk through, TH Holdco appeared on site on the morning of November 9, 2022. When TH Holdco notified the Debtors of certain issues at the residential property, they did not acknowledge any pre-closing inspection that would have uncovered the various matters identified in the Discovery Motion. Nor did TH Holdco seek to delay the Closing despite participating in an emergency hearing before this Court on the afternoon of November 9, 2022.

13. Before the Closing, TH Holdco did not seek to enter into a transition services agreement with the Debtors or any of their employees to facilitate and ensure a smooth handover of the Property. Instead, after the Closing TH Holdco sought information from Debtors' key employees and then fired those key employees, eliminating any opportunity to obtain their assistance in promoting and facilitating a smooth transition of ownership.

14. Now, after the Closing, TH Holdco seeks the Discovery when they had every opportunity to inspect the Property in advance of the Closing, entered into the PSA acknowledging they fully inspected the Property and agreed to acquire title to

7

4884-0596-7936, v. 3

the Property as is and where is.    This Court has the discretion to deny or limit the Discovery requested and in this case should deny the Discovery requested from the Debtors and LTRB.

15. TH Holdco acquired the subject property, as is and where is, and their rights are now governed by the PSA.  TH Holdco is no longer a creditor as its credit bid paid for the acquisition of the Property and was exchanged for ownership of the Property and any other items set forth in the PSA.  To the extent TH Holdco believes it has claims it may pursue under the PSA, it is free to bring those claims in an appropriate adversary proceeding and seek targeted discovery in connection with that proceeding.

16. To the extent that the Discovery sought by TH Holdco is in furtherance of its Motion to Enforce, discovery pursuant to Bankruptcy Rule 2004 is not the appropriate procedure.  To the extent the Court determines TH Holdco is entitled to any form of discovery, whether governed by Bankruptcy Rule 2004 or discovery pursuant to the Federal Rules of Civil Procedure, any such discovery should not be sought from Debtors' counsel as (a) the 2004 application does not articulate a specific need to depose LTRB, (b) LTRB does not have first-hand knowledge of the issues and documents sought, (c) TH Holdco has not already completed its discovery against those with first-hand knowledge of the information sought, and (d) deposing counsel runs a high risk of encountering issues that are protected by the attorney-client privilege or work-product doctrine.  Rather, the Discovery should be limited to

4884-0596-7936, v. 3

GC Realty LLC ("GCRE"), the Debtors' manager, if it seeks Discovery that is not subject to any type of privilege.

17. Debtors have and continue to cooperate with TH Holdco and have substantially complied with their obligations to cooperate with the closing despite TH Holdco's claims to the contrary and despite TH Holdco having agreed under the PSA to accept the Property "as-is and where is". Since the Closing, Debtors, through counsel, have participated in numerous calls and emails with TH Holdco's counsel as well as with new hotel management, facilitated conversations and communications with former employees of the hotel to acquire information, arranged for the former bookkeeper to be onsite at the hotel after the Closing to assist with the transition (after which the bookkeeper was terminated), turned over updated financial information, wrote introduction letters to various vendors to assist TH Holdco with obtaining access to information not otherwise available to the Debtors and offered its assistance and assurance it would continue to provide information if and when it became available to the Debtors. In return for these efforts, TH Holdco now seeks discovery from the Debtors and LTRB, and makes serious and troubling assertions including that one of the Debtors' insiders, intentionally sabotaged the Closing.

18. Debtors did not misappropriate any estate assets and the Debtors' bank statements and monthly operating reports are items of public records filed on the ECF docket in these cases. Additional financial information, including banking

9

activity in the DIP accounts after the Closing has been and will continue to be provided to TH Holdco.

19. With regard to the allegations of squatters and other individuals at the residential property on the Closing date, as set forth in the declarations of David Goldwasser and Brian Dulitz, Debtors had no knowledge of any individuals on site or being permitted to be onsite, other than the tenants who are residing at the premises pursuant month to month leases.  It is also important to note that the PSA at 7.4 provides that representations and warranties made by Seller are based upon actual knowledge, not implied, imputed or constructive knowledge.  Neither Debtors nor LTRB have any such knowledge and TH Holdco should be precluded from pursuing the Discovery from Debtors related to these issues

20. Debtors did nothing to compromise the Closing and, after they lost the appeal of the confirmation order, Debtors proceeded expeditiously to turnover any closing deliverables and signed the closing documents on November 7, 2022.  In fact, evidencing Debtors' efforts to facilitate and cooperate with the Closing, the closing documents were signed and delivered to the title company on November 8, 2022, prior to the expiration of the automatic stay of the District Court's decision affirming entry of the confirmation order.  TH Holdco recognized this and added a specific provision in the order with respect to the Motion to Enforce to ensure that the closing documents were valid, binding and effective despite their being signed during the stay period.   After the Closing, there have been ongoing communications between Debtors and TH Holdco with Debtors using their best efforts to facilitate

and resolve many of the issues raised by TH Holdco. For TH Holdco to continuously claim that Debtors were not and are not cooperating with the Closing is simply incongruous at this juncture. Based on these facts and the argument set forth below, the Discovery Motion as against the Debtors and LTRB should be denied.

21. A court may limit discovery "for good cause" and may make an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense…." Fed R. Civ. P. 26(c)(1).

22. TH Holdco seeks Discovery from a number of person and entities including Debtors' counsel, LTRB. However, in the Second Circuit, "depositions of opposing counsel are disfavored…." *Johnson v. City of New York*, 2018 U.S. Dist. LEXIS 215735, at * 4 (E.D.N.Y. Dec 21, 2018) (citing *United States v. Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir. 1991)*. "[T]he request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." *Id.* (citing *Madanes v. Madanes, 199 F.R.D. 135, 151 (S.D.N.Y. 2001))*. "The rationale behind the presumption against such discovery is that 'even a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." *Id.* at * 4-5 (citations omitted).

23. "In determining whether a deposition of opposing counsel is appropriate in a given case, district courts in New York are generally guided by dicta contained

11

in the Second Circuit's opinion in *In re Friedman*, 350 F.3d 65 (2d Cir. 2003)."[4] *Id.* at *5 (citing *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y 2007)).

24. In *Friedman*, the Second Circuit stated that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72. "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.* "These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition." *Id.* According to the Second Circuit, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." *Id.* It is within the *Friedman* framework that the Court should address the Rule 2004 Motion and the request for Discovery from LTRB.

25. The first factor to be considered is the necessity of deposing opposing counsel. Johnson, 2018 U.S. Dist. LEXIS at *6; *Valvetech, Inc. v. Aerojet*

---

[4] Although Courts refer to the case as *In re Friedman*, the case is styled: *Official Comm. Of Unsecured Creditors of Hechinger Inv. Co. of Del. Inc. v Friedman (In re Subpoena Issued to Dennis Freidman)*, 350 F.3d 65 (2d Cir. 2003).

*Rocketdyne, Inc.* 2021 U.S. Dist. LEXIS 30219, at * 8 (W.D.N.Y. Feb 18, 2021). The first factor weighs in favor of LTRB because TH Holdco fails to articulate a specific need to depose LTRB, and there is no argument that Debtors' counsel is the only source of information to answer its questions related to alleged damage to the purchased Property.

26. The second factor "focuses on the role of the lawyer from whom discovery is sought both in the litigation in question and in relation to the subjects on which disclosure is sought." *Johnson*, 2018 U.S. Dist. LEXIS at * 8 (citation omitted). "The underlying rationale 'is that depositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case.'" *Id.* (citations omitted). "The first of these two 'considerations bears on the extent to which discovery would disrupt the litigation by injecting one of the lawyers charged with its conduct into the case as a witness or by making the advocate's conduct or knowledge an issue in the proceeding.'" *Id.* (citations omitted). "The second consideration 'goes at least in part to the issue whether the lawyer is likely to have first-hand evidence that is important to the resolution of the lawsuit.'" *Id.* (citation omitted).

27. As to the first consideration, Debtor's counsel has one main lawyer representing the Debtor and thus taking discovery would be disruptive. As to the second consideration, neither Ms. Schwartz, nor any other counsel at LTRB, has any first-hand independent knowledge of the issues that were raised in the Discovery Motion. As TH Holdco has not sought until now any discovery against

13

any of the parties that may have information and or documentation requested by it, it is not reasonable to take discovery of counsel.

28. "The third factor requires consideration of whether deposing opposing counsel would present a risk of encountering issues that are protected by the attorney-client privilege or the work-product doctrine." As all or substantially all of counsels' communications were with the Debtor and its management, GCRE, there is very high probability that documents requested from counsel would be subject to privilege. Thus, this factor weighs in favor of LTRB and the Debtors.

29. The fourth and final factor is the extent to which discovery has already been conducted. This factor weighs in favor of LTRB and the Debtors because TH Holdco has not previously sought discovery from parties with first-hand knowledge, but is conducting all of its discovery simultaneously.

30. Balancing all of the *Friedman* factors, the Court should deny discovery against LTRB, at least until it has completed discovery from all the other parties, and if it seeks additional discovery then, it should make another motion under the appropriate Bankruptcy Rule to obtain the specific discovery that it requires from LTRB.

31. With respect to Discovery sought against GCRE, the Debtor and LTRB object to the extent that it seeks privileged information.

## CONCLUSION

32. While this Court retains jurisdiction to "adjudicate any dispute related to the Sale Transaction" (see, TH Holdco Plan, Section 12(f)), the Discovery Motion

14

4884-0596-7936, v. 3

should be denied as TH Holdco is bound by the PSA, TH Holdco should have and could have done its due diligence before the Closing or delayed the Closing and the Debtors continue to cooperate to the extent required with post- Closing deliverables and other items. Discovery under Bankruptcy Rule is procedurally improper and Discovery from the Debtors and LTRB is not warranted.

WHEREFORE, Debtors request that the Discovery Motion be denied in its entirety and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 30, 2022

**LEECH TISHMAN ROBINSON BROG PLLC**
Counsel for the Debtors
875 Third Avenue
New York, New York 10022
(212) 603-6300

By: /s/ Lori A. Schwartz
    Lori A. Schwartz
    Fred B. Ringel
    Steven B. Eichel

4884-0596-7936, v. 3