Hearing Date:  January 11, 2023, at 2:00 p.m. (prevailing Eastern Time)

Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  lauren.macksoud@dentons.com
           sarah.schrag@dentons.com

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
Email:  robert.richards@dentons.com

*Counsel to TH Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>  85 FLATBUSH RHO MEZZ LLC, et al.,[1]<br><br>Debtors | Case No. 20-23280 (SHL)<br>Chapter 11<br><br><br>(Jointly Administered) |

### TH HOLDCO LLC'S REPLY TO MEZZANINE LENDER'S
### MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF
### <u>TH HOLDCO LLC TO MAKE A CLAIM AGAINST APPEAL BOND NO. 800131886</u>

TH Holdco LLC ("TH Holdco") files this reply (the "Reply") in further support of its

---

[1] The Debtors (as defined) in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  85 Flatbush RHO Mezz LLC (6184); 85 Flatbush RHO Hotel LLC (5027); and 85 Flatbush RHO Residential LLC (2261).

US_ACTIVE\122970062\V-5

motion [Docket No. 370] (the "Motion") to make a claim against the $5 million Appeal Bond,[2] and in response to the *Mezzanine Lender's Memorandum Of Law In Opposition To The Motion Of TH Holdco LLC To Make A Claim Against Appeal Bond No. 800131886* [Docket No. 383] (the "Opposition"). In support of this Reply, TH Holdco states as follows:

## PRELIMINARY STATEMENT

This Court has already acknowledged that TH Holdco would incur damages as a result of the stay. At the August 3, 2022 hearing on the Motion for a Stay Pending Appeal, this Court recognized that many of the harms identified by Mr. Famularo in his August 1, 2022 declaration, including lost revenue, lost profits (due to the apartments remaining vacant and relating to the hotel), interest accruing on the existing debt, the cost of keeping the case open, and the postpetition taxes and related interest, "are fairly easy to embrace". August 3 Hrg. Tr. at 64:5-9. The supplemental Famularo Declaration filed in support of this Motion [Docket No. 371] describes in detail and provides evidentiary support for all of the costs and damages incurred by TH Holdco as a result of the stay. The Mezzanine Lender has filed no declaration or evidence of any kind to challenge the claims and amounts set forth in the Famularo Declaration despite knowing the categories of harms asserted by TH Holdco in various declarations since the original stay hearing in early August 2022.

The Mezzanine Lender correctly cites to *Matter of Theatre Holding Corp.* for the proposition that damages are compensable from a supersedeas bond where such damages are the natural and proximate result of the stay. They also cite *In re Adelphia Commc'ns Corp.*, which stands for the proposition that the posting of a bond guarantees the costs of delay incident to the appeal. 361 B.R. 350 (S.D.N.Y. 2007). Yet the Mezzanine Lender goes on to argue that almost

---

[2] Capitalized terms used in this Reply and not otherwise defined herein shall have the meaning ascribed to them in the Motion.

none of the damages articulated in the Famularo Declaration rise to that level. The Mezzanine Lender's view on covered damages is far too narrow, and is not supported by the views of this Court already expressed on the record, or by relevant case law.

Courts have found that the purpose of a supersedeas bond is to protect the prevailing party from *any loss* that may result from an ineffectual appeal. *In re Adelphia Commc'ns Corp.*, 361 B.R. at 350[3] (emphasis added) (citing *In re Sphere Holding Corp.*, 162 B.R. 639, 644 (Bankr. E.D.N.Y. 1994) (quoting 9 Collier on Bankruptcy ¶ 8005.07[2])); *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n. 1 (9th Cir. 1987). This applies regardless of whether the harm is caused by the Debtors, the Mezzanine Lender, or just the delays resulting from the stay. *See generally, In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (citing *Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau*, 702 F.Supp. 60, 65 (S.D.N.Y. 1988), *vacated on other grounds*, 924 F.2d 1237 (2d Cir. 1991)) ("An appeal bond provides a 'guarantee that the appellee can recover from the appellant the damages caused *by the delay* incident to the appeal.'" (emphasis added)).

The Appeal Bond at issue here expressly provides that the surety will pay TH Holdco for "damages and costs not exceeding the sum of [$5 million] as they may sustain by reason of the Stay . . . such damages and costs to be ascertained by a reference, or otherwise as the Court shall direct." *See* Famularo Declaration, Exhibit E. Given the broad language of the Appeal Bond itself, the relevant case law, and the Famularo Declaration, the Mezzanine Lender has not established a legal or factual basis on which to challenge TH Holdco's claim for damages. TH Holdco has established that it has incurred damages far in excess of the $5 million Appeal Bond,

---

[3] Contrary to the Mezzanine Lender's citation to *Adelphia* for the proposition that a "proof hearing" is necessary (Opposition at 7), nowhere in *Adelphia* does it say a proof hearing is required to determine actual damages. Rather, *Adelphia* simply states that appellees must prove the damages they are owed – which TH Holdco has sufficiently done here.

3

and, as such, the proceeds of the Appeal Bond should be turned over to TH Holdco immediately.

The Mezzanine Lender also argues that discovery is needed before TH Holdco can be awarded damages on the Appeal Bond. But that is not so. The issue of whether TH Holdco is entitled to damages under several of the categories addressed in the Famularo Declaration can be decided by this Court as a matter of law, and without the need for discovery. Those categories include TH Holdco's right to postpetition interest under that certain Consolidated, Amended and Restated Note dated September 19, 2019 (the "Mortgage Note") totaling $5,645,000 (*see* Famularo Declaration, Exhibit G), its right to recoup attorneys' fees (totaling $631,056.15), and its right to recover damages for real estate interest and penalties (which the Mezzanine Lender has already acknowledged totaling at least $86,400[4]).

The damages sustained by TH Holdco in these categories total $6,362,456.15, and exceed the full amount of the Appeal Bond. If the Court finds those damages are less than $5 million, however, a focused and expedited discovery schedule can be set, and an evidentiary hearing can be held on the additional claims for lost profits from the apartments and hotel, and the additional damage to the property during the 96-day[5] Stay Period.

The Mezzanine Lender has waged an unending, baseless, and expensive campaign to hinder and delay the rights of TH Holdco in these Chapter 11 cases. Indeed, the Mezzanine Lender has violated the Intercreditor Agreement (*see* Case No. 22-07022 [Docket No. 16]) (the

---

[4] The Mezzanine Lender concedes $81,000 (Opposition at 18) based on an erroneous 90-day stay; however, for the reasons stated in this Reply, the calculation is appropriately measured as 96 days.

[5] The Mezzanine Lender inexplicably misstates the relevant period of time of the stay pending appeal, claiming it was only 90 days, presumably based on the actual date of entry of the Stay Order on August 11, 2022, rather than the date the Court made its oral ruling on August 3, 2022. *See e.g.*, Opposition at 2, 7, 8, and 11. The correct calculation of the stay period is no less than 96 days (from August 3, 2022 until November 7, 2022, the "Stay Period"). *See* August 3 Hrg. Tr. at 65:7-8 and 67:10-11. There is no question that TH Holdco was not free to close on its credit bid at any point between the Court's oral ruling on August 3, 2022 and the entry of the Order on August 11, 2022 or thereafter until the close of business on November 7, 2022, when the stay terminated.

"ICA") on many occasions in what appears to be a scheme to extort settlement value from a case in which it is otherwise out-of-the-money. As described further below, the Mezzanine Lender's challenge of TH Holdco's right to postpetition interest is yet another impermissible violation of the ICA, and the argument should not be considered.

As the Court found at the August 3, 2022 hearing, "the record does reflect that there is harm to TH Holdco and the estate that will . . . exist from the stay." August 3 Hrg. Tr. at 63:18-20. At bottom, had the Court not granted the Stay Motion, TH Holdco would have closed on the Property 96 days sooner than it did, and it would not have sustained the damages set forth in the Famularo Declaration. Therefore, as a matter of law (and thus wholly independent of further discovery), this Court can find that TH Holdco has sustained damages totaling no less than $6,362,456.15, and as a result, the immediate award of damages in the full amount of the $5 million Appeal Bond is warranted here.

## **REPLY**

1.    The law of this case, the law of courts in this district, and equity demands that the Appeal Bond, which was required by this Court to protect TH Holdco from the "harms that have been identified"[6] during the pendency of the Appeals, be charged for any and all established damages and costs incurred by TH Holdco. The Famularo Declaration provides the support necessary for this Court to grant TH Holdco's Motion and award it the full $5 million Appeal Bond without the need for discovery. The Mezzanine Lender's Opposition is littered with nothing but red herrings and misstatements of the law, and provides no competent evidence in the form of a counter declaration in support of the arguments presented.

---

[6] *See* August 3 Hrg. Tr. at 65:14.

5

**A.   TH Holdco is Entitled to Recover from the Bond Postpetition Interest at the Default Rate**

2.   The Mezzanine Lender attempts to combat TH Holdco's right to postpetition interest in several ways. The Mezzanine Lender argues TH Holdco is an undersecured creditor whose claim stopped running when the Chapter 11 Plan was confirmed and that case law precludes TH Holdco from recovering interest on the Mortgage Note under the Appeal Bond. Each of these arguments fail.

3.   First, the argument that TH Holdco's claim for ongoing interest stopped running when it submitted its credit bid is flat out wrong and is entirely unsupported by existing case law or the law of these cases. Indeed, the Mezzanine Lender cites no support for this argument. If the Mezzanine Lender and Debtors had prevailed in their Appeals, TH Holdco would have been entitled, under *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012), to assert its full claim amount as of any subsequent plan confirmation or sale hearing and would not have been limited to its claim as of June 30, 2022.

4.   Second, the Mezzanine Lender incorrectly asserts that TH Holdco is undersecured and not entitled to postpetition interest. Here, the Mezzanine Lender yet again collaterally attacks Judge Drain's finding, and Supreme Court precedent, that the Property was worth at least the amount of TH Holdco's credit bid, including postpetition default interest.

5.   At the June 30, 2022 Confirmation Hearing, Judge Drain, citing *RadLAX*, repeatedly found TH Holdco entitled to postpetition interest. Judge Drain found that TH Holdco "own[s] a claim that is in the dollar amount of X and they have the right to bid that full claim, including post-petition interest." *See* June 30 Hrg. Tr. at 63:21-24; *see also id.* at 64-65 (rejecting Debtors' argument that credit bid is "subject to the value of the collateral" and finding TH Holdco entitled to postpetition interest); *In re 85 Flatbush RHO Mezz LLC*, No. 22-CV-6233

6

(CS), 2022 WL 11820407, at *16 and n.18 (S.D.N.Y. Oct. 20, 2022) (quoting the Bankruptcy Court's statements at the June 30, 2022 Confirmation Hearing and confirming it is consistent with *RadLax*); *RadLAX,* 566 U.S. at 641 ("the creditor may credit-bid at the sale, up to the amount of its claim" and "purchase the collateral for what *it* considers the fair market price" (emphasis added)); *In re: Aéropostale, Inc.*, 555 B.R. 369, 414-16 (Bankr. S.D.N.Y. 2016) (credit bidding "provides a safeguard for secured creditors, by insuring against the undervaluation of their collateral *at* an asset sale") (emphasis added)). Judge Drain squarely rejected any argument to the contrary.

6.    Indeed, the record of these cases definitively reflects a finding by this Court that TH Holdco was oversecured. In June of 2022, Daryl Hagler submitted a declaration wherein he offered $96,775,000 to fund an equity investment for ownership of a *portion* of the mezzanine entity that indirectly owned the Property. *See* Hagler Declaration [Docket No. 231]. At the June 30, 2022 Confirmation Hearing, the Court identified Mr. Hagler's offer as tantamount to a valuation of the Property. *See* June 30 Hrg. Tr. at 61:3-62:25 (wherein Judge Drain finds the proffered appraisal "ludicrous" when Mr. Hagler is simultaneously willing to bid $96,775,000 for the Property). TH Holdco's winning credit bid and additional cash consideration for the Property totaled at least $94 million. *See* Plan at Section 1.83 [Docket No. 211]. Therefore, the record reflects a finding by this Court under § 506(a) of the Bankruptcy Code that TH Holdco is oversecured, and entitled to postpetition interest, fees, and costs under § 506(b). This finding is supported by the March 2021 Cash Collateral Order (which is also binding law of the case), wherein the Court already accepted a calculation of the secured lender's claim to include postpetition interest at the default rate (*see* Docket No. 64). Accordingly, TH Holdco's claim for postpetition interest at the default rate is valid, as has already been recognized by this Court, and

affirmed on appeal by the District Court. *In re 85 Flatbush RHO Mezz LLC*, 2022 WL 11820407 at *16.

7.     The Mezzanine Lender erroneously cites to *Omaha Hotel Co. v. Kountze*, 107 U.S. 378, 391 (1883), for the proposition that this Court cannot award damages for accrued interest. However, *Kountze* is wholly inapplicable here as any holding that interest *generally* could not be awarded (it is not entirely clear from the case that the Supreme Court even made such a holding) was premised on Rev.St.U.S. § 1000, 28 U.S.C.A. § 869, which was repealed in 1948, and indeed has no discernable link to Bankruptcy Rule 8007. Moreover, other cases have found that accrued interest can be recovered.

8.     For instance, *Eng. v. Leach* involved an action on a supersedeas bond given on appeal from a decree of foreclosure of a trust deed which secured several holders of promissory notes. Similar to the Appeal Bond, the bond in *Leach* was conditioned to pay "all damages and costs." The *Leach* court found that since the appeal caused the noteholders to suffer damages, at least by delaying the payment or part payment of the amount due to them under the foreclosure decree, the noteholders were entitled to recover on the bond legal interest on the amount of the net proceeds of the sale payable to the respective noteholders for the period of the delay. *See Eng. v. Leach*, 258 Ill. App. 383, 385 (Ill. App. Ct. 1930). The *Leach* case, therefore, is factually analogous to the case at bar and supports TH Holdco's claim for payment of accrued interest on the Mortgage Note.

9.     As noted above, the Mezzanine Lender's arguments challenging the status and amount of TH Holdco's claim are yet another violation of the ICA and should not be entertained. The ICA provides that:

> the Mezzanine Lender shall not challenge (or join in another party's challenge to) the validity or amount of any claim submitted in such

8

> Proceeding by Senior Lender in good faith or any valuations of the Premises or any other Senior Loan collateral submitted by Senior Lender in good faith in such Proceeding, or take any other action in such Proceeding which is adverse to Senior Lender's enforcement of its claim or receipt of adequate protection (as that term is defined in the Bankruptcy Code).

See ICA § 9(d)(iv). Accordingly, the Mezzanine Lender's is contractually barred from challenging TH Holdco's right to postpetition interest.

10. A ruling on this single issue would obviate the need for discovery or for the Court to rule on any other category of damage presented in the Famularo Declaration. As a matter of law, this Court can, and should once again, find that TH Holdco is entitled to postpetition interest on its claim, and award such damages under the Appeal Bond.

### B.    TH Holdco is Entitled to Recover Attorneys' Fees from the Appeal Bond

11. The Mezzanine Lender asserts that TH Holdco cannot recover attorneys' fees from the Appeal Bond with a red herring argument on the prevailing parties theory. However, the Mezzanine Lender and the Debtors both conceded in their motions for a stay pending appeal that their Appeals would have been mooted if no stay were granted. August 3 Hrg. Tr. at 7:10-13; id. at 11:11-15; id. at 25:4-6; id. at 32:5-10; id. at 33:7-12; id. at 34:5-12; id. at 35:2-9. In other words, had the Court not ordered the stay pending appeals, TH Holdco would have closed on its credit bid in early August, then immediately would have filed a motion to dismiss the Appeals as moot (which would have been granted). Therefore, TH Holdco's attorneys' fees are the natural and proximate result of the imposition of the stay as, but for the continued Appeals and the granting of the Stay Motion, TH Holdco would not have incurred such fees during the period of August 3, 2022 through November 9, 2022.[7] The fact that TH Holdco also was the

---

[7] It should also be noted that the Appeals and the stay pending appeal made things considerably more complicated and expensive vis-à-vis the title company, further adding to TH Holdco's attorneys' fees.

prevailing party on the Appeals is irrelevant to the analysis.

12. Further, in its Opposition, the Mezzanine Lender cites *Adsani v. Miller*, 139 F.3d 67, 70, n. 2 (2d Cir. 1998), for the proposition that the Appeal Bond "does not cover the legal expense of litigating the appeal" because it is a supersedeas bond, not a costs bond, and more specifically, that TH Holdco cannot be awarded attorneys' fees because "TH Holdco provides no basis – statutory, contractual or otherwise – for and cites no authority to support its contention that it is entitled to legal fees incurred in defending the appeals." Opposition at 6; *see also id.* at 15. However, this proposition fails as it misconstrues the law, as well as the facts and holding of the *Adsani* case. It also fails to consider the argument above, and that a contractual basis for an award of attorneys' fees exists in both the ICA and the Mortgage Note.

13. First, the Second Circuit in *Adsani* affirmed the trial court's decision to award attorneys' fees. The *Adsani* court found that the "[i]nclusion of attorney's fees in a Rule 7 bond does not offend Rule 39 any more than inclusion of any other costs does." Federal Rule of Bankruptcy Procedure 8021 is derived from Federal Rule of Appellate Procedure 39. The *Adsani* court held that Rule 39 does not actually define costs at all, and merely concerns a procedure for taxing costs. *Adsani* at 74-75 ("Rule 39 provides only that (unless the court orders otherwise) costs on appeal go to the winner, and that certain procedures be followed in the taxing of these costs.").

14. Further, where an underlying, private agreement provides for fee-shifting to the prevailing party, such attorneys' fees are properly included as "costs" covered by a bond. Courts have interpreted "costs" provided for in an appeal bond to include attorneys' fees that the losing party would be obligated to pay to the prevailing party, if the underlying agreement provides for the same. *See Valentini v. Citigroup, Inc.*, No. 11 CIV. 1355 JMF, 2014 WL 502066, at *3

(S.D.N.Y. Feb. 7, 2014) (where "a private contractual agreement would require an appealing party to pay attorney's fees for the appeal, a bond covering likely attorney's fees is appropriate."); *Korrey v. Ferguson*, No. 1:10-CV-755, 2013 WL 12250350, at *3-4 (W.D. Mich. Jan. 7, 2013) (holding appeal bond could include attorneys' fees as "costs" where underlying settlement agreement contained a prevailing party clause).

15. Here, the ICA and the Mortgage Note expressly require payment of TH Holdco's legal fees and expenses incurred in enforcing the terms of the ICA and Mortgage Note. *See* ICA at § 30(a);[8] Mortgage Note at § 14.[9] The legal fees incurred by TH Holdco during the Stay Period squarely fall within those provisions. As such, TH Holdco is entitled to its attorneys' fees as a matter of contract, and it is appropriate for this Court to order payment of such fees from Appeal Bond.

16. Lastly, § 506(b)[10] of the Bankruptcy Code expressly provides that a creditor such as TH Holdco can recover "interest on such claim, and any reasonable fees, costs, or charges

---

[8] ICA Section 30(a):

> To the extent not paid by Borrower or out of or from any collateral securing the Senior Loan which is realized by Senior Lender, Mezzanine Lender agrees upon demand to pay to Senior Lender the amount of any and all reasonable expenses, including the reasonable out-of-pocket fees and expenses of its counsel and of any experts or agents, which Senior Lender may incur in connection with the (i) exercise or enforcement of any of the rights of Senior Lender against Mezzanine Lender hereunder to the extent that Senior Lender is the prevailing party in any dispute with respect thereto, or (ii) failure by Mezzanine Lender to perform or observe any of the provisions hereof.

[9] Mortgage Note Section 14:

> Maker agrees to pay all costs and expenses of collection incurred by Payee, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Payee of its rights or remedies hereunder or under the Mortgage and/or the Other Security Documents or the protection of or realization of collateral or in connection with any of Payee's collection efforts whether or not any action or proceeding on this Note, on the Mortgage and/or Other Security Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest (if, following an Event of Default, at the Default Rate) thereon and being secured by the Mortgage and the Other Security Documents.

[10] Section 506 is one of the substantive statutes cited in both Appeals. *See* Case No. 7:22-cv-06233-CS, Docket No. 8 at 7; Case No. 7:22-cv-06241-CS, Docket No. 9 at 55.

11

provided for under the agreement or State statute under which such claim arose." Since this issue, along with the others addressed above on TH Holdco's entitlement to recover attorneys' fees as damages under the Appeal Bond, can be determined as a matter of law, this Court can and should award TH Holdco damages in the amount of $631,056.15 now, as established in the Famularo Declaration.

### C. TH Holdco is Entitled to Recover Interest And Penalties On Past Due Real Estate Taxes from the Appeal Bond

17. During the Stay Period, the real estate taxes remained outstanding, with additional taxes, interest, and penalties accruing. The Mezzanine Lender speciously argues that TH Holdco should have made a protective advance and paid these taxes prior to actually taking possession of the Property. (Opposition at 17). However, not only was there was no obligation for TH Holdco to do so,[11] but no commercial party would have paid taxes on a property that it did not own since the very purpose of the Appeals was to prevent TH Holdco from taking ownership of the Property. At minimum, no less than the $86,400 in interest that accrued on the unpaid real estate taxes during the Stay Period should be awarded to TH Holdco. The Mezzanine Lender acknowledges as much.

### D. TH Holdco is Entitled to Recover Lost Residential and Hotel Revenues and Profits from the Appeal Bond

18. TH Holdco's ownership of the Property was delayed because of the stay. There is no debating that the stay shortened TH Holdco's ability to realize profits from its collateral by 96 days. The dollar amounts set forth in the Famularo Declaration are a representative sample of the revenue that TH Holdco could have achieved during 96 days of operation of the Property. Under the relevant case law, the Appeal Bond covers "any loss that might be sustained as a result

---

[11] If TH Holdco had paid the real estate taxes through a protective advance, its loan balance would have increased in a corresponding amount plus additional default interest in the amount of at least $96,000.

of an ineffectual appeal"[12] and damages that are shown to be "the natural and proximate result of the stay."[13] Therefore, TH Holdco's damages for lost profits of at least $4.1 million are recoverable under the Appeal Bond. The Mezzanine Lender has offered no factual support for its argument to the contrary and does not dispute that the hotel and residential properties would have been profitable.[14]

19.     With respect to the residential property, the Famularo Declaration provides adequate evidence of rental prices and occupancy rates at comparable apartments in the Brooklyn market.[15] TH Holdco should be awarded the full amount of $875,000 requested as damages for lost revenue on its delayed ownership of the 64 residential units, which were primarily empty and could have immediately been rented at a market rate following closing.

20.     The Famularo Declaration also establishes damages incurred by TH Holdco as a result of its delayed ownership and operation of the hotel property. Again, the Famularo Declaration provides adequate evidence of hotel revenues and occupancy rates for comparable properties in Brooklyn. TH Holdco has shown with detailed market data in multiple declarations that the hotel rental rate would have been significantly higher than the $120/hotel room being

---

[12] *In re Adelphia*, 361 B.R. at 350.

[13] *Theatre Holding Corp.*, 22 B.R. at 885-86.

[14] The Mezzanine Lender's argument that TH Holdco must obtain an operating permit (Opposition at 12, n.5) is inaccurate. Operating a hotel at this location is an as-of-right permitted use under applicable zoning laws. No hotel operating license is otherwise required.

[15] The Mezzanine Lender relies on the standard for breach of contract for lost profits, which may or may not apply to recoveries from an appeal bond. *See* Opposition at 12-13. While it is true that a "stricter standard" is imposed for new businesses in New York, the test (if even applicable) for breach of contract for lost profits is the same for established and new businesses, "i.e., whether future profits can be calculated with reasonable certainty." *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 404 (1993) (finding defendant met burden of establishing lost profits, where "while the parties were launching a new investment strategy, they were not entering a new or unfamiliar business" and "had been a substantial presence in the financial management field for several years"). The Famularo Declaration establishes that TH Holdco/Ohana is a sophisticated and nationally-recognized operator of hotels and real estate properties.

charged to Exodus.  *See* Famularo Declaration ¶ 9(b).

21.   If the Court does not find damages as a matter of law in excess of the $5 million Appeal Bond based on postpetition interest, attorneys' fees, and interest and penalties on the real estate taxes, and if the Court is unsatisfied with the evidence currently in the record to establish damages for lost revenues and profits, then TH Holdco is amenable to limited discovery to further establish damages on this issue so that an evidentiary hearing can be held no later than March, 2023.

### E.   TH Holdco is Entitled to Recover Additional Repair And Maintenance Costs from the Appeal Bond

22.   Although the Mezzanine Lender claims that all damage to the Property occurred prior to August 3, 2022, the Mezzanine Lender points to nothing in the record to support this contention and has submitted no factual evidence to support its claim.  On the other hand, the Famularo Declaration and TH Holdco's supplemental submissions related to enforcing cooperation with the closing (*see e.g.*, Docket Nos. 302, 330, 334, 365, 371, 375) establish that the Property was in worse shape on November 9, 2022 when TH Holdco closed on its credit bid (*e.g.*, the damaging of the residential locks, the destruction of electronic books and records and new squatters moving in) than it was when TH Holdco inspected it prior to implementation of the stay on August 3, 2022.

23.   All of the damages that existed as of August 3, 2022, such as unfixed water damage, which were left un-remediated by the Debtors, were only exacerbated during the 96-day Stay Period.  Other damages arose during the Stay Period, including the presence of additional squatters that TH Holdco witnessed moving in on the closing date.  These damages, which total at least $400,000, are the natural and proximate result of the imposition of the stay pending appeal, and can be recovered from the Appeal Bond.  The Mezzanine Lender has already

14

conceded that such damages are covered by the appeal bond.  *See* Opposition at 11 ("[*Kountze*] made clear that …the only recoverable damages were 'depreciation of the property in market value, its detriment by waste or want of repair, or the accumulation of taxes or actual rents and profits accumulated during the appeal period.'" (citing *Kountze*, at 392)).

24. The Mezzanine Lender's argument that it did not directly cause these damages and that such damages should be recovered directly from the Debtors does not compute.  This irresponsible Debtor in Possession remained in control of the Property during the Stay Period because the Mezzanine Lender, with the Debtors' support in the form of a filed joinder, obtained a stay pending appeal.  Therefore, the damages that occurred during the Stay Period were the natural and proximate result of the stay and as such, can be recovered from the Appeal Bond.

## CONCLUSION

WHEREFORE, TH Holdco respectfully requests this Court enter the Order, substantially in the form attached to the Motion as **Exhibit A**:  (i) immediately granting TH Holdco's request for an award of damages and costs of no less than $5 million resulting from the delay associated with the Stay Order and the ensuing stay pending appeal; (ii) directing that the full amount of the Appeal Bond be immediately paid over to TH Holdco; and (iii) such other relief as the Court deems appropriate under the circumstances.

Dated:  January 9, 2023
New York, New York

**DENTONS US LLP**

/s/ *Lauren M. Macksoud*
Lauren Macksoud
Sarah M. Schrag
**DENTONS US LLP**
1221 Avenue of the Americas
25th Floor
New York, New York 10020
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
E-mail:  lauren.macksoud@dentons.com
          sarah.schrag@dentons.com

15

Robert Richards  (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
Email:  robert.richards@dentons.com

*Counsel to TH Holdco LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2023, a true and correct copy of the foregoing *Reply* was caused to be served via the Court's CM/ECF system on all parties authorized to receive electronic notice in these Chapter 11 cases, as well as by overnight mail on the following parties:

Atlantic Specialty Insurance Company
One State Street Plaza, 31st Floor
New York, NY 10004

Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036
Attn: J. Ted Donovan and/or Kevin Nash

/s/ *Lauren M. Macksoud*
Lauren M. Macksoud